UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK GERSTLE, et al.,

Plaintiffs,

v.

AMERICAN HONDA MOTOR COMPANY, INC.,

Defendant.

Case No. 16-cv-04384-JST

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Re: ECF Nos., 42, 44, 59, & 65

Before the Court is Defendant American Honda Motor Co., Inc.'s Motion to Dismiss Certain Counts in Plaintiffs' Complaint and Defendant's Requests for Judicial Notice. ECF Nos. 42, 44, 59. Plaintiffs oppose both the motion to dismiss and Defendant's first request for judicial notice.[1] ECF No. 56 & 57. The Court will grant the motion to dismiss in part and deny it in part, and grant the requests for judicial notice.

## I. FACTUAL BACKGROUND

In this purported class action, twelve named plaintiffs (collectively "Plaintiffs")[2] allege that they purchased new or used Acura vehicles manufactured by Defendant American Honda Motor Company, Inc. ("AHM" or "Honda" or "Acura"). ECF No. 29.[3] Their Acura vehicles were

---

[1] Plaintiffs filed a request to file a motion to dismiss Defendant's sur-reply and requested to file their own sur-reply to address several "new" arguments Defendant allegedly makes in its Reply. ECF No. 65 at 2. The Court denies this request. With regards to issues 1 and 4, the Defendant did not raise any new arguments, ECF No. 42 at 2, 22-23. The Court does not reach the argument of whether the alleged defect was covered by AHM's express warranty, and does not rely on the role of dealerships in its analysis of fraudulent concealment.

[2] Originally thirteen plaintiffs consolidated their suit before this Court, but the Plaintiffs timely dismissed Plaintiff Alul. ECF No. 58.

[3] The Court takes the facts from the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

equipped with a defective Bluetooth system, the Hands Free Link ("HFL") system, that caused a "parasitic drain" on their electrical systems.  Id.  The system was advertised as a convenient and safe way for a driver to connect her phone to the vehicle and enjoy hands-free phone calls and other advantages.  Id. ¶ 194.  Plaintiffs bought AHM's vehicles based on Acura's reputation for luxury and paid a premium for the HFL system.  Id. ¶ 196.

Within a few years of purchase, Plaintiffs began to experience electronic issues with their vehicles.  See Id. ¶ 206.  Most frequently, Plaintiffs experienced premature battery death.  Id.  Plaintiffs were forced to purchase several new batteries at their own expense, as well as make other costly repairs.  Unbeknownst to the Plaintiffs, their electronic systems were failing because the HFL system drained the battery at an unusually high rate and affected other electronic devices, such as the alternator.  Id. ¶ 198.  Since at least 2005, consumers such as Plaintiffs purchased Defendant's vehicles without knowing that they were defective and posed a safety hazard.  Id. ¶¶ 206-207, 210.

Defendant, however, was aware of the defect in the HFL's design.  Id. ¶ 199.  On June 29, 2005, AHM issued an internal Technical Service Bulletin ("TSB") to dealers that stated that the HFL system "does not work."  Id.  The TSB stated that the HFL system may cause a dead or low battery.  Id.  While it was clear there was a defect, it "effectively elude[d] diagnosis."  Id. ¶ 200. "Once the HandsFreeLink™ defect compromises the battery, the system can 'reset,' hiding the problem until the system gets stuck again."  Id.  In 2008 and 2012, AHM issued similar TSBs notifying dealers that the HFL system did not function properly.  Id. ¶ 202- 203.  The only "fix" was to replace the HFL system, but that did not solve the problem because the new system might have had the same defect.  Id. ¶ at 207.  The Defendant did not disclose the defect to Plaintiffs.  As the HFL system often went unidentified as the cause for the hastened drain on Plaintiffs' electrical systems, Plaintiffs allege they paid for new batteries and other electronic parts more frequently than they otherwise would have.  Id. ¶ 209.

Plaintiffs also allege that in some circumstances the defect caused a safety hazard.  Id. ¶ 210.  For instance, Plaintiff Gerstle's 2004 Acura TL stopped operating while he was on a highway about to enter a tunnel.  Id. ¶ 168.  Numerous complaints have been lodged with the

United States District Court
Northern District of California

National Highway Transportation Safety Administration ("NHTSA"), alleging that the defect caused vehicles to stop operating while on the road. Id. ¶ 213.

Overall, Plaintiffs allege they did not know that the cause of their problems was the HFL system. Id. ¶ 8-185. If they had known of the problem, they would not have purchased their vehicles or would have paid less for them. Id.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed this putative class action against Defendant on August 3, 2016. ECF No. 1. Plaintiffs subsequently filed a first amended complaint ("FAC") on October 17, 2016, alleging sixty-nine counts under eleven states' laws related to the defective HFL in their vehicles. ECF No. 29. Generally, plaintiffs' claims relate to state consumer protection statutes, fraudulent concealment, breaches of express and implied warranty pursuant to state and federal laws, and unjust enrichment. Defendant previously filed a motion to transfer venue, which the Court denied. See ECF No. 48. Defendant now moves to dismiss all of Plaintiffs' claims brought as a national class, Plaintiffs' request for injunctive relief, most of Plaintiffs' claims brought under different statutory laws, and breaches of contract claims because they are untimely or fail as a matter of law. ECF No. 42.

## III. JUDICIAL NOTICE

Defendant requests the Court take judicial notice of the Acura Warranty Booklets applicable to Plaintiffs' vehicles and copies of the TSBs that Plaintiffs referred to in their FAC. ECF No. 44 & 59. A court may take judicial notice of documents whose contents are alleged in the complaint and whose authenticity no party questions.[4] Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.1994). A court may also take judicial notice of documents incorporated by reference in the complaint, but which are not physically attached to the pleading. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material.").

[4] Plaintiffs filed an Opposition to Defendant's Motion for Judicial Notice, but they do not question the authenticity of the documents. ECF No. 44.

Plaintiffs argue that the warranties do not fall under the incorporation doctrine and are not relevant or necessary. ECF No. 44 at 2. The Court disagrees. The warranties are relevant because they detail the terms of the warranty presented to Plaintiffs at the time they purchased their vehicles. The TSBs contain the same language Plaintiffs have quoted or referred to in their FAC. The Court may consider the terms of the express warranties where those terms are not in dispute, See Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001), particularly given that Plaintiffs have brought claims for breach of express warranty. See ECF No. 29 at 69.[5]

## IV. LEGAL STANDARD

Claims of fraud are subject to a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Defendant moves under Federal Rules of Civil Procedure Rule 9(b) to dismiss Plaintiffs' fraudulent concealment claims, California Consumer Legal Remedies Act ("CLRA") claims and Unfair Competition Law ("UCL") claims, on the basis that they fail to allege any factual circumstances with the required specificity. See ECF No. 42. To satisfy Rule 9(b), a complaint must supply "the circumstances constituting the alleged fraud" with a description "'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)).

"[I]ntent, knowledge, and other conditions of a person's mind" need not be stated with particularity, and "may be alleged generally." Fed. R. Civ. P. 9(b). Fraud claims must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted); see also Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." (internal quotation marks omitted)).

---

[5] The Court refers to the page numbers affixed by the Court's electronic case filing system and not the internal pages on the document.

"Plaintiff[s] need not provide every factual detail supporting [their] fraud claim.  Instead, a plaintiff must set forth what is false or misleading about a statement, and why it is false."  In re GlenFed, Inc. Securities Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharmaceutical Corp., 927 F.Supp. 1297, 1309 (C.D. Cal. 1996).

