Livia M. Kiser, SBN 285411
lkiser@sidley.com
Michael C. Andolina (admitted *pro hac vice*)
mandolina@sidley.com
Andrew J. Chinsky (admitted *pro hac vice*)
achinsky@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Eric B. Schwartz, SBN 266554
eschwartz@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant American*
*Honda Motor Company, Inc.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| LINDSEY and JEFF ABERIN, DON AWTREY, CHARLES BURGESS, DANIEL CRINER, JARED CROOKS, MARK GERSTLE, JOHN KELLY, YUN-FEI LOU, JOY MATZA, JORDAN MOSS, DONALD TRAN, and MELISSA YEUNG, individually and on behalf of all others similarly situated.<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>Defendant. | Case No. 3:16-cv-04384-JST<br><br>**AMERICAN HONDA MOTOR CO., INC.'S NOTICE OF MOTION AND COMBINED MOTION TO DISMISS CERTAIN COUNTS IN PLAINTIFFS' SECOND AMENDED COMPLAINT, TO STRIKE CERTAIN RESTITUTION CLAIMS, AND FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**<br><br>Date: September 28, 2017<br>Time: 2:00 p.m.<br>Place: Courtroom 9, 19th Floor, Phillip Burton Federal Building<br>The Hon. Jon S. Tigar |

AMERICAN HONDA MOTOR COMPANY, INC.'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L.R. 7-4(A)(3) ...................................2

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................4

I.      INTRODUCTION ...................................................................................4

II.     RELEVANT FACTS AND ALLEGATIONS IN PLAINTIFFS' COMPLAINT ..........5

III.    LEGAL STANDARD................................................................................6

IV.    ARGUMENT..........................................................................................7

      A.   Spoliation Sanctions Against Mr. Crooks and Ms. Matza Are Warranted ..............7

      B.   The Majority of the Claims Asserted By Aberin Plaintiffs, Mr. Tran, Mr. Lou,
Ms. Yeung, Ms. Matza, and Mr. Gerstle Are Untimely
and Not Subject to Tolling ...........................................................................9

          1.   This Court Previously Found That Most Of Plaintiffs' Claims Are
Untimely ...............................................................................9

          2.   Plaintiffs Ms. Matza's and Mr. Burgess' Newly Asserted Consumer
Protection Claim Is Untimely .....................................................9

          3.   Ms. Matza's And Mr. Burgess's Warranty Claims Are Also Untimely ..........10

          4.   Aberin Plaintiffs, Mr. Tran, Mr. Lou, Ms. Yeung, Ms. Matza, Mr. Gerstle,
And Mr. Burgess Fail To Adequately Allege Tolling, Rendering Their
Claims Untimely ......................................................................11

      C.   Mr. Criner, Mr. Moss, Ms. Matza, and Mr. Burgess Fail To State Claims For
Breach Of Express Warranty .......................................................................15

          1.   Plaintiffs Failed To Allege a Breach Of The Written Warranty .....................15

          2.   Mr. Moss Purchased His Car Used From A Third-Party Reseller After The
Car's NVLW Had Expired...........................................................16

          3.   Mr. Burgess's Express Warranty Claim Fails Because the Alleged Defect
Did Not Manifest in the Written Warranty Period............................................16

          4.   To The Extent That Plaintiffs' Express Warranty Claims Are Based On
Sales Puffery, They Also Fail ........................................................17

D.   Plaintiffs' Claims For Breach Of Implied Warranties Under California, Florida, And Texas Law Fail Due To The Absence Of Privity ..........................................17

E.   Plaintiffs' Magnuson-Moss Warranty Act Claims Fall With Their Implied And Express Warranty Claims ...................................................................................19

F.   Plaintiffs Who Purchased Used Cars Cannot Obtain "Restitution".......................19

G.   To The Extent Any California Plaintiffs Have An Adequate Remedy At Law, Their Claims For Equitable Relief Under The UCL And CLRA Fail.................20

V.   CONCLUSION...........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Pella Corp.*,
2015 WL 1798859 (D.S.C. Apr. 21, 2015).........................................................10

*Anunziato v. eMachines, Inc.*,
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ............................................................17

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
881 F. Supp. 1132 (N.D. Cal. 2012) ...............................................................7, 8

*Asghari v. Volkswagen Grp. of Am., Inc.*,
42 F. Supp. 3d 1306 (C.D. Cal. 2013) ...............................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................7

*Atkinson v. Elk Corp. of Texas*,
142 Cal. App. 4th 212 (2006) ............................................................................18

*Azoulai v. BMW of N. Am. LLC*,
2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ...................................................17

*Bedolla v. Logan & Frazer*,
52 Cal. App. 3d 118 (1975) .............................................................................(11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................7

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) .......................................................11, 16, 17, 18

*Cloer v. Gen. Motors Corp.*,
395 F. Supp. 1070 (E.D. Tex. 1975) ..................................................................17

*In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
2008 WL 4544441 (N.D. Cal. Sep. 30, 2008) ...................................................11

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (N.Y. 2012) ...............................................................................10

*Daniel v. Ford Motor Co.*,
806 F. 3d 1217 (9th Cir. 2015) ..........................................................................15

*Doyle v. Chrysler Gr., LLC*,
2014 WL 7690155 (C.D. Cal. Oct. 9, 2014).....................................................7, 9

*Durkee v. Ford Motor Co.*,
  2014 WL 4352184 (N.D. Cal. Sept. 2, 2014) ........................................................... 20

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
  153 Cal. App. 4th 1308 (2007) ................................................................................ 11

*EchoStar Satellite Corp. v. NDS Group PLC*,
  2008 WL 4596644 (C.D. Cal. Oct. 15, 2008) ........................................................... 19

*Fields v. Legacy Health Sys.*,
  413 F.3d 943 (9th Cir. 2005) ..................................................................................... 7

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*,
  2010 WL 2813788 (D.N.J. July 9, 2010) .................................................................. 18

*In re Ford Motor Co. Vehicle Paint Litig.*,
  1997 WL 539665 (E.D. La. Aug. 27, 1997) ........................................................ 12, 13

*In re Ford Tailgate Litig.*,
  2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ............................................. 12, 16, 18

*Gonzales v. CarMax Auto Superstores, LLC*,
  845 F.3d 916 (9th Cir. 2017) ................................................................................... 20

*Groupion, LLC v. Groupon, Inc.*,
  859 F. Supp. 2d 1067 (N.D. Cal. 2012) ................................................................... 19

*Holbrook, Inc. v. Link-Belt Constr. Equip. Co.*,
  103 Wash. App. 279 (Wash Ct. App. 2000) ....................................................... 10, 11

*Johnson v. GMRI, Inc.*,
  2007 WL 2009808 (E.D. Cal July 6, 2007) .............................................................. 20

*Korea Supply v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ..................................................................................... 19, 20

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006) ..................................................................................... 8

*Madrid v. Perot Sys. Corp.*,
  130 Cal. App. 4th 440 (2005) .................................................................................. 20

*McKelvey v. Boeing N. Am., Inc.*,
  74 Cal. App. 4th 151 (1999) .................................................................................... 11

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ................................................................................... 7

*Momentive Performance Materials USA, Inc. v. AstroCosmos Metallurgical, Inc.*,
  659 F. Supp. 2d 332 (N.D.N.Y. 2009) ................................................................ 10, 11

*Moncada v. Allstate Ins. Co.*,
    471 F. Supp. 2d 987 (N. D. Cal. 2006) .................................................................. 16

