Christopher A. Seeger (*pro hac vice*)
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, NY 10005
Tel: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

James E. Cecchi (*pro hac vice*)
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com

*Interim Co-Lead Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

*Aberin et al. v. American Honda Motor Co., Inc.*

Case No. 3:16-cv-04384-JST

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S COMBINED MOTION TO DISMISS CERTAIN COUNTS IN PLAINTIFFS' SECOND AMENDED COMPLAINT, TO STRIKE CERTAIN RESTITUTION CLAIMS, AND FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**

Date: November 16, 2017
Time: 2:00 pm
Place: Courtroom 9, 19th Floor, Phillip Burton Federal Building
The Honorable Jon S. Tigar

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    STATEMENT OF ISSUES TO BE DECIDED ................................................... 1

II.   INTRODUCTION ........................................................................................ 1

III.  LEGAL STANDARD.................................................................................... 3

IV.  ARGUMENT ............................................................................................... 4

      A.     Plaintiffs Crooks and Matza's sale of their vehicles is not spoliation and does not call for dismissal. ..................................................................................... 4

      B.     Plaintiffs' claims are timely because the statute of limitations was tolled by Honda's fraudulent concealment, and their consumer protection claims are also timely under the discovery rule............................................................................. 6

            1.     Plaintiffs allege the time and manner of discovery.................................... 6

            2.     Plaintiffs' allegations establish their reasonable diligence. ........................ 7

            3.     Plaintiffs Matza and Burgess's consumer protection and warranty claims are timely. ....................................................................................... 11

      C.     Plaintiffs state a claim for breach of express warranty. ....................................... 13

            1.     The durational limit on Honda's express warranty is unconscionable. ..... 13

            2.     If Honda's warranty does not cover design defects, it fails of its essential purpose. ..................................................................................... 15

      D.     As this Court has already established, Plaintiffs' implied warranty claims do not fail, under the laws of California and Texas, for lack of privity............................ 18

      E.     Plaintiffs may assert Magnuson-Moss Warranty Act claims because they assert viable state law warranty claims. ................................................................... 20

      F.     Plaintiffs who purchased used cars can obtain restitution under UCL. ................. 20

      G.     Plaintiffs' claims for equitable relief under UCL and CLRA can be pled in the alternative to any legal relief........................................................................ 21

V.   CONCLUSION............................................................................................ 21

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                                    **Pages**

*Adkins v. Comcast Corp.*,
No. 16-CV-05969-VC, 2017 WL 3491973 (N.D. Cal. Aug. 1, 2017) .................................... 21

*Alexander v. Pella Corp.*,
Nos. 2:14-mn-00001-DCN, 2:14-mn-00540-DCN, 2015 WL 1798859
(D.S.C. Apr. 21,   Apr. 21, 2015)........................................................................................... 12

*Alin v. American Honda Motor Co., Inc.*,
2010 WL 1372308 (D.N.J. Mar. 31, 2010)............................................................................ 16

*Apple Inc. v. Samsung Elecs. Co.*,
881 F. Supp. 2d 1132 (N.D. Cal. 2012) ............................................................................. 4, 5

*Atkinson v. Elk Corp. of Texas*,
142 Cal. App. 4th 212 (2006) ................................................................................................ 19

*Barakezyan v. BMW of N. Am., LLC, No.*,
CV1600173 (SJO) GJSx, 2016 WL 2840803 (C.D. Cal. Apr. 7, 2016)................................ 19

*Beth Israel v. Bartley, Inc.*,
579 So. 2d 1066 (La. Ct. App. 1991)....................................................................................... 9

*Bussian v. Daimlerchrysler Corp.*,
411 F. Supp. 2d 614 (M.D.N.C. 2006) .................................................................................. 14

*Cabrales v. Castle & Cooke Mortg., LLC*,
No. 14-cv-01138, 2015 WL 3731552 (E.D. Cal. June 12, 2015)............................................ 21

*Carlson v. General Motors Corp.*,
883 F.2d 287 (4th Cir. 1989) ................................................................................................. 14

*Cartwright v. Viking Indus., Inc.*,
249 F.R.D. 351 (E.D. Cal. 2008) .......................................................................................... 19

*Clemens v. Daimler Chrysler*,
534 F.3d 1017 (9th Cir. 2008) .................................................................................. 14, 19, 20

*Cloer v. Gen. Motors Corp.*,
395 F. Supp. 1070 (E.D. Tex. 1975)...................................................................................... 19

*Cuviello v. City & Cnty. of San Francisco*,
940 F. Supp. 2d 1071 (N.D. Cal. 2013) .................................................................................. 3

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ................................................................................................. 3

*Fjelstad v. Am. Honda Motor Co.*,
762 F.2d 1334 (9th Cir. 1985) ................................................................................................. 6

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) ............................................................................................ 8, 10, 12

*Giraud v. Quincy Farm & Chem.*,
  102 Wn. App. 443 (2000) .................................................................................................. 11

*Hamilton v. Signature Flight Support Corp.*,
  No. C 05-0490 CW (MEJ), 2005 WL 3481423 (N.D. Cal. Dec. 20, 2005) ............................ 6

*Herremans v. BMW of N. Am., LLC*,
  No. CV-14-02363-MMM (PJWx), 2015 WL 12712082 (C.D. Cal. Feb. 19, 2015) ............... 10

*Ho v. Toyota Motor Corp.*,
  931 F. Supp. 2d 987 (N.D. Cal. 2013) ................................................................................ 17

*Hollbrook v. Link-Belt Constr. Equip. Co.*,
  103 Wn. App. 279 (2000) .................................................................................................. 12

*Hunter v. Bank of Am., N.A.*,
  No. C16-1718-RAJ, 2017 WL 2289034 (W.D. Wash. May 25, 2017) .................................. 11

*In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
  No. C-05-04726-RMW, 2008 WL 4544441 (N.D. Cal. Sept. 20, 2008)........................... 6, 7, 8

*In re Ford Motor Co. Vehicle Paint Litigation*,
  No. MDL 1063, 1997 WL 539665 (E.D. La. Aug. 27, 1997) ................................................. 9

*In re MyFordTouch Consumer Litigation*,
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ..................................................................... 10, 11, 19

*In re Saturn L-Series Timing Chain Product Liability Litigation*,
  2008 WL 4866604 (D. Neb. Nov. 7, 2008) ......................................................................... 16

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ........................................................................... 3, 19

*In re Volkswagen Timing Chain Product Liability Litigation*,
  2017 WL 1902160 (D.N.J. May 8, 2017) ...................................................................... 14, 16

*Johnson v. John Deere Co.*,
  306 N.W.2d 231 (S.D. 1981) .............................................................................................. 15

*Jolly v. Eli Lilly & Co.*,
  44 Cal. 3d 1103 (1988) ........................................................................................................ 8

*Jordan v. Employee Transfer Corp.*,
  509 So. 2d 420 (La. 1987) .................................................................................................... 9

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ...................................................................................................... 20

*Kraft v. Staten Island Boat Sales, Inc.*,
  715 F. Supp. 2d 464 (S.D.N.Y. 2010)................................................................................. 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006) ................................................................. 4, 5

*TMAN Engines & Components, Inc. v. Shows*,
   434 S.W.3d 132 (Tex. 2014) .................................................................. 18

*Manheim v. Ford Motor Co.*,
   201 So. 2d 440 (Fla. 1967) .................................................................... 18

*Munning v. Gap, Inc.*,
   238 F. Supp. 3d 1195 (N.D. Cal. 2017) ................................................. 22

*Nobility Homes of Texas, Inc. v. Shivers*,
   557 S.W.2d 77 (Tex. 1977) .................................................................... 18

*Pacific Pulp Molding, Inc. v. Burchfield*,
   2016 WL 6103086 (S.D. Cal. Jan. 27, 2016) ......................................... 18

