Livia M. Kiser (SBN 285411)
lkiser@sidley.com
Michael C. Andolina (admitted *pro hac vice*)
mandolina@sidley.com
Andrew J. Chinsky (admitted *pro hac vice*)
achinsky@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

Eric B. Schwartz (SBN 266554)
eschwartz@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Tel: (213) 896-6666
Fax: (213) 896-6600

*Attorneys for Defendant American Honda Motor Co. Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| LINDSEY and JEFF ABERIN, DON AWTREY, CHARLES BURGESS, DANIEL CRINER, JARED CROOKS, MARK GERSTLE, JOHN KELLY, YUN-FEI LOU, JOY MATZA, JORDAN MOSS, DONALD TRAN, and MELISSA YEUNG, individually and on behalf of all others similarly situated.<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>Defendant. | Case No. 3:16-cv-04384-JST<br><br>**AMERICAN HONDA MOTOR CO., INC.'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE OR, IN THE ALTERNATIVE, FOR AN ORDER TO SHOW CAUSE**<br><br>Date: December 14, 2017<br>Time: 2:00 p.m.<br>Place: Courtroom 9, 19th Floor, Phillip Burton Federal Building<br>The Hon. Jon S. Tigar |

# TABLE OF CONTENTS

**STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L.R. 7-4(A)(3)** ........................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................................ 1

    **I.**    **INTRODUCTION** ................................................................................................ 1

    **II.**   **LEGAL STANDARD** ......................................................................................... 2

    **III.**  **ARGUMENT** ...................................................................................................... 3

        **A.**    **Plaintiffs' Creative Theory Of "Relevance" Is Wrong** ........................... 3

        **B.**    **Plaintiffs' Willful or Negligent Disposal Of Their Vehicles Shows They Acted With A "Culpable State Of Mind"** ......................... 6

        **C.**    **Plaintiffs Had A Duty To Preserve Their Vehicles, Yet Discarded Them Anyway.** ....................................................................... 7

        **D.**    **Plaintiffs' Spoliation Irreparably Prejudiced AHM** .............................. 9

        **E.**    **Alternatively, Plaintiffs Should Have To Demonstrate The Means By Which They Intend To Prove Their Claims** ...................... 10

**CONCLUSION** ............................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
 861 F.2d 224 (9th Cir. 1988) ..................................................................................................9

*Apple Inc. v. Samsung Elecs. Co.*,
 881 F. Supp. 2d 1132 (N.D. Cal. 2012) ..................................................................................2

*In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*,
 289 F.R.D. 526 (N.D. Cal. 2012)............................................................................................2

*Baxter v. Palmigiano*,
 425 U.S. 308 (1976)................................................................................................................4

*Compass Bank v. Morris Cerullo World Evangelism*,
 104 F. Supp. 3d 1040 (S.D. Cal. 2015)...................................................................................8

*Diamond Ben. Life Ins. Co. v. Dreyfuss*,
 No. 96-55488, 1997 WL 406771 (N.D. Cal. July 18, 1997) ..................................................3

*Doyle v. Chrysler Group LLC*,
 No. SACV 13-00620 JVS, 2014 WL 7690155
 (C.D. Cal. Oct. 9, 2014) ..................................................................................................5, 8, 9

*Gibson v. Chrysler Corp.*,
 261 F.3d 927 (9th Cir. 2001) ..................................................................................................3

*Glover v. BIC Corp.*,
 6 F.3d 1318 (9th Cir. 1993) ....................................................................................................6

*Intermatch, Inc. v. Nxtbigthing, LLC*,
 No. 14-cv-05438-JST, 2016 WL 491483
 (N.D. Cal. Feb. 8, 2016)..........................................................................................................8

*Lozano v. AT&T Wireless Servs., Inc.*,
 504 F.3d 718 (9th Cir. 2007) ..................................................................................................2

*In re Painewebber Ltd. P'ships Litig.*,
 147 F.3d 132 (2d Cir. 1998)....................................................................................................4

