UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABERIN ET AL., | Case No. 16-cv-04384-JST |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, AND DENYING MOTION TO STRIKE; ORDER SETTING CASE MANAGEMENT CONFERENCE** |
| v. | |
| AMERICAN HONDA MOTOR COMPANY, INC., | |
| Defendant. | Re: ECF No. 105 |

Before the Court is Defendant American Honda Motor Company, Inc. ("AHM")'s Motion

to Dismiss certain claim in Plaintiffs' Second Amended Complaint ("SAC") and Motion to Strike

certain restitution claims.[1] The Court will grant the motion to dismiss in part and deny it in part.

The Court denies the motion to strike in full.

## I. FACTUAL BACKGROUND[2]

Plaintiffs' claims arise from their purchase of Acura vehicles which contained a Bluetooth

pairing device entitled "HandsFreeLink" ("HFL") that allowed for hands-free cell phone calls.

ECF No. 98 ("SAC") ¶ 2. AHM was an early adopter of the hands-free technology, so many

---

[1] AHM's motion to dismiss originally included a motion for sanctions. ECF No. 105 at 14. However, AHM refiled its sanctions request as a separate motion, which the Court has already resolved. ECF No. 130.

 Also, since the filing of AHM's motion to dismiss, plaintiffs Donald Tran, Mark Gerstle and Jordan Moss have voluntarily dismissed their claims. Accordingly, the Court does not address those former plaintiffs' claims.

[2] The Court takes the facts from the SAC. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). For further factual detail, the Court refers the reader to its prior amended order granting and denying in part AHM's motion to dismiss. ECF No. 91.

1    consumers purchased the vehicles precisely for this technology and the technology featured

2    heavily in AHM's advertising campaigns. Id. ¶¶ 279-83. According to Plaintiffs, the HFL device

3    regularly malfunctioned by failing to switch off when not in use. Id. ¶ 3. As a result, Plaintiffs'

4    vehicles suffered parasitic electrical drain, requiring frequent battery replacement and causing the

5    premature failure of other electronic components. Id. AHM was aware of the defect, but failed to

6    resolve it. Id. ¶ 4. Beginning in 2005, AHM issued internal Technical Service Bulletins ("TSBs")

7    to its dealers describing the defect but offering no solution or warranty. Id. In some cases,

8    Plaintiffs purchased their Acura vehicles specifically because they had HFL, and because Acuras

9    had a reputation for reliability. Id. ¶ 10. The states where Plaintiffs purchased their vehicles and

10   experienced defect related problems include California, Delaware, Florida, Kansas, New

11   Hampshire, New York, Ohio, and Washington. Id. ¶ 316.

12           As pertinent to the statutes of limitations, Plaintiffs also allege facts relevant to tolling. In

13   California, the Aberin plaintiffs (a married couple) purchased a new Acura in 2005 and brought it

14   in for service for battery and other electronic component failures related to an HFL defect seven

15   times between February 2008 and June 2015. Id. ¶¶ 9, 13-21. The Aberin plaintiffs learned of the

16   HFL defect in November 2015, and had their HFL disconnected in 2016. Id. ¶ 21-22. Plaintiff

17   Kelly purchased his 2007 Acura in 2015, and experienced battery failures regularly. Id. ¶¶ 32, 37.

18   In August 2016, Kelly learned of the defect when an Acura dealership informed his wife that they

19   were aware of a defect in the HFL, spurring Kelly to read about the defect, including in this

20   lawsuit. He disabled the device that same month. Id. ¶¶ 39-40.

21           Lou, the Delaware plaintiff, purchased a new Acura in 2011, and experienced frequent

22   battery issues. Id. ¶¶ 71, 75-82. Lou learned about the link between his battery issues and the

23   HFL defect in August 2016 when he read about this lawsuit. Id. ¶ 83.

24           Criner, the Florida plaintiff, purchased a used 2009 Acura in 2012 and began to experience

25   regular issues with his battery and power steering in 2013. Id. ¶¶ 95, 100-103. Criner learned of

26   the link between his electronic issues and his HFL in August 2016 when he read about this

27   lawsuit. Id. ¶ 104.

28           Awtrey, the Kansas plaintiff, purchased a new 2005 Acura in November 2004, and

2

1    experienced electrical issues in 2009, 2014, and 2016. Id. ¶¶ 115, 120-22. Awtrey learned of the

2    connection between his electrical issues and the HFL in August 2016 when he read about this

3    lawsuit. Id. ¶ 123.

4    　　　Yeung, the New Hampshire plaintiff, purchased a new 2008 Acura in September 2007 and

5    experienced regular battery problems requiring replacements and jumps beginning in at least 2010.