Defendant also argues the Plaintiffs fail to state a claim under Federal Rules of Civil Procedure 12(b)(6).  While the Court accepts the material facts alleged in the complaint, along with all reasonable inferences to be drawn from those facts, as true, Navarro, 250 F.3d at 732, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To be entitled to the presumption of truth, a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## V.      DISCUSSION

### A.      Application of California Law

Defendant argues that the presumption against extraterritoriality and conflict of law principles should preclude Plaintiffs from applying California law to its nationwide claims.  ECF No. 42 at 17-20.  Plaintiffs counter that California law should be applied to the nationwide class because Defendant is located in California and has violated various California consumer protection laws and warranties governed by California law.  ECF No. 29 ¶¶ 186, 240-346.  The Court concludes that the presumption against extraterritorial application of California law does not govern and that a conflict of law analysis is premature.

#### 1.      Presumption Against Extraterritorial Application of California Law

Defendant argues that a nationwide class cannot rely on California law because not all Plaintiffs purchased their vehicles in California.  ECF No. 42 at 17.

While California has a presumption against extraterritorial application of its own law, Sullivan v. Oracle Corp., 51 Cal.4th 1191, 1207 (2011), "state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California."  TRC

& Assocs. v. NuScience Corp., No. 2:13-CV-6903-ODW CWX, 2013 WL 6073004, at *5 (C.D. Cal. Nov. 18, 2013), quoting Tidenberg v. Bidz.com, Inc., No. 08–cv–5553–PSG, 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009).  To determine whether sufficient wrongful conduct occurred in California, "the courts consider where the defendant does business, whether the defendant's principal offices are located in California, where class members are located, and the location from which advertising and other promotional literature decisions were made."  In re Toyota Motor Corp., 785 F. Supp. 2d 883, 917 (C.D. Cal. 2011).  The Court looks to the nexus between California and the alleged wrongful conduct to determine whether sufficient wrongful conduct occurred in California.  See Ehret v. Uber Techs., Inc., 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014).

In Ehret, the plaintiffs alleged that California law should apply to their claims, despite the presumption against extraterritoriality, because Uber's misrepresentations were developed in California, contained on websites and Uber's application maintained in California, and because billing and payment of services went through servers located in California.  Ehret, 68 F. Supp. 3d at 1132.  The court found that those allegations presented "a sufficient nexus between California and the misrepresentations which form[ed] the basis of [the plaintiff's] claims."  Id.  Similarly here, Plaintiffs allege that Defendant has conducted and maintained operations in California for several decades.  ECF No. 29 ¶¶ 186-189.  Moreover, Plaintiffs allege that Defendant is headquartered in Torrance, California, where it conducts "sales, service, and coordinating functions" and where decisions are made regarding the manufacture, development, distribution, marketing, sales, and serving of Acura-brand automobiles.  Id. ¶190.  These allegations form the requisite connection to California.

Defendant cites In re Toyota Motor Corp., 785 F. Supp. 2d 883, 916-916 (C.D. Cal. 2011) for the proposition that the mere fact that the Defendant is located in California does not provide sufficient contacts.  There, the court dismissed a nationwide class because the plaintiffs had failed to allege that the advertising materials at issue were disseminated from California.  Id.  But here, by contrast, Plaintiffs have alleged that all decisions regarding the marketing and sales of the HFL, including the decision to not disclose the alleged defect, were "in whole or substantial part" made

from the Defendant's Torrance, California headquarters. ECF No. 29 ¶ 190. Moreover, when Defendant argued for a change of venue in a prior motion, it stated that five of the six witnesses who tested the HFL were located in California. ECF No. 32 ¶¶ 10-11. Since AHM conducted marketing and advertising in California and tested the HFL system in California, the Court finds that Plaintiffs have alleged that sufficient wrongful conduct occurred in California, and therefore denies Defendant's motion to dismiss on this ground.

**2. Choice of Law**

Defendant contends that California's choice of law rules bar the nine non-California Plaintiffs from invoking California law. ECF No. 42 at 18. Defendant asks the Court to apply the three-part conflict of law test set out in Mazza v. Am. Honda Motor Co., 666 F.3d 581, 590 (9th Cir. 2012) to determine if California law should apply to the named Plaintiffs' claims. Mazza 666 F.3d 590.

A detailed choice-of-law analysis is a fact-heavy analysis and is generally inappropriate on a motion to dismiss where the parties have not yet developed a factual record. Clancy v. The Bromley Tea Co., 308 F.R.D. 564, 572 (N.D. Cal. 2013). Defendant argues that the Court "should [nonetheless] undertake the Mazza inquiry now because Mazza's reasoning 'applies generally and is instructive even when addressing a motion to dismiss.'" Frezza v. Google Inc., No. 5:12-CV-00237-RMW, 2013 WL 1736788 at *6 (C.D. Cal. Ap. 22, 2013). That is only true, however, when some discovery has taken place. Such was the case in Todd v. Tempur-Sealy Int'l, Inc., No. 13-CV-04984-JST, 2016 WL 344479, at *6 (N.D. Cal. Jan. 28, 2016), where this Court concluded that the choice-of-law analysis was appropriate because "of the advanced stage of litigation and the extensive discovery that [had] already been completed." Id. at *6. Defendant's reliance on Todd is thus misplaced. ECF No. 42 at 19, fn 2. Even there, this Court noted that dismissal at the pleading stage would be premature prior to discovery and the development of a factual record. Todd 2016 WL 344479, at *6.

Here, the Court has no factual record to decide which state has a greater interest in applying its laws. While Mazza will of course be relevant to the decision whether to certify any proposed class or sub-class, at this early stage of the litigation, 'it would be premature to speculate

about whether the difference in various states' consumer protection laws are material in this case.'" Clancy, 308 F.R.D. at 572 (quoting Forcellati v. Hyland's Inc., 876 F.Supp.2d 1155, 1159 (C.D. Cal. 2012)). The Court declines to dismiss any of Plaintiffs' claims on choice-of-law grounds now.

**B. Primary Jurisdiction as Grounds for Dismissing Request for Injunctive Relief**

Defendant argues that the Court should dismiss Plaintiffs' request for injunctive relief because the National Highway Traffic Safety Administration ("NHTSA") has general authority over Plaintiffs' claims. ECF No. 42 at 21-22.

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008). The Ninth Circuit provides four factors for consideration: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." Syntek Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 781 (9th Cir. 2002). Given the nature of Plaintiffs' claims and the lack of conflict with any current agency action, the Court is not persuaded that the primary jurisdiction doctrine applies.

Defendant fails to argue why court action would infringe on the NHTSA's authority or why resolution of Plaintiffs' claims requires special agency expertise. ECF No. 42 at 21-22. Courts have held that the primary jurisdiction doctrine does not apply if the defendant fails to identify "any specific conflict" with an on-going NHTSA investigation or regulation. Kent v. DaimlerChrysler Corp., 200 F. Supp. 2d 1208, 1218 (N.D. Cal. 2002) (failing to show "the need for 'uniformity and consistency in the regulation of business'" because defendant did not point to any conflicts with the NHTSA actions or regulations). Courts have also refused to invoke the primary jurisdiction doctrine when plaintiffs are bringing state contract and tort claims, regardless of any NHTSA action. See Lassen v. Nissan N. Am., Inc., No. CV1506491ABMRWX, 2016 WL 5868101, at *7 (C.D. Cal. Sept. 30, 2016) 2016 WL 5868101, at *7 (finding that safety, not

NHTSA authority, will be the overriding factor when deciding to grant injunctive relief in the form of a recall). Here, Defendant only generally asserts that the request for injunctive relief is within the province of the NHTSA and that courts routinely defer to the NHTSA's general authority to "investigate and remedy design defects in vehicles in circumstances" where an administrative remedy is available. ECF No. 61 at 7,[6] see also 49 U.S.C.A. § 30120 (2016) (NHTSA's authority to issue recalls). Although consumers have complained to the NHTSA, ECF No. 29 ECF No. 29 ¶ 213, AHM cites no agency investigation or action that would conflict with this case. ECF No. 56 at 16. Plaintiffs bring their claims under state laws, not the Safety Act, which grants the NHTSA its authority. ECF No. 29; 49 U.S.C.A. § 30000 et. seq. Accordingly, there is no conflict between this case and any NHTSA action or authority that would require the invocation of the primary jurisdiction doctrine.