*Mui Ho v. Toyota Motor Corp.*,
    931 F. Supp. 2d 987 (N. D. Cal. 2013) .................................................................. 15

*Munning v. The Gap Inc.*,
    2017 WL 733104 (N.D. Cal. Feb. 24, 2017) ........................................................ 20

*Osborne v. Subaru of Am. Inc.*,
    198 Cal. App. 3d 646 (1998) ........................................................................... 17, 18

*Pfeiffer v. Am. Honda Motor Co.*,
    Case No. 16-cv-04507, D.E. 17 ............................................................................. 4

*Philips v. Ford Motor Co.*,
    2015 WL 4111448 (N.D. Cal. July 7, 2015) ......................................................... 20

*Postier v. Louisiana-Pacific Corp.*,
    2009 WL 3320470 (N.D.Cal. Oct. 13, 2009) ........................................................ 18

*Saliter v. Pierce Bros. Mortuaries*,
    81 Cal. App. 3d 292 (1978) .................................................................................. 11

*Sater v. Chrysler Gr. LLC*,
    2015 WL 736273 (C.D. Cal. Feb. 20, 2015) ........................................................ 15

*Shepard v. Holmes*,
    185 Wash. App. 730 (Wash. Ct. App. 2014) ........................................................ 10

*Snapp & Assocs. Ins. Servs., Inc. v.*
    *Malcolm Bruce Burlingame Robertson*,
    96 Cal. App. 4th 884 (2002) ................................................................................. 11

*Societe Internationale Poru Participations*
    *Industrielles Et Commerciales, S.A. v. Rogers*,
    357 U.S. 197 (1958) ................................................................................................ 9

*Speier-Roche v. Volkswagen Grp. of Am. Inc.*,
    2014 WL 1745050 (S.D. Fla. Apr. 30, 2014) .................................................. 12, 17

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .................................................................................. 7

*Statler v. Dell, Inc.*,
    775 F. Supp. 2d 474 (E.D.N.Y. 2011) .................................................................. 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................................ 7

v

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
    982 F.2d 363 (9th Cir. 1992) ............................................................................ 8

*Williams v. Yamaha Motor Co.*,
    2014 WL 12597039 (C.D. Cal. Aug. 19, 2014) ............................................. 18

*Wolph v. Acer Am. Corp.*,
    2009 WL 2969467 (N.D.Cal. Sept.14, 2009) ................................................. 18

*Xavier v. Philip Morris USA Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) .......................................................... 17

*Yu–Santos v. Ford Motor Co.*,
    2009 WL 1392085 (E.D. Cal. May 14, 2009) ................................................ 17

**Statutes**

RCW 19.86.120 ................................................................................................... 10

RCW 62A.2-725(2) ............................................................................................. 10

**Other Authorities**

C.P.L.R. § 214(2) .................................................................................................. 9

Fed. R. Civ. P. 9(b) ............................................................................................. 12

Fed. R. Civ. P. 12(b)(6) .................................................................................. 6, 7

Fed. R. Civ. P. 12(f) ........................................................................................... 20

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 28, 2017, at 2:00 p.m., or as soon thereafter as it may be heard in Courtroom 9 of this Court, located at 450 Golden Gate Avenue, 19th floor, San Francisco, California, before the Honorable Jon S. Tigar, Defendant American Honda Motor Co., Inc. ("AHM") will and hereby does move the Court for an order: (1) dismissing and/or striking (as applicable) certain of Plaintiffs' claims; and (2) for sanctions for spoliation of evidence pursuant to, *inter alia*, Rules 8, 9(b), 12(b)(6), 12(f) and 37 of the Federal Rules of Civil Procedure.

AHM brings this Motion on the following grounds:

1)      Plaintiffs Jared Crooks ("Mr. Crooks") and Joy Matza ("Ms. Matza") committed spoliation by selling their vehicles immediately prior to joining this lawsuit. Such conduct is sanctionable. After Plaintiffs became aware of the problem, and right before they joined this lawsuit, they knowingly and intentionally got rid of the central evidence in support of their claims: their vehicles. They claim their vehicles suffer from parasitic drain due to their vehicles' HandsFee Link ("HFL") components, but AHM will not now be able to inspect or test these Plaintiffs' vehicles to assess the veracity of (or disprove) their claims. An appropriate sanction should be issued to mitigate the prejudice AHM will necessarily suffer due to not having access to the cars.[1]

2)      The California claims for violations of the California Consumer Legal Remedies Act ("CLRA"), California Unfair Competition Law ("UCL"), implied warranty of merchantability, and Magnuson-Moss Warranty Act ("MMWA") asserted by Plaintiffs Lindsay and Jeff Aberin ("Aberin Plaintiffs") and Donald Tran ("Mr. Tran") are untimely;

3)      The Delaware claims for violation of the Delaware Consumer Fraud Act, implied warranty of merchantability, and MMWA asserted by Plaintiff Yun-Fei Lou ("Mr. Lou") are untimely;

4)      The New Hampshire claims for violation of the New Hampshire Consumer Protection

---

[1] AHM cannot conceive of a sanction besides dismissal that could possibly mitigate AHM's prejudice, but recognizes the Court in its discretion may decide a different sanction would be appropriate. AHM notes, however, that at least one of the plaintiffs who sold his vehicles – Ron Alul – dismissed his claims shortly thereafter. D.E. 58.

1

Act, implied warranty and MMWA asserted by Plaintiff Melissa Yeung ("Ms. Yeung") are untimely;

5) Assuming the claims of Ms. Matza are not dismissed as a result of her spoliation (though they should be), her claims for violations of N.Y. General Business Law § 349, implied warranty, express warranty, and MMWA are untimely;

6) The Texas claims for violations of the Texas Deceptive Trade Practices and Consumer Protection Act, implied warranty, and MMWA asserted by Plaintiff Mark Gerstle ("Mr. Gerstle") are untimely;

7) Plaintiffs Daniel Criner ("Mr. Criner"), Jordan Moss ("Mr. Moss"), Ms. Matza, and Charles Burgess ("Mr. Burgess") fail to state claims for breach of express warranty under Florida, New York, and Washington law;

8) The Aberin Plaintiffs, Mr. Tran, John Kelly ("Mr. Kelly"), Mr. Criner, and Mr. Gerstle fail to state claims for implied warranty under California, Florida, and Texas law;

9) Plaintiffs fail to state claims for violation of the MMWA under California, Florida, Texas, and Washington law;

10) Plaintiffs Mr. Kelly, Mr. Criner, Mr. Moss, Mr. Crooks, and Mr. Gerstle fail to state valid claims for restitution as a matter of law; and

11) Plaintiffs' request for equitable relief under the UCL and CLRA fails as a matter of law because they allege adequate remedies at law.

## STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L.R. 7-4(A)(3)

AHM offers the following statement of issues to be decided:

A. Whether this Court should issue spoliation sanctions against Mr. Crooks and Ms. Matza in light of the fact that *after* they claim to have become aware of the alleged "defects" and *before* joining this lawsuit, they sold their vehicles, the best (and perhaps only) evidence of their claims?

B. Whether the following claims are barred by the applicable statutes of limitations:

(A) California claims for violations of the CLRA, UCL, implied warranty of merchantability, and MMWA asserted by the Aberin Plaintiffs and Mr. Tran;

(B)     Delaware claims for violation of the Delaware Consumer Fraud Act, implied warranty of merchantability, and MMWA asserted by Mr. Lou;

(C)     New Hampshire claims for violation of the New Hampshire Consumer Protection Act, implied warranty and MMWA asserted by Ms. Yeung;

(D)     New York claims for violations of N.Y. General Business Law § 349, implied warranty, express warranty, and MMWA asserted by Ms. Matza; and

(E)     Texas claims for violations of the Texas Deceptive Trade Practices and Consumer Protection Act, implied warranty, and MMWA asserted by Mr. Gerstle.