*Payne v. Fujifilm U.S.A., Inc.*,
   2007 WL 4591281 (D.N.J. Dec. 28, 2007) ............................................ 14

*Podpeskar v. Makita U.S.A., Inc.*,
   __F.Supp.3d __ , 2017 WL 1169533  (D. Minn. Mar. 28, 2017) ............ 14

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*,
   264 F.R.D. 517 (N.D. Cal. 2009) ............................................................ 4

*Rheem Manufacturing Co. v. Phelps Heating & Air Conditioning, Inc.*,
   746 N.E.2d 941 (Ind. 2001) ................................................................... 16

*Rollolazo v. BMW of N. Am., LLC*,
   No.CV-1600966 BRO (SSx), 2017 WL 1536456 (C.D. Cal. Feb. 3, 2017) ............................ 12

*Sater v. Chrysler Group LLC*,
   No. EDCV 14-00700-VAP, 2015 WL 736273 (C.D. Cal. Feb. 20, 2015) ...................... 11

*Shersher v. Superior Court*,
   154 Cal. App. 4th 1491 (2007) .............................................................. 20

*Speier-Roche v. Volkswagen Group of America Inc.*,
   No. 14-20107-CIV, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014)........................... 9

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ................................................................. 3

*Statler v. Dell, Inc.*,
   775 F. Supp. 2d 474 (E.D.N.Y. 2011) .............................................. 11, 12

*Sutton v. Sokotowski*,
   No. C 06-6417 VRW, 2007 WL 1113950 (N.D. Cal. Apr. 13, 2007)........................ 12

*Szymczak v. Nissan North America, Inc.*,
   2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ........................................ 14

*Transport Corp. of America, Inc. v. International Business Machines*,
    30 F.3d 953 (8th Cir. 1994) ............................................................................................ 15

*Viking Yacht Co., Inc. v. Composite One, LLC*,
    385 Fed. App'x. 195 (3d Cir. 2010) ............................................................................... 15

*Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*,
    135 F.3d 658 (9th Cir. 1998) ............................................................................................ 3

**Statutes**

Cal. Bus & Prof. Code § 17205 ............................................................................................ 21

RCW 19.86.120 .................................................................................................................... 13

RCW 62A.2-725 ..................................................................................................................... 1

UCC Sections 2-714 and 2-715 ........................................................................................... 18

UCC Section 2-719(2) .................................................................................................... 16, 18

**Rules**

Fed. R. Civ. P. 15(a)(2) ........................................................................................................... 3

Fed. R. Civ. P. 12(g) ........................................................................................................... 2, 3

Fed. R. Civ. P. 12(h) ............................................................................................................... 2

Fed. R. Civ. P. 8 ..................................................................................................................... 3

N.D. Cal. Civil L.R. 7-8(a) ..................................................................................................... 4

1    Plaintiffs, Lindsay Aberin, Jeff Aberin, Don Awtrey, Charles Burgess, Daniel Criner, Jared

2    Crooks, Mark Gerstle, John Kelly, Yun-Fei Lou, Joy Matza, Jordan Moss, Donald Tran and

3    Melissa Yeung ("Plaintiffs"), through their counsel, submit this Opposition to the Combined

4    Motion to Dismiss Certain Counts in Plaintiffs' Second Amended Complaint, to Strike Certain

5    Restitution Claims, and for Sanctions for Spoliation of Evidence by Defendant, American Honda

6    Motor Co., Inc. ("Honda" or "Defendant").

7    **I.    STATEMENT OF ISSUES TO BE DECIDED**

8        1.    Whether Honda's request for sanctions should be denied because Plaintiffs Crooks

9    and Matza sold their vehicles before retaining counsel or contemplating suing Honda and Honda

10   still has access to other vehicles with exactly the same defect?

11       2.    Whether the statutes of limitations for Plaintiffs' claims are tolled by Honda's

12   fraudulent concealment since Plaintiffs could not have discovered the defect until recently?

13       3.    Whether Plaintiffs' claims for breach of express warranty are timely because Honda

14   knew the defect existed during the warranty period but often did not manifest until later?

15       4.    Whether Plaintiffs have stated viable breach of implied warranty claims under

16   California and Texas law because, as this Court previously held, Texas has no privity requirement

17   and California allows for a number of applicable exceptions?

18       5.    Whether Plaintiffs who purchased used vehicles conferred on Honda a benefit

19   sufficient to seek restitution when they purchased replacement parts and used Honda's services to

20   remedy issues caused by the defective HandsFreeLink™?

21       6.    Whether Plaintiffs can seek equitable relief under the UCL and CLRA when the

22   relief is pled in the alternative to legal remedies that might also be available?

23   **II.    INTRODUCTION**

24       Having already addressed a motion pursuant to Rule 12(b)(6), the Court is well aware of

25   the facts of this litigation.  *See* ECF No. 81 & 91.  Plaintiffs purchased Acuras with defective

26   Bluetooth, HandsFreeLink™ ("HFL"), systems that, unbeknownst to Plaintiffs, parasitically drain

27   the vehicles' electrical systems.   Plaintiffs seek relief for Honda's breach of warranties and

violation of consumer protection laws.  After rendering its earlier decision on the general adequacy of the pleadings, and the viability of most of Plaintiffs' claims, the Court left open very few issues for Plaintiffs to address in their Second Amended Class Action Complaint ("SAC"), namely the facts of Honda's knowledge of the HFL defect and the facts surrounding Plaintiffs' gradual discovery of the defect.[1]

In their SAC, Plaintiffs followed the direction provided by the Court in its Order, and alleged additional facts regarding Honda's knowledge and concealment of the defect, as well as facts concerning Plaintiffs' inability to otherwise learn about the cause of their recurring battery failures and the wider harm and safety issues posed by the underlying defect in the HFL unit.  What should have followed was little more than a review of the adequacy of Plaintiffs' new allegations. Instead, Honda has elected to again, broadly challenge Plaintiffs' allegations.  Specifically, Honda challenges anew Plaintiffs' express warranty claims, as well as the availability of the California Unfair Competition Law ("UCL") and the California Consumer Legal Remedies Act ("CLRA") when other, legal remedies are sought.  Further, Honda now baselessly seeks sanctions against Plaintiffs who sold or traded-in their vehicles before they filed suit or even sought legal counsel. Lastly, Honda mounts a new effort to argue that the lack of privity dooms implied warranty claims in certain states, including states where the Court has already recognized privity is not required.

As an initial matter, most of the arguments that Honda could have, but failed to raise earlier, should be ignored by the Court.  Rule 12(g) of the Federal Rules of Civil Procedure provides in no uncertain terms that a defendant needs to raise all the arguments it can in a single Rule 12 motion, not proceed in a piecemeal fashion:

> ***Limitation on Further Motions.*** Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

---

[1] Additionally, the SAC was the first complaint filed after consolidation with the *Burgess* action.  Accordingly, the allegations supporting Plaintiff Burgess' claims, along with those of Joy Matza, an additional New York plaintiff, were added in the SAC.

1   Fed. R. Civ. P. 12(g).  Even if Rule 12(g) did not preclude such procedural gamesmanship, none

2   of Honda's new or continuing challenges to Plaintiffs' claims are well-founded.  The present

3   Motion to Dismiss should be denied in its entirety and the litigation should now move past the

4   pleadings.

### III.    LEGAL STANDARD

5

6           A motion to dismiss challenges the legal sufficiency of the claims alleged under Rule 8 of

7   the Federal Rules of Civil Procedure.  While the complaint must plead enough facts to render the

8   claims plausible on their face, a claim has plausibility "when the plaintiff pleads factual content

9   that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

10  alleged." *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1079 (N.D. Cal. 2013).