*Reinsdorf v. Skecher U.S.A., Inc.*,
 296 F.R.D. 604 (C.D. Cal. 2013)............................................................................................4

*Societe Internationale Poru Participations Industrielles
  Et Commerciales, S.A. v. Rogers*,
 357 U.S. 197 (1958)................................................................................................................3

*Standard Fire Ins. Co. v. Knowles*,
 568 U.S. 588 (2013) ..................................................................................................................3

*Starline Windows Inc. v. Quanex Building Prods. Corp.*,
 No. 15-CV-1282-L (WVG), 2016 WL 4485568
 (S.D. Cal. Aug. 19, 2016) ............................................................................................3, 4, 5, 6

*TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktienbolaget LM Ericsson*,
 No. SA CV 14-00341-JVS, 2016 WL 6693148
 (C.D. Cal. Jan. 25, 2016) ..........................................................................................................7

*Tourgeman v. Collins Fin. Servs., Inc.*,
 No. 08CV1392-CAB NLS, 2012 WL 1327824
 (S.D. Cal. Apr. 17, 2012) ..........................................................................................................2

*Trujillo v. Ametek, Inc.*,
 NO. 15CV1394 GPC (BGS), 2016 WL 853052
 (S.D. Cal. Mar. 4, 2016) ...........................................................................................................7

*Victorino v. FCA U.S. LLC*,
 No. 16CV1617-GPC(JLB), 2017 WL 4541653
 (S.D. Cal. Oct. 11, 2017) .................................................................................................. *passim*

**Other Authorities**

Fed. R. Evid. 401 ..............................................................................................................................3

**STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L.R. 7-4(A)(3)**

In addition to the Statement Of Issues To Be Decided set forth in its Motion for Sanctions ("Motion"), Defendant American Honda Motor Co., Inc. ("AHM")[1] offers this additional Statement Of Issues To Be Decided:

1. Whether Mr. Crooks, Ms. Matza, and Mr. Moss have offered any plausible basis for the Court to find they did not have a duty to preserve their vehicles?

2. Whether vehicles of proposed class representatives are irrelevant simply because these named plaintiffs seek to bring a case as a class action?

3. Whether Mr. Crooks, Ms. Matza, and Mr. Moss have suggested any alternative sanction besides dismissal that would fully and fairly mitigate the prejudice caused to AHM?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The HandsFreeLink ("HFL") components in the vehicles previously owned by Mr. Crooks, Ms. Matza, and Mr. Moss were not defective. The problems alleged in these plaintiffs' vehicles were caused by driver error, damage (spilled coffee or Coke, perhaps), or possibly one of a myriad of other one-off issues, but decidedly *not* by a defect extant in the various HFL components of every single Acura make and model ever made. In fact, no such "defect" exists. And, plaintiffs cannot possibly meet the rigorous standards of Rule 23 no matter how they attempt to define their class, including because, *inter alia*, plaintiffs' claims are not typical of the proposed class members they seek to represent.

AHM believes the evidence in this case will prove the above statements to be true. Indeed, AHM intends to proffer evidence that establishes each one of these facts, and more. But because Mr. Crooks, Ms. Matza, and Mr. Moss discarded their cars and HFL components notwithstanding their duty to preserve them, critical evidence essential to AHM's defenses is gone, and plaintiffs' conduct calls for an appropriate sanction.

---

[1] As with previous pleadings, plaintiffs again improperly refer to AHM generically as "Honda," obscuring the distinction between AHM, other Honda entities, and (completely independent) Honda and Acura dealers. AHM has previously cautioned plaintiffs against this practice, but plaintiffs ignore this admonition and continue to engage in (what appears to be) a strategy to confuse the Court.