6    Id. ¶¶ 134, 139-143. Yeung learned of the connection between the HFL and her electrical issues

7    in late 2013 or early 2014 at an Acura dealership. Id. ¶ 144.

8    　　　As for the New York plaintiff, Matza purchased a new Acura in 2006 and experienced

9    battery issues seven times between 2007 and 2016. Id. ¶¶ 177, 182-89. Matza learned of the

10   connection between her battery issues and the HFL defect through the internet in July 2016. Id.

11   ¶¶ 191-94. Matza sold her Acura in May 2017, after she learned of the defect, but before

12   obtaining counsel. Id. ¶ 180-81. She sold the car for a lower price because of the defect. Id.

13   　　　Crooks, the Ohio Plaintiff, purchased a used 2007 Acura in 2012, and his battery began

14   dying regularly in June 2014. Id. ¶¶ 205, 210-13. At that time, his dealership suggested that he

15   disconnect the HFL, which Crooks declined to do because he used the feature. Id. ¶ 213. Crooks

16   also learned about the connection between his battery issues and the HFL in June 2014 through

17   internet research. Id. ¶ 214.

18   　　　Burgess, the Washington plaintiff, purchased a new Acura in 2008. Id. ¶ 244. Burgess

19   experienced problems with both his battery and the HFL in 2014, 2016. Id. ¶¶ 251-58. Burgess's

20   dealer told him in December 2016 that his HFL drained his battery and that this was a problem the

21   dealer had encountered before. Id. ¶ 257. The dealer disconnected Burgess's HFL at the same

22   time, despite the fact that Burgess used the HFL regularly for work. Id.

23   **II.    PROCEDURAL BACKGROUND**

24   　　　Plaintiffs filed this putative class action alleging claims under California and various other

25   state consumer protection and warranty laws against Defendant on August 3, 2016. ECF No. 1.

26   AHM filed a motion to dismiss that complaint, ECF No. 42, which the Court granted in part and

27   denied in part, ECF No. 91. The Court then consolidated Burgess' case, 17-cv-1060, also against

28   AHM with this case. ECF No. 92.

3

1   Plaintiffs filed a SAC, amending the complaint to comply with the Court's order. ECF No.

2   98. AHM then filed a second motion to dismiss, which is the subject of this order. ECF No. 105.

3   **III.    LEGAL STANDARDS**

4       While the Court accepts the material facts alleged in the complaint, along with all

5   reasonable inferences to be drawn from those facts, as true, Navarro, 250 F.3d at 732, "the tenet

6   that a court must accept a complaint's allegations as true is inapplicable to . . . [t]hreadbare recitals

7   of the elements of a cause of action, supported by mere conclusory statements," Ashcroft v. Iqbal,

8   556 U.S. 662, 678 (2009). To be entitled to the presumption of truth, a complaint "must contain

9   sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

10  defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

11      Plaintiffs' fraud claims are subject to a heightened pleading standard. "In alleging fraud

12  or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

13  Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a complaint must supply "the circumstances

14  constituting the alleged fraud" with a description "'specific enough to give defendants notice of

15  the particular misconduct . . . so that they can defend against the charge and not just deny that they

16  have done anything wrong.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009)

17  (citation omitted). Fraud claims must allege "an account of the time, place, and specific content of

18  the false representations as well as the identities of the parties to the misrepresentations." Swartz

19  v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted);

20  see also Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of

21  fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."

22  (internal quotation marks omitted)). "[I]ntent, knowledge, and other conditions of a person's

23  mind" need not be stated with particularity, and "may be alleged generally." Fed. R. Civ. P. 9(b).

24  **IV.    DISCUSSION**

25      **A.    Whether AHM's arguments should be dismissed under Rule 12(g)**

26      Plaintiffs contend that many of AHM's arguments should be dismissed under Rule 12(g) of

27  the Federal Rules of Civil Procedures because AHM could have raised those arguments in its

28  earlier motion, but failed to do so. ECF No. 112 at 8-9. Because Plaintiffs do not specify which

United States District Court
Northern District of California

4

1    arguments AHM could have raised earlier, the Court does not address the topic further.  Id.

2        **B.    Whether the consumer protection and warranty claims of new Plaintiffs'**
          **Matza and Burgess are timely**

3

4        First, AHM argues that New York plaintiff Matza and Washington plaintiff Burgess, both

5    new to the SAC (Burgess by consolidation and Matza by amendment), have several untimely

6    claims.  AHM argues that Matza's consumer protection claim is untimely because New York's

     law has a three-year statute of limitations that accrued on the date of purchase in September 2006.