Moreover, Defendant makes no argument as to why any issue before the Court requires the technical expertise or uniformity in administration provided by the NHTSA. ECF No. 42 at 21-22; ECF No. 61 at 11-12. "[W]arranty and consumer protection claims based on an alleged design defect [that are] . . . not based on NHTSA regulations, safety standards, or agency-specific statutes" are "not outside the conventional experiences of judges, and [do] not involve issues that are within the NHTSA's discretion." Ford v. Ford Motor Co., No. CV 13-8335 PSG (SSX), 2014 WL 12570925, at *5 (C.D. Cal. Jan. 17, 2014). Such claims therefore do not require application of the primary jurisdiction doctrine. Id. In Ford, plaintiffs argued that a specific axle design in certain Ford Windstar minivans was defective because it was predisposed to premature wear and failure. Id. The NHTSA had already found that the design was defective. Id. Even if the NHTSA had not made such a finding, the court reasoned that the specificity of the design defect was a narrow question of the kind commonly answered by courts. Id.

Plaintiffs' complaint is similarly narrow. Plaintiffs allege that Acura's HFL is defective

---

[6] Courts have invoked the primary jurisdiction doctrine when the matters before them required broad industry-wide analysis and policy-making decisions that would be more appropriately performed by the NHTSA. See Solarz v. DaimlerChrysler Corp., No. 2033 APRILTERM 2001, 2002 WL 452218, at *3 (Pa. Com. Pl. Mar. 13, 2002) (court's); Coker v. DaimlerChrysler Corp., No. 01 CVS 1264, 2004 WL 32676, at *5 (N.C. Super. Jan. 5, 2004), aff'd, 172 N.C. App. 386, 617 S.E.2d 306 (2005), aff'd, 360 N.C. 398, 627 S.E.2d 461 (2006).

because it drains the vehicle's battery without the Plaintiffs' knowledge and, therefore, causes economic harm. ECF No. 29 ¶¶ 198-205. Plaintiffs do not assert that the HFL's design does not comply with an industry-wide standard, nor do they base their claims on an omitted safety feature. Instead, they allege that the HFL is defectively designed because it causes a parasitic draw on the electrical system. ECF No. 29 ¶ 198. This narrow claim does not require the NHTSA's expertise.

Furthermore, there is little to no danger to the uniformity of administration of the NHTSA's regulations, because Plaintiffs' suit claims a broad putative class related to one specific feature available in all Acura makes and models. See Reniger v. Hyundai Motor Am., 122 F. Supp. 3d 888, 907 (N.D. Cal. 2015). In Reniger, plaintiffs alleged that the Kia Santa Fe had a safety defect that caused their vehicles to stall. Id. at 891-982. The court concluded that application of the primary jurisdiction doctrine was improper because the suit was broadly styled to capture many drivers during a certain timeframe, such that there was no danger of inconsistent outcomes – particularly given that "[t]here is no pending investigation and no reason to believe that the NHTSA has any interest in this case." Id. at 907. Similarly, Plaintiffs here have brought a broadly styled suit focused on a single, common design defect, and there is no indication that the NHTSA is addressing that defect. ECF No. 29 ¶¶ 206-209. Plaintiffs' suit presents no danger to uniformity.

**C. Tolling of Statute of Limitations**

Plaintiffs allege that the statute of limitations should be tolled for all claims based on the discovery rule, for unspecified claims based on fraudulent concealment, and for all statutes of limitations based on estoppel. No. 29 ¶¶ 221-229. Defendant contends that Plaintiffs have not adequately invoked the discovery rule, and that the statutes of limitations for several of the claims are not subject to tolling. Specifically, Defendant argues the following claims are untimely: unjust enrichment under California, Delaware, Florida, Kansas, and Virginia law; breach of the implied warranty of merchantability and breach of the express warranty under California, Delaware, Florida, Kansas, Missouri, New Hampshire, Ohio, Texas, and Virginia law; breach of the Magnuson-Moss Warranty Act; and violations of consumer-protection statues under California, Delaware, Florida, Kansas, Missouri, New Hampshire, Ohio, Texas, and Virginia law. ECF No.

United States District Court
Northern District of California

42 at 24-32.

**1. Discovery Rule**

Plaintiffs allege that the "discovery rule" should toll all applicable statutes of limitations. ECF No. 29 ¶¶ 221-224. The discovery rule in California requires the plaintiff to plead facts "which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence . . . . However, mere conclusory assertions that delay in discovery was reasonable are insufficient." In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig., No. C-05-04726 RMW, 2008 WL 4544441, at *8 (N.D. Cal. Sept. 30, 2008) (internal citations omitted); see also Asghari v. Volkswagen Grp. of Am., Inc., 42 F. Supp. 3d 1306, 1320–21 (C.D. Cal. 2013).

"The burden of pleading and proving belated discovery of a cause of action falls on the plaintiff." Inv'rs Equity Life Holding Co. v. Schmidt, 195 Cal. App. 4th 1519, 1533 (2011), as modified (June 15, 2011) (internal citations omitted). To determine whether Plaintiffs could not have reasonably discovered the cause of action within the statute of limitations, they must allege the time and manner by which they discovered the cause of action. See Philips v. Ford Motor Co., No. 14-CV-02989-LHK, 2015 WL 4111448, at *8 (N.D. Cal. July 7, 2015); In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig., No. C-05-04726 RMW, 2008 WL 4544441, at *9 (N.D. Cal. Sept. 30, 2008), citing Community Case v. Boatwright, 124 Cal.App.3d 888, 900 (1981). Here, the Court is unable to determine the date the statute of limitations began to run because Plaintiffs do not provide the time and manner by which each named Plaintiff discovered the alleged defect.

Defendant argues that Plaintiffs cannot assert the discovery rule to toll the statute of limitations because Plaintiffs had notice of the alleged wrongdoing and, through reasonable due diligence, could have discovered the defect within the respective statutes of limitations. ECF No. 42 at 22-23. Before reaching those arguments, however, the Court examines whether Plaintiffs have provided sufficient facts to invoke the affirmative defense of the discovery rule, and concludes that Plaintiffs fail to allege the time and the manner by which each plaintiff discovered the defect that was affecting the car battery. ECF No. 29 ¶¶ 221-224. Plaintiffs may only benefit

from the discovery rule when they can show they acted reasonably and diligently. Plumlee v. Pfizer, Inc., No. 13-CV-00414-LHK, 2014 WL 4275519, at *6 (N.D. Cal. Aug. 29, 2014), aff'd, No. 14-16924, 2016 WL 6610223 (9th Cir. Nov. 9, 2016). The discovery rule may be invoked for each named plaintiff based on the time and manner provided for each named plaintiff. Id. at *8 (determining for each plaintiff if the discovery rule properly tolled UCL and CLRA claims). For several Plaintiffs, the Complaint asserts that the defect was brought to their attention when they visited mechanics for assistance with failing batteries and other electronics in their vehicles.[7] ECF No. 29. For the remaining Plaintiffs, however, the FAC only alleges whether drivers had the HFL disabled or not. Id. The Court will not infer a discovery time and manner for each plaintiff where none is alleged.