C.     Whether Mr. Criner, Mr. Moss, Ms. Matza, and Mr. Burgess fail to state a claim for breach of express warranty and, specifically:

(A)     Whether Mr. Criner, Mr. Moss, and Ms. Matza have alleged a breach of AHM's New Vehicle Limited Warranty;

(B)     Whether Mr. Moss is covered by an express warranty even though he purchased a used car from an independent dealership;

(C)     Whether Mr. Burgess's express warranty claim fails given that the alleged defect did not manifest within the written warranty period; and

(D)     To the extent that Plaintiffs' express warranty claims are based on AHM's vague statements regarding "the safety, reliability, luxury and quality of Acura vehicles," whether that is sufficient to state an express warranty claim or whether that is instead non-actionable puffery?

D.     Whether Plaintiffs' claims for breach of implied warranty under California, Florida, and Texas law fail for lack of privity?

E.     Whether Plaintiffs' purported MMWA claims must be dismissed because their implied and express warranty claims fail under state law?

F.     Whether Plaintiffs who purchased used cars can state a claim for restitution?

G.     Whether Plaintiffs who have adequate remedies at law can also seek equitable relief?

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

In this fourth attempt to plead viable causes of action,[2] Plaintiffs once again adopt a "more is more" approach, purporting to assert claims applicable to "all" Acura makes and trim levels with HFL systems of whatever vintage or design. Their forty different causes of action – brought under the laws of nine different states – continue to relate to 14 different models of Acura vehicles in proposed classes spanning 14 years. *See* D.E. 61-1 at 2.

In the Second Amended Class Action Complaint ("SAC"), Plaintiffs plead that all iterations and generations of Bluetooth system[3] installed in every different make and model year of Acura, remain on too long after the driver shuts off the car, resulting in "excessive" battery drain. Notably, however, Plaintiffs continue to plead factual allegations with respect to only *4 specific models* (Acura TL, Acura MDX, Acura RDX, Acura TSX) that are very old. These models are the 2004 Acura TL (1 plaintiff), 2005 Acura TL (2 plaintiffs), 2006 Acura TSX (2 plaintiffs), 2006 Acura MDX (1 plaintiff), 2007 Acura MDX (2 plaintiffs), 2008 Acura TL (1 plaintiff), 2008 Acura RDX (1 plaintiff), 2009 Acura TSX (1 plaintiff), and 2011 Acura RDX (1 plaintiff) vehicles. *See* SAC § III.

Plaintiffs continue to base their claims on two Technical Service Bulletins ("TSBs") (TSB 05-020 and TSB 08-057). These TSBs pertain to specific Acura vehicles (2004-2008 TL and 2008 MDX) and, with respect to TSB 05-020, an even more limited range of vehicles. D.E. 59. Plaintiffs continue to "bulk up" their pleading by adding purported undated, anonymous, unsubstantiated "complaints" Plaintiffs allege they located on the NHTSA website and elsewhere on the internet. SAC ¶¶ 299-300. But Plaintiffs continue to offer *no factual allegations* in the SAC pertaining to Acura vehicles *other than* those referenced above, and certainly no allegations linking the vehicles and issues identified in the TSBs to the entire Acura line from 2004-present.

The claims asserted in Plaintiffs' 164-page SAC are, to put it mildly, both stale and

---

[2] This is the third attempt in this Court, but Plaintiffs originally filed a complaint in the Central District of California, only to voluntarily dismiss it soon thereafter. D.E. 30 (Motion to Transfer Venue).
[3] This feature in Acura vehicles is branded as HandsFreeLink ("HFL"), but of course like all technology, the HFL components have dramatically changed and evolved over time, and even from vehicle-to-vehicle within the same model year.

overreaching, and they stretch the boundaries of federal pleading standards past their breaking point. This Court previously acknowledged the infirmity of Plaintiffs' claims in its June 28, 2017, Order dismissing the vast majority of Plaintiffs' First Amended Complaint. D.E. 91. In the SAC, Plaintiffs have tried to resurrect dismissed claims, but in many cases, their efforts have fallen short. For the reasons set forth herein, most of Plaintiffs' claims continue to fail as a matter of law and require dismissal. Moreover, because Plaintiffs have failed to plead viable claims despite many chances to do so, dismissal of these claims should be with prejudice.

## II.    RELEVANT FACTS AND ALLEGATIONS IN PLAINTIFFS' COMPLAINT

Plaintiffs have now filed four different complaints, 3 in this Court and one that Plaintiffs' counsel originally filed in the Central District of California. *See generally* D.E. 30 (AHM's Motion to Transfer). Plaintiffs have thus been at this for quite a while.

Acura vehicles use some manner of Bluetooth technology to pair cell phones with Acura vehicles to provide hands-free calling. SAC ¶¶ 2, 277. AHM offered its first HFL capability in model year 2004 Acura vehicles. *Id.* ¶ 277. The SAC alleges (without factual basis) that HFL components in *every* Acura vehicle remain on too long after the vehicle has been turned off, which Plaintiffs claim creates a "parasitic drain" on a car's battery that ruins not only the car's battery, but its entire electrical system. *Id.* ¶¶ 3, 284.

Plaintiffs aver an ongoing, background battery "drain" of 25 – 40 milliamperes (mA) is necessary in all vehicles to "save preset radio stations, power security devices and run clocks." SAC ¶ 291. But Plaintiffs contend that the "draw" of HFL components in any (and every) Acura vehicle (of whatever kind and capacity) is comparatively massive – 250 mA. *Id.*[4] They then plead (with no supporting facts) that the alleged 250mA "draw" on the car battery when the vehicle is parked puts "strain" on the "electrical system" of the vehicle even when the engine is running. *Id.* Plaintiffs further allege in conclusory fashion that a draw of 250 mA on a car battery when a vehicle is at rest somehow "presse[s] into extra service" the vehicle's alternator (*id.* ¶ 292) even though they allege

---

[4] Plaintiffs appear to base this "fact" on TSB 08-057 (without detailing the other facts contained therein, such as in order for the TSB to potentially apply, the vehicle's HFL must be inoperable and the service technician must go through at least 10 different steps to diagnose whether the TSB could possibly be relevant). D.E. 59 at Ex. B.

the 40 mA draw happens all the time to keep the clock time accurate, etc. *Id.* ¶ 291.

Plaintiffs do not allege the HFL components in the 14 different makes and models over a 14-year period are identical (perhaps because that would be absurd), but in their SAC, they nevertheless claim that all of them suffer from a common "design defect." *See* SAC ¶¶ 3, 5, 284-291, 292-295, 296-298.[5] As "proof" of the validity of their claims, Plaintiffs point to the two TSBs AHM released pertaining to the HFL components that mention or reference battery drain. *Id.* ¶¶ 285-89. But Plaintiffs do not to tell the Court the makes and models to which the TSBs apply. SAC at *passim*. As noted above, TSB 05-020 pertains to a specific VIN range of 2004 Acura TLs. D.E. 59, Ex. A. AHM initially issued TSB 05-020 on June 20, 2005. *See* D.E. 59 (RJN); D.E. 91 (Order granting RJNs). TSB 08-057 pertains to the 2005-2008 Acura TL and 2008 MDX. D.E. 59, Ex. B. AHM issued TSB 08-057 on December 6, 2008. *See id.*, SAC ¶ 288.