11  "On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and

12  construed in a light most favorable to the non-moving party."  *Wyler Summit P'Ship v. Turner*

13  *Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  Plaintiffs have alleged sufficient factual

14  allegations that "plausibly suggest an entitlement to relief."  *See Starr v. Baca*, 652 F.3d 1202,

15  1216 (9th Cir. 2011).

16          Additionally, under Rule 9(b), Plaintiffs' claims related to tolling based on Honda's

17  concealment "can succeed without the same level of specificity required by a normal fraud claim."

18  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*,

19  754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010) (Rule 9(b) requirements are relaxed for fraudulent

20  omissions "because [r]equiring a plaintiff to identify (or suffer dismissal) the precise time, place,

21  and content of an event that (by definition) did not occur would effectively gut state laws

22  prohibiting fraud-by-omission").

23          Moreover, dismissal "without leave to amend is not appropriate unless it is clear … that

24  the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316

25  F.3d 1048, 1052 (9th Cir. 2003); *see also* Fed. R. Civ. P. 15(a)(2).  Plaintiffs respectfully request

26  leave to amend if necessary.

27

## IV.   ARGUMENT

### A.   Plaintiffs Crooks and Matza's sale of their vehicles is not spoliation and does not call for dismissal.

Plaintiffs Crooks and Matza's sale of their vehicles does not constitute sanctionable spoliation of evidence.  A federal district court has an inherent power to impose appropriate sanctions for abusive litigation practices, including spoliation of evidence. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  Spoliation occurs when "(1) . . . the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) [it was] destroyed with a 'culpable state of mind'; and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012).

As an initial matter, Honda's motion for sanctions is not appropriately decided on a motion to dismiss.[2] When deciding a motion under Rule 12, the Court may not go beyond the four corners of the complaint (or any documents relied upon in the complaint).  The facts and factors the Court should consider for sanctions, as explained below, goes far beyond the allegations in the Complaint.  Indeed, Honda's motion for sanctions should be denied because it has presented *no* evidence to support a finding of spoliation warranting dismissal of Crooks and Matza's claims.

Furthermore, Crooks and Matza did not commit spoliation of evidence. First, they were under no obligation to preserve evidence at the time that they sold their vehicles because they were not then party to any action against Honda.  Although a duty to preserve evidence may sometimes arise when litigation is only being contemplated, it must actually be contemplated. *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 526 (N.D. Cal. 2009) ("A general concern over litigation does not trigger a duty to preserve evidence.").  Honda appears to argue that Plaintiffs' mere knowledge of the defect triggered the preservation duty.  However, knowing of a defect is not the same as contemplating litigating it. This point is illustrated by each of the

---

[2] Honda's request for sanctions is also procedurally inappropriate because Honda failed to file it as a separate motion, in contravention to the express requirements of this District's Local Rules. *See* N.D. Cal. Civil L.R. 7-8(a) ("Any motion for sanctions, regardless of the sources of authority invoked . . . must be separately filed.").

1  Plaintiffs.  Plaintiff Crooks joined this litigation nearly two years after learning of the defect. SAC

2  ¶¶ 213.  Plaintiff Matza did not even seek legal counsel until well after she sold her car.  SAC ¶

3  193.

4       Second, Plaintiffs did not act with the required "culpable state of mind."  Honda essentially

5  argues that sale is the same as guilt.  However, the two cases cited by Honda actually contradict

6  this interpretation – there must be evidence to show an appropriate *mens rea*.  Even negligence in

7  the disposition of evidence is not enough.  In *Leon*, an employee deleted a number of files on his

8  employer-issued laptop during the pendency of litigation between them.  After receiving two

9  warnings not to delete any files, discovery established that the employee "wrote a program to

10 'wipe' any deleted files from the unallocated space in the hard drive."  *Leon*, 464 F.3d at 956.

11 Despite this, the employee "claimed that his wiping of relevant evidence was merely negligent."

12 However, the district court ***specifically rejected*** this argument, finding "that the extraordinary

13 measures to which Dr. Leon resorted to destroy evidence relevant to this litigation merit a finding

14 of bad-faith."  *Id.* at 957.  Similarly, in *Apple*, Samsung employees deleted emails relevant to a

15 patent dispute even after Apple made an in-person presentation to Samsung about its claims and

16 Samsung issued litigation holds advising of "the reasonable likelihood of future patent litigation

17 between Samsung and Apple …." 881 F. Supp. 2d at 1147 (stating that, even the least severe

18 sanction of an adverse inference instruction requires a finding that the alleged despoiler "acted

19 with a 'conscious disregard' of its obligations").

20      Lastly, the individual vehicles that were sold by Crooks and Matza are not "relevant,"

21 within the meaning of the spoliation doctrine, to the parties' claims or defenses.  Nothing that is

22 needed in this litigation has been lost.  Honda argues that "the vehicles themselves are necessary

23 evidence to prove" Plaintiffs' defect claims. Def.'s Mot. Dismiss at 8.  However, when the defect

24 claimed is a product-wide defect that would be the same in all vehicles, the individual vehicle

25 might not be necessary evidence.  Indeed, one of Honda's dealerships was able to diagnose Mr.

26

27

1    Crooks' problem over the phone, based on the simple report of the issues he had been facing, and

2    told him to disconnect the HFL unit.[3]  SAC ¶ 210.

3            Thus, Defendant's spoliation argument is frivolous and should not be countenanced.

4        **B.    Plaintiffs' claims are timely because the statute of limitations was tolled by
              Honda's fraudulent concealment, and their consumer protection claims are**

5        **also timely under the discovery rule.**

6            Honda's assertion that certain of Plaintiffs' claims should be dismissed as untimely is

7    meritless.[4]  As this Court recognized: (a) Plaintiffs' implied and express warranty claims are

8    subject to tolling based on fraudulent concealment; (b) Plaintiffs' Magnuson-Moss Warranty Act

9    claims are governed by the most analogous state statute of limitations and are subject to tolling;

10   and (c) Plaintiffs' consumer protection claims are subject to tolling under fraudulent concealment

11   and the discovery rule. ECF No. 91 at 16-23.  Honda does not contest these points, but instead

12   argues that Plaintiffs have not plausibly alleged a defect, have not adequately pled the time and

13   manner of discovery, and did not act reasonably or diligently as a matter of law.  Honda's first

14   argument directly contradicts the Court's prior ruling that Plaintiffs sufficiently alleged a defect

15   within Honda's "exclusive knowledge," that Honda "withheld" information from Plaintiffs, and

16   that the withheld information "posed a safety risk." *Id.* at 14.  Further, as demonstrated below,

17   Plaintiffs sufficiently allege the time and manner of discovery, and Honda's assertions that

18   Plaintiffs were not reasonable or diligent are boilerplate and ignore Plaintiffs' allegations.

19                   **1.    Plaintiffs allege the time and manner of discovery.**

20           Previously, this Court dismissed Plaintiffs' tolling allegations without prejudice because

21   Plaintiffs did not allege the time and manner of discovery. *See* ECF No. 91 at 12, 14-15. Plaintiffs'

22   SAC specifically alleges the time and manner of discovery for each Plaintiff.

23   _____

24   [3] Even if the Plaintiffs had committed spoliation, which they did not, dismissal is not an appropriate
     sanction. *See Hamilton v. Signature Flight Support Corp.*, No. C 05-0490 CW (MEJ), 2005 WL

25   3481423, at *3 (N.D. Cal. Dec. 20, 2005). "Due process limits the imposition of the severe
     sanctions of dismissal . . . to 'extreme circumstances.'" *Fjelstad v. Am. Honda Motor Co.*, 762
     F.2d 1334, 1338 (9th Cir. 1985).