In their Opposition to AHM's Motion ("Opposition"), plaintiffs argue that since this "litigation involves a class-wide defect . . . no particular vehicle is 'relevant' evidence." Opp. at 2. Plaintiffs' dubious argument is based on a tautology that this Court cannot accept at face value: *i.e.*, there is no need to prove the representative vehicles have a defect because all of the vehicles have a defect (and, by the way, all such defects are identical).[2] The Court cannot accept this tautology as true because plaintiffs' wishful thinking is not the law. To the contrary, in a case where each plaintiff makes claims about—and seeks recovery for—allegedly defective parts in dozens of different models of cars that they and proposed class members have owned for many years, the allegedly defective parts (and the vehicles in which they were installed) are essential to proving or disproving each plaintiff's individual claim. And although plaintiffs' attempt to describe the legal standard of culpability as requiring a specific intent to destroy evidence, under the actual standard, even "willful" or "negligent" conduct (*i.e.*, without malice) merits a sanction. So long as the Court finds the spoliated evidence to be relevant (incredibly, plaintiffs attempt to argue otherwise), sanctions should issue because plaintiffs violated their duty to preserve this evidence. Sanctions are especially warranted against Mr. Moss, who blatantly violated an order of this Court by selling his car after he promised he would preserve evidence. D.E. 41, at 4. But in truth, Ms. Matza and Mr. Crooks fare no better, having pled facts in the Second Amended Class Action Complaint ("SAC") that demonstrate a duty to preserve evidence was triggered long before they disposed of their cars (even though pled in an attempt to resurrect stale claims under the discovery rule and equitable tolling). Infra § III.C. AHM's motion is properly granted.

## II.     LEGAL STANDARD

The parties agree that spoliation occurs when (1) a party has a duty to preserve evidence, (2) the party destroyed evidence with a culpable state of mind, and (3) the evidence was relevant. *Apple*

---

[2] "As the party seeking class certification, [the plaintiff] bears the burden of demonstrating that he has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). When ruling on class certification the court must resolve any factual or legal disputes that are material to its Rule 23 analysis and find that the plaintiff has met its burden of proof based on ***evidence***, not speculation. *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08CV1392-CAB NLS, 2012 WL 1327824, at *2 (S.D. Cal. Apr. 17, 2012); *In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 530 (N.D. Cal. 2012) (in class certification decision, courts may consider supplemental evidentiary submissions of the parties, which may entail overlap with merits).

*Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012).[3] The parties disagree that plaintiffs Moss, Matza and Crooks had a duty to preserve their vehicles, that they discarded their vehicles with a culpable state of mind, or that the evidence was relevant. Plaintiffs' Opposition roughly addresses these factors in reverse order, so AHM will do the same in this Reply.

## III.   ARGUMENT

### A.   Plaintiffs' Creative Theory Of "Relevance" Is Wrong

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Applying this rubric, the vehicles the plaintiffs disposed of were relevant because (a) the HFL components in the now-lost vehicles, when tested, would have tended to prove or disprove whether they contained any defect (and if yes, whether such defect(s) could possibly be identical to each other and/or to any other vehicle(s) in the proposed class(es)); which (b) is of paramount consequence in determining not only the merit (or lack thereof) of plaintiffs' individual claims, but also whether plaintiffs satisfy the rigorous requirements of Rule 23. Plaintiffs' vehicles are plainly "at the epicenter of the litigation, and thus are relevant to the parties' claims and defenses. Plaintiffs' claims to the contrary lack credibility." *Starline Windows Inc. v. Quanex Building Prods. Corp.*, No. 15-CV-1282-L (WVG), 2016 WL 4485568, at *8 (S.D. Cal. Aug. 19, 2016) (imposing sanctions).

Plaintiffs' Opposition relies entirely upon the premise that their spoliation is proper simply because they *hope* to bring their claims on behalf of putative classes. But unless and until a class is certified, all plaintiffs have are their individual claims. As the Ninth Circuit has explained:

> A class action complaint is filed only by a named plaintiff or plaintiffs. Although such an action is often referred to as a class action when it is filed, it is, at the time of filing, only a would-be class action. It does not become a class action until certified by the district court.