7    ECF No. 105 at 17; C.P.L.R. § 214(2); Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 788-89

8    (N.Y. 2012).  AHM argues that Burgess's consumer protection claim is untimely because

9    Washington's law has a four year statute of limitations that accrued on his date of purchase,

10   October 25, 2008.  ECF No. 105 at 17; RCW 19.86.120; Shepard v. Holmes, 185 Wash. App. 730,

11   739 (Wash. Ct. App. 2014).

12       Second, AHM argues that Matza's claims for express warranty, implied warranty, and

13   under the MMWA have a four year statute of limitations.  ECF No. 105 at 10; Statler v. Dell, Inc.,

14   775 F. Supp. 2d 474, 481 (E.D.N.Y. 2011).  AHM argues that Burgess's claims for express

15   warranty and the MMWA also have a four-year statute of limitations accruing from October 2008.

16   ECF No. 105 at 18; RCW 62A.2-725(2); Holbrook, Inc. v. Link-Belt Constr. Equip. Co., 103

17   Wash. App. 279, 284 (Wash Ct. App. 2000).

18       AHM's recitation of the statutes of limitations for the New York and Washington state

19   consumer protection and warranty statutes is correct, and under these statutes, the claims are

20   untimely.  But this is not the end of the timeliness inquiry.  Plaintiffs argue that Matza and

21   Burgess's consumer protection and warranty claims are all timely as fraudulent concealment and

22   delayed discovery tolling apply.  Statler, 775 F. Supp. 2d at 482-84 (fraudulent concealment

23   tolling applies to section New York consumer protection and MMWA claims); Hunter v. Bank of

24   Am., N.A., 2017 WL 2289034, at *2 (W.D. Wash. May 25, 2017) (delayed discovery applies to

25   consumer protection, including because of fraud); Giraud v. Quincy Farm & Chem., 102 Wn.

26   App. 443, 455 (2000) (fraudulent concealment tolling applies to RCW 62A.2-725).  Plaintiffs are

27   correct that tolling applies, but AHM's challenges to the warranty claims are addressed below.

28

5

**C.     Whether Plaintiffs' consumer protection and warranty claims are timely through tolling**

As in the prior motion to dismiss, AHM challenges whether the claims of certain plaintiffs are timely.  ECF No. 105 at 18.[3]  Specifically, it argues that the claims of the following plaintiffs are untimely because they fail adequately plead a basis for tolling:  the Aberin Plaintiffs from California ; plaintiff Lou from Delaware; plaintiff Yeung from New Hampshire; plaintiff Matza from New York; and plaintiff Burgess from Washington.

As before, the question is whether the plaintiffs have adequately invoked the discovery rule to toll the statute of limitations.  "Generally, California law allows tolling of the statute of limitations under the discovery rule; that is, 'the statute of limitations does not begin to run until the plaintiff discovered or had notice of all facts which are essential to the cause of action.'"  In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig., No. C-05-04726 RMW, 2008 WL 4544441, at *8 (N.D. Cal. Sept. 30, 2008) (quoting Saliter v. Pierce Bros. Mortuaries, 81 Cal.App.3d 292, 296 (1978)).  Reliance on the discovery rule requires the plaintiff to plead facts "which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence . . . .  However, mere conclusory assertions that delay in discovery was reasonable are insufficient."  Id. (internal citations omitted); see also Asghari v. Volkswagen Grp. of Am., Inc., 42 F. Supp. 3d 1306, 1320–21 (C.D. Cal. 2013).  To invoke the discovery rule, *each* Plaintiff must allege the time and manner by which he discovered the cause of action.  See Philips v. Ford Motor Co., No. 14-CV-02989-LHK, 2015 WL 4111448, at *8 (N.D. Cal. July 7, 2015).

For fraudulent concealment tolling, Plaintiffs must allege when and under what circumstances the fraud was discovered, and that Plaintiffs were not at fault in failing to discover the fraud.  In re Conseco, 2008 WL 4544441, at *9.  "Fraudulent concealment tolling must be pled with particularity under Fed. R. Civ. P. 9(b)."  In re Ford Tailgate Litig., No. 11-CV-2953-RS, 2014 WL 1007066, at *8 (N.D. Cal. Mar. 12, 2014), order corrected on denial of reconsideration, No. 11-CV-2953-RS, 2014 WL 12649204 (N.D. Cal. Apr. 15, 2014).

---

[3] AHM does not seek to dismiss as untimely the claims of: one California plaintiff (Kelly), the Florida plaintiff (Criner), the Kansas plaintiff (Awtrey), and the Ohio plaintiff (Crooks).  ECF No. 112 at 12.

1    AHM argues that the above-named plaintiffs fail to allege both fraudulent concealment and

2  delayed discovery because each fails to allege facts showing that they acted diligently in

3  determining that the HFL defect caused their battery issues, and in some cases fail to allege facts

4  showing how and when they discovered the defect. Id. at 18-19.[4] The Court addresses the

5  allegations regarding each plaintiff in turn.