Without the time and manner of discovery, the Court cannot establish a tolling date or evaluate which date should be used when deciding whether a plaintiff could have filed the suit on an earlier date based on his or her reasonable due diligence. The Court will allow Plaintiffs to amend their complaint to provide the additional information required to invoke the discovery rule.

**2. Fraudulent Concealment and Tolling**

Defendant argues that Plaintiffs' claim for fraudulent concealment fails as a matter of law because AHM did not have a duty to disclose. ECF No. 42 at 34. Defendant also contends that Plaintiffs cannot toll the statutes of limitations based on fraudulent concealment. ECF No. 42 at 23. The Court finds that Defendant did have a duty to disclose the defect because it presented a safety risk, but that Plaintiffs have failed to meet the requirements to toll any statute of limitations based on fraudulent concealment.

**a. Fraudulent Concealment as a Matter of Law**

Defendant argues that it had no duty to disclose because manufacturers do not typically have a duty to disclose and because the alleged HFL defect did not present an unreasonable safety hazard. ECF No. 42 at 34. The duty to disclose usually arises only when a confidential or

[7] The Plaintiffs who did identify the time and/or manner by which they learned of the defect are Plaintiffs Gray, ECF No. 29 at ¶¶ 33-34; Kelly, id. ¶¶ 44-45; Tran, id. ¶57; Moss, id. ¶¶ 137; and Crooks, id. ¶ 153.

fiduciary relationship exists. Gold v. Los Angeles Democratic League, 49 Cal. App. 3d 365, 373 (1975). Fraudulent omissions or concealments, however, may be actionable when the defendant has a duty to disclose. Daugherty v. Am. Honda Motor Co., 144 Cal. App. 4th 824, 835 (2006), as modified (Nov. 8, 2006). In particular, a manufacturer has a duty to disclose safety issues to consumers if it has exclusive knowledge of the defect. Philips v. Ford Motor Co., No. 14-CV-02989-LHK, 2015 WL 4111448, at *8 (N.D. Cal. July 7, 2015). In Philips, Plaintiffs alleged that Ford's power steering system was defective, causing the power steering to stop working while the vehicle was in motion. Id. at *1. Plaintiffs presented Fords' TSBs to show that it had exclusive knowledge regarding the defect. Id. at *9. Plaintiffs also drew a plausible link between the loss of power steering and an increased likelihood that drivers would lose control. Id. at *11. Based on anecdotes and complaints made to the NHTSA, the court held that Ford had a duty to disclose because it had exclusive knowledge of the defect which posed an unreasonable safety risk of losing control. Id. at *11. Accordingly, the plaintiffs were allowed to bring suit for fraudulent concealment.

Defendant argues that in this case the TSBs should not be used as evidence of its exclusive knowledge, and that Plaintiffs' allegations regarding the safety risks posed by the alleged defect are "speculative" and "fanciful." ECF No. 42 at 35. Plaintiffs' allegations defy these descriptions: they allege that the TSBs reveal that AHM knew the HFL would often not switch off, causing the car's battery to drain and resulting in safety problems. ECF No. 29 ¶¶ 199, 202-203. Plaintiffs point to AHM's TSBs, which show that AHM was aware of the issue as early as 2005. Id. ¶ 199. Plaintiffs further allege that they were unaware of the cause of the drain on their electrical systems. ECF No. 29 ¶ 215-216. Plaintiffs assert that the alleged HFL defect presents a safety hazard because the drained batteries could cause the car to stop while on the road. Id. Similarly to Philips, Plaintiffs rely on numerous anonymous, undated complaints to the NHTSA, ECF No. 29 ¶¶ 213-214; Philips, 2015 WL 4111448 at *11, as well as Plaintiff Gerstle's own experience having his car stop while he dove on a highway into a tunnel, id. at ¶ 168, to support their allegation that the cars fail during operation due to the drain from the HFL defect.

Taking Plaintiffs' allegations as true, Defendant had exclusive knowledge of the defect and

withheld it from Plaintiffs, and the alleged defect posed a safety risk. Therefore, AHM had a duty to disclose the defect to the Plaintiffs and Plaintiffs' fraudulent concealment claims do not fail as a matter of law.

**b. Fraudulent Concealment as Basis for Tolling**

Although the Court has found that AHM had a duty to disclose the alleged defect, Plaintiffs must show an additional element to toll the statute of limitations: Plaintiffs must also allege "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig., 2008 WL 4544441, at *9. Plaintiffs have not pled these elements sufficiently. As discussed, some Plaintiffs have alleged when they learned of the defect, while others have not. None of the Plaintiffs have alleged when they learned that Defendant was withholding its knowledge of the defect. ECF No. 29. Therefore, the Court will not toll the statute of limitations based on fraudulent concealment, but will grant Plaintiffs leave to amend their complaint.

**3. Estoppel**

Plaintiffs also attempt to toll all of the statutes of limitations based on equitable estoppel because Defendant was under a continuous duty to disclose. Id. ¶ 227. To plead equitable estoppel, the plaintiff must show either:

> (1) an affirmative statement that the statutory period to bring the action was longer than it actually was; (2) promises to make a better settlement of the claim if plaintiff did not bring the threatened suit; or (3) similar representations or conduct on the part of the defendants.

Atkins v. Union Pac. R. Co., 753 F.2d 776, 777 (9th Cir. 1985). Defendant argues that Plaintiffs have failed to allege any facts that "AHM affirmatively and intentionally misrepresented the applicable statutes of limitations . . . or plead any other statements that would be required to merit application of estoppel." ECF No. 42 at 24.

The Court agrees with Defendant. Plaintiffs assert that AHM "knowingly, affirmatively, and actively" concealed the defect, but do not otherwise allege any affirmative statement, promise,

or similar representation Defendant made to warrant estoppel in either the FAC or Opposition to the Motion to Dismiss. See ECF No. 29 ¶¶ 227-229. There is no evidence that Defendant made any affirmative statement or promise to induce Plaintiffs not to sue, and therefore the Court concludes that the statute of limitations cannot be tolled based on estoppel. The Court will give Plaintiffs leave to amend the complaint to cure this defect if they can do so.

**D. CLRA and UCL**

Defendant argues that Plaintiffs' claims under the California Legal Remedies Act ("CLRA") and the Unfair Competition Law ("UCL") are untimely because the statutes of limitations have run.[8] ECF No. 42 at 31, 36.

The CLRA claims are untimely because the CLRA has a three-year statute of limitations that begins at the date the improper consumer practice was committed. Yumul v. Smart Balance, Inc., 733 F. Supp. 2d 1117, 1130 (C.D. 2010). Defendant alleges that the date of the improper consumer practice is the date when each vehicle was purchased. Id., see also Asghari v. Volkswagen Grp. of Am., Inc., 42 F. Supp. 3d 1306, 1319 (C.D. 2013). The Asghari court observed that the CLRA is subject to tolling, however, based on the discovery rule. Id. at 1322. As previously noted, the Court concludes that Plaintiffs have insufficiently pleaded the facts necessary to trigger the discovery rule, and so will dismiss Plaintiffs' CLRA claims with leave to amend.