Based on these two TSBs, Plaintiffs contend that AHM purportedly should have offered a warranty extension or recall of the HFL components in *every* Acura vehicle ever sold from 2004 to the present. SAC ¶ 4. According to Plaintiffs, AHM's failure to do so violates consumer protection statutes of nine states, breaches express and implied warranty obligations, and constitutes common law fraudulent concealment. The SAC names thirteen different proposed class representatives who purport to represent a national class or, alternatively, nine different state subclasses. *Id.* at i-v (Table of Contents). Plaintiffs' claims are incorrect on the facts and law. But Plaintiffs are entitled at this stage of the proceedings to have the Court accept their well-pled facts as true (even if they are not true). For this reason, AHM does not seek dismissal of all of Plaintiffs' claims, just those that fail as a matter of law, are not subject to tolling, or are otherwise subject to dismissal.

## III.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted when the complaint fails to state a claim upon which relief may be had. Fed. R. Civ. P. 12(b)(6). To

---

[5] One thing that all Acura vehicles do have in common – that Plaintiffs once again fail to discuss – is they come with a New Vehicle Limited Warranty ("NVLW") lasting four years or 50,000 miles (whichever comes first). *See, e.g.*, D.E. 44-1 (AHM's Request for Judicial Notice in Support of Motion to Dismiss (Dec. 2, 2016) ("First RJN"), Exhibits 1-7); D.E. 91 at 3-4 (June 28, 2017 Order granting First RJN). Due to their age, Plaintiffs' vehicles' NVLW have long since expired. *See* SAC § III (Plaintiff's vehicles were all purchased between 2004 and 2011).

adequately state a claim for relief, and thus survive a Rule 12(b)(6) challenge, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The court's review is generally "limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). The Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 990 (9th Cir. 2001) (internal quotation marks omitted), or any "unwarranted inferences." *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 n.5 (9th Cir. 2005).

## IV. ARGUMENT

### A. Spoliation Sanctions Against Mr. Crooks and Ms. Matza Are Warranted

Spoliation occurs when three elements are present. *First*, the party having control over the evidence had an obligation to preserve it at the time the party destroyed it. *Second*, the party destroyed the evidence with a "culpable state of mind." *Third*, the evidence was relevant to a party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 881 F. Supp. 1132, 1138 (N.D. Cal. 2012). A court has the power to levy sanctions for spoliation pursuant to either Rule 37 or pursuant to its inherent equitable powers. *Doyle v. Chrysler Gr., LLC*, No. SACV 13-00620 JVS(ANx), 2014 WL 7690155, at *2 (C.D. Cal. Oct. 9, 2014), *rev'd on other grounds*, 663 Fed. Appx. 576 (9th Cir. 2016); *Apple Inc.*, 881 F. Supp. 2d at 1136.

In this case, Mr. Crooks and Ms. Matza committed spoliation by selling their vehicles even though they had a duty to preserve them as evidence. Mr. Crooks alleges that he learned of the HFL

defect in June 2014. SAC ¶ 214. Yet, with full knowledge of his claim, he got rid of his car in June 2016. After he traded in his car, he then joined the lawsuit. *Id.* ¶ 213. Ms. Matza alleges that she learned about the HFL defect, and thus her purported claim against AHM, in July 2016. *Id.* ¶ 194. Yet, she sold her vehicle in mid-May 2017 – almost a *year* after this lawsuit began. Six weeks later, she joined this lawsuit as a named plaintiff. *Id.* ¶ 193.

Both Plaintiffs could reasonably anticipate they would be filing litigation at the time they sold their cars given they readily plead they were well aware of their claims when they got rid of them. *See Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 365, 369 (9th Cir. 1992) (upholding spoliation sanctions in case where plaintiff had disposed of key evidence two years prior to filing of complaint). This is more than just a "boo hoo" moment for AHM. In this case, Plaintiffs disposal of their cars has compromised AHM's ability to defend itself against their allegations, given the cars are no longer available to inspect and test.

*Second*, Mr. Crooks and Ms. Matza had culpable states of mind because they plainly acted purposefully in the disposal of their vehicles, regardless of motive in doing so, and even if they only acted with negligence. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (holding that destruction of files for sole purpose of protection of personal privacy, and not for purposes of depriving opponent of evidence, constituted "bad faith" spoliation where party knew that they were "potentially relevant" to litigation); *see also Apple Inc.*, 881 F. Supp. 2d at 1147. There is no reasonable dispute that Plaintiffs intentionally got rid of their cars. SAC ¶¶ 178, 181, 206, 209.

*Third*, the vehicles are obviously relevant to Plaintiffs' claims and AHM's defenses. Even laypersons know that if they are bringing a lawsuit in which they are alleging their vehicles are defective, the vehicles themselves are necessary evidence to prove whether this is true. Plaintiffs' selling of their cars immediately prior to joining this lawsuit deprived AHM of the opportunity to inspect the vehicles and conclusively prove the HFL systems in those cars do not cause "parasitic drain" and operate properly. AHM cannot obtain evidence regarding those particular vehicles' HFL components any other way. AHM thus has suffered irreparable harm with respect to its ability to defend itself against the claims of Ms. Matza and Mr. Crooks.

Dismissal is appropriate because both Ms. Matza and Mr. Crooks engaged in spoliation that was *not* "due to inability fostered neither by [their] own conduct nor by circumstances within [their] control." *Societe Internationale Poru Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 211 (1958). Therefore, AHM respectfully requests the Court issue appropriate sanctions against Mr. Crooks and Ms. Matza, including by dismissal and/or disqualifying them from serving as class representatives. *See Doyle*, 2014 WL 7690155, at *2.

**B.      The Majority of the Claims Asserted By Aberin Plaintiffs, Mr. Tran, Mr. Lou, Ms. Yeung, Ms. Matza, and Mr. Gerstle Are Untimely and Not Subject to Tolling**

**1.      This Court Previously Found That Most Of Plaintiffs' Claims Are Untimely**

This Court previously found that the majority of Plaintiffs' claims were untimely and that Plaintiffs' failed to adequately allege facts necessary to trigger any applicable tolling doctrines:

> Except for Plaintiff Kelly, Plaintiffs' CLRA and UCL claims are dismissed without prejudice. Plaintiffs' Delaware, Kansas, New Hampshire, Virginia, Texas, and Florida consumer protection claims are dismissed without prejudice. The consumer protection claim under Ohio is dismissed with prejudice. With the exception of California claims based on used cars, which is timely, Plaintiffs' implied warranty claims under California, Delaware, Kansas, New Hampshire, Ohio, Texas, Virginia, and Florida law are dismissed without prejudice. The same is true for Plaintiffs' express warranty and Magnuson-Moss Warranty claims.

D.E. 91 at 26 (June 28, 2017 Order). For claims dismissed without prejudice, the Court gave Plaintiffs leave to attempt to allege viable tolling theories.