26   [4] Honda is not seeking to dismiss the claims of Plaintiffs Criner (FL), Awtrey (KS), Moss (NY),
     and Crooks (OH) as untimely, and does not challenge the timeliness of Plaintiff Kelly's (CA)

27   claims.

- **Plaintiffs Lindsay and Jeff Aberin** experienced problems with numerous electrical components and replaced several parts, but did not learn the problems were caused by a defect in the HFL system until they brought their car to Hinshaw's Acura to have a headlight bulb, ignitor, and door lock actuator replaced in June 24, 2015. SAC ¶¶ 13-21.
- **Plaintiff Donald Tran[5]** experienced problems with his vehicle's battery requiring frequent jump starts, but did not learn the problems were related to the HFL unit until a service shop advised him to disconnect it in July 2014. SAC ¶¶ 56-59.
- **Plaintiff Yun-Fei Lou** experienced problems with his vehicle's battery, but did not learn the problems were caused by a defect in the HFL system until he discovered Plaintiffs' complaint online in August 2016. SAC ¶¶ 75-83.
- **Plaintiff Melissa Yeung** had to replace her vehicle's battery three times and needed frequent jump starts. She did not learn the problems were related to the HFL defect until she brought her vehicle to an Acura dealership in for service in late 2013 or early 2014 and the technicians told her about the HFL defect. SAC ¶¶ 139-44.
- **Plaintiff Joy Matza** experienced several battery failures and had to replace the battery three times as well as the starter motor assembly unit. She did not learn the problems were caused by the HFL defect until her husband read about the defect online in July 2016. SAC ¶¶ 182-94.
- **Plaintiff Mark Gerstle** had to repeatedly replace the battery in his vehicle, experienced a series of odd electrical failures, and had to jump start the battery on numerous occasions. He did not learn these problems were due to the HFL defect until he saw an online posting about this lawsuit in May 2016. SAC ¶¶ 229-39.
- **Plaintiff Charles Burgess** had to replace his vehicle's battery twice but did not learn that the problem was caused by the HFL defect until he brought his vehicle to Acura of Lynnwood for service on December 20, 2016 and was told that his HFL unit was draining the battery and causing electrical damage to his vehicle. SAC ¶¶ 251-59.

### 2.    Plaintiffs' allegations establish their reasonable diligence.

To invoke the discovery rule and fraudulent concealment tolling, a plaintiff must plead facts showing "the inability to have made earlier discovery despite reasonable diligence" or that he "was not at fault for failing to discover it or had not actual or presumptive knowledge of facts sufficient to put him on inquiry." *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2008 WL 4544441, at *8-9 (N.D. Cal. Sept. 20, 2008).  In ruling on Honda's prior motion to dismiss, the Court held that Plaintiffs adequately pled that Honda had exclusive knowledge of the defect and withheld that information from Plaintiffs. ECF No. 91 at 13-14.  Honda's concealment, combined with the fact that the defect manifests by causing apparently unrelated electrical components to fail, left Plaintiffs unable to discover the defect on their own.  Plaintiffs also acted diligently in having their vehicles repaired by automotive technicians at dealerships, repair shops,

---

[5] The Court found Plaintiff Tran alleged the time and manner of discovery.  ECF No. 91 at 12 n. 9.

1 and AAA, and reasonably relied on those experts to identify and fix the cause of their ongoing
2 electrical problems.

3 **a.     Plaintiffs' duty to investigate was not triggered.**

4     Under the discovery rule, plaintiffs are only under a duty to investigate "if they have
5 'information of circumstances to put them on *inquiry*' or if they have '*the opportunity to obtain*
6 *knowledge* from sources open to [their] investigation.'"  *Fox v. Ethicon Endo-Surgery, Inc*., 35
7 Cal. 4th 797, 808 (2005) (citation omitted). Only at that point must a plaintiff investigate the cause
8 of his injury, and the plaintiff is only charged with presumptive knowledge of the information that
9 would have been revealed by an investigation.  *Id.* at 807-08.  The statute of limitations does not
10 commence when a plaintiff is aware of a harm if he has no reason to suspect its wrongful cause.
11 *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1009 (1988) ("[S]tatute of limitations begins to run when
12 the plaintiff suspects or should suspect that her injury *was caused by wrongdoing*, that someone
13 has done something wrong to her.") (emphasis added); *Fox*, 35 Cal. 4th at 808 n.2 (physical injury
14 alone is often insufficient to trigger the statute of limitations, because injury is not always coupled
15 with knowledge of the injury's negligent cause).  For fraudulent concealment, a defendant's fraud
16 tolls the statute of limitations "until the aggrieved party discovers the existence of the cause of
17 action." *Conseco*, 2008 WL 4544441, at *8 (citation omitted).

18     The statute of limitations did not commence when Plaintiffs' batteries died and their
19 electrical components failed because they had no reason to suspect the cause was the HFL unit, let
20 alone an inherent defect in the HFL unit that Honda fraudulently concealed.  The HFL defect
21 manifests as the failure of apparently unrelated electrical components.  SAC ¶¶ 284-93.  Plaintiffs
22 reasonably (but mistakenly) believed that the simplest explanation was the right one: the problem
23 was the failing electrical components themselves and replacing those components 'fixed' the
24 problem.  Even multiple battery and electrical part failures did not put Plaintiffs on inquiry notice
25 because the HFL defect manifests as a failure of a wide range of electrical components, often after
26 long intervals with no issues.  Prior to discovering the defect, Plaintiffs experienced problems with
27 everything from batteries to fog light bulbs, headlight and front marker bulbs, headlight inverters,

ignitors, starters, throttles, door lock actuators, and starter motor assemblies.  SAC ¶¶ 13-21; 56-59; 75-83; 139-44; 182-90; 229-39; 251-57.  For example, the Aberin Plaintiffs replaced a starter one month and a battery two months later; between 2007 and 2014, Plaintiff Matza's vehicle had battery issues every 13 months or so. SAC ¶¶ 19-20, 182-89.

That the HFL defect manifests as the failure of apparently unrelated components distinguishes this case from the cases Honda cites. *See Speier-Roche v. Volkswagen Group of America Inc.,* 2014 WL 1745050, at *5-6 (S.D. Fla. Apr. 30, 2014) (finding the statute of limitations for plaintiff's claim that her brake pads and rotors were defective commenced when her brakes failed);[6] *In re Ford Motor Co. Vehicle Paint Litigation*, 1997 WL 539665, at *10 (E.D. La. Aug. 27, 1997) (holding the statute of limitations on the plaintiff's paint defect claim started when plaintiffs noticed peeling paint).

This case is more analogous to the cases distinguished by *In re Ford Motor*, where plaintiffs faced "complex situation[s] involving damage that could have resulted from a number of sources. They had experts actually investigate their damages, actually try to repair the problem, and the experts provided them with erroneous information on which they reasonably relied." 1997 WL 539665, at *12 (distinguishing *Beth Israel v. Bartley, Inc.*, 579 So. 2d 1066 (La. Ct. App. 1991) and *Jordan v. Employee Transfer Corp.*, 509 So. 2d 420 (La. 1987)). In *Beth Israel*, the court held the statute of limitations did not start to run until ten years after the plaintiff noticed roof damage because the plaintiff repeatedly made repairs, was told by a contractor and architect that the leaking roof was caused by improper maintenance, and the manufacturer denied the existence of a roof defect. 579 So. 2d at 1073-77.  In *Jordan,* the court held that the statute of limitations did not start at the first sign of flooding because the plaintiff reasonably relied on an insurance adjuster's statement that water entered from leaking flashing and had no reason to suspect a problem with the foundation until he observed water seep through the floor. 509 So. 2d at 423-24.  As in *Beth Israel* and *Jordan*, Plaintiffs reasonably relied on automotive technicians at dealerships, repair

---

[6] The court also found the plaintiff failed to plead fraud with specificity. 2014 WL 1745050, at *6-7. This Court held Plaintiffs sufficiently pled fraudulent concealment. ECF No. 91 at 12-14.