*Gibson v. Chrysler Corp.*, 261 F.3d 927, 937 (9th Cir. 2001). *See also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) (noting plaintiff who filed proposed class action cannot legally

---

[3] To the extent that plaintiffs purport to argue AHM applied an "incorrect legal standard," Opp. at 8, plaintiffs fabricate an issue where none exists. The parties agree on the legal standard. AHM cited *Societe Internationale Poru Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 211 (1958), and *Diamond Ben. Life Ins. Co. v. Dreyfuss*, No. 96-55488, 1997 WL 406771, at *5 (N.D. Cal. July 18, 1997), as examples of when the sanction of dismissal may or may not be appropriate.

bind members of proposed class before the class is certified); *In re Painewebber Ltd. P'ships Litig.*, 147 F.3d 132, 137 (2d Cir. 1998); *Baxter v. Palmigiano*, 425 U.S. 308, 310-11 n.1 (1976) (same).

Plaintiffs cite no law to support their fanciful argument that key evidence highly probative of their individual claims is somehow rendered "irrelevant" in a proposed class action, even before a class has been certified and before plaintiffs have established any wrongdoing by the defendant at all. Plaintiffs cite no law in support of this bizarre theory because no such law exists. In fact, plaintiffs' single citation actually supports *AHM*. In *Reinsdorf v. Skecher U.S.A., Inc.*, 296 F.R.D. 604, 630 (C.D. Cal. 2013) (cited at Opp. at 4), the court denied a sanction for spoliation only because defendant actually had an *identical copy* of the document that had been destroyed. In this case, and unlike the defendant in *Reinsdorf*, AHM does not have exact copies of the vehicles Mr. Crooks, Ms. Matza, and Mr. Moss disposed of. Nor could it, because plaintiffs' vehicles are unique: vehicle condition and longevity varies greatly depending on how a person drives and maintains his or her vehicle, and certain experiences can and do have a dramatic impact on the performance and life of HFL components (*e.g.*, liquid spills, aftermarket parts, home "repairs," collisions, moisture through an open sunroof, abuse, *etc.*). Plus these vehicles are *very* old, and many are off the road.

A far closer analogue to the issue presented here is *Starline Windows Inc. v. Quanex Building Products Corporation.* In *Starline*, plaintiffs destroyed allegedly defective products before providing defendants with notice or a chance to inspect them. 2016 WL 4485568, at *1-2. Defendants moved for sanctions. Plaintiffs argued that the lost evidence was "not unique or relevant because there are still hundreds of [products] with the exact same problem." *Id.* at *5. The court disagreed, and sanctioned plaintiffs. In addition to stating plaintiffs' position lacked credibility, the court explained:

> If the destroyed [products] lack relevance, as Plaintiffs claim, it is difficult to imagine how the remaining [products] are also not relevant. Certainly all of the [products] were relevant, if not as to liability in the first instance, then as to computation of damages. No one, not even Plaintiffs because they had no experts inspect or test any of the destroyed [products], can state with any degree of reasonable certainty what, why, or how the [destroyed products] suffered damage. The available evidence (photographs, owner complaints, and warranty claim forms) do not tell the complete story as to each destroyed [product]. . . ***Simply because other [products] may remain to be tested does not make irrelevant the [] destroyed [products] removed from different structures.***

*Id.* at *8 (emphasis added).

In this case, unlike the products in issue in *Starline*, which (when new) were materially identical (but the court nevertheless sanctioned plaintiffs for having disposed of some of them), plaintiffs here preposterously allege that the HFL components in literally over one hundred ***different*** model year vehicles are "the same" and identically defective. Plaintiffs say, therefore, "no harm, no foul" when three named plaintiffs knowingly disposed of three completely different makes and model year vehicles and their HFL components. Opp. at 1. Put another way, if the *Starline* court sanctioned plaintiffs for destroying "identical" windows because so doing prevented plaintiffs from being able to "state with any degree of reasonable certainty what, why, or how the [destroyed products] suffered damage," *Starline*, 2016 WL 4485568, at *2, then this situation presents an even more compelling case for sanctions, where the vehicles and HFL components in issue span fifteen-plus years and are obviously nowhere close to identical. *See*, *e.g*., SAC at ¶¶ 2, 315 (plaintiffs purport to represent *all* persons who purchased or leased an Acura with a HFL system since technology was first offered in 2004).