6    The Aberin Plaintiffs. The Plaintiffs' allegations about when the Aberins learned of the

7  HFL are confusing at best. In their opposition to the motion to dismiss, the Plaintiffs state that

8  "Plaintiffs Lindsay and Jeff Aberin experienced problems with numerous electrical components

9  and replaced several parts, but did not learn the problems were caused by a defect in the HFL

10  system until they brought their car to Hinshaw's Acura to have a headlight bulb, ignitor, and door

11  lock actuator replaced in June 24, 2015." ECF No. 112 at 13 (citing SAC ¶¶ 13-21). But that is

12  not what the complaint says. Instead, it alleges that the Aberins most recently brought their Acura

13  to Hinshaw's on November 20, 2015 for servicing related to electrical defects, and that the

14  dealership replaced "the driver side headlight bulb, ignitor, and driver side rear door lock

15  actuator." SAC ¶ 21. Even on that date, however, the Aberins did not learn about the alleged

16  HFL defect, because "neither the dealership nor Honda disclosed that the HandsFreeLink™ unit

17  was the reason for the low battery phenomenon, nor did they ever fix the defect." Id. And then,

18  contrary to all of the foregoing, the complaint states a few paragraphs later that the Aberin

19  Plaintiffs "only discovered that Plaintiff [sic] may have a cause of action when Plaintiff [sic]

20  learned that the vehicle's battery-drain issues were linked to the HFL unit on the aforementioned

21  service date." Id. ¶ 25. If no one at the dealership disclosed the defect to the Aberins, how did

22  they figure it out? The SAC is silent on the point, and the Court concludes that the Aberin

23  Plaintiffs have failed to allege when the discovered the alleged defect. Their consumer protection

24

25  ---

[4] In its first order, this Court determined that (a) Plaintiffs' implied and express warranty claims
26  are subject to tolling based on fraudulent concealment; (b) Plaintiffs' Magnuson-Moss Warranty
Act claims are subject to tolling; and (c) Plaintiffs' consumer protection claims are subject to
27  tolling under fraudulent concealment and the discovery rule. ECF No. 91 at 16-23. The Court
also held that Plaintiffs adequately plead several subparts of their tolling claims: that the alleged
28  defect posed a safety risk; that AHM had exclusive knowledge of this defect, and that AHM
withheld this knowledge from Plaintiffs. Id. at 14. This order affirms those conclusions.

1    and warranty claims are dismissed.  Because Plaintiffs have already been an opportunity to cure

2    these allegations, dismissal is with prejudice.

3           Plaintiff Lou.  AHM argues that Lou experienced persistent battery problems but was not

4    diligent in researching the cause until he conducted internet research.  ECF No. 105 at 20.

5    Plaintiffs argue the Lou did not know that his battery problems were caused by the HFL defect

6    until he read the complaint online in August 2016.  ECF No. 112 at 13 (SAC ¶¶ 75-83).  The Court

7    concludes that Lou adequately pleads the time and manner of discovery for the purposes of

8    delayed discovery and fraudulent concealment tolling.

9           Plaintiff Yeung.  AHM argues that Yeung did not allege facts showing she acted diligently

10   because she did not bring her vehicle to an Acura dealership until after her warranty expired, and

11   only then did she learn the HFL might cause battery drain.  ECF No. 105 at 20-21.  Plaintiffs

12   argue that Yeung learned of the defect only when she brought her vehicle to a dealership and was

13   told about the HFL defect in late 2013 or early 2014.  ECF No. 112 at 13 (SAC ¶¶139-44).  The

14   Court concludes that Lou adequately pleads the time and manner of discovery for the purposes of

15   delayed discovery and fraudulent concealment tolling.

16          Plaintiff Matza.  AHM argues that Matza failed to conduct reasonable inquiry into the

17   source of her regular battery drain over nine years until her husband conducted internet research

18   and discovered the connection.  ECF No. 105 at 21.  Plaintiffs argue that Matza did not learn of

19   the defect until she read about it online in July 2016.  ECF No. 112 at 13 (SAC ¶¶ 182-94).  The

20   Court concludes that Matza adequately pleads the time and manner of discovery for the purposes

21   of delayed discovery and fraudulent concealment tolling.

22          Plaintiff Burgess.  AHM argues that Burgess never pleads when he became aware of the

23   defect.  ECF No. 105 at 17 n.6, 21-22.  This is incorrect.  Burgess claims that he became aware

24   that the HFL defect caused electrical issues in his vehicle in December 2016 when a dealer told

25   him that the HFL was draining his battery.  SAC ¶ 254-60.  Burgess adequately pleads the time

26   and manner of discovery for the purposes of delayed discovery and fraudulent concealment

27   tolling.