Defendant argues that Plaintiffs' UCL claims are also untimely because the four-year statute of limitations for those claims begins to run when the Defendant engages in a statutorily prohibited practice and plaintiff suffers an injury as a result. ECF No. 42 at 31; see also Aryeh v. Canon Bus. Solutions, Inc., 55 Cal.4th 1185, 1196 (2013); Cal. Bus. & Prof. Code § 17208. All of the California Plaintiffs' UCL claims are untimely, as more than four years elapsed between their car purchases and the filing of this lawsuit in 2016.[9] ECF No. 43-2 at 2. Here too, Plaintiffs claim

---

[8] Defendant argues that both claims fail as a matter of law because "Plaintiffs fail to plausibly allege actionable fraud." Id. at 36. However, the Court has already found that Plaintiffs sufficiently pleaded the elements of fraudulent concealment as a claim above.

[9] Plaintiff Aberin purchased his vehicle in January 2005. Gray purchased his vehicle in November 2008. Kelly purchased his vehicle used. Tran purchased his vehicle in 2006. ECF No. 43-2 at 2. The most recent purchase of a new Class vehicle mentioned in the Complaint was on April 21,

the benefit of the discovery rule but have not adequately pleaded it. These claims will be dismissed with leave to amend.

**E. Consumer Protection Statutory Claims Under Delaware, Florida, Kansas, New Hampshire, Ohio, Texas, and Virginia Law**

Defendant also argues that Plaintiffs' consumer protection statutory claims are all untimely. ECF No. 42 at 16-20. Due to the same failure to state a theory by which the statute of limitations may be tolled, the Court agrees that the Plaintiffs' claims brought under the various consumer protection laws of their respective states must be dismissed.

**1. Delaware, Kansas, and New Hampshire**

Delaware, Kansas and New Hampshire provide a three-year statute of limitations for claims related to consumer protection. 10 Del. C. § 8106; Kan. State. Ann. § 60-512; N.H. Ev. State. Ann. 508:4(l). Plaintiffs Lou, Awtrey, and Yeung allege that Defendant violated their respective state consumer protection laws because AHM wrongfully failed to disclose the alleged defect. ECF No. 29 ¶¶ 467-468, 647, 847. Defendant counters that Plaintiffs failed to file their claims within the three-year statute of limitations, which accrued upon purchase of the vehicles in April 2011, November 2010, and September 2010, respectively. ECF No. 42 at 30. Because Plaintiffs have failed to argue any applicable theory to toll the statute of limitations, the Court finds that their claims are untimely.

**2. Virginia and Texas**

Plaintiffs Srivastava and Gerstle allege that Defendant violated Virginia and Texas consumer protection laws. ECF No. 29 ¶¶ 1197-1201, 1118-1119. Virginia's and Texas' consumer protection laws have limitations periods of two years. Va. Code Ann. 59.1-2014.1; Tex. Bus. Com. Code 17.656. Plaintiffs bought their vehicles in 2010 and 2005 respectively. Id. at ¶¶ 174, 156. Both Plaintiffs have failed to properly allege a theory to toll the statute of limitations for their claims. ECF No. 42 at 28-29. Therefore, the Court dismisses these claims with leave to amend.

---

2011. ECF No. 29 ¶ 63.

**3. Ohio**

Plaintiff Crooks's claim under the Ohio Consumer Protection Act also fails because he did not bring his claim within the two-year statute of limitations. Ohio Rev. Code Ann. 1345.10(C). Ohio law does not allow tolling of the consumer protection statute. Zaremba v. Marvin Lumber and Cedar Co., 458 F. Supp. 2d 545, 552 (N.D. Ohio 2006) ("Where a plaintiff seeks recovery of damages under the CSPA, the limitations period is absolute, and the discovery rule does not apply."). Plaintiff Crooks's claims are untimely because he bought a used vehicle in 2012, more than two years before this action. ECF No. 29 ¶¶ 1015-1033. Accordingly, Plaintiff Crooks' claim pursuant to the Ohio Consumer Protection Act is dismissed with prejudice because he cannot cure his claim.

**4. Florida**

Lastly, Plaintiff Criner's claim fails because it is untimely under Florida's consumer protection law. ECF No. 42 at 30. Florida's Deceptive and Unfair Trade Practices Act provides a four-year statute of limitations. Fla. Stat. § 95.111(3)(f). Florida does not allow tolling based on delayed discovery. Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Ctr., Inc., No. CIV.A. 11-2002, 2012 WL 630010, at *5 (E.D. La. Feb. 27, 2012), (citing Davis v. Monahan, 832 So.2d 708, 709–10 (Fla. 2002)). Plaintiff Criner allegedly purchased his vehicle in May 2012, more than four years before this suit was filed on August 3, 2016. ECF No. 29 ¶ 92. Therefore, Plaintiff Criner's claim pursuant to Florida's Deceptive and Unfair Trade Practices Act is dismissed with prejudice. Id. ¶¶ 549-568.

**F. Express and Implied Warranty Under California, Florida, Ohio, New York, and Texas Law and Magnuson-Moss Warranty Claims**

Defendant argues that Plaintiffs' express and implied warranty claims under California, Florida, Ohio, New York, and Texas law are untimely and fail as a matter of law because Plaintiffs lack the required vertical privity with Defendant. Defendant also contends that Plaintiffs' claims brought pursuant to the Magnuson-Moss Act are untimely. The Court assesses the timeliness of the claims together, as they are subject to the same or similar statutes of limitations.

**1. Timeliness of Claims**

Defendant contends the breach of express warranty, implied warranty, and Magnuson-Moss Warranty Act claims are untimely because the Plaintiffs purchased their vehicles more than four years ago. ECF No. 42 at 25-28. Plaintiffs allege that AHM's express warranty was for four-years or 50,000 miles, whichever occurred first. ECF No. 29 ¶ 303. The Court agrees that all claims are untimely based on the express warranty's period and based on statutory periods.

**a. Implied Warranty**

**i. California**

Under California law, both implied warranties and claims brought pursuant to the Magnuson-Moss Warranty Act are limited to one year for new vehicles. Cal. Civ. Code § 1791.1 (West) ("in no event shall such implied warranty have a duration of. . . more than one year following the sale of new consumer goods to a retail buyer"); Atkinson v. Elk Corp. of Texas, 142 Cal. App. 4th 212, 231 (2006) (holding that Magnuson-Moss Warranty Act claims for new products are subject to a one-year statute of limitations). Here, Plaintiffs Aberin, Gray, and Tran bought their cars in California. ECF No. 29. Plaintiffs did not purchase any new vehicles within a year of filing suit. ECF No. 43-2 at 2. Their claims are untimely.

Furthermore, implied warranties are subject to a three-month statute of limitations for used vehicles. Cal. Civ. Code § 1795.5(c); Ortega v. Toyota Motor Sales, U.S.A., Inc., 422 F. App'x 599, 600 (9th Cir. 2011). Plaintiff Tran bought a used vehicle from a private dealership in November 2015. ECF No. 29 ¶ 50. This suit was filed on August 3, 2016, more than three months after the statutory limit for implied warranties. ECF No. 1. Therefore, Plaintiff Tran's claim for breach of implied warranty is untimely. Plaintiffs do not argue that the discovery rule applies to breach of warranty claims, and a brother court has recently rejected such an argument. Marcus v. Apple Inc, No. C 14-03824 WHA, 2015 WL 151489, at *8 (N.D. Cal. Jan. 8, 2015) (to "extend [the discovery rule] to breach of warranty claims . . . would be nonsensical"). These claims are dismissed with prejudice.