**2.      Plaintiffs Ms. Matza's and Mr. Burgess' Newly Asserted Consumer Protection Claim Is Untimely**

New York Plaintiff Ms. Matza and Washington Plaintiff Mr. Burgess, through amendment and consolidation, are newcomers to the operative pleading. Mr. Burgess originally filed suit on March 1, 2017, alleging violations of consumer protection statues, fraudulent concealment, breach of express and implied warranties, violation of the MMWA, and unjust enrichment on behalf of a nationwide class and an alternative Washington class. Class Action Complaint in *Burgess v. Am. Honda Motor Co., Inc.*, N.D. Cal. Case No. 17-cv-01060-JST ("Burgess Complaint"). This Court entered a consolidation order on June 28, 2017, and the Plaintiffs named in the Burgess Complaint

joined this lawsuit via the SAC. D.E. 92 (Consolidation Order, D.E. 98 (SAC)). Ms. Matza was named as a plaintiff in this action for the first time with the filing of the SAC on July 7, 2017. D.E. 98.

Assuming the Court does not dismiss Plaintiff Matza's claims outright as a sanction for selling her vehicle immediately before filing suit, her consumer protection claim has a three-year statute of limitations, accruing from the date of purchase on September 11, 2006. C.P.L.R. § 214(2); *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 788-89 (N.Y. 2012). Matza claimed she first became aware of "an issue" with her MDX's "battery and electrical system" in "January or February of 2007." SAC ¶ 182. Matza's consumer claim thus expired at the latest in February of 2010, nearly seven years before the filing of Plaintiffs' original complaint. D.E. 1.

Plaintiff Burgess's consumer protection claim has a four-year statute of limitations. RCW 19.86.120; *see Shepard v. Holmes*, 185 Wash. App. 730, 739 (Wash. Ct. App. 2014). Burgess purchased his vehicle on October 25, 2008. Assuming the claim accrued at the date of purchase, Mr. Burgess' claim expired on October 25, 2012, nearly four years prior to the filing of the Complaint. *Id.*; SAC ¶ 244 (allegations regarding purchase date of car); D.E. 1 (Complaint).[6] This claim is properly dismissed.

      **3.**      **Ms. Matza's And Mr. Burgess's Warranty Claims Are Also Untimely**

Ms. Matza's claims for express warranty, implied warranty, and MMWA each have a four-year statute of limitations accruing from the date of purchase on September 11, 2006, and are not tolled by the discovery rule, given she claims she first became aware of the issue in January or February 2007. SAC ¶182; *see Momentive Performance Materials USA, Inc. v. AstroCosmos Metallurgical, Inc.*, 659 F. Supp. 2d 332, 347-48 (N.D.N.Y. 2009); *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 481 (E.D.N.Y. 2011). All of her warranty claims have therefore long expired.

Mr. Burgess's claims for breach of express warranty and violations of the MMWA each have a four-year statute of limitations accruing from the date of purchase on October 25, 2008. Like

---

[6] Mr. Burgess pleads he brought his vehicle to an unauthorized repair facility on May 15, 2014 "for service relating to this defect." SAC ¶ 251. He further alleges "[t]his was the first time the battery … had died." (*Id.*). But Mr. Burgess does not actually sufficiently plead when he first became aware of the so-called "defect" and, therefore, AHM believes the Court should dismiss Burgess' claim so that he can sufficiently allege (if possible) grounds for application of tolling theory to his claim. *Shepard*, 185 Wash. App. At 739.

Ms. Matza's claims, none of Mr. Burgess's warranty claims are tolled, given he does not plead he became aware of or investigated the issue prior to expiration of his vehicle's NVLW. RCW 62A.2-725(2); *Alexander v. Pella Corp.*, Nos. 2:14–mn–00001–DCN, 2:14–mn–00540–DCN, 2015 WL 1798859, at *8 (D.S.C. Apr. 21, 2015); *Holbrook, Inc. v. Link-Belt Constr. Equip. Co.*, 103 Wash. App. 279, 284 (Wash Ct. App. 2000) (no discovery rule tolling). Plaintiff Burgess's claim expired at the latest on October 22, 2012, four years after he purchased his vehicle.

### 4. Aberin Plaintiffs, Mr. Tran, Mr. Lou, Ms. Yeung, Ms. Matza, Mr. Gerstle, And Mr. Burgess Fail To Adequately Allege Tolling, Rendering Their Claims Untimely

The Aberin Plaintiffs, Mr. Tran, Mr. Lou, Ms. Yeung, Ms. Matza, Mr. Gerstle, and Mr. Burgess allege that their expired claims should survive because they have adequately alleged facts that support application of the discovery rule and/or fraudulent concealment.[7] Plaintiffs are wrong. "In order to invoke [the delayed discovery exception] to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, No C-05-04726 RMW, 2008 WL 4544441, at *8 (N.D. Cal. Sep. 30, 2008) (quoting *Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292, 296 (1978)). "The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand" a motion to dismiss on the pleadings. *See E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1319 (2007) (quoting *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151, 160 (1999)). This rule applies to proposed class action complaints. *See McKelvey*, 74 Cal. App. 4th at 160-61.

In order to allege fraudulent concealment tolling, Plaintiffs must sufficiently plead fraud, *plus* the following additional elements: "'(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had not actual or presumptive knowledge of facts sufficient to put him on inquiry.'" D.E. 91 at 14-15 (quoting *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2008 WL 4544441 at *9).

---

[7] The discovery rule does not apply as a matter of law to toll Florida's consumer protection statute or the express warranty claims, implied warranty claims, and MMWA claims in every state but Florida. D.E. 91 at 18-23; *Momentive Performance Materials USA, Inc. v. AstroCosmos Metallurgical, Inc.*, 659 F. Supp. 2d 332, 347-48 (N.D.N.Y. 2009); *Holbrook, Inc. v. Link-Belt Const. Equip. Co.*, 103 Wash. App. 279, 284 (Wash. App. Ct. 2000).

11

"A plaintiff must affirmatively excuse his failure" to discover the fraud "by showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (quoting *Bedolla v. Logan & Frazer*, 52 Cal. App. 3d 118, 129 (1975)). "Fraudulent concealment tolling must be pled with particularity under Fed. R. Civ. P. 9(b)." *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *8 (N.D. Cal. Mar. 12, 2014), order corrected on denial of reconsideration, No. 11-CV-2953-RS, 2014 WL 12649204 (N.D. Cal. Apr. 15, 2014).

Where a vehicle malfunctions unexpectedly, a plaintiff may be required to act diligently to uncover the source of the malfunction, and the cause of action may accrue on that date. *See, e.g., Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014) ("Plaintiff's Vehicle underwent allegedly 'premature' front brake pad and rotor replacement on March 13, 2008; Plaintiff would have discovered or should have discovered any alleged fraud on that date. Therefore, the applicable four-year limitations period expired on March 13, 2012"). Diligent action includes making a reasonable inquiry to a dealer or an expert into the causes of the purported malfunction. *See, e.g., In re Ford Motor Co. Vehicle Paint Litig.*, No. MDL 1063, 1997 WL 539665, at *10 (E.D. La. Aug. 27, 1997) ("To toll the statute of limitations, plaintiff must demonstrate that, given the defendant's deceptive behavior, a reasonably diligent plaintiff would not have discovered his or her claim earlier. In this case, to be reasonably diligent, the plaintiff must have, at a minimum, made a reasonable inquiry to a dealer or an expert into the causes or repairability of the paint problem within one year of noticing the paint peel.").

Here, as before, the Aberin Plaintiffs, Mr. Tran, Mr. Lou, Ms. Yeung, Mr. Gersle and (now) Ms. Matza and Mr. Burgess, fail to plead facts demonstrating they acted reasonably and diligently in determining the root cause of their purported battery drain issues caused by their vehicles' purportedly defective HFL components. Indeed, many of these Plaintiffs fail to allege facts demonstrating that they discovered a defect *at all*, much less the timing and manner of that discovery.