1   shops, or AAA to identify the problem and fix their vehicles, and had no reason to suspect their

2   problems were caused by a defective HFL. SAC ¶¶ 24, 52, 87, 147, 194, 242 & 251.

3          Other courts reach similar conclusions.  For example, the plaintiffs in *In re MyFord Touch*

4   *Consumer Litigation* alleged that a defect in the MyFord Touch (MFT) system manifested as

5   various unrelated problems ranging from "the entire system freezing up or crashing" to "isolated

6   problems such as random but frequent screen black outs, nonresponsiveness to touch or voice

7   commands, locking up of the rearview camera, and inaccurate directions on the navigation

8   system." 46 F. Supp. 3d 936, 948-49 (N.D. Cal. 2014).  The court held that fraudulent concealment

9   tolled the statute of limitations because Ford "pretended to fix the problems with the MFT" and

10  "never shared the existence of the TSBs with Plaintiffs when they took their cars in for service."

11  *Id.* at 961.  The court also held that the plaintiffs alleged facts showing their claims did not accrue

12  "until well after they first began to experience problems with their cars" and "even after successive

13  problems with the MFT system."  *Id.* at 961-62.  Similarly, Plaintiffs allege Honda had exclusive

14  knowledge of the defect, withheld information from Plaintiffs, pretended to fix the problems in

15  Plaintiffs' vehicles, and never disclosed the TSBs. SAC ¶¶ 301-306.

16         Lastly, "sophistication in the subject area" is relevant to whether Plaintiffs are on inquiry

17  notice.  *Herremans v. BMW of N. Am., LLC*, 2015 WL 12712082, at *5 (C.D. Cal. Feb. 19, 2015)

18  (a consumer without sophisticated knowledge of automobiles might not suspect a defect, and

19  therefore not investigate further, when told a repair fixed the problem).  When a vehicle

20  malfunctions and an automotive technician says the vehicle is good to go, the average driver will

21  not suspect a defect—particularly not a defect in an entirely separate, unrelated mechanical part.

22                 **b.      Further investigation would not have revealed additional facts.**

23         Even if this Court finds that Plaintiffs were on inquiry notice after one or more electrical

24  components malfunctioned, further investigation would not have revealed additional facts.  A

25  plaintiff is charged with presumptive knowledge only as to the information that would have been

26  revealed by a reasonable investigation.  *Fox*, 35 Cal. 4th at 808-09.  When a defendant engages in

27  fraudulent concealment, further or earlier investigation would not reveal additional facts.  *See, e.g.,*

*MyFord Touch*, 46 F. Supp. 3d at 961 (applying fraudulent concealment tolling where defendant "fixed" a defect with equally defective replacement parts and concealed TSBs that would have alerted plaintiffs to the defect); *Sater v. Chrysler Group LLC*, 2015 WL 736273, at *9 (C.D. Cal. Feb. 20, 2015) (applying fraudulent concealment tolling where defendant kept plaintiffs "ignorant of vital information essential to the pursuit of their claims," "continued to manufacture, advertise, sell, lease and warrant the [vehicles] without disclosing the defects," and circumstances made it "reasonable" for plaintiff to think his vehicle was defect-free).  The Court has already found that Plaintiffs sufficiently alleged fraudulent concealment because Honda had exclusive information about the HFL defect that it withheld from Plaintiffs. ECF No. 91 at 12-14. And even Honda's internal TSBs—which were not available to the public—say that the HFLs defect effectively eludes diagnosis. SAC ¶¶ 286, 288.  Thus, further investigation by Plaintiffs would not have revealed the truth about the defect.

### 3.  Plaintiffs Matza and Burgess's consumer protection and warranty claims are timely.

Contrary to Honda's assertions, Plaintiffs Matza and Burgess's consumer protection and warranty claims are timely.  Fraudulent concealment tolling and the discovery rule apply to Plaintiff Matza's New York consumer protection claim and Plaintiff Burgess's Washington consumer protection claim.  *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 482-84 (E.D.N.Y. 2011) (fraudulent concealment tolling applies to section 349 claims); *Hunter v. Bank of Am., N.A.*, 2017 WL 2289034, at *2 (W.D. Wash. May 25, 2017) (the discovery rule applies to CPA claims, including when plaintiffs do not and cannot know they have been injured due to the defendant's fraud).  Fraudulent concealment also tolls Plaintiffs Matza and Burgess's warranty claims. *Statler*, 775 F. Supp. 2d at 483 (fraudulent concealment could toll New York Uniform Commercial Code and MMWA warranty claims); *Giraud v. Quincy Farm & Chem.*, 102 Wn. App. 443, 455 (2000) (fraudulent concealment tolling applies to RCW 62A.2-725).  As discussed above, Plaintiffs Matza Burgess allege sufficient facts to establish fraudulent concealment tolling, including when and how the defect was discovered.

1    Honda's argument that these claims are untimely is based on inapposite case law and

2    flawed factual assumptions.  For example, in arguing that Plaintiff Burgess's warranty claims are

3    untimely, Honda cites cases that do not involve fraudulent concealment tolling.  *See Alexander v.*

4    *Pella Corp.,* 2:14-mn-00540-DCN, 2015 WL 1798859, at *4 (D.S.C. Apr. 21, 2015) (plaintiff did

5    not allege fraudulent concealment); *Hollbrook v. Link-Belt Constr. Equip. Co.*, 103 Wn. App. 279,

6    287, 291 (2000) (addressing future performance exception and repair doctrine).  Neither case

7    holds, as Honda suggests, that a plaintiff must discover or investigate defects before the vehicle's

8    warranty expires.  Similarly, in arguing that Plaintiff Matza's warranty claims are untimely, Honda

9    cites a case that stands for the exact opposite.  In *Statler*, the court denied a motion to dismiss

10   warranty claims under New York law because "[s]uch claims may or may not be saved by equitable

11   tolling; it is simply too early to tell."  775 F. Supp. 2d at 483.

12   Honda also ignores Plaintiffs Matza and Burgess's factual allegations, which the Court

13   must accept as true at this stage of the litigation.  *Sutton v. Sokotowski*, 2007 WL 1113950, at *2

14   (N.D. Cal. Apr. 13, 2007).  Determining whether a claim is time-barred is ordinarily a question of

15   fact. *Fox*, 35 Cal. 4th at 810.  A motion to dismiss on statute of limitations grounds "can be granted

16   only if the assertions of the complaint, read with the required liberality, would not permit the

17   plaintiff to prove that the statute was tolled."  *Rollolazo v. BMW of N. Am., LLC*, 2017 WL

18   1536456, at *7 (C.D. Cal. Feb. 3, 2017).

19   The statute of limitations for Plaintiff Matza's claim did not commence in early 2007 when

20   she first became aware of a problem with her vehicle's battery and electrical system, as Honda

21   contends.  As discussed above, Ms. Matza, like the other Plaintiffs, could not have known that the

22   cause of her dead battery in early 2007 was the defective HFL system because Honda concealed

23   the defect.  Nor could she have known the HFL was the reason her battery died again in fall 2008,

24   in early 2009, and again in early 2010.  SAC ¶¶ 183-85.  Ms. Matza's son had to call AAA to

25   replace the battery again in February 2013, and in March 2014, when Ms. Matza took her vehicle

26   to an authorized Acura dealer because it was making an odd noise during cold startups, she had to

27   replace the starter motor assembly.  SAC ¶ 186.  Ms. Matza had no idea that these sporadic issues

were all caused by the defect HFL system until her husband did some online research in July 2016 and learned that defective HFL systems caused battery and other electrical failures in Acuras. SAC ¶ 190. Due to Honda's concealment of the true cause of her vehicle's problems, the statute of limitations for Ms. Matza's consumer protection and warranty claims did not commence until July 2016.