Plaintiffs also fail to meaningfully distinguish any of the case law cited by AHM. Plaintiffs argue that some of the cases cited by AHM are inapplicable because they involved claims asserted by individual plaintiffs (rather than named plaintiffs), but again, the fact that a case is or is not brought as a proposed class action has nothing to do with relevance, particularly where no class has been certified. Notably, Plaintiffs also argue that *Doyle v. Chrysler Group LLC*, No. SACV 13-00620 JVS, 2014 WL 7690155 (C.D. Cal. Oct. 9, 2014), is inapplicable because the case dealt with replacement parts rather than original parts and the decision was issued on class certification. AHM cannot understand how these arguments persuasively distinguish the holding in *Doyle*, and in fact they do not.

Finally, plaintiffs state without basis that "Honda's own records establish which of its vehicles had the defective HandsFreeLink units." Opp. at 5. This is nothing more than a hopeful wish, but in any event, evidence is no less relevant (and a plaintiff is not excused from preserving it) just because he or she believes the defendant somehow can provide substitute evidence for what a plaintiff has destroyed. In fact, the key records that plaintiffs claim demonstrate AHM's knowledge of the "defect"—the Technical Service Bulletins ("TSBs") referenced in their operative pleading—

do *not* include the models and years of vehicles formerly owned by Mr. Crooks, Ms. Matza, and Mr. Moss. *Compare* Ex. A and Ex. B. to AHM's Second Request for Judicial Notice, D.E. 59 (Feb. 3, 2017) (covering 2004-2008 TL and 2008 MDX) *with* SAC ¶¶ 154, 177, and 205 (Mr. Moss bought a used 2006 TSX, Ms. Matza bought a used 2006 MDX, and Mr. Crooks bought a used 2007 MDX). Thus, the TSBs are probative of literally nothing with respect to the vehicles of Mr. Moss, Ms. Matza and Mr. Crooks, but even if they were, plaintiffs' spoliation is not excused by the TSBs.

### B. Plaintiffs' Willful or Negligent Disposal Of Their Vehicles Shows They Acted With A "Culpable State Of Mind"

Plaintiffs argue that, in order to be sanctioned, they needed to have some kind of specific "intent to deceive," Opp. at 8, or an "evil motive" to spoil evidence, Opp. at 3. Not so. "The culpable state of mind factor is met by demonstrating that the evidence was destroyed knowingly, even if *without intent* to breach a duty to preserve it, or negligently." *Victorino v. FCA U.S. LLC*, No. 16CV1617-GPC(JLB), 2017 WL 4541653, at *9 (S.D. Cal. Oct. 11, 2017) (citation omitted). Further, each plaintiff's "'destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Id.* (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)). In fact, the Court need *not* find plaintiffs acted in bad faith to impose sanctions. "Surely a finding of bad faith will suffice, but so will simple notice of potential relevance to the litigation." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (citation omitted). The *Starline* court carefully described this distinction:

> Willfulness does not mean bad intent or malicious conduct. An actor may do something with intent or willfully but with no bad faith. Bad faith is always willful, but willful conduct does not always include bad faith. The Court is not saying or even implying that Plaintiffs' conduct in destroying the [evidence] was done in bad faith. There is absolutely no evidence to support that conclusion. But there is ample evidence to demonstrate that the destruction was done willfully, intentionally, and with purpose. This, not even Plaintiffs can deny. Under current case law, willful conduct, even without bad faith, is sufficient to support the "culpable state of mind" element.

*Starline*, 2016 WL 4485568, at *12 (citation omitted).