28          The Court concludes that Plaintiffs Lou, Yeung, Matza, and Burgess adequately plead the

8

United States District Court
Northern District of California

1    time and manner of their discovery. However, that is not the end of the inquiry. To invoke the

2    discovery rule, each Plaintiff must also show he acted reasonably and diligently. Plumlee v.

3    Pfizer, Inc., No. 13-CV-00414-LHK, 2014 WL 4275519, at *6 (N.D. Cal. Aug. 29, 2014), aff'd,

4    No. 14-16924, 2016 WL 6610223 (9th Cir. Nov. 9, 2016). AHM argues that these plaintiffs were

5    not diligent because they knew they had problems with their batteries, but did not investigate the

6    source of the problems. See, e.g., ECF No. 105 at 20 (Plaintiff Yeung experienced battery

7    problems the same year he bought his car, and had to jump start his car nine times, but "did not act

8    reasonably or diligently (or at all really) to inquire about his alleged battery issue in a timely

9    fashion."). Plaintiffs respond that AHM's "concealment, combined with the fact that the defect

10   manifests by causing apparently unrelated electrical components to fail, left Plaintiffs unable to

11   discover the defect on their own." ECF No. 112 at 7. Plaintiffs have the better argument.

12       Plaintiffs argue that their duty to investigate was never triggered because they did not have

13   reason to suspect the true cause. ECF No. 112 at 14. Plaintiffs experienced many seemingly

14   unrelated defects including batteries, fog lights, headlights, ignitors, starters, door locks, and

15   motor assemblies, and Plaintiffs argue plausibly that it would be unreasonable to expect them to

16   connect these issues to a single, undisclosed, underlying defect. ECF No. 112 at 14-15.

17       For one thing, these plaintiffs allege that they had their cars repaired by dealerships who

18   purported to fix the reported problems but never identified the underlying HFL issue causing those

19   problems.  In an analogous situation, another court in this district held that plaintiffs alleged

20   fraudulent concealment when a car manufacturer pretended to fix problems with the defect instead

21   of admitting that the problems could not be fixed. In re MyFord Touch Consumer Litig., 46 F.

22   Supp. 3d 936, 948-49, 961 (N.D. Cal. 2014); see also Ho v. Toyota Motor Corp., 931 F. Supp. 2d

23   987, 999 (N.D. Cal. 2013) (Conti, J.) (finding that plaintiffs adequately pleaded active

24   concealment by alleging that defendants repaired the class vehicles' headlamps only temporarily

25   or replaced them with other defective parts). Courts have also recognized that a consumer without

26   sophisticated knowledge of automobiles might not suspect a defect, and therefore not investigate

27   further, when it appeared that a repair fixed the problem. Herremans v. BMW of N. Am., LLC,

28   2015 WL 12712082, at *5 (C.D. Cal. Feb. 19, 2015).

9

1    Plaintiffs also argue that further investigation would not have revealed additional facts.

2    MyFord Touch, 46 F. Supp. 3d at 961 (applying fraudulent concealment tolling where defendant

3    pretended to fix a defect and concealed TSBs that would have alerted plaintiffs to the defect).  The

4    Court previously concluded that Plaintiffs sufficiently allege fraudulent concealment because

5    AHM had exclusive information about the HFL defect that it withheld from Plaintiffs.  ECF No.

6    91 at 12-14.  Moreover, AHM's internal TSBs explain that the HFL defect eludes diagnosis

7    because battery failures present only as intermittent battery problems, and drivers and mechanics

8    have no reason to suspect any other problem.  SAC ¶¶ 286, 288.  In Philips, the court relied on

9    similar allegations to deny a motion to dismiss a fraudulent omission claim.  2015 WL 4111448, at

10   *1.  Here, Plaintiffs have adequately alleged that further investigation of their known battery

11   issues would not have uncovered sufficient facts about the underlying HFL defect.

12   Finally, as to Plaintiffs' fraudulent concealment claims, defendant must show not only that

13   Plaintiffs should have known about the defect itself, but also that they know about the Defendant's

14   alleged fraud in concealing the defect.  MyFord Touch, 46 F. Supp. 3d at 962.  The Court's prior

15   holding that Plaintiffs sufficiently allege a defect within Honda's exclusive knowledge, and that

16   Honda withheld information from Plaintiffs, are sufficient in this regard.

17   In short, plaintiffs Lou, Yeung, Matza, and Burgess, adequately allege tolling.  The motion

18   to dismiss their consumer protection and warranty claims on statute of limitations grounds is

19   denied.