**ii. Delaware, Kansas, New Hampshire, Ohio, Texas, and Virginia**

Under Delaware, Kansas, New Hampshire, Ohio, Texas, and Virginia law, the statutes of limitations for claims arising from a contract for sale is four-years, starting from the time of sale. 6 Del. C. § 2-725(1) (2016), K.S.A. 84-2-725 (2017), N.H. Rev. Stat. § 382-A:2-725(1) (2016), Ohio Rev. Code § 1302.98(A) (2016), Tex. Bus. & Com. Code § 2.725(a) (2015), VA Code Ann. § 8.2-725 (2016). These states apply these statutes of limitations to implied warranties because they are based on claims arising from a contract of sale. As the Court has already noted, none of the relevant Plaintiffs' claims were brought within four years of purchasing their vehicles. Therefore, their claims are untimely under their respective state laws governing the statutes of limitation for implied warranties. Plaintiffs do not argue that an exception applies. These claims are dismissed with prejudice.

**iii. Florida**

Florida provides that the implied warranty of merchantability is the same for new and used goods. West's F.S.A. § 672.314; Bert Smith Oldsmobile, Inc. v. Franklin, 400 So. 2d 1235, 1236 (Fla. Dist. Ct. App. 1981). Florida typically applies a three-year statute of limitations taken from its "Lemon Law" that begins to run at the time the vehicle is delivered. Saavedra v. Albin Mfg. Corp., No. 8:11-CV-1893-T-33TBM, 2012 WL 254122, at *3 (M.D. Fla. Jan. 27, 2012). Plaintiff Criner purchased his vehicle in May 2012, more than three years before the suit, and his claims are, therefore, untimely. ECF No. 42 at 26. Plaintiffs do not argue that an exception applies. These claims are dismissed with prejudice.

**b. Magnuson-Moss Warranty Act**

The Magnuson-Moss Warranty Act does not contain its own statute of limitations, so the Court must use the most analogous state statute of limitations. Rooney v. Sierra Pac. Windows, 566 F. App'x 573, 576 (9th Cir. 2014); see also Hooper v. Lockheed Martin Corp., 688 F.3d 1037, 1044 (9th Cir.2012) (explaining that a federal court applies the most closely analogous state statute of limitations when a federal statute contains no express statute of limitations). California imposes a four-year statute of limitations for breaches of the Magnuson-Moss Warranty Act. Rooney, 566 F. App'x at 576 (citing Mexia v. Rinker Boat Co., Inc., 174 Cal.App.4th 1297, 1306

(2009)). Ohio, New Hampshire, Virginia, and Delaware all apply the same four-year statute of limitations as for claims arising from a contract for sale.[10] Plaintiffs do not plead any theory of tolling. Plaintiffs' Magnuson-Moss claims are untimely, and the Court dismisses them without leave to amend.

**c. Express Warranty**

California, Delaware, Kansas, New Hampshire, Ohio, Texas, and Virginia[11] have adopted the Uniform Commercial Code provisions that require claims for breach of an express warranty to be brought within four years. Cal. Com. Code § 2725(1); 6 Del. C. § 2-725(1); Kan. Stat. Ann. § 84-2-725(1); Mo. Rev. Stat. § 400.2-725(a); N.H. Rev. Stat. § 382-A:2-725(1); Ohio Rev. Code § 1302.98(A); Tex. Bus. & Com. Code § 2.725(a); Va. Code. Ann. § 8.2-725; Winchester Homes, Inc. v. Hoover Univ., Inc., 39 Va. Cir. 107, 110 (Va. Cir. Ct. 1996). The claim begins at the time the vehicle is delivered, regardless of the consumer's knowledge of the breach. Cal. Com. Code § 2725(2); 6 Del. C. § 2-725(1); Kan. Stat. Ann. § 84-2-752(2); Mo. Rev. Stat. § 400.2-725(1); N.H. Rev. Stat. § 382-A:2-725(2); Ohio Rev. Code § 1302.98(B); Tex. Bus. & Com. Code § 2.725(b); Mendes v. Toyota Motor Sales, U.S.A., Inc., No. CV H-15-3018, 2016 WL 1222153, at *2 (S.D. Tex. Mar. 29, 2016) ("the discovery rule does not apply to actions based on express . . . warranties"); Va. Code Ann. § 8.2-725. Since none of the Plaintiffs have brought their claims within this time period, their claims for breach of express warranty are dismissed with prejudice.

**2. Implied Warranty as a Matter of Law**

Defendant also argues that even if the Plaintiffs' implied warranty claims were timely, those claims fail as a matter of law pursuant to California, Florida, Ohio, New York, and Texas law because they have failed to allege vertical privity as required for breaches of an implied

---

[10] See Hahn v. Jennings, No. 04AP-24, 2004-Ohio-4789, 2004 WL 2008474 *7 (Ohio App. 10th Dist. Sept. 9, 2004); Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 830 (2005); Murray v. Am. Suzuki Motor Corp., No. CIV.A.09C-10-103PLA, 2010 WL 323506, at *4 (Del. Super. Ct. Jan. 25, 2010); Waldron v. Subaru of Am., Inc., No. LS-896-4, 1990 WL 751231, *1 (Circ. Ct. Va. July 19, 1990).

[11] Florida applies the same "Lemon Law" provision to claims based on breaches of express and implied warranties, as discussed below.

United States District Court
Northern District of California

warranty. ECF No. 42 at 36-37. Many jurisdictions require vertical privity between a manufacturer and a consumer for claims based on the breach of an implied warranty. Barragan v. Gen. Motors LLC, 2015 WL 5734842, at *9 (W.D. Tex. Sept. 30, 2015); Curl v. Volkswagen of Am., Inc., 871 N.E.2d 1141, 1147 (Ohio 2007); Carbo Indus. Inc. v. Becker Chevrolet, Inc., 112 A.D. 2d 336, 340 (Sup. Ct. N.Y. 1985); Cloer v. General Motors Crop., 395 F. Supp. 1070, 1072 (E.D. Tex. 1975); Anunziato v. eMachines, Inc. 402 F.Supp.2d 1133, 1141 (C.D. Cal. 2005). Each state applies this rule in varying degrees of strictness and sometimes allows exceptions.

The Plaintiffs argue that Texas and Florida do not require vertical privity because Plaintiffs have alleged economic loss. ECF No. 56 at 26. Plaintiffs also argue that the claims fall under exceptions to vertical privity requirements pursuant to California, Ohio, and New York law. Id. The Court agrees with Defendant that Plaintiffs fail to allege the required privity under Florida, Ohio law, but does not agree that their claims fail as a matter of law under California, Texas, and New York law.

**a. Florida**

Plaintiffs rely on a Florida Supreme Court decision holding that vertical privity is not required for implied warranty claims. Manheim v. Ford Motor Co., 201 So. 2d 440, 442 (Fla. 1967). Subsequent courts have implicitly overruled Manheim in the context of personal injury as well as economic loss, holding that privity is required. Mesa v. BMW of N. Am., LLC, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) ("Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity"); Kramer v. Piper Aircraft Corp., 520 So.2d 37 (Fla.1988); Weiss v. Johansen, 898 So.2d 1009 (Fla. 4th DCA 2005); Spolski Gen. Contractor v. Jett–Aire Corp. Aviation Mgmt. of Cent. Fla., Inc., 637 So.2d 968 (Fla. 5th DCA 1994). Plaintiffs' claims for breach of implied warranty fail as a matter of law because the Plaintiffs are not in vertical privity with Defendant, as required by Florida law.

**b. Texas**

The Supreme Court of Texas has held that "a manufacturer can be responsible, without regard to privity, for the economic loss which results from his breach of the Uniform Commercial Code's implied warranty of merchantability." Nobility Homes of Texas, Inc. v. Shivers, 557

S.W.2d 77, 81 (Tex. 1977). Plaintiffs bring their claim under Tex. Bus. & Com. Code Ann. § 2.314, for implied warranty of merchantability and allege economic injury. ECF No. 29 ¶¶ 1158-1170. Plaintiffs' claim for breach of implied warranty under Texas law does not fail for want of privity.