**Aberin Plaintiffs (CA)**. In January 2005, the Aberin Plaintiffs purchased a new 2005 Acura TL. SAC ¶ 8. They allege that they replaced their car battery just twice over the course of the last 12 years, one of which was covered by warranty and therefore free. *Id.* ¶¶ 13-22. The Aberin Plaintiffs allege that in or around November 20, 2015, a third party "tire center" "permanently disconnected" their HFL unit. *Id.* ¶ 22. The Aberin Plaintiffs do not allege a persistent battery drain problem, how they took reasonable and diligent steps to diagnose that problem, plausible facts demonstrating that their vehicle suffered from the alleged defect (much less when they discovered it), or particularized facts about how they discovered AHM's so-called fraud. *Id.* at *passim*. Their claims are therefore untimely.

**Mr. Tran (CA).** In January 2007, Mr. Tran purchased a new 2006 Acura TSX. SAC ¶ 51. He claims he did not experience any problems with his battery for over seven years, until it died for the first time in April 2014. *Id.* ¶ 56. In July 2014, "[a]t the recommendation of a local independent service shop," Mr. Tran alleges he disconnected his HFL unit, but still experienced battery drain issues. *Id.* ¶ 58. Mr. Tran does not allege a persistent battery drain problem, how he took reasonable and diligent steps to diagnose that problem, plausible facts demonstrating that his vehicle suffered from the alleged defect (much less when he discovered it), or particularized facts about how he discovered AHM's alleged fraud. Nor can he – the fact that the battery purportedly continued to drain after he disconnected his HFL unit demonstrates that the unit was not the cause of any alleged excessive battery drain. *Id.* ¶ 58. Mr. Tran's claims are untimely.

**Mr. Lou (DE).** On April 21, 2011, Mr. Lou purchased a new 2011 Acura RDX. SAC ¶ 70. He first started experiencing persistent battery issues just nine months later in December 2011, and allegedly had to jump start his car multiple times. *Id.* ¶¶ 75-82. Yet, he admits he did nothing to investigate the cause of the issue for a full five years, when he finally conducted "internet research" and found the Complaint filed by Plaintiffs' lawyers in August 2016. *Id.* ¶¶ 83-84. He did not act reasonably or diligently (or at all really) to inquire about his alleged battery issue in a timely fashion. Mr. Lou's claims are untimely.

**Ms. Yeung (NH).** On September 27, 2007, Ms. Yeung purchased a new 2008 Acura TL. SAC ¶ 134. She had to replace her battery at three undisclosed times and had to have her car jumped

on several occasions. *Id.* ¶¶ 139-43. In late 2013 or early 2014, she finally brought her vehicle to an Acura dealership "regarding the problems" with the HFL unit, and was informed that a defective HFL unit might cause a battery drain. *Id.* ¶ 144. Ms. Yeung has not alleged facts demonstrating that she acted reasonably or diligently to investigate her alleged battery issue preceding her alleged "discovery" of the issue in late 2013, after her NVLW expired. Yeung's claims are untimely.

**Ms. Matza (NY).** On September 11, 2006, Ms. Matza purchased a new 2006 Acura MDX. SAC ¶ 177. She claims she began to experience battery drain issues a few months later in January or February of 2007, and repeatedly experienced issues with dead batteries over the ensuing years. *Id.* ¶¶ 182-93. Yet, she did not conduct any reasonable inquiry about her battery drain issues until July 2016, when her husband purportedly researched the issue online and allegedly discovered "the truth" about her HFL unit, nearly a decade after she claims to have begun experiencing the purported battery drain. *Id.* ¶ 194. As noted above, Ms. Matza then sold her car. *Id.* ¶193. Matza did not act reasonably or diligently, and her claims are untimely.

**Mr. Gerstle (TX).** In 2006, Mr. Gerstle purchased a 2004 Acura TL. SAC ¶ 224. "Starting the year of his purchase of the Acura, Plaintiff Gerstle began a repeating cycle of battery replacements and related electric gremlins that would not cease and continue to this day." *Id.* ¶ 229. On July 18, 2007, Acura of Pleasanton replaced his HFL unit free of charge after he complained that it was not pairing with his device. *Id.* ¶ 231. Although Mr. Gerstle alleges he had repeated battery issues, and was on actual notice that his vehicle's HFL might malfunction occasionally, Gerstle does not allege that he undertook any reasonable and diligent inquiry regarding the root cause of his battery issues and the possible connection to his HFL. Rather, Mr. Gerstle alleges that he took his vehicles to third parties such as Costco and Auto Zone to replace his battery when it failed. *Id.* ¶¶ 229-38. Gerstle's claims are untimely.

**Mr. Burgess (WA).** As noted above, Mr. Burgess pleads he brought his vehicle to an unauthorized repair facility on May 15, 2014 "for service relating to this defect." SAC ¶ 251. He further alleges "[t]his was the first time the battery ... had died." *Id.* But Mr. Burgess does not actually sufficiently plead when he first became aware of the so-called "defect" and, therefore, AHM

believes the Court should dismiss Mr. Burgess' claim so that he can sufficiently allege (if possible) grounds for application of a tolling theory to his claim.[8]

### C.   Mr. Criner, Mr. Moss, Ms. Matza, and Mr. Burgess Fail To State Claims For Breach Of Express Warranty

Mr. Criner (FL), Mr. Moss (NY), Ms. Matza (NY), and Mr. Burgess (WA) are the only Plaintiffs to allege express warranty claims. They each fail to state a claim.

#### 1.   Plaintiffs Failed To Allege a Breach Of The Written Warranty

Acura vehicles come equipped with a four-year, 50,000-mile NVLW, which provides that "Acura will repair or replace any part that is defective in material or workmanship under normal use." *See, e.g.,* D.E. 44-1 (AHM's Request for Judicial Notice in Support of Mot. to Dismiss (Dec. 2, 2016) ("1st RJN"), Exhibits 1-7); D.E. 91 at 3-4.

Plaintiffs fail to allege a breach of this warranty provision. Plaintiffs allege that the HFL units at issue are "defectively *designed* . . . to continue to drain the battery even after the vehicle is turned off." *See, e.g.,* SAC ¶¶ 12, 36, 55, 74, 99, 119, 138, 158, 181, 209, 227, 250, 511. It is evident from the plain language of the NVLW that is does not cover design defects, as many courts have recognized. *See, e.g., Sater v. Chrysler Gr. LLC*, No. 14-00700-VAP, 2015 WL 736273, at *4-5 (C.D. Cal. Feb. 20, 2015) (holding similar language in written warranty did not cover design defects); *Daniel v. Ford Motor Co.*, 806 F. 3d 1217, 1224 (9th Cir. 2015) (same). And although these Plaintiffs claim that AHM breached certain vague warranty provisions "promising to repair and correct a manufacturing defect or defect materials and workmanship" (SAC ¶¶ 598, 824, 989), that language is found nowhere in the NVLW itself. D.E. 44-1, Exhibits 1-7; D.E. 91 at 3-4. This Court should not accept Plaintiffs unsupported allegations, given they are directly contradicted by the NVLW. *Id.*

Moreover, Plaintiffs do not allege any well-pleaded facts that, if proven, would establish that AHM failed or refused to *repair* or *replace* any part "defective in material or workmanship under