Honda's contention that the statute of limitations for Plaintiff Burgess's claims commenced when he purchased his vehicle is similarly incorrect, since Honda's concealment of the HFL defect prevented him from discovering the true cause of his vehicle's electrical problems. The first problem Mr. Burgess experienced was a dead battery on May 15, 2014, well within the four-year statute of limitations for his consumer protection claim. RCW 19.86.120. He had no idea that his vehicle's battery died because of the HFL defect. SAC ¶ 251. When Mr. Burgess had trouble connecting his phone to his HFL unit in September 2016, he found a blog discussing issues with the HFL system in Acuras, but did not learn that the HFL unit had caused his dead battery. SAC ¶ 259. Mr. Burgess's battery died again in December 2016. SAC ¶ 253. He brought his vehicle to an Acura service center to check the battery and asked that they check the HFL unit as well because he had been having trouble connecting his phone to it. SAC ¶ 254. Mr. Burgess was told that the HFL unit was faulty, had been drawing current from and weakening the battery, and needed to be replaced. SAC ¶ 256. Although the service advisor told Mr. Burgess that he had encountered the problem before, he did not disclose that it was an inherent defect in the HFL system that affected countless other Acura drivers. SAC ¶ 257. The statute of limitations for Mr. Burgess's claims therefore did not commence until, at the earliest, December 20, 2016, when he learned that the HFL unit was faulty and caused his dead batteries.

### C. Plaintiffs state a claim for breach of express warranty.

#### 1. The durational limit on Honda's express warranty is unconscionable.

Honda argues in varying ways that the durational limits of its express warranty doom Plaintiffs' warranty claims. As an initial matter, Honda's focus on the final manifestation of the

concealed defect in the HFL units, such as dead batteries or prematurely replaced electrical components, misunderstands the nature of the warranty claims. Plaintiffs assert breach of warranty claims based on the defective HFL units, not defective batteries or starters, which gradually succumb. As alleged, the defect begins straining the electrical system long before the owner encounters the dead batteries and other defect-related problems. *See, e.g.*, SAC ¶ 302. Although Honda was obligated to repair or replace the defective part during the warranty period, it did not.

Even if the resulting harm to the vehicle is what triggers Defendant's warranty obligations, it may not seek refuge in its durational limits. Honda is correct that, as a general proposition, a manufacturer is not obligated to repair a defect that manifests itself after the warranty expires. *E.g., Clemens v. Daimler Chrysler*, 534 F.3d 1017, 1022-23 (9th Cir. 2008). However, there are exceptions to that general proposition which have direct application here. The durational limit on an express warranty is unconscionable where the manufacturer is aware of a defect that will manifest itself after the expiration of the warranty period. *See, e.g., In re Volkswagen Timing Chain Product Liability Litigation,* 2017 WL 1902160, at *11-12 (D.N.J. May 8, 2017); *Podpeskar v. Makita U.S.A., Inc.*, 2017 WL 1169533, at *5 (D. Minn. Mar. 28, 2017); *Szymczak v. Nissan North America, Inc.*, 2011 WL 7095432, at *9-10 (S.D.N.Y. Dec. 16, 2011).

> When a manufacturer is aware that its product is inherently defective, but the buyer has 'no notice of or ability to detect' the problem, there is perforce a substantial disparity in the parties' relative bargaining power. In such a case, the presumption is that the buyer's acceptance of limitations on his contractual remedies – including of course any warranty disclaimers – was neither 'knowing' nor 'voluntary,' thereby rendering such limitations unconscionable and ineffective.... That is in large measure what the plaintiffs here have claimed; and we therefore cannot say that their amended complaint failed to allege facts which, if proven to the court's satisfaction, could establish that, as a matter of law, [the defendant's] durational limitations on the operation of implied warranties were indeed unconscionable.

*Payne v. Fujifilm U.S.A., Inc.*, 2007 WL 4591281, at * 5 (D.N.J. Dec. 28, 2007) (quoting *Carlson v. General Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1989)); *see also Bussian v. Daimlerchrysler Corp.*, 411 F. Supp. 2d 614, 622 (M.D.N.C. 2006). Whether the durational limit of the warranty is unconscionable is a fact intensive inquiry, not amenable to disposition on the pleadings. *See, e.g., Carlson*, 883 F.2d at 296; *Szymczak*, 2011 WL 795432, at *10.

Here, Plaintiffs satisfactorily allege that the durational limitation on Honda's New Vehicle Limited Warranty is unconscionable.  They allege that Honda was aware of the defect in the HFL, but failed to inform consumers of it.  In addition, consumers had no meaningful choice in determining or bargaining for the time limitations, combined with a gross disparity of bargaining power between Honda and the consumer vis-à-vis the terms of the Warranty.  SAC ¶¶ 392, 479, 550, 601, 665, 748, 827, 913, 994-95.[7]  Indeed, because of the way the defect impacts the electrical system of the vehicles, it strains the electrical system long before the owner becomes aware of it, typically manifesting as a dead battery, even if the defect existed *prior* to the expiration of the warranty term.   Since Plaintiffs allege that the durational limitations of the warranty are unconscionable, Honda's contentions that the defects in their cars manifested themselves too late to be covered are without merit.[8]

### 2.  If Honda's warranty does not cover design defects, it fails of its essential purpose.

UCC Section 2-719(2) provides that if an exclusive or limited remedy fails of its essential purpose, the aggrieved party may have such remedy as is provided under the UCC.  A limited contractual remedy fails of its essential purpose if it fails to give the aggrieved party the benefit of their bargain.  *E.g., Viking Yacht Co., Inc. v. Composite One, LLC*, 385 F. App'x 195, 208 (3d Cir. 2010); *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 475-76 (S.D.N.Y.  2010); *Transport Corp. of America, Inc. v. International Business Machines*, 30 F.3d 953, 959 (8th Cir. 1994).  Whether a warranty fails of its essential purpose is determined as of the time the need for a remedy arises, whereas unconscionability is determined as of the inception of the contract.

---

[7]    This argument is equally applicable to Plaintiffs' implied warranty claims.  Magnuson-Moss does not allow the disclaimer of implied warranties, but it does allow a manufacturer to limit the duration of the implied warranties to the duration of the express warranties, which Honda has done.

[8]    Honda contends that Mr. Moss' express warranty claims should be dismissed because he bought his vehicle used.  Def.'s Mot. Dismiss at 17.  Honda's warranty covers the vehicle, not purchaser *See, e.g.*, ECF No. 44-02 at 12; 44-03 at 13; 44-04 at 9.  Indeed, the warranty period begins when "[t]he vehicle is delivered to the first purchaser by an Acura dealer."  If the time and mileage period runs from delivery to the *first* purchaser that would contemplate that the warranty would cover subsequent purchasers up to duration of the warranty.  Otherwise, the duration of the warranty would be 4 years, 50,000 miles, or until the initial purchaser or lessee disposed of the vehicle.

1     *Rheem Manufacturing Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 954-55

2     (Ind. 2001); *Johnson v. John Deere Co.*, 306 N.W.2d 231, 237-38 (S.D. 1981); UCC 2-719 Official

3     Comment 1. ("[W]here an apparently fair and reasonable clause because of circumstances fails in

4     its purpose or operates to deprive either party of the substantial value of the bargain, it must give

5     way to the general remedies of this Article.").