In line with this guidance, AHM is not required to prove what plaintiffs' motives were in discarding their vehicles in order for sanctions to issue, and certainly does not need to show plaintiffs possessed some kind of "mens rea." Opp. at 7 n.5. It also does not matter if plaintiffs'

"actions were innocent and motivated by considerations unrelated to this litigation." *Id.* at 8. It is entirely proper for AHM to seek to "restore evidentiary balance" by holding plaintiffs accountable for failing to preserve highly relevant evidence when they knew or should have known they had a duty to preserve it, and their failure to do so has put some of the most important evidence in this case forever out of reach. *Victorino*, 2017 WL 4541653, at *9 (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002)).

Finally, even if plaintiffs' conduct was "at most" negligent, the Court should still impose sanctions because plaintiffs' conduct has demonstrably prejudiced AHM. Indeed, even if plaintiffs' vehicles are not the *only* evidence tending to prove or disprove their individual claims (though they might well be), the vehicles certainly are the *best* evidence, which plaintiffs by their conduct have placed out of reach. *Victorino*, 2017 WL 4541653, at *9 (citing *Residential Funding Corp.*, 306 F.3d at 108 (plaintiffs should "bear the risk of [their] own negligence")). *See also Trujillo v. Ametek, Inc.*, NO. 15CV1394 GPC (BGS), 2016 WL 853052, at *5 (S.D. Cal. Mar. 4, 2016) (finding "negligence is a sufficiently culpable state of mind in the context of spoliation sanctions"); *TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktienbolaget LM Ericsson*, No. SA CV 14-00341-JVS (DFMx), 2016 WL 6693148, at *2 (C.D. Cal. Jan. 25, 2016) (holding culpable state of mind can include negligence, especially where moving party can show prejudice and relevance to justify a severe sanction).

**C.    Plaintiffs Had A Duty To Preserve Their Vehicles, Yet Discarded Them Anyway**

In its Motion, AHM laid out the specific facts and timelines relevant to each plaintiff that made clear they had a duty to preserve evidence at the time they disposed of their vehicles.

- Mr. Crooks bought his car in July 2012, alleges he first learned about the battery drain issues in June 2014, experienced repeated battery issues with his car for two years, traded in his car in June 2016 (allegedly for less than it was worth), and then joined this lawsuit in October 2016. Mot. at 8; SAC ¶¶ 205, 210, 213, 218.
- Ms. Matza bought her car in 2006, replaced her battery about 8 times and jumpstarted her car at least 10 times, "found the true source of the battery-drain issue" in July 2016, sold her car in May 2017, and joined this lawsuit in July 2017. Mot. at 8-9; SAC ¶¶ 177, 189, 190, 193. She does not allege whether she had contacted counsel before she sold her car,

and she refuses to answer this question despite the fact that AHM raised it in its Motion. Mot. at 2 ("she is conspicuously silent").

- Mr. Moss bought his car in 2013, allegedly had problems with his vehicle's battery shortly after his purchase, has had his battery jump-started at least 15 times, "happened to stumble on information online" about replacing the HFL in March 2014, joined this lawsuit in October 2014, and then sold his car in February 2017. Mot. at 11; SAC ¶¶ 154, 159, 160, 161; Ex. 1 to Motion (Moss Discovery Response).

On November 28, 2016, all plaintiffs—including Mr. Moss and Mr. Crooks—represented to the Court that they had "taken reasonable and proportionate steps to preserve relevant evidence relevant to the issues reasonably evident in this action." D.E. 41, at 4.

Mr. Moss does not respond to these facts (because he obviously had a duty to preserve his car during the pendency of litigation). Neither do Mr. Crooks nor Ms. Matza address these facts head on, but instead argue that because they were not named parties in the litigation when they sold their vehicles, they "could have no duty" to preserve their cars (tacitly attempting to distinguish themselves from Mr. Moss). Opp. at 6-7. Similar to their argument regarding the "culpable state of mind," plaintiffs claim that AHM must show plaintiffs had a specific intent to litigate (as Mr. Moss obviously did) at the time of the spoliation for a duty to preserve to exist.