20   **D.      Whether Plaintiffs' Express Warranty claims should be dismissed as a matter
             of law**

21

22   Plaintiffs Criner, Matza, and Burgess allege express warranty claims.  ECF No. 105 at 22.

     The warranty provides that AHM will repair or replace a part "that is defective in material or
23
     workmanship" within four years of purchase.  ECF No. 44-1; ECF No. 91 at 3-4.  AHM argues
24
     that all four plaintiffs fail to state a claim for express warranty because (1) the new vehicle
25
     warranty included with each Acura excludes repairs for design defects, and (2) in each case, the
26
     warranty had expired by the time the defect arose.  ECF No. 105 at 22.  Plaintiffs concede that a
27
     manufacturer need not repair a defect past the expiration date of the warranty.  Clemens v.
28

10

1   <u>Daimler Chrysler</u>, 534 F.3d 1017, 1022-23 (9th Cir. 2008); <u>see also</u> <u>Ho</u>, 931 F. Supp. 2d at 994.[5]

2   　　　Plaintiffs argue that the durational limit is unconscionable, pointing to a number of cases

3   from other circuits for the proposition that the durational limit on an express warranty is

4   unconscionable when the manufacturer is aware of a defect that will manifest after the warranty

5   expires. ECF No. 112 at 19-20 (collecting cases). Plaintiffs place heavy weight on a quote from a

6   Fourth Circuit case, <u>Carlson v. Gen. Motors Corp.</u>, 883 F.2d 287 (4th Cir. 1989).

7   　　　Plaintiffs' argument is not persuasive. For one thing, their reliance on <u>Carlson</u> is

8   unhelpful, since it addresses implied rather than express warranties. 883 F.2d 287, 296 (4th Cir.

9   1989). More importantly, as to express warranties, California courts have adopted a rule counter

10  to <u>Carlson</u>: even a manufacturer's awareness of a latent defect cannot make an express warranty's

11  duration unconscionable. <u>Clemens</u>, 534 F.3d at 1023 ("Every manufactured item is defective at

12  the time of sale in the sense that it will not last forever; the flip-side of this original sin is the

13  product's useful life.").

14  　　　Plaintiffs also argue that the warranty fails its essential purpose if it does not cover design

15  defects, under the UCC § 2-719. ECF No. 112 at 21-24. Plaintiffs again cite to a number of out

16  of district and circuit cases for this proposition, arguing that design defects are interchangeable

17  with workmanship or manufacturing defects at the pleadings stage. <u>Id.</u> at 22. However, many

18  "courts in this district and circuit have repeatedly held that warranties covering 'materials or

19  workmanship' do not cover design defects." <u>Johnson v. Nissan N. Am., Inc.</u>, No. 17-CV-00517-

20  WHO, 2017 WL 4570712, at *4 (N.D. Cal. Aug. 29, 2017) (collecting cases).

21  　　　AHM's motion to dismiss Plaintiffs' express warranty claims is granted.

22  **E.      Whether Plaintiffs' implied warranty claims should be dismissed as a matter
           of law**

23

24  　　　AHM argues that Plaintiffs' implied warranty claims under California and Florida law fail

25  because there is no contract between Plaintiffs and AHM, because Plaintiffs purchased their cars

26  _____

27  [5] AHM also argues that any reliance on Acura's reputation as reliable is mere puffery. ECF No.
    105 at 24. <u>Azoulai v. BMW of N. Am. LLC</u>, No. 16-CV-00589-BLF, 2017 WL 1354781, at *7-8
    (N.D. Cal. Apr. 13, 2017) (generalized assertions regarding a vehicles "safety" or "durability" are

28  mere puffery and cannot support an express warranty claim). The Court agrees that any
    reputational statements about safety or reliability are puffery and not actionable.

11

1    from AHM's franchisee dealers and not from AHM itself.  ECF No. 105 at 24.  In its order on

2    AHM's prior motion to dismiss, the Court concluded that the California implied warranty claims

3    do not fail for lack of privity, citing  Atkinson v. Elk Corp. of Texas, 142 Cal. App. 4th 212, 48

4    Cal. Rptr. 3d 247 (2006).  ECF No. 91 at 21 n.20.  The Court has examined the authorities cited by

5    AHM, however, and now concludes AHM is correct that "Atkinson appears to be an anomaly in

6    that it contravenes the well-established principle under California law that privity is required in

7    cases alleging breach of an implied warranty."  Postier v. Louisiana-Pac. Corp., No. C-09-3290

8    JCS, 2009 WL 3320470, at *6 (N.D. Cal. Oct. 13, 2009).  Nonetheless, AHM's motion fails as to

9    the California plaintiffs.  Under California law, "a third party beneficiary can enforce a contract

10   made expressly for his benefit. . . . A contract made expressly for a third party's benefit does not

11   need to specifically name the party as the beneficiary; the only requirement is that the party is

12   more than incidentally benefitted by the contract."  Cartwright v. Viking Indus., Inc., 249 F.R.D.