**c. California**

Although California requires privity for breach of implied warranty claims, there are "particularized exceptions" to the privity rule. Clemens v. DaimlerChrysler Corp., 534 F.3d 1017 (9th Cir. 2008). One such exception applies when the defendant extends an express warranty, as here. Atkinson v. Elk Corp. of Texas, 142 Cal. App. 4th 212, 229 (2006). Plaintiffs' claim for breach of implied warranty under California law does not fail for want of privity.

**d. New York**

Vertical privity is required for a breach of implied warranty claim under New York law, except when the product in question is a "thing of danger." Hubbard v. Gen. Motors Corp., No. 95 CIV. 4362, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996). In Hubbard, the plaintiff alleged that General Motors' Suburban had defective brakes. Id. at *1. Although the plaintiffs were not in vertical privity with General Motors and they had not experienced any injury, the fact that the alleged defect presented a danger was sufficient to bring it under New York's exception. Id. at *5. Plaintiffs here allege that the drain produced by the effective HFL causes a safety defect. Therefore, Plaintiffs are not precluded as a matter of law from bringing an implied warranty claim under New York law.

**e. Ohio**

Ohio law has an exception to vertical privity for goods that are intended for a specific third party. Bobb Forest Prod., Inc. v. Morbark Indus., Inc., 2002-Ohio-5370, ¶ 57, 151 Ohio App. 3d 63, 83, 783 N.E.2d 560, 576. In Bobb Forest, the plaintiff sought recovery for breach of implied warranty because the manufacturer had made and sold a sawmill that was intended for the plaintiff. Id. The sawmill was sold, however, through a third-party agent, severing privity. Id. In finding an exception to the requirement of privity in that case, the Ohio appellate court emphasized the fact that the plaintiff was the intended recipient of the sawmill. Id. ("Morbark

knew that it was manufacturing the sawmill for BFP's ultimate use and McCormick purchased the sawmill from Morbark only after he knew that BFP would purchase it from him.").

The exception recognized in Bobb does not apply here. AHM did not intend its cars to be purchased by any particular plaintiff; when AHM transferred its cars to Acura dealers, it did not know who would purchase them. Plaintiffs cite Risner v. Regal Marine Indus., Inc., No. 1:11-CV-00191, 2013 WL 1758876, at *13 (S.D. Ohio Apr. 24, 2013), where the court denied summary judgment because there were questions of fact regarding privity. The Plaintiffs in this case, however, have not identified any questions of fact. Plaintiffs also cite Myers v. Moore Distrib., Inc., No. CA92-07-125, 1993 WL 19093 (Ohio Ct. App. Feb. 1, 1993), which holds that "privity may be established in actions involving a consumer and a distributor/seller where the acts and contracts of the agent in dealings with the consumer are found to be obligatory upon the principal." Id. at *2. Plaintiffs fail to argue how AHM and any of the named dealerships are in a principal-agent relationship. Lastly, Plaintiffs cite In re Ford Tailgate Litig., No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014). But that court actually *dismissed* the plaintiffs' Ohio implied warranty claim without leave to amend. The Court concludes that Plaintiffs' claim for breach of implied warranty pursuant to Ohio law fails as a matter of law.

### G. Unjust Enrichment under California, Delaware, Florida, Kansas, New Hampshire, New York, Ohio, Texas, and Virginia Law

#### 1. Adequacy of Pleading as a Matter of Law

Plaintiffs bring claims of unjust enrichment as a nationwide class under California law or, alternatively, under their respective state's unjust enrichment laws. ECF No. 29 ¶¶ 342, 448, 544, 636, 726, 816, 926, 1010, 1103, 1118, & 1269. All the states in question have similar requirements for a claim of unjust enrichment: (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant accepted and retained the benefit; and (3) it would be inequitable to retain the benefit. See, e.g. In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II), No. CIV.A. 03-4558 GEB, 2011 WL 601279, at *5 (D.N.J. Feb. 16, 2011); Hummel v. Hummel, 133 Ohio St. 520, 528, 14 N.E.2d 923, 927 (1938); Ghirardo v. Antonioli, 14 Cal. 4th 39, 51 (1996); Media Servs. Group, Inc. v. Bay Cities Communications,

United States District Court
Northern District of California

Inc., 237 F.3d 1326, 1330-31 (11th Cir.2001); Estate of Draper v. Bank of Am., N.A., 288 Kan. 510, 518 (2009). The benefit conferred and the inequity must occur in the same transaction.

Defendant argues that all claims for unjust enrichment should be dismissed as a matter of law because (1) Plaintiffs who purchased used vehicles[12] cannot bring claims of unjust enrichment because the purchase of a used car does not confer a benefit on AHM, ECF No. 42 at 32-33; (2) Plaintiffs who purchased a new car[13] did not plead unjust enrichment in the alternative, ECF No. 42 at 32-34; and (3) the existence of a valid, express contract precludes unjust enrichment claims. Id. at 33-34.

Plaintiffs argue that the purchase of both new and used cars from Honda-affiliated dealerships confers a benefit on Defendant. ECF No. 56 at 20. Moreover, Plaintiffs argue that any time their vehicles required maintenance and use of the manufacturer's parts – "as called for by Defendant's TSBs" – AHM receives a benefit by way of replacement part production. Id. The Court concludes that Plaintiffs do not sufficiently allege facts to bring any claim of unjust enrichment.

**a. Used Cars**

The Court agrees with Defendant that the purchase of a used car, whether private or certified at a dealership, does not benefit AHM because such a purchase has no impact on product allocation. ECF No. 42 at 33. The Court also agrees that the third-party seller, not the manufacturer, receives a benefit when a used car is purchased in an arm's length transaction. See e.g. In re Porsche Cars N. Am., Inc., 880 F. Supp. 801, 843 (S.D. Ohio 2012) (dismissing unjust enrichment claims under Florida law related to used vehicle because the plaintiff failed to show that he conferred a direct benefit on the manufacturer as Florida law requires). Plaintiffs, however, are correct in stating that replacement part production can confer a benefit on the Defendant. ECF No. 56 at 20. For instance, California law allows for unjust enrichment claims

---

[12] These are Plaintiffs Kelly, Criner, Moss, Crooks, Gerstle, and Srivastava.

[13] These are Plaintiffs Aberin, Gray, Tran, Awtrey, and Yeung.

when a person benefits by any form of advantage at another's expense,[14] which can include an impact on product allocation. In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II), 2011 WL 601279 at *5 (holding that the purchase of a vehicle and any repairs to it affect product allocation and can constitute unjust enrichment). While the Court agrees that the Plaintiffs may confer a benefit on AHM by purchasing replacement parts, they have inadequately made this argument in the FAC. ECF No. 56 at 20-21; ECF No. 29. Specifically, the FAC is unclear as to whether Plaintiffs repairs utilized only AHM products which would confer a benefit on AHM or whether Plaintiffs used substitute products in their repairs. ECF No. 29. Accordingly, the Court dismisses claims related to the purchase of used cars with leave to amend because the FAC has not adequately alleged an impact on the manufacturer's product allocation.