---

[8] Mr. Criner and Mr. Awtrey alleged that they took their vehicles to authorized dealerships multiple times but were unable to diagnose their battery drain issues. SAC ¶¶ 95, 115. Mr. Moss allegedly purchased his car used within the limitations period. SAC ¶ 154. Mr. Crooks appears to have alleged around the statute of limitations issues with his sole fraud claim. SAC ¶ 210-221. Although AHM does not believe any of these Plaintiffs claims have merit, it is not moving to dismiss these claims as untimely at this stage of the litigation.

normal use" during the term of the NVLW. Nor could they. Plaintiffs admit that AHM issued TSBs instructing its authorized dealerships to replace any HFL unit that parasitically drains a vehicle's battery. SAC ¶¶ 285-89. Plaintiffs complain – implausibly, and without any apparent basis – that a replacement HFL unit "may or may not" have the same defect. *Id.* ¶ 293. Whether any replacement unit did or did not have some kind of defect is irrelevant to Plaintiffs' individual express warranty claims. An express warranty is a promise to repair or replace, and that obligation is satisfied even if the replacement part also happens to suffer from a defect (which, notably, Plaintiffs do not even credibly allege). *See, e.g., Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 994 (N.D. Cal. 2013) (dismissing express warranty claim because "[t]he [express warranty] covers 'repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by [Defendants],' and regardless of any alleged defects in replacement parts, that is what Defendants provided to Plaintiff Ho").

### 2.   Mr. Moss Purchased His Car Used From A Third-Party Reseller After The Car's NVLW Had Expired

Mr. Moss purchased a used 2006 Acura TSX "[o]n or about late 2013," from a dealership in Queens, New York called "WeBuyCars" (SAC ¶ 154), and as a result cannot assert an express warranty claim against AHM. By the time Mr. Moss purchased his vehicle, the four-year NVLW had long expired. *See* D.E. 44-1 at 16. Mr. Moss does not, and cannot, allege that he relied on AHM's long-expired NVLW when he purchased his vehicle. SAC at *passim*. His claim, therefore, fails. *Moncada v. Allstate Ins. Co.*, 471 F. Supp. 2d 987, 997 (N. D. Cal. 2006) (dismissing a breach of express warranty claim where plaintiffs did not allege reliance on express warranties).

### 3.   Mr. Burgess's Express Warranty Claim Fails Because the Alleged Defect Did Not Manifest in the Written Warranty Period

Mr. Burgess cannot state an express warranty claim because pleads no facts that the alleged defect manifested during the NVLW. Mr. Burgess purchased his car on October 25, 2008 (SAC ¶ 244), and although he baldly alleges that his HFL unit was defective as of that date, he does not plead the alleged defect manifested during the warranty period. Rather, he references an alleged "manifestation" six years later on May 15, 2014. *Id.* ¶¶ 244, 251; D.E. 44-1 at 16. Mr. Burgess claims that "[t]his was the first time the battery in [his] vehicle died." SAC ¶ 251. If this is, in fact,

the first time Burgess experienced any issues with his vehicle (as he claims), his express warranty

claim fails as a matter of law. *DaimlerChrysler Corp.*, 534 F.3d at 1023 ("The repairs in this case

were made after the warranty period expired. Therefore, we affirm the dismissal of the express

warranty claims."). *See also In re Ford Tailgate Litig.*, 2014 WL 1007066, at *3–4 (majority rule is

that express warranty claim will not lie where product does not fail within warranty period, even if

the product is defective during the warranty period).

### 4. To The Extent That Plaintiffs' Express Warranty Claims Are Based On Sales Puffery, They Also Fail

Plaintiffs vaguely allege that they relied upon AHM's "reputation and statements about the

safety, reliability, luxury and quality of Acura vehicles." SAC ¶¶ 97, 156, 179, 246. Such statements

are puffery, in no sense "warranties," and cannot form the basis of an express warranty claim as a

matter of law. *Azoulai v. BMW of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL 1354781, at *8

(N.D. Cal. Apr. 13, 2017) (generalized assertions regarding a vehicles "safety" or "durability" are

mere puffery and cannot support an express warranty claim).

### D. Plaintiffs' Claims For Breach Of Implied Warranties Under California, Florida, And Texas Law Fail Due To The Absence Of Privity

Plaintiffs' implied warranty claims under California, Florida, and Texas law fail due to the

absence of contractual privity between Plaintiffs and AHM. Under these states' laws, a plaintiff

asserting a breach of warranty claim must stand in vertical contractual privity with the defendant.

*Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005); *Speier-Roche,* 2014 WL

1745050, at *7; *Cloer v. Gen. Motors Corp.*, 395 F. Supp. 1070, 1072 (E.D. Tex. 1975).

None of the Plaintiffs here assert that they are in direct privity with Acura's U.S. distributor,

AHM (because they are not), and their implied warranty claims must fail as a result. *See*

*DaimlerChrysler Corp.*, 534 F.3d at 1023 ("A buyer and seller stand in privity if they are in

adjoining links of the distribution chain. Thus, an end consumer such as Clemens who buys from a

retailer is not in privity with a manufacturer"); *Yu–Santos v. Ford Motor Co.*, No. 1:06–CV–01773–

AWI, 2009 WL 1392085, at *21 (E.D. Cal. May 14, 2009) ("Plaintiff and Defendant do not occupy

adjoining links in this chain …. Accordingly, there appears to be insufficient privity for Plaintiff's

warranty claims"); *see also Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1082 (N.D. Cal.

2011) ("A buyer and seller stand in privity only if they are in adjoining links of the distribution chain; an end consumer who buys products from a retailer is not in privity with the manufacturer of the products"); *Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n.6 (1998) (privity exists only if the buyer and seller are in adjoining links of the distribution chain).

In this Court's June 28, 2017 Order granting AHM's Motion to Dismiss in part, the Court ruled that it did not reach Plaintiffs' lack of privity with AHM because Plaintiffs' implied warranty claims were dismissed on statute of limitations grounds. D.E. 91 at 23. Nevertheless, the Court put into a footnote that the California implied warranty claims do not fail for lack of privity where the manufacturer extends an express warranty. D.E. 91 at 21, n.20 (citing *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 229 (2006)). Should the Court reach this issue in deciding the present Motion, AHM respectfully submits that *Atkinson* does not apply. As an initial matter, AHM did not extend a warranty to Plaintiff Kelly; he purchased his car used from a private seller. SAC ¶ 32. Accordingly, the reasoning in *Atkinson* would not apply to him in any event. *Id.*.

More fundamentally, "[c]ourts have consistently rejected *Atkinson*-based challenges to California's privity requirement for implied warranty claims and, without fail, have recognized the continued viability of the privity requirement as established in [the California Supreme Court's ruling in] *Burr*." *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, Civ. A. No. 03-4558, 2010 WL 2813788 at *12 (D.N.J. July 9, 2010), amended, Civ. A. No. 03-4558 GEB, 2011 WL 601279 (D.N.J. Feb. 16, 2011) (citing *Wolph v. Acer Am. Corp.*, No. 09-1314, 2009 WL 2969467, at *3 (N.D.Cal. Sept.14, 2009)). "Atkinson appears to be an anomaly in that it contravenes the well-established principle under California law that privity is required in cases alleging breach of an implied warranty." *Postier v. Louisiana-Pacific Corp.*, No. 09-3290, 2009 WL 3320470, at *6 (N.D.Cal. Oct. 13, 2009). Indeed, "it appears that no such 'doctrine of constructive privity' exists in California." *Williams v. Yamaha Motor Co.*, No. CV-13-05066, 2014 WL 12597039, at *13 (C.D. Cal. Aug. 19, 2014), aff'd, 851 F.3d 1015 (9th Cir. 2017) (refusing to apply *Atkinson*). "And such a doctrine directly conflicts with established California Supreme Court precedent." *Id.* (citing *Burr*, 42 Cal. 2d at 695–96). These claims are properly dismissed.