6           Honda contends that its Warranty, in which it promises to "repair any part that is defective

7     in material or workmanship under normal use," does not cover design defects. While the cited

8     cases so hold, there is a great weight of authority to the contrary. *E.g., Alin v. American Honda*

9     *Motor Co., Inc.*, 2010 WL 1372308, at *5-6 (D.N.J. Mar. 31, 2010); *In re Saturn L-Series Timing*

10    *Chain Product Liability Litigation*, 2008 WL 4866604, at *14 (D. Neb. Nov. 7, 2008) ("[D]esign

11    is integrated into each step of the manufacturing process and affects both materials and

12    workmanship"); *see also, e.g.*, *Volkswagen Timing Chain*, 2017 WL 1902160, at *12 (holding that

13    it is inappropriate to distinguish between defects in workmanship vs. defective design at the

14    pleading stage). Indeed, until discovery of the actual nature of the defect is completed, it is

15    unknown whether the defect relates to materials or workmanship or design.

16          Consumers purchasing an automobile from Honda (or any other auto manufacturer)

17    reasonably expect that the vehicle be free of material defects, whether in materials, workmanship

18    or design. The purpose of Honda's Warranty is to give consumers what they paid for, *i.e.*, if a

19    vehicle fails, Honda will repair it so that it is free of material defects. Honda's position that its

20    Warranty does not cover design defects may be supported by caselaw, but it is not supported by

21    practical reality. Honda's differentiation between design defects and defects in materials and

22    workmanship is not a legitimate, agreed-upon allocation of risk between Honda and the consumer

23    that Honda assumed the risk of defects in materials and workmanship and the consumer assumed

24    the risk of design defects. It is a *post hoc* rationalization trying to avoid liability to Plaintiffs and

25    the proposed classes. If a customer brought a Honda or Acura car to a dealer during the Warranty

26    period to repair some defect, the customer would not be told, "I'm sorry, sir, but your problem is

27    due to a design defect, so it's not covered under the Warranty." If such a thing were to happen,

1   the customer would be justifiably outraged.  No reasonable consumer would understand their

2   Warranty to cover some types of defects in their car, but, with other types of defects, they would

3   be on their own.  Indeed, that is what Honda contends that the Technical Service Bulletins directed

4   dealers to do with the defective HFL modules, notwithstanding the fact that Honda now claims

5   that the problem is not covered by the Warranty because it is due to a design defect, not a defect

6   in materials or workmanship.

7         If a problem with a car is due to a defect in materials or workmanship, that defect is covered

8   by the Warranty.  The problem is corrected under the Warranty at no charge to the consumer and

9   the consumer gets what he or she paid for, a car free of material defects at no extra charge.  On the

10   other hand, if the problem is caused by a design defect, Honda is equally at fault in providing a

11   defective car, but as far as Honda is concerned, the consumer has no remedy because that defect

12   is not covered by the Warranty.  That consumer has an equally defective car, but is stuck with

13   either having to pay for repairs, which is an additional cost to him or her to have a defect-free car,

14   or to live with a defective car.  Neither scenario gives the consumer the benefit of his or her bargain.

15   "[I]t is the very essence of a sales contract that at least minimum adequate remedies be available.

16   If the parties intend to conclude a contract for sale within this Article they must accept the legal

17   consequence that there be at least a fair quantum of remedy for the breach of the obligations or

18   duties outlined in the contract." UCC § 2-719 Official Comment 1.  Thus, if Honda's Warranty is

19   construed to exclude design defects, then it fails of its essential purpose because it leaves

20   consumers with no remedy for cars with design defects, and Plaintiffs and other Class members

21   are entitled to their remedies under UCC Sections 2-714 and 2-715.

22         Similarly, replacing defective parts (regardless of the origin of the defect) with equally

23   defective parts does not give the consumer the benefit of their bargain.[9]  Rather, it is nothing more

24   than replacing a broken defective part with a not-yet-broken defective part.  Indeed, a paradigm

25   example of where a remedy fails of its essential purpose is where repeated repair attempts are

---

26   [9]     Honda cites *Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 994 (N.D. Cal. 2013) for this

27   proposition.  Plaintiffs submit that *Ho* was, respectfully, incorrectly decided and, unlike in *Ho*, Plaintiffs do not concede that the warranty's time limit is valid.

1    unsuccessful within a reasonable time.  *E.g., Pacific Pulp Molding, Inc. v. Burchfield*, 2016 WL

2    6103086, at *4 (S.D. Cal. Jan. 27, 2016).  Replacing a defective part with another defective part is

3    an invitation to that exact situation.

### D.    As this Court has already established, Plaintiffs' implied warranty claims do not fail, under the laws of California and Texas, for lack of privity.

This Court has addressed and disposed of the question of whether privity is required for

breach of implied warranty claims.  *See* ECF No. 81 at 21-22 & 91 at 21, n. 20.  Nevertheless,

Honda now attempts to take a second bite at the apple, arguing again that the Plaintiffs' implied

warranty claims fail for lack of privity.  Just as before, Honda's argument is unavailing with respect

to the California and Texas claims.[10]

As this Court has already determined, "Plaintiffs' claim for breach of implied warranty

under Texas law does not fail for want of privity." ECF No. 81 at 22.  The Texas Supreme Court

has held that, "a manufacturer can be responsible, *without regard to privity*, for the economic loss

which results from his breach of [UCC]'s implied warranty of merchantability."  *Nobility Homes*

*of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 81 (Tex. 1977) (emphasis added).  The Texas Supreme

Court extended this rule even further, allowing a purchaser of a used good to bring an implied

warranty claim against a manufacturer without need for privity. *TMAN Engines & Components,*

*Inc. v. Shows*, 434 S.W.3d 132, 137 (Tex. 2014) (reaffirming *Nobility Homes* while stating that

"*Nobility Homes* applies equally to used goods").  Honda cites to only one case to the contrary –

*Cloer v. Gen. Motors Corp.*, 395 F. Supp. 1070, 1072 (E.D. Tex. 1975) – a federal district court

case predating the binding decisions by the state's supreme court.

---

[10] Honda also challenges Plaintiffs' implied warranty claims under Florida law. As Plaintiffs argued on the motion to dismiss their First Amended Complaint, Florida's highest court has held that an implied warranty claim for a purely economic injury does not require privity. *See Manheim v. Ford Motor Co.*, 201 So. 2d 440, 442 (Fla. 1967) ("[A]bsence of privity between the manufacturer and a purchaser … [does not] preclude recovery on the basis of implied warranty"). Despite this binding precedent, federal district and lower state courts have imposed privity requirement to claims for both economic and personal injuries, erroneously concluding that *Manheim* was implicitly overruled by a case that was expressly limited to claims for personal injury. Although this Court's initial order on that motion rejected Plaintiffs' argument, the Court's amended order did not adopt decision. *See* ECF No. 81 at 21 & ECF No. 91.

1    Similarly, this Court has already determined, and later reaffirmed, that "Plaintiffs' claim

2    for breach of implied warranty under California law does not fail for want of privity." *See* ECF

3    No. 81 at 22 & 91 at 21, n. 20.  Although California requires privity for breach of implied warranty

4    claims, it allows for several exceptions applicable in this case.  *See Clemens v. DaimlerChrysler*

5    *Corp.*, 534 F.3d 1017 (9th Cir. 2008).  One exception that was recognized by this Court is when

6    the defendant extends an express warranty.  *See generally Atkinson v. Elk Corp. of Texas*, 142 Cal.