Plaintiffs are wrong. Plaintiffs appear to be intentionally or accidentally missing the point (does not matter which), stubbornly misreading the actual standard. Parties are under a duty to preserve what they know or *reasonably should know* is relevant to a claim, which extends to the period *before* litigation when a party should know that evidence may be relevant to future litigation. *Intermatch, Inc. v. Nxtbigthing, LLC*, No. 14-cv-05438-JST, 2016 WL 491483, at *3 (N.D. Cal. Feb. 8, 2016) (Tigar, J.); *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1055 (S.D. Cal. 2015). For this reason, plaintiffs do not (and cannot) meaningfully distinguish *Doyle* and do not present a situation analogous to that in *Victorino*. Plaintiffs say "the *Doyle* court imposed spoliation sanctions only after expressly finding that, before trading in her defective vehicle, the plaintiff specifically looked into litigation" Opp. at 6-7, and argue that the *Victorino* court found one of the plaintiffs (but not the other) lacked a duty to preserve where it was "not evident that litigation

was 'probable' in Victorino's mind" when he allowed the allegedly defective part to be thrown away. *See* Opp. at 7; *Victorino*, 2017 WL 4541653, at *9; *Doyle*, 2014 WL 7690155, at *3.[4] These ancillary points do not bear directly on the question of whether litigation was or reasonably should have been anticipated by these plaintiffs *here*.

Fortunately, plaintiffs' allegations in the SAC provide the answer to that question, and clearly show that litigation was or reasonably should have been anticipated at the times Mr. Moss, Mr. Crooks, and Ms. Matza sold their cars. Mot. at 8-9, 11. Strikingly absent from plaintiffs' Opposition is any statement of when plaintiffs' duty to preserve evidence *did* arise. Under plaintiffs' meritless legal theory, the duty apparently *never* arose, not even for Mr. Moss, who expressly represented to this Court that he would preserve evidence; that representation obviously meant nothing because he sold his car soon thereafter. Ex. 1 to Motion (Moss Discovery Response). And neither Mr. Crooks nor Ms. Matza make any attempt to reconcile having (1) pled facts in the SAC demonstrating litigation was or reasonably should have been anticipated well before they joined this lawsuit, with (2) discarding their cars after the duty to preserve evidence had been triggered. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (facts asserted in pleadings "are considered judicial admissions conclusively binding on party who made them.").

### D.      Plaintiffs' Spoliation Irreparably Prejudiced AHM

Because plaintiffs' vehicles (and the HFL components therein) are so central to this case, AHM has suffered incurable prejudice as a result of these plaintiffs intentionally placing their cars beyond reach (and one cannot help but question whether *any* plaintiff in this case is preserving evidence, given plaintiffs' position in this Motion that they have no such duty). But plaintiffs' argument to the contrary is incredible, based as it is on the faulty premise that because this is a proposed class action, named plaintiffs are somehow excused from having to actually prove their own individual claims.[5] As AHM has already pointed out to the Court, it cannot test other named

---

[4] With this attempt to distinguish *Doyle*, plaintiffs concede they conducted no reasonable investigation into their claim by the time they discarded their vehicles—which means they should not be able to invoke the discovery rule or fraudulent concealment tolling to save claims barred by the statute of limitations as a matter of law. *Compare, e.g.*, SAC ¶¶ 182-93 (explaining alleged issues with Ms. Matza's car from 2007 to 2016) *with* Plaintiffs' Opposition to Defendant's Motion to Dismiss, D.E. 112, at 4 (arguing Ms. Matza specifically alleged time of discovery was July 2016).

[5] Plaintiffs also purport to cite *Victorino* for the proposition that the Court should defer a ruling on this Motion, but in

plaintiffs' vehicles and assume identical results would occur in the disposed-of vehicles. All of plaintiffs' vehicles are different and unique.[6]

### E. Alternatively, Plaintiffs Should Have To Demonstrate The Means By Which They Intend To Prove Their Claims

Plaintiffs have not offered an alternative sanction to dismissal that would fairly mitigate the prejudice to AHM. And given Mr. Moss violated an express order of this Court and spoliated key evidence after promising this Court he would preserve it, Mr. Moss's claims are especially worthy of dismissal with prejudice.