13   351, 356 (E.D. Cal. 2008) (internal citations and quotation marks omitted) (concluding that

14   plaintiffs were, as third party beneficiaries, entitled to maintain a breach of implied warranty claim

15   against the manufacturer where plaintiffs, not the distributors, were the intended consumers).

16   Plaintiffs successfully invoke this exception.

17         As to Florida Plaintiff Criner, however, AHM's motion has more force.  Under Florida

18   law, the rule is simple: "a plaintiff cannot recover economic losses for breach of implied warranty

19   in the absence of privity."  Mesa v. BMW of N. Am., LLC, 904 So. 2d 450, 458 (Fla. Dist. Ct.

20   App. 2005); see also Kramer v. Piper Aircraft Corp., 520 So. 2d 37 (Fla.1988) (holding that

21   plaintiffs must have privity for warranty claims more broadly).

22         Accordingly, AHM's motion to dismiss on the grounds of implied warranty for lack of

23   privity under California law is denied but the motion to dismiss on the grounds of implied

24   warranty for lack of privity under Florida law is granted.

25         **F.      Whether Plaintiffs' MMWA claims should be dismissed**

26         Defendants are correct that to the extent that this Court dismisses Plaintiffs' implied and

27   express warranty claims, it must also dismiss their MMWA claims.  ECF No. 105 at 26; Ford

28   Tailgate, 2014 WL 1007066, at *5 (dismissing MMWA warranty claims when state warranty

1   claims were dismissed).  The MMWA claims on the basis of the express warranties are dismissed

2   but the claims for implied warranties are granted, in part.  Accordingly, the motion to dismiss the

3   MMWA claim under Florida law is granted, but the motion under all other laws is denied because

4   implied warranty claims survive.

5   ### G.   Whether restitution claims for Plaintiffs who purchased used cars should be stricken

6           AHM argues that because it obtained no money from the purchases of used vehicles,

7   restitution is not an available remedy for those plaintiffs who purchased used vehicles (Kelly,

8   Criner, and Crooks).  AHM argues that such claims for restitution should be stricken.  ECF No.

9   105 at 26; Korea Supply v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1140 (2003) (holding that

10  "disgorgement of profits allegedly obtained by means of an unfair business practice" is not "an

11  authorized remedy under the UCL where the profits are neither money taken from a plaintiff nor

12  funds in which the plaintiff has an ownership interest").

13          AHM overreads Korea Supply.  The plaintiff in that case was a business that represented

14  manufacturers of military equipment.  It represented one such manufacturer in a deal with the

15  government of the Republic of Korea that would have netted the plaintiff a commission of $30

16  million had its bid been accepted.  The plaintiff alleged that it lost the contract to another bidder,

17  Lockheed Martin, even though plaintiff's bid was lower and its product superior, because

18  Lockheed Martin's agent had "offered bribes and sexual favors to key Korean officials."  Korea

19  Supply, 29 Cal. 4th at 1140.  The Supreme Court rejected the plaintiff's restitution claim, holding

20  that

21

22          The remedy sought by plaintiff in this case is not restitutionary because plaintiff
            does not have an ownership interest in the money it seeks to recover from
23          defendants.  First, it is clear that plaintiff is not seeking the return of money or
            property that was once in its possession.  KSC has not given any money to
24          Lockheed Martin; instead, it was from the Republic of Korea that Lockheed Martin
            received its profits. Any award that plaintiff would recover from defendants would
25          not be restitutionary as it would not replace any money or property that defendants
            took directly from plaintiff.  Further, the relief sought by plaintiff is not
26          restitutionary under an alternative theory because plaintiff has no vested interest in
            the money it seeks to recover . . . .  KSC itself acknowledges that, at most, it had an
27          "expectancy" in the receipt of a commission . . . .

28

13

1  Korea Supply, 29 Cal. 4th at 1149–50.  Importantly, not only had the plaintiff in Korea Supply not

2  paid the defendant any money; the plaintiff had not paid anyone any money.

3  Subsequent cases have made clear that Korea Supply's holding is limited.  "Nothing in

4  Korea Supply conditions the recovery of restitution on the plaintiff having made direct payments

5  to a defendant who is alleged to have engaged in . . . unlawful practices under the UCL.  Rather,

6  the holding of Korea Supply on the issue of restitution is that the remedy the plaintiff seeks must

7  be truly 'restitutionary in nature' – that is, it must represent the return of money or property the

8  defendant acquired through its unfair practices."  Shersher v. Superior Court, 154 Cal. App. 4th

9  1491, 1494 (2007).  In Shersher, the California Court of Appeal reinstated the plaintiffs' UCL

10  restitution claim against Microsoft, even though they had purchased the products at issue from

11  third party retailers.  154 Cal. App. 4th at 1499–500.