**b. All Cars**

Defendant argues that Plaintiffs' unjust enrichment claims must be dismissed as they relate to new cars because none of the states at issue recognizes claims for unjust enrichment if a vehicle was purchased pursuant to a valid express contract. ECF No. 42 at 33-34 (citing cases).[15] Plaintiffs do not argue with this rule, but seek to found their unjust enrichment claims on Plaintiffs' later, post-sale "visit[s] [to] local dealerships, having their vehicles serviced at the dealerships, or even directly purchasing the used cars at manufacturer-controlled dealerships." ECF No. 56 at 21.

Plaintiffs appear to be attempting to describe an exception to the valid express contract rule, but cite no authority to support the exception. Moreover, if there were such a rule, it would seem to apply to any purchaser/seller relationship in which the purchaser might make subsequent purchases – directly or indirectly – from the seller. Such an exception must be developed in

---

[14] Florida, Ohio and Virginia all require the plaintiff to allege that he or she conferred a direct benefit onto the defendant for unjust enrichment claims. See, In re Porch Cars N. Am., Inc., 880 F. Supp. 2d 801, 843 (S.D. Ohio 2012), citing Romano v. Motorola, Inc., No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (Motorola equipment bought at retail outlet sufficient to confer a direct benefit).

[15] Alternatively, Defendant argues that they should be dismissed because they were not pled in the alternative. Id. The argument is not persuasive. The Court may read all claims brought for unjust enrichment in the alternative. Fed. R. Civ. P. 8(d).

United States District Court
Northern District of California

California's state courts or legislature, not in a federal district court.

Plaintiffs' unjust enrichment claims as they apply to new cars are dismissed with prejudice.[16]

**2. Untimely Claims**

Defendant also argues that even if Plaintiffs could bring unjust enrichment claims, Plaintiffs' unjust enrichment claims brought under California, Delaware, Florida, Kansas, and Virginia law are untimely because Plaintiffs purchased their vehicles more than two to four years ago, outside the statutes of limitations for their respective states.[17] ECF No. 42 at 24-25. Defendant argues that the statute of limitations began to run when Plaintiffs purchased their vehicles because this is the date that the benefit was conferred and retained unjustly. Id. Plaintiffs argue that the relevant statutes of limitations should be tolled. ECF No. 56 at 18-20. Because the Court has held that Plaintiffs failed to sufficiently plead any theory for which the statute of limitations should be tolled, the Court finds that Plaintiffs' claims are untimely.

**a. Virginia, Delaware, and Kansas**

Claims for unjust enrichment under Virginia, Delaware, and Kansas law are subject to three year statutes of limitations. E. W., LLC v. Rahman, 873 F. Supp. 2d 721, 730 (E.D. Va. 2012); Vichi v. Koninklijke Philips Elcs. N.V., 62 A.3d 26, 42 (Del. Ch. 2012); K.S.A. 60-512. Under Virginia law, the statute of limitations begins to run at the time of the unjust enrichment, not when a party should have known of it. E. W., LLC v. Rahman, 873 F. Supp. 2d 721, 730 (E.D. Va. 2012). Similarly, Delaware's statute is not subject to equitable tolling[18] and the limitations period begins to run "at the time of the wrongful act, even if the plaintiff is ignorant of

---

[16] This holding applies to the claims of Plaintiffs Lindsay Aberin, Rebecca Gray, Donald Tran, Yun-Fei Lou, Don Awtrey, Ron Alul, and Melissa Yeung.

[17] Defendants have not moved to dismiss the Ohio unjust enrichment claim on statute of limitations grounds. Such claims must be brought within six years of accrual. Desai v. Franklin, 177 Ohio App. 3d 679, 689, 2008-Ohio-3957, ¶¶ 14-15, 895 N.E.2d 875, 882 (2008).

[18] Although a plaintiff may toll the statute of limitations for claims of unjust enrichment based on fraudulent concealment, In re Brocade Commc'ns Sys., Inc. Derivative Litig., 615 F. Supp. 2d 1018, 1037 (N.D. Cal. 2009) (internal citations and quotation marks omitted), the Court concluded above that Plaintiffs failed to adequately plead fraudulent concealment.

that cause of action." Vichi 62 A.3d at 42. Unjust enrichment claims in Kansas begin to accrue when all the elements[19] of unjust enrichment are present. Estate of Draper v. Bank of Am., N.A., 288 Kan. 510, 534 (2009). Because Plaintiffs Srivastava bought his vehicle prior to 2013 (three years before this action), the Court dismisses his claims as untimely. ECF No. 43-2 at 2.

**b. Florida**

Under Florida law, the statute of limitations for unjust enrichment is four years, and it cannot be tolled except under circumstances of fraudulent concealment. In re Burton Wiand Receivership Cases Pending in the Tampa Div. of the Middle Dist. of Fla., No. 8:05-CV-1856T27MSS, 2008 WL 818504, at *8 (M.D. Fla. Mar. 26, 2008) (finding that equitable tolling only applies to claims of fraud). As noted, Plaintiff Criner failed to plead the time when or the manner in which he discovered the fraud. Thus, the Court will not toll the statute of limitations regarding Plaintiff Criner's unjust enrichment claims in Florida.

**c. California**

California Civil Procedure Code § 338(1) provides a two-year statute of limitations for traditional unjust enrichment claims. These claims may be tolled subject to the discovery rule. Norgart v. Upjohn Co., 21 Cal.4th 383, 397 (1999). No California Plaintiff bought a new car within this time-period. Therefore, the Court will dismiss all unjust enrichment claims under California law with leave to amend.

**H. Missouri and North Carolina**

Defendant moves to dismiss several claims under Missouri law, including: (1) Plaintiffs' breach of implied warranty of merchantability claim and breach of express warranty; (2) Plaintiffs' Missouri Merchandising Practices Act claim, and (3) Magnuson-Moss Warranty Claims. ECF No. 42 at 25-27, 30. Plaintiffs voluntarily dismissed the named Missouri Plaintiff and his claims. ECF No. 58 at 1. All claims brought under Missouri law are accordingly

[19] The elements are as follows: "(1) A benefit must have been conferred upon the defendant, (2) the defendant must have retained the benefit, and (3) under the circumstances, the defendant's retention of the benefit must be unjust." Estate of Draper v. Bank of Am., N.A., 288 Kan. 510, 534, 205 P.3d 698, 715 (2009) (internal citation omitted).

dismissed.

Defendant also moves to dismiss all claims brought pursuant to North Carolina law because no factual allegations are made to support Plaintiffs' claims. ECF No. 32. The Plaintiffs concede that they are not attempting to pursue an alternative North Carolina class. ECF No. 56 at 20, fn.6. The Court grants the motion to dismiss as it relates to claims brought under North Carolina law.

**CONCLUSION**

The Court denies Defendant's motion to dismiss Plaintiff's nationwide class and request for injunctive relief. The Court grants the motion to dismiss as it relates to Plaintiffs' estoppel theory of tolling the statute of limitations, CLRA claims, and UCL claims without prejudice. The Court grants the motion to dismiss as it relates to Plaintiffs' consumer protection claims under Florida law with prejudice and consumer protection claims under other states' laws without prejudice. The Court grants the motion to dismiss as it relates to the Magnuson-Moss warranty claim and implied warranty claims with prejudice. The Court grants the motion to dismiss Plaintiffs' Ohio and Florida express warranty claims with prejudice, but denies the motion to dismiss Plaintiffs' Texas, California, and New York express warranty claims. The Court grants the motion to dismiss Plaintiffs' unjust enrichment claims for new cars with prejudice. Finally, the Court grants the motion to dismiss all claims brought pursuant to Missouri and North Carolina law without prejudice.

**IT IS SO ORDERED.**

Dated: April 25, 2017

JON S. TIGAR
United States District Judge

United States District Court
Northern District of California