### E.      Plaintiffs' Magnuson-Moss Warranty Act Claims Fall With Their Implied And Express Warranty Claims

"[C]laims under the [MMWA] stand or fall with [plaintiffs'] express and implied warranty claims under state law. Therefore, this court's disposition of the state law warranty claims determines the disposition of the [MMWA] claims." *DaimlerChrysler Corp.*, 534 F.3d at 1022. Thus, to the extent that this Court dismisses any Plaintiffs' implied and express warranty claims, it must also dismiss their MMWA claims. *See In re Ford Tailgate Litig.*, 2014 WL 1007066, at *5 (dismissing MMWA warranty claims).

### F.      Plaintiffs Who Purchased Used Cars Cannot Obtain "Restitution"

Mr. Kelly, Mr. Criner, Mr. Moss, Mr. Crooks, and Mr. Gerstle's prayer for restitution fails because they purchased used vehicles. SAC ¶¶ 32, 95, 154, 205, 224. AHM obtained no money or property from these Plaintiffs, nor is AHM in possession of funds rightfully belonging to these Plaintiffs.

Under the UCL, a plaintiff may recover lost money in the form of restitution, but not damages. *See Korea Supply v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1140 (2003) (holding that "disgorgement of profits allegedly obtained by means of an unfair business practice" is not "an authorized remedy under the UCL where the profits are neither money taken from a plaintiff nor funds in which the plaintiff has an ownership interest"). In this case, in order to show that they are entitled to restitution, Plaintiffs must plead and prove that AHM is in possession of money or property taken from them. S*ee Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1083 (N.D. Cal. 2012) (holding that restitution was unavailable because plaintiff "ha[d] not submitted any evidence or . . . argument, to show that [defendant] obtained money from [plaintiff] or that [plaintiff] otherwise ha[d] any ownership interest of any of [defendant's] profits"); *see also EchoStar Satellite Corp. v. NDS Group PLC*, No. SA CV03–0950 DOC, 2008 WL 4596644, at *9 (C.D. Cal. Oct. 15, 2008) (finding restitution was not available because defendant never directly took anything from plaintiff).

Mr. Kelly, Mr. Criner, Mr. Moss, Mr. Crooks, and Mr. Gerstle do not and cannot allege that AHM obtained money from them or that they otherwise have any ownership interest in any of AHM's "profits" because AHM never received any money from them, directly or indirectly. *See*

*Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1324–25 (C.D. Cal. 2013) (dismissing claim for restitution because plaintiff did not allege facts indicating defendants obtained plaintiff's money or property, nor any facts that defendants were in possession of funds rightfully belonging to plaintiff; the complaint alleged that plaintiff bought vehicle from a third party). This Court should thus strike or dismiss the restitution claim as to Plaintiffs Kelly, Criner, Moss, Crooks, and Gerstle. *See Johnson v. GMRI, Inc.*, No. CV F 07-0283, 2007 WL 2009808 (E.D. Cal July 6, 2007) (granting a motion to strike restitution remedy pursuant to Rule 12(f)).

G.     **To The Extent Any California Plaintiffs Have An Adequate Remedy At Law, Their Claims For Equitable Relief Under The UCL And CLRA Fail**

A plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available. *Munning v. The Gap Inc.*, No. 16-cv-03804-TEH, 2017 WL 733104 (N.D. Cal. Feb. 24, 2017). The UCL provides only equitable relief, in the form of restitution and injunctive relief (and civil penalties, which are not at issue, nor alleged to be at issue here). *See Durkee v. Ford Motor Co.*, No. C 14-0617 PJH, 2014 WL 4352184, at *2 (N.D. Cal. Sept. 2, 2014); *see also Philips v. Ford Motor Co.*, No. 14-cv-02989-LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) (indicating "[a]part from civil penalties, which are not at issue in this case, the UCL provides only the equitable remedies of restitution and injunctive relief"); *Korea Supply Co.*, 29 Cal. 4th at 1144 (stating "under the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution,'" and civil penalties may be assessed) (citation omitted); *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 452 (2005) (reasoning "[t]he UCL limits the remedies available for UCL violations to restitution and injunctive relief (and civil penalties, which are not at issue in this appeal")). On the other hand, the CLRA allows for damages as a legal remedy to compensate those who suffered actual damages and equitable relief. *Gonzales v. CarMax Auto Superstores, LLC*, 845 F.3d 916, 918 (9th Cir. 2017) (stating "the CLRA explicitly authorizes injunctive relief, restitution, and '[a]ny other relief that the court deems proper'") (citation omitted); *see also Durkee*, 2014 WL 4352184 at *3.

Here, Plaintiffs request restitution pursuant to their UCL cause of action and an injunction under their CLRA cause of action. SAC ¶¶ 345, 363, 431, 449. But their simultaneous request for

monetary damages pursuant to their claims for fraud by concealment, breach of implied warranty, and violations of the MMWA (*see id.* ¶¶ 383, 394, 410, 468, 481, 497) undeniably demonstrates that they have an adequate remedy at law available. Because Plaintiffs have an adequate remedy at law, their claims for equitable relief under the UCL and CLRA fail as a matter of law and must be dismissed.

**V.      CONCLUSION**

For the foregoing reasons, AHM respectfully requests that the Court grant the Motion and issue the following relief:

I.      Issue sanctions against Plaintiffs Crooks and Matza for spoliation by dismissing their claims because they knowingly and intentionally sold their vehicles immediately prior to bringing suit or, in the alternative, issue alternative sanctions that will equally and fairly mitigate the harm to AHM caused by their spoliation.

II.      Dismiss the following claims as untimely:

1.      California claims for violations of the CLRA, UCL, implied warranty, and violations of MMWA asserted by the Aberin Plaintiffs and Plaintiff Tran;

2.      Delaware claims for violation of the consumer fraud act, implied warranty, and violations of MMWA;

3.      New Hampshire claims for violation of the consumer protection act, implied warranty and MMWA;

4.      New York claims for violations of general business law section 349, implied warranty, express warranty, and MMWA asserted by Plaintiff Matza;

5.      Texas claims for violations of the deceptive trade practices and consumer protection act, implied warranty, and MMWA; and

6.      Washington claims for violations of the consumer protection act, express warranty, and MMWA.

III.      Dismiss the following for failure to state a claim:

1.      Florida, New York, and Washington claims for express warranty;

2.      California, Florida, and Texas claims for implied warranty and

3.     California, Florida, Texas, and Washington claims for violation of MMWA.

IV.     Dismiss the prayer for restitution of Plaintiffs Kelly, Criner, Moss, Crooks, and Gerstle.

V.     Dismiss Plaintiffs' demand for equitable relief under the UCL and CLRA because they have adequate remedies at law; and

VI.     Issue such other, further relief this Court deems appropriate.

Dated: August 21, 2017                    Respectfully submitted,

                                          SIDLEY AUSTIN LLP
                                          By:/s/ Livia M. Kiser
                                          _____
                                               Livia M. Kiser
                                               lkiser@sidley.com
                                               SIDLEY AUSTIN LLP
                                               One South Dearborn Street
                                               Chicago, Illinois 60603
                                               Telephone: (312) 853-7000
                                               Facsimile: (312) 853-7036

                                          *Attorneys for Defendant American Honda Motor Co., Inc.*