7    App. 4th 212 (2006).   Additionally, Plaintiffs' claims qualify for another exception. Under

8    California law, "a third party beneficiary can enforce a contract made expressly for his benefit. . .

9    . A contract made expressly for a third party's benefit does not need to specifically name the party

10   as the beneficiary; the only requirement is that the party is more than incidentally benefitted by the

11   contract." *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008) (internal

12   citations   and   quotation   marks   omitted)   (concluding   that   plaintiffs   were,   as   third-

13   party beneficiaries, entitled to maintain a breach of implied warranty claim against the

14   manufacturer where plaintiffs, not the distributors, were the intended consumers). Courts have

15   repeatedly applied this exception in circumstances similar to this case.  *See In re Toyota Motor*

16   *Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145,

17   1184 (C.D. Cal. 2010) (finding that plaintiffs who purchased their cars from dealerships can

18   maintain implied warranty claims against the car's manufacturer because the plaintiffs, and not the

19   dealerships were the intended consumers);  *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d

20   936, 984 (N.D. Cal. 2014) (concluding that the consumers can maintain an implied warranty claim

21   against a car manufacturer because they are third-party beneficiaries of the contract between the

22   car manufacturer and a third party distributor)*; see also Barakezyan v. BMW of N. Am., LLC*, No.

23   CV1600173SJOGJSX, 2016 WL 2840803, at *9 (C.D. Cal. Apr. 7, 2016) (concluding that the a

24   plaintiff does not need to expressly allege that he was the intended consumer, so long as he "alleges

25   facts tending to support that he is a third party beneficiary") (internal citations omitted).

26

27

### E.    Plaintiffs may assert Magnuson-Moss Warranty Act claims because they assert viable state law warranty claims.

Plaintiffs agree with Honda that this court's disposition of the state law warranty claims determines the disposition of the MMWA claims. *DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008). Because Plaintiffs have alleged viable state law claims, their MMWA claims must not be dismissed.

### F.    Plaintiffs who purchased used cars can obtain restitution under UCL.

The Plaintiffs who purchased their cars used have sufficiently pled UCL claims to survive this motion to dismiss.  The California Supreme Court has limited monetary recovery under the UCL to restitution and defined "an order for 'restitution' as one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken.'"  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).  However, "[n]othing in *Korea Supply* conditions the recovery of restitution on the plaintiff having made direct payments to a defendant who is alleged to have engaged in . . . unlawful practices under the UCL."  *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1494 (2007) (allowing a consumer's UCL claim to proceed against a manufacturer, despite the fact that the consumer purchased the product from a third-party retailer).

Under this standard, Plaintiffs who bought used cars have sufficiently plead that they have conferred a benefit on Honda that should be returned as restitution.  Plaintiff Criner bought his car "certified pre-owned" from a Honda dealership in Florida.  SAC ¶ 95.  Criner also took his car to the dealership for service on multiple occasions when the car malfunctioned.  SAC ¶ 102.  Plaintiff Crooks bought his car from an Acura dealership in Ohio.  SAC ¶ 205.  Plaintiff Gerstle had to use Acura roadside assistance service and take his car to an Acura dealership as a result of problems caused by the HFL.  SAC ¶ 230.  At the very least, these allegations are sufficient at the motion to dismiss stage.  Plaintiffs should be allowed discovery before they are required, if at all, to make more specific allegations.

### G. Plaintiffs' claims for equitable relief under UCL and CLRA can be pled in the alternative to any legal relief.

Defendant argues that consumers may only seek relief under the UCL and CLRA when there is no legal remedy available to them.  As this Court recently held, this is not the law: "this Court is aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in the alternative to legal remedies at the pleadings stage." *Adkins v. Comcast Corp.*, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1, 2017) (citing *Cabrales v. Castle & Cooke Mortg., LLC*, 2015 WL 3731552, at *3-4 (E.D. Cal. June 12, 2015).  Indeed, the UCL specifically allows for the equitable remedies to be sought alongside any legal remedies that may be available:

> Unless otherwise specifically provided, the remedies or penalties provided by this chapter are cumulative to each other, and to the remedies or penalties available under all other laws of this state.

Cal. Bus & Prof. Code § 17205.

Plaintiffs suggest that the primary authority relied on by Honda misinterprets California law.  *Munning v. Gap, Inc.* announced a sweeping rule that denies consumers access to the UCL and CLRA when there is some other, legal route for relief.  238 F. Supp. 3d 1195, 1204 (N.D. Cal. 2017).  This turns the rule, and the purpose of these remedial statutes, on their heads.  *Munning* is based on a California decision that recognized some specific statutory remedies may be exclusive of other remedies, including the UCL and CLRA.  *See Cabrales v. Castle & Cooke Mortg., LLC*, 2015 WL 3731552 at *4 (E.D. Cal. June 12, 2015).  The legal remedies pursued by plaintiffs are not exclusive and as such do not preclude relief under the UCL and CLRA. *Id.*

## V. CONCLUSION

For the foregoing reasons, Plaintiffs request that Honda's Combined Motion to Dismiss Certain Counts in Plaintiffs' Second Amended Complaint, to Strike Certain Restitution Claims, and for Sanctions for Spoliation of Evidence be denied.

1    DATED this 6th day of October, 2017.

2

3                                                  SEEGER WEISS LLP

4                                         By:   _s/Christopher A. Seeger_
                                               Christopher A. Seeger (*pro hac vice*)
5                                               Email:  cseeger@seegerweiss.com
                                               77 Water Street
6                                               New York, New York 10005
                                               Telephone: (212) 584-0700
7                                               Facsimile: (212) 584-0799

8                                               James E. Cecchi (*pro hac vice*)
                                               Email: jcecchi@carellabyrne.com
9                                               CARELLA, BYRNE, CECCHI, OLSTEIN,
                                               BRODY & AGNELLO, P.C.
10                                              5 Becker Farm Road
                                               Roseland, New Jersey 07068
11                                              Telephone: (973) 994-1700
                                               Facsimile: (973) 994-1744
12
                                                *Interim Co-Lead Class Counsel*
13
                                                *Of Counsel:*
14
                                               James C. Shah (on brief)
15                                              Shepherd Finkelman Miller & Shah, LLP
                                               44 Montgomery Street, Suite 650
16                                              San Francisco, CA 94104
                                               Telephone: 415-429-5272
17                                              Facsimile: (866) 300-7367
                                               Email: jshah@sfmslaw.com
18
                                               Toby James Marshall (*pro hac vice*)
19                                              Amanda M Steiner (on brief)
                                               Brittany A. Madderra (*pro hac vice*)
20                                              Terrell Marshall Law Group PLLC
                                               936 North 34th Street, Suite 300
21                                              Seattle, WA 98103-8869
                                               Telephone: (206) 816-6603
22                                              Facsimile: (206) 350-3528
                                               Email: tmarshall@terrellmarshall.com
23                                              Email: asteiner@terrellmarshall.com
                                               Email: bmadderra@terrellmarshall.com
24

25

26

27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Steve W. Berman (*pro hac vice*)
Catherine Y.N. Gannon *(pro hac vice)*
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com
Email: catherineg@hbsslaw.com

Roland K. Tellis (SBN 186269)
Mark P. Pifko (SBN 228412)
BARON & BUDD, P.C.
15910 Ventura Blvd, Suite 1600
Encino, CA  91436
Telephone: (818) 839-2320
Facsimile: (818) 986-9698
Email: rtellis@baronbudd.com
Email: mpifko@baronbudd.com

1

## **CERTIFICATE OF SERVICE**

2

I, Christopher A. Seeger, hereby certify that on October 6, 2017, I caused true and correct

3

copies of the foregoing to be served, pursuant to this Court's electronic filing procedures, via the

4

ECF system.

5

DATED this 6th day of October, 2017.

6

7

SEEGER WEISS LLP

8

By:    /s/ Christopher A. Seeger
        Christopher A. Seeger, *Admitted Pro Hac Vice*
        Email:  cseeger@seegerweiss.com

9

        77 Water Street
        New York, New York 10005

10

        Telephone: (212) 584-0700
        Facsimile: (212) 584-0799

11

12

*Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27