As to Ms. Matza and Mr. Crooks, AHM submits they cannot both argue the existence of facts supporting their contention that equitable tolling and the discovery rule apply while disclaiming a concomitant duty to preserve evidence as they have done. Moreover, AHM submits that Mr. Crooks' representation to this Court that he had preserved evidence—even though he had already disposed of the best evidence that would prove or disprove his claims—remains troubling. Although an order to show cause would not mitigate the prejudice suffered by AHM, if the Court is inclined to issue a rule to show cause against one or more of the plaintiffs rather than outright dismissal at this stage of the proceedings, the issuance of such a rule would allow AHM and this Court to evaluate the manner in which plaintiffs Crooks, Matza (and/or Moss, as applicable) intend to prove their individual claims (and how, in turn, AHM will be able to prove its affirmative defenses in response to plaintiffs' offer of "proof" without having access to plaintiffs' vehicles).

AHM should not have to conduct expensive, inefficient, and needless discovery of plaintiffs who cannot satisfy their burden of proof in the first place and therefore cannot represent a putative class. In response to an order to show cause, plaintiffs would not, as they argue, need to *prove* their case. But they would have to explain how they intend to prove the HFL components in their

---

*Victorino*, the prejudice to the moving party was mitigated because it had already had one chance to inspect plaintiff's vehicle, and the court did *not* defer its decision to issue sanctions—it decided an adverse instruction was warranted, but only deferred the *type* of adverse instruction. 2017 WL 4541653, at *7, 12.

[6] Grasping, plaintiffs' also argue AHM has access to "documents relating to the initial design, development, and testing of the Bluetooth units," Opp. at 9, but (1) that is not true (AHM purchased pre-assembled components from third-party suppliers, as AHM has repeatedly advised plaintiffs) and (2) even if AHM had such information (though it does not), plaintiffs do not explain how such information would fairly substitute for their failure to preserve the actual vehicles and components themselves (because they plainly cannot). Even the TSBs referenced in the SAC do not include the models and years of the vehicles formerly owned by Mr. Crooks, Ms. Matza, and Mr. Moss. *Supra* at § III.A.

particular cars are identically defective to all other HFL components in all other Acura vehicles, how they can possibly be typical or adequate representatives of their proposed classes, and why it would be fair for them to continue prosecuting their claims in this action after depriving AHM of the central (perhaps only) evidence that would be dispositive of plaintiffs' claims in favor of AHM.

## CONCLUSION

To avoid further prejudice, AHM respectfully submits the Court can and should issue appropriate sanctions.[7] The allegations in the SAC and Mr. Moss's sworn discovery responses provide all of the facts necessary to determine spoliation has taken place. The last thing AHM desires is to "make[] waste," Opp. at 10, but it is far more inefficient to proceed with discovery against three plaintiffs who can never prove their case than it is to dismiss these claims now and proceed with the remaining claims that reasonably can be proved or disproved. AHM respectfully requests that the Court grant the Motion and issue the sanction of dismissal against Mr. Crooks, Ms. Matza, and Mr. Moss because they knowingly, willfully, or—at the very least—negligently sold their vehicles when they had the obligation to preserve relevant evidence; or, in the alternative, issue an order to show cause against one or more of these plaintiffs as to why their claims should not be dismissed. AHM respectfully requests such other, further relief this Court deems appropriate.

Dated: November 21, 2017

Respectfully submitted,

SIDLEY AUSTIN LLP

By: /s/ Livia M. Kiser
Livia M. Kiser
lkiser@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Defendant American Honda Motor Co., Inc.*

---

[7] AHM raised these issues now to avoid any suggestion of undue delay in the future, as "courts have held that an unreasonable delay can render a spoliation motion untimely." *Victorino*, 2017 WL 4541653, at *10 (citing cases).