12  The Court finds the analogy to Shersher persuasive.  (Notably, AHM makes no effort to

13  distinguish Shersher.)  Accordingly, the Court declines to strike the claims for restitution.

### H.  Whether Plaintiffs' claims for equitable relief under the UCL and CLRA should be dismissed

15  Finally, AHM argues that plaintiffs cannot obtain equitable relief under the UCL because

16  they have an adequate remedy at law.  ECF No. 105 at 28.  AHM is correct that some federal

17  courts have so held.  E.g., Munning v. Gap, Inc., 238 F. Supp. 3d 1195, 1204 (N.D. Cal. 2017);

18  Philips, 2015 WL 411448, at *16.  This Court joins the many other courts, however, that have

19  reached the opposite conclusion, finding no bar to the pursuit of alternative remedies at the

20  pleadings stage.  E.g., Adkins v. ComcastCorp., No. 16-CV-05969-VC, 2017 WL 3491973, at *3

21  (N.D. Cal. Aug. 1, 2017) ("A few federal courts seem to have decided that claims for equitable

22  relief should be dismissed at the pleading stage if the plaintiff manages to state a claim for relief

23  that carries a remedy at law . . . .  But this Court is aware of no basis in California or federal law

24  for prohibiting the plaintiffs from pursuing their equitable claims in the alternative to legal

25  remedies at the pleadings stage."); Cabrales v. Castle & Cooke Mortg., LLC, No. 1:14-CV-01138-

26  MCE, 2015 WL 3731552, at *3 (E.D. Cal. June 12, 2015) (the pleading of alternative remedies "is

27  amply supported by Ninth Circuit cases applying California law"); Colucci v. ZonePerfect

28

14

1   Nutrition Co., 2012 WL 6737800 at *10 (N.D. Cal. Dec. 28, 2012) ("[C]laims for restitution or

2   unjust enrichment may survive the pleadings stage when pled as an alternative avenue of relief,

3   though the claims, as alternatives, may not afford relief if other claims do."); Vicuna v. Alexia

4   Foods, Inc., 2012 WL 1497507 at *3 (N.D. Cal. April 27, 2012) ("[W]hile a claim for restitution is

5   inconsistent and incompatible with a related claim for breach of contract or a claim in tort, at the

6   pleading stage, a plaintiff is allowed to assert inconsistent theories of recovery[.]").

7         AHM's motion to dismiss Plaintiffs' claims for equitable relief under the UCL and CLRA

8   is denied.

9                     **CONCLUSION**

10        For the aforementioned reasons, AHM's motion to dismiss is granted in part and denied in

11  part and the motion to strike is denied in full.

12        1.      AHM's motion to dismiss Burgess's and Matza's consumer protection claims on

13  the grounds of timeliness is DENIED.

14        2.      AHM's motion to dismiss Burgess's and Matza's warranty claims on the grounds

15  of timeliness is DENIED.

16        3.      AHM's motion to dismiss the consumer protection and warranty claims of the

17  Aberin Plaintiffs and Plaintiffs Lou, Yeung, Matza, and Burgess on the grounds of failure to plead

18  tolling of the statute of limitations is GRANTED as to the Aberin Plaintiffs and DENIED as to

19  Plaintiffs Lou, Yeung, Matza, and Burgess.

20        4.      AHM's motion to dismiss the express warranty claims of Plaintiffs Criner, Matza,

21  and Burgess on the grounds of failure to manifest during the warranty period is GRANTED.

22        5.      AHM's motion to dismiss the implied warranty claims under California law on the

23  basis of privity is DENIED but the motion to dismiss the implied warranty claims under Florida

24  law on the basis of privity is GRANTED.

25        6.      AHM's motion to dismiss the MMWA warranty claims is DENIED except as to

26  claims under Florida law, as to which the motion is GRANTED.

27        7.      AHM's motion to strike the restitutionary claims is DENIED.

28        8.      AHM's motion to dismiss Plaintiffs' claims for equitable relief is DENIED.

1    All claims dismissed by this order are dismissed with prejudice, as Plaintiffs have had the

2    opportunity to amend.  ECF No. 91.

3         The Court will conduct a case management conference on April 18, 2018 at 11:00 a.m.  An

4    updated joint case management statement is due by April 9, 2018.

5         **IT IS SO ORDERED.**

6    Dated:  March 26, 2018

7    _____

                    JON S. TIGAR

8                    United States District Judge