Christopher A. Seeger (*pro hac vice*)
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
Email: cseeger@seegerweiss.com

James E. Cecchi, *Admitted Pro Hac Vice*
Email: jcecchi@carellabyrne.com
CARELLA, BYRNE, CECCHI, OLSTEIN
BRODY & AGENLLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

*Interim Co-Lead Class Counsel*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSAY and JEFF ABERIN (a married couple), DON AWTREY, CHARLES BURGESS, JOHN KELLY, YUN-FEI LOU, JOY MATZA, and MELISSA YEUNG, individually and on behalf of all others similarly situated, | No. 3:16-cv-04384-JST THIRD AMENDED CLASS ACTION COMPLAINT |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| AMERICAN HONDA MOTOR COMPANY, INC., | |
| Defendant. | |

THIRD AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**<u>Page</u>**

I.      INTRODUCTION ...................................................................................................1

II.     JURISDICTION & VENUE ...................................................................................2

III.    PARTIES ................................................................................................................2

    A.      Plaintiffs ....................................................................................................2

        1.      California Plaintiffs .........................................................................2

            a.      Lindsay and Jeff Aberin (a married couple) ...................2

                (1)      Ownership, Purchase Decision, and HFL
                      Defect, Generally .............................................2

                (2)      Statute of Limitations & Fraudulent Concealment
                      Tolling Allegations ..........................................3

                (3)      Plaintiff's Injury and Causation Allegations ...........5

            b.      John Kelly .......................................................................6

                (1)      Ownership, Purchase Decision, and HFL
                      Defect, Generally .............................................6

                (2)      Statute of Limitations & Fraudulent Concealment
                      Tolling Allegations ..........................................7

                (3)      Plaintiff's Injury and Causation Allegations ...........8

        2.      Delaware Plaintiff ...........................................................9

                (1)      Ownership, Purchase Decision, and HFL
                      Defect, Generally .............................................9

                (2)      Statute of Limitations & Fraudulent Concealment
                      Tolling Allegations ........................................10

                (3)      Plaintiff's Injury and Causation Allegations .........12

        3.      Kansas Plaintiff .............................................................12

                (1)      Ownership, Purchase Decision, and HFL
                      Defect, Generally ...........................................12

                (2)      Statute of Limitations & Fraudulent Concealment
                      Tolling Allegations ........................................13

                (3)      Plaintiff's Injury and Causation Allegations .........14

        4.      New Hampshire Plaintiff ................................................15

|  |  | (1) | Ownership, Purchase Decision, and HFL Defect, Generally | 15 |
|  |  | (2) | Statute of Limitations & Fraudulent Concealment Tolling Allegations | 16 |
|  |  | (3) | Plaintiff's Injury and Causation Allegations | 17 |
|  | 5. | New York Plaintiff |  | 18 |
|  |  | (1) | Ownership, Purchase Decision, and HFL Defect, Generally | 18 |
|  |  | (2) | Statute of Limitations & Fraudulent Concealment Tolling Allegations | 19 |
|  |  | (3) | Plaintiff's Injury and Causation Allegations | 22 |
|  | 6. | Washington Plaintiff |  | 22 |
|  |  | (1) | Ownership, Purchase Decision, and HFL Defect, Generally | 22 |
|  |  | (2) | Statute of Limitations & Fraudulent Concealment Tolling Allegations | 24 |
|  |  | (3) | Plaintiff's Injury and Causation Allegations | 27 |
| B. | Defendant |  |  | 27 |
| IV. | FACTUAL BACKGROUND |  |  | 28 |
| A. | Defendant's HandsFreeLink™ System |  |  | 28 |
| B. | The Defective HandsFreeLink™ System Strains (and Drains) the Electric System |  |  | 30 |
| C. | Consumer Harm as a Result of the Defective HandsFreeLink™ System |  |  | 32 |
| D. | Safety Hazard of a Defective HandsFreeLink™ System |  |  | 33 |
| E. | Complaints to the National Highway Traffic Safety Administration Confirm the Safety Dangers of the Defective HandsFreeLink™ System |  |  | 34 |
| F. | Defendant's Exclusive Knowledge and Concealment of the Defective HandsFreeLink™ System |  |  | 48 |
| G. | Exclusive Knowledge, Concealment, and Safety Defect Allegations |  |  | 49 |
| V. | TOLLING OF THE STATUTE OF LIMITATIONS |  |  | 52 |
| A. | Discovery Rule |  |  | 52 |
| B. | Fraudulent Concealment |  |  | 52 |

VI.     CLASS ALLEGATIONS ............................................................................53

VII.    CAUSES OF ACTION ON BEHALF OF THE NATIONAL CLASS ...............................55

COUNT I VIOLATIONS OF THE CALIFORNIA CONSUMER  LEGAL
        REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*).................................55

COUNT II VIOLATIONS OF CALIFORNIA'S UNFAIR BUSINESS
        PRACTICES ACT (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*) ................58

COUNT III FRAUD BY CONCEALMENT (BASED ON CALIFORNIA LAW) ......................61

COUNT IV BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
        (CAL. COM. CODE § 2314) ..............................................................63

COUNT V VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
        (AS APPLICABLE TO IMPLIED WARRANTY-DERIVED CLAIMS)
        (15 U.S.C. § 2301, *ET SEQ.*)..........................................................65

VIII.   CAUSES OF ACTION ON BEHALF OF THE ALTERNATE CLASSES......................67

        A.      Claims Brought on Behalf of the Alternate California Class ...................67

COUNT I VIOLATIONS OF THE CALIFORNIA CONSUMER  LEGAL
        REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*).................................67

COUNT II VIOLATIONS OF CALIFORNIA'S UNFAIR BUSINESS
        PRACTICES ACT (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*) ................70

COUNT III FRAUD BY CONCEALMENT (BASED ON CALIFORNIA LAW) ......................72

COUNT IV BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
        (CAL. COM. CODE § 2314) ..............................................................75

COUNT V VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
        (AS APPLICABLE TO IMPLIED WARRANTY-DERIVED CLAIMS)
        (15 U.S.C. § 2301, *ET SEQ.*)..........................................................76

        B.      Claims Brought on Behalf of the Alternate Delaware Class ...................78

COUNT I VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT
        (DEL. CODE ANN. TIT. 6 § 2511, *ET SEQ.*) .......................................78

COUNT II FRAUDULENT CONCEALMENT (BASED ON DELAWARE LAW).....................80

COUNT III BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
        (6 DEL. C. § 2-314)........................................................................83

COUNT IV VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
        (AS APPLICABLE TO IMPLIED WARRANTY-DERIVED CLAIMS)
        (15 U.S.C. § 2301, *ET SEQ.*)..........................................................85

        C.      Claims Brought on Behalf of the Alternate Kansas Class........................87

COUNT I VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
(KCPA) (K.S.A. §§ 50-623, *ET SEQ.*)............................................................87

COUNT II FRAUDULENT CONCEALMENT (BASED ON KANSAS LAW) ..........................88

COUNT III BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
(K.S.A. § 84-2-314)............................................................................91

COUNT IV VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
(AS APPLICABLE TO IMPLIED WARRANTY-DERIVED CLAIMS)
(15 U.S.C. § 2301, *ET SEQ.*).............................................................93

    D.    Claims Brought on Behalf of the Alternate New Hampshire Class ........................94

COUNT I VIOLATIONS OF NEW HAMPSHIRE CONSUMER PROTECTION ACT
(N.H.R.S.A. § 358-A, *ET SEQ.*)...........................................................94

COUNT II FRAUDULENT CONCEALMENT
(BASED ON NEW HAMPSHIRE LAW) ........................................................96

COUNT III BREACH OF IMPLIED WARRANTY
(N.H. REV. STAT. ANN. § 382-A: 2-314) ...................................................99

COUNT IV VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
(AS APPLICABLE TO IMPLIED WARRANTY-DERIVED CLAIMS)
(15 U.S.C. § 2301, *ET SEQ.*).............................................................101

    E.    Claims Brought on Behalf of the Alternate New York Class ...............................103

COUNT I VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(N.Y. GEN. BUS. LAW § 349).............................................................103

COUNT II FRAUDULENT CONCEALMENT (BASED ON NEW YORK LAW)....................105

COUNT III BREACH OF IMPLIED WARRANTY (N.Y. U.C.C. LAW § 2-315).....................108

COUNT IV VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
(15 U.S.C. § 2301, *ET SEQ.*).............................................................110

    F.    Claims Brought on Behalf of the Alternate Washington Class...............................112

COUNT I VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION
ACT – UNFAIR BUSINESS PRACTICES (REVISED CODE OF WASHINGTON
(RCW) §§ 19.86.010, *ET SEQ.*)...........................................................112

COUNT II VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION
ACT – DECEPTIVE BUSINESS PRACTICES (RCW 19.86.010, *ET SEQ.*) .................115

COUNT III FRAUDULENT CONCEALMENT (BASED ON WASHINGTON LAW).............117

REQUEST FOR RELIEF........................................................................121

DEMAND FOR JURY TRIAL ................................................................122

Plaintiffs Lindsay and Jeff Aberin (a married couple), Don Awtrey, Charles Burgess, John Kelly, Yun-Fei Lou, Joy Matza, and Melissa Yeung, individually and on behalf of all others similarly situated (the "Class members"), allege the following through their counsel:[1]

## I.    INTRODUCTION

1.    Acura is the luxury vehicle marque of Japanese automaker Honda, which operates in the United States as American Honda Motor Company, Inc. ("Honda" or "Defendant").  Honda first launched the Class Vehicles in the United States in March 1986 as luxury and high-performance vehicles.

2.    A necessary feature for luxury cars by the mid-2000s was "hands-free" calling, where owners "pair" cell phones with the car using Bluetooth® technology.  Honda was in the lead of this cutting edge technology, being the first to offer "hands-free" calling with its HandsFreeLink™ system starting with 2004 model year Acura vehicles ("Class Vehicles").

3.    Unfortunately, in its effort to beat out the competition, Honda failed to develop the most basic feature for any electric device like the HandsFreeLink™ unit—reliably switching off when not in use.  The HandsFreeLink™ unit will get stuck "on" even if not in use and even after the car's ignition switch is turned off.  Once stuck "on," the HandsFreeLink™ unit creates a constant and substantial parasitic electric drain on the electric system, leading to drained and dead batteries, recurring battery replacement, and premature failure of other essential electric components such as alternators.  Owners of Class Vehicles with the HandsFreeLink™ system find themselves with cars that will not start after a short period of non-use and electrical systems prone to fail even when the car is in operation.  (Hereinafter, the "Defect").  Ultimately, these owners find themselves with cars that are less valuable than comparable cars with properly functioning "hands-free" systems.

---

[1] Plaintiffs bring this Third Amended Class Action Complaint following the Court's Decision and Order on Defendant's Motion to Dismiss the Amended Class Action Complaint (D.E. 81, *as amended* D.E. 91) and Motion to Dismiss Second Amended Class Action Complaint (D.E. 139)  To the extent Plaintiffs withdraw any claims, causes of action, or legal theories to conform this Third Amended Class Action Complaint to the aforementioned Decisions and Orders, Plaintiffs expressly reserve the right to raise such issues later such as on appeal and do not, by filing this Third Amended Class Action Complaint, waive the right to maintain such claims, causes of action, or legal theories on appeal.

4.      Acura owners are faced with the choice of expensive replacement of the HandsFreeLink™ unit (in excess of $1,000.00), with no promise that the replacement also will not get stuck "on," or disabling the HandsFreeLink™ system by disconnecting the HandsFreeLink™ unit from the car, thereby foreclosing on Plaintiffs' ability to use the feature they originally paid for. Despite knowing about the issue with its HandsFreeLink™ since at least 2005, Honda has merely issued internal Service Bulletins to its dealers over the years, notifying only the dealers about the problem, but offering no meaningful solution, warranty coverage, or recall.

5.      Plaintiffs seek relief for all other owners of Class Vehicles with the HandsFreeLink™ system ("Acuras" or "Class Vehicles") to redress the harm they have suffered as a result of this defective technology.

## II.      JURISDICTION & VENUE

6.      This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Classes consist of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims of Plaintiffs and the other Class members occurred in this District.

## III.      PARTIES

A.      **Plaintiffs**

1.      **California Plaintiffs**

a.      **Lindsay and Jeff Aberin (a married couple)**

(1)      **Ownership, Purchase Decision, and HFL Defect, Generally**

8.      Plaintiffs Lindsay and Jeff Aberin are currently residents of Washington residing in University Place, Washington. When the Aberin Plaintiffs were residing in the state of California in January 2005, they purchased a new 2005 Acura TL at Keyes Acura of Van Nuys at 5230 Van Nuys Blvd., Van Nuys, CA 91401.

9.     The Aberin Plaintiffs' 2005 Acura TL included the defective HandsFreeLink™ unit. The Aberin Plaintiffs have paid money or otherwise suffered harm as a result of the defect and associated problems described herein.

10.    The Aberin Plaintiffs based their decision to purchase the 2005 Acura TL in reliance on the features offered by the vehicle – including its inclusion of the HandsFreeLink™ – and Defendant's reputation and statements about the safety, reliability, luxury and quality of Acura vehicles. They wanted a reliable vehicle with the kinds of features offered only with luxury vehicles like an Acura. The Aberin Plaintiffs believed the vehicle would be a good value because of its reputation for luxury, safety, reliability, and convenience—consistent with her review of Honda's advertising messaging regarding luxury, safety, reliability, and convenience.

11.    The Aberin Plaintiffs still own their 2005 Acura TL and they have paired the HandsFreeLink™ unit with multiple LG/Motorola feature phones and Palm/Apple/Samsung smartphones.

12.    Unknown to the Aberin Plaintiffs at the time the vehicle was purchased, the vehicle was equipped with a HandsFreeLink™ unit that is defectively designed.  The Defect allows the HandsFreeLink™ unit to continue to drain the battery even after the vehicle is turned off.

### (2)    Fraudulent Concealment

#### (a)    *HFL-caused vehicle issues, unbeknownst to Plaintiffs*

13.    The Aberin Plaintiffs brought the vehicle to Hooman Acura of Santa Monica located at 1717 Santa Monica Blvd., Santa Monica, CA 90404 in or around February 4, 2008 for service relating to this defect. At that time, the battery was replaced under warranty.

14.    On March 24, 2010 the Aberin Plaintiffs brought the vehicle into Hinshaw's Acura located at 5955 20th St. E, Fife, WA 98424 for service relating to this defect. The fog light bulb on the driver side and front marker light bulb passenger side were replaced.

15.    In or around August 24, 2012, the Aberin Plaintiffs brought the vehicle into University Place Tire Center located at 4402 Bridgeport Way W, University Place, WA 98466 for service relating to this defect. The battery was replaced.

THIRD AMENDED CLASS ACTION COMPLAINT                  - 3 -

16.     In or around November 27, 2013, the Aberin Plaintiffs again brought the vehicle into Hinshaw's Acura located at 5955 20th St. E, Fife, WA 98424 for service relating to this defect.  The headlight inverter and ignitor on the driver side were replaced.

17.     In or around November 29, 2013, the Aberin Plaintiffs again brought the vehicle into Hinshaw's Acura located at 5955 20th St. E, Fife, WA 98424 for service relating to this defect. The headlight bulb on the passenger side and front marker bulb on driver side were replaced.

18.     In or around January 3, 2014, the Aberin Plaintiffs again brought the vehicle into Hinshaw's Acura located at 5955 20th St. E, Fife, WA 98424 for service relating to this defect. The headlight ignitor on the passenger side was replaced.

19.     In or around March 26, 2015, the Aberin Plaintiffs again brought the vehicle into Hinshaw's Acura located at 5955 20th St. E, Fife, WA 98424 for service relating to this defect. The starter was replaced.

20.     In or around June 25, 2015, the Aberin Plaintiffs again brought the vehicle into University Place Tire Center located at 2211 70th Ave West, Tacoma, WA 98466 for service relating to this defect. The battery was replaced.

**(b)**     *Time and manner of Plaintiffs' discovery of the HFL defect*

21.     In or around November 20, 2015, the Aberin Plaintiffs again brought the vehicle into Hinshaw's Acura located at 5955 20th St. E, Fife, WA 98424 for service relating to this defect. The driver side headlight bulb, ignitor, and driver side rear door lock actuator were replaced.  Up until this time, the Aberin Plaintiffs did not understand (and could not have understood) that the problems encountered could have been caused by the hidden and undisclosed defect in the HandsFreeLink™ system. Further, neither the dealership nor Honda disclosed that the HandsFreeLink™ unit was the reason for the low battery phenomenon, nor did they ever fix the defect.

22.     The Aberin Plaintiffs have had to disable their HandsFreeLink™, one of the key features of her 2005 Acura TL that induced them to purchase the vehicle.   The HandsFreeLink™ was permanently disconnected in June 2016 at University Place Tire Center located at 2211 70th Ave West, Tacoma, WA 98466.  It was there that a service representative told Plaintiff and her

husband about the connection between the battery and electrical issues Plaintiff's Vehicle was exhibiting and recommended disconnecting the HFL. The HFL was disconnected by the University Place Tire Center a short time later.

**(c)** ***Plaintiffs were unable to have made the discovery of the HFL defect despite reasonable diligence***

23.     Plaintiffs are aware of no public information offered by Defendant that Honda's HFL unit was prone to a high parasitic battery drain. *See, infra* (discussing Honda's internal Technical Service Bulletins on the HFL unit, unavailable to the public).

24.     Through Plaintiffs' multiple service visits, as detailed above, Plaintiffs acted reasonably and diligently in attempting to find the cause of their repeated electrical-related problems. Plaintiffs understandably and reasonably relied on the diligence of the vehicle service providers to get to the 'root cause' of the repeated problems, but the service advisors and/or unaffiliated repair shops never revealed to Plaintiffs (and likely did not know themselves due to Defendant's concealment) the true source of the electrical issues was the battery-draining HFL unit.

25.     Plaintiffs only learned thatthe vehicle's battery-drain issues were linked to the HFL unit on the aforementioned June 2016 service date.

26.     Plaintiffs were not at fault for failing to discover the HFL unit as the source of the vehicle's electrical issues.

27.     Plaintiffs had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice until the aforementioned service date.

28.     It was not until shortly before Plaintiffs disconnected the HFL unit that Defendant withheld its knowledge from the public about the true source of the defect.

**(3)     Plaintiffs' Injury and Causation Allegations**

29.     Honda's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing and selling vehicles equipped with the HandsFreeLink unit has caused the Aberin Plaintiffs out-of-pocket losses, future attempted repairs, loss of warranty value, and diminished value of their vehicle.

30.     Honda knew about, manipulated or recklessly disregarded the fact that the HandsFreeLink™ unit could lead to vehicles that do not start reliably and electrical components which might fail while the vehicle is in operation.

31.     But Honda did not disclose this defect to the Aberin Plaintiffs, so Plaintiffs purchased the vehicle on the reasonable, but mistaken, belief that the 2005 Acura TL was merchantable and safe to operate as designed. Had Honda disclosed that the HandsFreeLink could lead to vehicles that fail to start at a much higher level than a reasonable consumer would expect or contain electrical components which might fail while the vehicle is in operation, the Aberin Plaintiffs would not have purchased the vehicle or would have paid less for it.

### b.     John Kelly

#### (1)     Ownership, Purchase Decision, and HFL Defect, Generally

32.     Plaintiff John Kelly is a resident of California domiciled in Richmond, California. On November 2, 2015, Plaintiff Kelly bought a used 2007 Acura MDX from a private seller in Berkeley, California.

33.     Plaintiff Kelly's 2007 Acura MDX included the defective HandsFreeLink™ unit. Plaintiff Kelly has paid money or otherwise suffered harm as a result of the defect and associated problems described herein.

34.     Plaintiff Kelly based his decision to purchase the 2007 MDX in reliance on the features offered by the vehicle – including its inclusion of the HandsFreeLink™ – and Defendant's reputation and statements about the safety, reliability, luxury and quality of Acura vehicles. He wanted a reliable vehicle with the kinds of features offered only with luxury vehicles like an Acura. Plaintiff Kelly believed his vehicle would be a good value because of its reputation for luxury, safety, reliability, and convenience—consistent with his review of Honda's advertising messaging regarding luxury, safety, reliability, and convenience.

35.     Plaintiff Kelly still owns his vehicle and has paired his HandsFreeLink™ unit with iPhone smartphones.

THIRD AMENDED CLASS ACTION COMPLAINT                    - 6 -

36.     Unknown to Plaintiff Kelly at the time the vehicle was purchased, the vehicle was equipped with a HandsFreeLink™ unit that is defectively designed. The Defect allows the HandsFreeLink™ unit to drain the battery even after the vehicle is turned off.

### (2)   Statute of Limitations & Fraudulent Concealment Tolling Allegations

#### (a)   *HFL-caused vehicle issues, unbeknownst to Plaintiff*

37.     In mid-2016, Plaintiff Kelly began having problems with the vehicle's battery. It would die if not driven every day. For instance, the battery died when Plaintiff Kelly's wife left it at the airport while traveling for a few days. The battery died two to three times in this manner and once at home in the garage. In each instance, AAA would have to come jump the battery.

38.     So far, Plaintiff Kelly has replaced one battery for about $150 in June or July 2016. Recently, the HandsFreeLink™ unit stopped working altogether.

#### (b)   *Time and manner of Plaintiff's discovery of the HFL defect*

39.     In August 2016, Plaintiff's wife brought the vehicle to the Oakland Acura dealership for a tire alignment. She informed them about the problems with the HandsFreeLink™ unit. The dealership technicians told her that they were aware of this problem in the 2007 and 2008 MDX vehicles and that Plaintiff Kelly should not seek to replace the HandsFreeLink™ unit. She subsequently informed Plaintiff Kelly of what the dealership technicians told her.

40.     Plaintiff Kelly then began to conduct internet research relating to the problems associated with the HandsFreeLink™ unit. It was only after reading the allegations of the Class Action Complaint in August 2016 did Plaintiff Kelly learn that the HandsFreeLink defects were responsible for the premature draining of his vehicle's batteries. He eventually disabled the HFL unit.

41.     Prior to August 2016, Plaintiff did not understand that the problems Plaintiff encountered could have been caused by the hidden and undisclosed defect in the HandsFreeLink™ system. Further, neither the dealership nor Honda disclosed until recently that the HandsFreeLink™ unit was the reason for the low battery phenomenon. They also failed to ever fix the defect.

THIRD AMENDED CLASS ACTION COMPLAINT                          - 7 -

**(c)** *Plaintiff was unable to have made the discovery of the HFL defect despite reasonable diligence*

42.     Plaintiff was aware of no public information offered by Defendant that Honda's HFL unit was prone to a high parasitic battery drain. *See, infra* (discussing Honda's internal Technical Service Bulletins on the HFL unit, unavailable to the public).

43.     Through Plaintiff's multiple service visits, as detailed above, Plaintiff acted reasonably and diligently in attempting to find the cause of his repeated electrical-related problems. Plaintiff understandably and reasonably relied on the diligence of the vehicle service providers to get to the 'root cause' of the repeated problems, but the service advisors and/or unaffiliated repair shops never revealed to Plaintiff (and likely did not know themselves due to Defendant's concealment) the true source of the electrical issues was the battery-draining HFL unit.

44.     Plaintiff only discovered that Plaintiff may have a cause of action when Plaintiff learned that the vehicle's battery-drain issues were linked to the HFL unit on the aforementioned service date.

**(d)** *Plaintiff's fraudulent concealment tolling allegations*

45.     Plaintiff was not at fault for failing to discover the HFL unit as the source of the vehicle's electrical issues.

46.     Plaintiff had no actual or presumptive knowledge of facts sufficient to put Plaintiff on inquiry notice until the aforementioned service date.

47.     It was not until after the aforementioned service date that Plaintiff was able to connect the dots: Defendant withheld its knowledge from the public about the true source of the defect.

**(3)     Plaintiff's Injury and Causation Allegations**

48.     Honda's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing and selling vehicles equipped with the HandsFreeLink™ unit has caused Plaintiff out-of-pocket losses, future attempted repairs, loss of warranty value, loss of value associated with the inability to use a feature that was previously paid for, and diminished value of the vehicle.

49.     Honda knew about, manipulated or recklessly disregarded the fact that the HandsFreeLink™ unit could lead to vehicles that do not start reliably and electrical components which might fail while the vehicle is in operation.

THIRD AMENDED CLASS ACTION COMPLAINT                    - 8 -

50.     But Honda did not disclose this defect to Plaintiff Kelly, so Plaintiff purchased the vehicle on the reasonable, but mistaken, belief that the 2007 Acura MDX was merchantable and safe to operate as designed. Had Honda disclosed that the HandsFreeLink™ could lead to vehicles that fail to start at a much higher level than a reasonable consumer would expect or contain electrical components which might fail while the vehicle is in operation, Plaintiff would not have purchased the vehicle or would have paid less for it.

**2.     Delaware Plaintiff**

**(1)     Ownership, Purchase Decision, and HFL Defect, Generally**

51.     Plaintiff Yun-Fei Lou is a resident of Delaware domiciled in Newark, Delaware.  On April 21, 2011, Plaintiff Lou bought a new 2011 Acura RDX at Price Acura at 4585 S. Dupont Hwy, Dover, Delaware 19901.

52.     Plaintiff's 2011 Acura RDX included the defective HandsFreeLink™ unit. Plaintiff has paid money or otherwise suffered harm as a result of the defect and associated problems described herein.

53.     Plaintiff based his decision to purchase the 2011 RDX in reliance on the features offered by the vehicle – including its inclusion of the HandsFreeLink™ – and Defendant's reputation and statements about the safety, reliability, luxury and quality of Acura vehicles. He wanted a reliable vehicle with the kinds of features offered only with luxury vehicles like an Acura. Plaintiff Lou believed his vehicle would be a good value because of its reputation for luxury, safety, reliability, and convenience—consistent with his review of Honda's advertising messaging regarding luxury, safety, reliability, and convenience.

54.     Plaintiff Lou still owns his 2011 Acura RDX and has paired his HandsFreeLink™ unit with both iPhone and Samsung Galaxy smartphones.

55.     Unknown to Plaintiff Lou at the time the vehicle was purchased, the vehicle was equipped with a HandsFreeLink™ unit that is defectively designed.  The Defect allows the HandsFreeLink™ unit to continue to drain the battery even after the vehicle is turned off.

**(2)**   **Statute of Limitations & Fraudulent Concealment Tolling Allegations**

**(a)**   *HFL-caused vehicle issues, unbeknownst to Plaintiff*

56.     Plaintiff Lou has had to have his car jumped by AAA and others on several occasions because his vehicle's battery was drained by the HandsFreeLink™ unit.  The failure to disclose the potential defect also caused Plaintiff Lou to be late to work and miss important meetings on multiple occasions, including a job interview.

57.     Plaintiff Lou first presented his vehicle for repair for what he thought was a low battery issue sometime around December 2011 or January 2012.  He also received several complimentary battery checks for the next few years from the dealership.

58.     Plaintiff Lou is a volunteer firefighter.  In 2012, there was a fire emergency in the fire district where Plaintiff Lou volunteers and he was unable to respond due to his 2011 Acura RDX not being able start.

59.     Around March 2013, Plaintiff Lou had to get a jump start at the fire station on the University of Delaware Campus.

60.     Around May 2013, Plaintiff Lou's 2011 Acura RDX would not start, rendering him stranded around 10:00 PM, and he had to call Acura Roadside Assistance for a jump start.

61.     In 2014, Plaintiff Lou had to pay for Rangers LLC to jump start his 2011 Acura RDX.

62.     To mitigate the consequences of becoming stranded unexpectedly, Plaintiff Lou has paid approximately $40 for a roadside kit and pays for a premium monthly membership with the Automotive Association of America (AAA).

63.     Because his HandsFreeLink™ unit is not disabled, Plaintiff continues to experience these battery and electrical problems.

**(b)**   *Time and manner of Plaintiff's discovery of the HFL defect*

64.     In the summer of 2016, Plaintiff Lou began to conduct internet research relating to the problems associated with the HandsFreeLink™ unit. It was only after reading the allegations of the Class Action Complaint in August 2016 did Plaintiff Lou learn that the HandsFreeLink defects were responsible for the premature draining of his vehicle's batteries

65.     Prior to August 2016, Plaintiff did not understand that the problems Plaintiff encountered could have been caused by the hidden and undisclosed defect in the HandsFreeLink™ system. Further, neither the dealership nor Honda disclosed until recently that the HandsFreeLink™ unit was the reason for the low battery phenomenon. They also failed to ever fix the defect.

**(c)     *Plaintiff was unable to have made the discovery of the HFL defect despite reasonable diligence***

66.     Prior to August 2016, Plaintiff did not understand that the problems Plaintiff encountered could have been caused by the hidden and undisclosed defect in the HandsFreeLink™ system. Further, neither the dealership nor Honda disclosed that the HandsFreeLink™ unit was the reason for the low battery phenomenon. They also failed to ever fix the defect.

67.     Plaintiff was aware of no public information offered by Defendant that Honda's HFL unit was prone to a high parasitic battery drain. *See, infra* (discussing Honda's internal Technical Service Bulletins on the HFL unit, unavailable to the public).

68.     Through Plaintiff's multiple service visits, as detailed above, Plaintiff acted reasonably and diligently in attempting to find the cause of her repeated electrical-related problems. Plaintiff understandably and reasonably relied on the diligence of the vehicle service providers to get to the 'root cause' of the repeated problems, but the service advisors and/or unaffiliated repair shops never revealed to Plaintiff (and likely did not know themselves due to Defendant's concealment) the true source of the electrical issues was the battery-draining HFL unit.

69.     Plaintiff only discovered that Plaintiff may have a cause of action when Plaintiff learned that the vehicle's battery-drain issues were linked to the HFL unit in August 2016, after reading the allegations contained in the original Class Action Complaint.

**(d)     *Plaintiff's fraudulent concealment tolling allegations***

70.     Plaintiff was not at fault for failing to discover the HFL unit as the source of the vehicle's electrical issues.

71.     Plaintiff had no actual or presumptive knowledge of facts sufficient to put Plaintiff on inquiry notice until the aforementioned service date.

72.     It was not until August 2016 that Plaintiff was able to connect the dots: Defendant withheld its knowledge from the public about the true source of the defect.

### (3)     Plaintiff's Injury and Causation Allegations

73.     Honda's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing and selling vehicles equipped with the HandsFreeLink™ unit has caused Plaintiff out-of-pocket losses, future attempted repairs, loss of warranty value, loss of value associated with the inability to use a feature that was previously paid for, and diminished value of the vehicle.

74.     Honda knew about, manipulated, or recklessly disregarded the fact that the HandsFreeLink™ unit could lead to vehicles that do not start reliably and electrical components that might fail while the vehicle is in operation.

75.     But Honda did not disclose this defect to Plaintiff Lou, so Plaintiff Lou purchased the vehicle on the reasonable, but mistaken, belief that the 2011 Acura RDX was merchantable and safe to operate as designed.  Had Honda disclosed that the HandsFreeLink™ could lead to vehicles that fail to start at a much higher level than a reasonable consumer would expect or contain electrical components that might fail while the vehicle is in operation, Plaintiff Lou would not have purchased the vehicle or would have paid less for it.

### 3.     Kansas Plaintiff

### (1)     Ownership, Purchase Decision, and HFL Defect, Generally

76.     Plaintiff Don Awtrey is a resident of Kansas residing in Wichita, Kansas. On or about November 20, 2004 Plaintiff Awtrey bought a new 2005 Acura TL at Acura of Wichita (formerly part of the Schofield Luxury Collection) located at 11212 E Kellogg Dr Wichita, KS 67207.

77.     Plaintiff Awtrey's 2005 Acura TL included the defective HandsFreeLink™ unit. Plaintiff Awtrey has paid money or otherwise suffered harm as a result of the defect and associated problems described herein.

78.     Plaintiff Awtrey based his decision to purchase the 2005 Acura TL in reliance on the features offered by the vehicle—including its inclusion of the HandsFreeLink™— and Defendant's reputation and statements about the safety, reliability, luxury and quality of Acura vehicles. He

wanted a reliable vehicle with the kinds of features offered only with luxury vehicles like an Acura. Plaintiff Awtrey believed his vehicle would be a good value because of its reputation for luxury, safety, reliability, and convenience—consistent with his review of Honda's advertising messaging regarding luxury, safety, reliability, and convenience.

79.     Plaintiff Awtrey still owns his 2005 Acura TL and has paired his HandsFreeLink™ unit with multiple Motorola flip phones and Apple smartphones.

80.     Unknown to Plaintiff Awtrey at the time the vehicle was purchased, the vehicle was equipped with a HandsFreeLink™ unit that is defectively designed.  The Defect allows the HandsFreeLink™ unit to continue to drain the battery even after the vehicle is turned off.

### (2)     Statute of Limitations & Fraudulent Concealment Tolling Allegations

#### (a)     *HFL-caused vehicle issues, unbeknownst to Plaintiff*

81.     Plaintiff Awtrey brought his vehicle to Acura of Wichita in or around October 26, 2009 for service relating to this defect. At that time, the battery was replaced at a cost to Plaintiff Awtrey of $175.00.

82.     In or around September 17, 2014 Plaintiff Awtrey again brought his vehicle to Acura of Wichita for service relating to this defect. Again, the battery was replaced at a cost to Plaintiff Awtrey of $130.90.

83.     In or around August 16, 2016, Plaintiff Awtrey again brought his vehicle into Acura of Wichita for service relating to the HandsFreeLink system. The dealership told him that they could provide him with a replacement system, but he would have to bear the cost of the replacement.

#### (b)     *Time and manner of Plaintiff's discovery of the HFL defect*

84.     Following the August 16, 2016 service visit, Plaintiff Awtrey then began to conduct internet research relating to the problems associated with the HandsFreeLink™ unit. It was only after reading the allegations of the Class Action Complaint in August 2016 did Plaintiff Awtrey learn that the HandsFreeLink defects were responsible for the premature draining of his vehicles' batteries.

1

**(c)**     *Plaintiff was unable to have made the discovery of the HFL defect despite reasonable diligence*

2      85.     Prior to August 2016, Plaintiff did not understand that the problems Plaintiff

3 encountered could have been caused by the hidden and undisclosed defect in the HandsFreeLink™

4 system. Further, neither the dealership nor Honda disclosed that the HandsFreeLink™ unit was the

5 reason for the low battery phenomenon. They also failed to ever fix the defect.

6      86.     Plaintiff was aware of no public information offered by Defendant that Honda's HFL

7 unit was prone to a high parasitic battery drain. *See, infra* (discussing Honda's internal Technical

8 Service Bulletins on the HFL unit, unavailable to the public).

9      87.     Through Plaintiff's multiple service visits, as detailed above, Plaintiff acted

10 reasonably and diligently in attempting to find the cause of his repeated electrical-related problems.

11 Plaintiff understandably and reasonably relied on the diligence of the vehicle service providers to get

12 to the 'root cause' of the repeated problems, but the service advisors and/or unaffiliated repair shops

13 never revealed to Plaintiff (and likely did not know themselves due to Defendant's concealment) the

14 true source of the electrical issues was the battery-draining HFL unit.

15      88.     Plaintiff only discovered that Plaintiff may have a cause of action when Plaintiff

16 learned that the vehicle's battery-drain issues were linked to the HFL unit, in August of 2016, after

17 reading the allegations contained in the Class Action Complaint.

18

**(d)**     *Plaintiff's fraudulent concealment tolling allegations*

19      89.     Plaintiff was not at fault for failing to discover the HFL unit as the source of the

20 vehicle's electrical issues.

21      90.     Plaintiff had no actual or presumptive knowledge of facts sufficient to put Plaintiff on

22 inquiry notice until the aforementioned service date.

23      91.     It was not until August 2016 that Plaintiff was able to connect the dots: Defendant

24 withheld its knowledge from the public about the true source of the defect.

25

**(3)**     **Plaintiff's Injury and Causation Allegations**

26      92.     Honda's unfair, unlawful and deceptive conduct in designing, manufacturing,

27 marketing and selling vehicles equipped with the HandsFreeLink unit has caused Plaintiff Awtrey

28

THIRD AMENDED CLASS ACTION COMPLAINT         - 14 -

out-of-pocket losses, future attempted repairs, loss of warranty value, and diminished value of his vehicle.

93.     Honda knew about, manipulated or recklessly disregarded the fact that the HandsFreeLink™ unit could lead to vehicles that do not start reliably and electrical components which might fail while the vehicle is in operation.

94.     But Honda did not disclose this defect to Plaintiff Awtrey, so Plaintiff Awtrey purchased the vehicle on the reasonable, but mistaken, belief that the 2005 Acura TL was futile and safe to operate as designed. Had Honda disclosed that the HandsFreeLink could lead to vehicles that fail to start at a much higher level than a reasonable consumer would expect or contain electrical components that might fail while the vehicle is in operation, Plaintiff Awtrey would not have purchased the vehicle or would have paid less for it.

**4.      New Hampshire Plaintiff**

**(1)      Ownership, Purchase Decision, and HFL Defect, Generally**

95.     Plaintiff Melissa Yeung is a resident of New Hampshire domiciled in Nashua, New Hampshire.  On September 27, 2007, Plaintiff Yeung bought a new 2008 Acura TL at Sunnyside Acura at 482 Amherst St., Nashua, New Hampshire 03063.

96.     Plaintiff's 2008 Acura TL included the defective HandsFreeLink™ unit. Plaintiff has paid money or otherwise suffered harm as a result of the defect and associated problems described herein.

97.     Plaintiff Yeung based her decision to purchase the 2008 Acura TL in reliance of the features offered by the vehicle—including its inclusion of the HandsFreeLink™ —and Defendant's reputation and statements about the safety, reliability, luxury and quality of Acura vehicles. Plaintiff Yeung was looking forward to using the HandsFreeLink™ feature upon purchase. She wanted a reliable vehicle with the kinds of features offered only with luxury vehicles like an Acura. Plaintiff Yeung believed her 2008 Acura TL would be good value because of the reputation of Acura vehicles for luxury, reliability, safety, and convenience—consistent with her review of Honda's advertising messaging regarding luxury, safety, reliability, and convenience.

98.     Plaintiff Yeung still owns her 2008 Acura TL and has paired her HandsFreeLink™ unit with both iPhone and Blackberry smartphones.

99.     Unknown to Plaintiff Yeung at the time the vehicle was purchased, the vehicle was equipped with a HandsFreeLink™ unit that is defectively designed.  The Defect allows the HandsFreeLink™ unit to continue to drain the battery even after the vehicle is turned off.

### (2)     Statute of Limitations & Fraudulent Concealment Tolling Allegations

#### (a)     *HFL-caused vehicle issues, unbeknownst to Plaintiff*

100.    Plaintiff Yeung has had to pay to replace her battery three times.

101.    The first battery replacement was covered under warranty, but the second two were out-of-pocket and cost approximately $160.

102.    Plaintiff Yeung also had to have her car jumped by AAA on several occasions because her vehicle's battery was drained by the HandsFreeLink™ unit.

103.    Plaintiff Yeung also brought her vehicle into a dealership sometime before 2010, and to a local mechanic at least two times after 2010, for service relating to this defect.  The defect was not repaired.

104.    Because her HandsFreeLink™ unit is not disabled, Plaintiff continues to experience these battery and electrical problems.

#### (b)     *Time and manner of Plaintiff's discovery of the HFL defect*

105.    In late 2013 or early 2014, Plaintiff brought her vehicle to the Acura dealership regarding the problems with the HandsFreeLink™ unit. The dealership technicians told her they were aware of this problem and communicated that there was a relationship between the presence of the enabled HandsFreeLink™ unit and drained batteries.

#### (c)     *Plaintiff was unable to have made the discovery of the HFL defect despite reasonable diligence*

106.    Until this time, Plaintiff did not understand that the problems Plaintiff encountered could have been caused by the hidden and undisclosed defect in the HandsFreeLink™ system.

Further, neither the dealership nor Honda disclosed that the HandsFreeLink™ unit was the reason for the low battery phenomenon. They also failed to ever fix the defect.

107.    Plaintiff was aware of no public information offered by Defendant that Honda's HFL unit was prone to a high parasitic battery drain. *See, infra* (discussing Honda's internal Technical Service Bulletins on the HFL unit, unavailable to the public).

108.    Through Plaintiff's multiple service visits, as detailed above, Plaintiff acted reasonably and diligently in attempting to find the cause of her repeated electrical-related problems. Plaintiff understandably and reasonably relied on the diligence of the vehicle service providers to get to the 'root cause' of the repeated problems, but the service advisors and/or unaffiliated repair shops never revealed to Plaintiff (and likely did not know themselves due to Defendant's concealment) the true source of the electrical issues was the battery-draining HFL unit.

109.    Plaintiff only discovered that Plaintiff may have a cause of action when Plaintiff learned that the vehicle's battery-drain issues were linked to the HFL unit on the aforementioned service date.

### **(d)**    *Plaintiff's fraudulent concealment tolling allegations*

110.    Plaintiff was not at fault for failing to discover the HFL unit as the source of the vehicle's electrical issues.

111.    Plaintiff had no actual or presumptive knowledge of facts sufficient to put Plaintiff on inquiry notice until the aforementioned service date.

112.    It was not until after the aforementioned service date that Plaintiff was able to connect the dots: Defendant withheld its knowledge from the public about the true source of the defect.

### **(3)**    **Plaintiff's Injury and Causation Allegations**

113.    Honda's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, and selling vehicles equipped with the HandsFreeLink™ unit has caused Plaintiff Yeung out-of-pocket losses, future attempted repairs, loss of warranty value, and diminished value of her vehicle.  Honda knew about, manipulated, or recklessly disregarded the fact that the HandsFreeLink™ unit could lead to vehicles that do not start reliably and electrical components that might fail while the vehicle is in operation.

114.   But Honda did not disclose this defect to Plaintiff, so Plaintiff Yeung purchased the vehicle on the reasonable, but mistaken, belief that the 2008 Acura TL was merchantable and safe to operate as designed.  Had Honda disclosed that the HandsFreeLink™ could lead to vehicles that fail to start at a much higher level than a reasonable consumer would expect or contain electrical components that might fail while the vehicle is in operation, Plaintiff Yeung would not have purchased the vehicle or would have paid less for it.

### 5.   New York Plaintiff

#### (1)   Ownership, Purchase Decision, and HFL Defect, Generally

115.   Plaintiff Joy Matza is currently a resident of New York residing in Rosyln, New York. On or about September 11, 2006, she bought a new 2006 Acura MDX at Rallye Acura, located at 1750 Northern Blvd, Roslyn, NY, 11576.

116.   Plaintiff Matza's 2006 Acura MDX included the defective HandsFreeLink™ unit. Plaintiff Matza has paid money or otherwise suffered harm as a result of the defect and associated problems described herein.

117.   Plaintiff Matza based her decision to purchase the 2006 Acura MDX in reliance on the features offered by the vehicle – including its inclusion of the HandsFreeLink™ – and Defendant's reputation and statements about the safety, reliability, luxury and quality of Acura vehicles. She wanted a reliable vehicle with the kinds of features offered only with luxury vehicles like an Acura. Plaintiff Matza believed her vehicle would be a good value because of its reputation for luxury, safety, reliability, and convenience—consistent with her review of Honda's advertising messaging regarding luxury, safety, reliability, and convenience.

118.   Plaintiff Matza, prior to retaining counsel, recently sold her 2006 Acura MDX at a loss because, as described more fully below, the disconnected defective HFL unit lowered the value of her vehicle. During her ownership of her Acura MDX, Plaintiff Matza paired her HandsFreeLink™ unit with multiple phones and used HFL to make hands-free calls frequently.

119.    Unknown to Plaintiff Matza at the time the vehicle was purchased, the vehicle was equipped with a HandsFreeLink™ unit that is defectively designed.  The Defect allows the HandsFreeLink™ unit to continue to drain the battery even after the vehicle is turned off.

### (2)    Statute of Limitations & Fraudulent Concealment Tolling Allegations

#### (a)    *HFL-caused vehicle issues, unbeknownst to Plaintiff*

120.    Plaintiff Matza first experienced an issue with her MDX's battery & electrical system on or about January or February of 2007. At that time, Plaintiff Matza was at a shopping center parking lot and was unable to start her vehicle. She called a roadside assistance company to jump-start her vehicle. Plaintiff Matza had no idea (nor was there any indication) that the battery failure was in any way related to her vehicle's HFL unit.

121.    In or around Fall of 2008, Plaintiff Matza she was picking up her daughter from a New York City restaurant, and when she went to start her vehicle to leave, the battery died. As a result, she had have her vehicle jump started. Shortly thereafter, her vehicle needed a battery replacement.  Plaintiff Matza still had no idea (nor was there any indication) that the battery failure was in any way related to her vehicle's HFL unit.

122.    On or about January or February of 2009, Plaintiff Matza's vehicle's battery died while going for dinner take-out. AAA jump-started the vehicle to get plaintiff on the road again. Plaintiff Matza still had no idea (nor was there any indication) that the battery failure was in any way related to her vehicle's HFL unit.

123.    On or about January or February of 2010, Plaintiff Matza's vehicle's battery died and she had to take a taxi home. Her husband later came and jump-started the vehicle and shortly thereafter replaced the battery. Plaintiff Matza still had no idea (nor was there any indication) that the battery failure was in any way related to her vehicle's HFL unit.

124.    On or about January or February of 2013, Plaintiff Matza's son had to call AAA to replace the battery. Plaintiff Matza still had no idea (nor was there any indication) that the battery failure was in any way related to her vehicle's HFL unit.

125.    On or about March, 17, 2014, Plaintiff Matza took her vehicle into an authorized Acura dealership's service center because, among other things, her engine was making an odd noise during cold start-ups. As a result of the service center's diagnostics, they replaced the starter motor assembly unit on her vehicle. The part and labor cost her $614.70. Upon information and belief, this repair was caused by the HFL parasitic battery drain defect, which required multiple jump starts due to dead batteries, added additional strain on the starter motor assembly, and ultimately caused it to prematurely fail. Plaintiff Matza still had no idea (nor was there any indication) that this part failure was in any way related to her vehicle's HFL unit.

126.    Multiple times in 2016, Plaintiff Matza had to have the vehicle jump started in the driveway because the vehicle was driven infrequently, giving the HFL time to parasitically drain the battery more extensively. Plaintiff Matza still had no idea (nor was there any indication) that these battery failures were in any way related to her vehicle's HFL unit.

127.    In total, Plaintiff Matza needed approximately 8 battery replacements over the years, and at least 10 battery jump-starts. In total, the battery replacements cost her an estimated $800 over the years, and the replacement starter motor assembly unit cost her $614.70 for parts and labor.

128.    In or about July 2016, Plaintiff Matza's husband did online research and found the true source of the battery-drain issue: a defective HandsFreeLink unit.

129.    As a result of her husband's discovery, on or around July 10, 2016, Plaintiff Matza took her car to an authorized Acura dealership and asked for the cost of a replacement HFL unit. She was quoted $809.90.

130.    Because the cost of the unit, Plaintiff Matza and her husband decided to disconnect HFL unit. Plaintiff's husband, using instructions found online, disconnected the unit.  From that point forward, the vehicle no longer had the hands-free-calling capability that was a promised feature of the vehicle.

131.    Subsequently, approximately one year later, in mid-May 2017, Plaintiff Matza ended up selling the 2006 MDX to a private party. Because Plaintiff Matza wanted to give full disclosure about the vehicle's condition, she accurately disclosed that the HFL unit was not functioning and had

been disconnected. As a result, she sold the vehicle for a below-market rate, based on then-current Kelly Blue Book and Edmunds.com valuations.

**(b)** ***Time and manner of Plaintiff's discovery of the HFL defect***

132. As noted above, it was not until on or about July 2016, when Plaintiff Matza's husband did online research that the truth about the HFL propensity to drain batteries came to light. Up until that time, Plaintiff did not understand (and could not have understood) that the electrical problems she encountered could have been caused by the hidden and undisclosed defect in the HandsFreeLink™ system. Further, neither the dealership nor did Honda disclose that the HandsFreeLink™ unit was the reason for the low battery phenomenon, nor did they ever fix the defect.

133. As noted, Plaintiff Matza's husband had to disable the HandsFreeLink™ unit, one of the key features of her 2006 Acura MDX that induced her to purchase the vehicle.

**(c)** ***Plaintiff was unable to have made the discovery of the HFL defect despite reasonable diligence***

134. Plaintiff was aware of no public information offered by Defendant that Honda's HFL unit was prone to a high parasitic battery drain. *See, infra* (discussing Honda's internal Technical Service Bulletins on the HFL unit, unavailable to the public).

135. Through Plaintiff's multiple service visits, as detailed above, Plaintiff acted reasonably and diligently in attempting to find the cause of her repeated electrical-related problems. Plaintiff understandably and reasonably relied on the diligence of the vehicle service providers to get to the 'root cause' of the repeated problems, but the service advisors and/or unaffiliated repair shops never revealed to Plaintiff (and likely did not know themselves due to Defendant's concealment) the true source of the electrical issues was the battery-draining HFL unit.

136. Plaintiff only discovered that Plaintiff may have a cause of action when Plaintiff learned that the vehicle's battery-drain issues were linked to the HFL unit on the aforementioned date that her husband did online research on or about July of 2016.

**(d)**    *Plaintiff's fraudulent concealment tolling allegations*

137.    Plaintiff was not at fault for failing to discover the HFL unit as the source of the vehicle's electrical issues.

138.    Plaintiff had no actual or presumptive knowledge of facts sufficient to put Plaintiff on inquiry notice until the aforementioned service date.

139.    It was not until shortly before Plaintiff disconnected the HFL unit that Defendant withheld its knowledge from the public about the true source of the defect.

### (3)    Plaintiff's Injury and Causation Allegations

140.    Honda's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing and selling vehicles equipped with the HandsFreeLink unit has caused Plaintiff Matza out-of-pocket losses, future attempted repairs, loss of warranty value, and diminished value of her vehicle.

141.    Honda knew about, manipulated or recklessly disregarded the fact that the HandsFreeLink™ unit could lead to vehicles that do not start reliably and electrical components which might fail while the vehicle is in operation.

142.    But Honda did not disclose this defect to Plaintiff Matza, so Plaintiff purchased the vehicle on the reasonable, but mistaken, belief that the 2006 Acura MDX was merchantable and safe to operate as designed. Had Honda disclosed that the HandsFreeLink could lead to vehicles that fail to start at a much higher level than a reasonable consumer would expect or contain electrical components which might fail while the vehicle is in operation, Plaintiff Matza would not have purchased the vehicle.

### 6.    Washington Plaintiff

#### (1)    Ownership, Purchase Decision, and HFL Defect, Generally

143.    Plaintiff Charles ("Chuck") Burgess is currently a resident of Washington residing in Seattle, Washington. On October 25, 2008, when Plaintiff Burgess was residing in the state of Washington, he bought a new 2008 Acura RDX at Acura of Lynnwood, 21515 Hwy 99, Lynnwood, Washington, 98036.

144. Plaintiff Burgess's 2008 Acura RDX included the defective HandsFreeLink™ unit. Plaintiff Burgess has paid money or otherwise suffered harm as a result of the defect and associated problems described herein.

145. Plaintiff Burgess based his decision to purchase the 2008 Acura RDX in reliance on the features offered by the vehicle – particularly its inclusion of the HandsFreeLink™ – and Defendant's reputation and statements about the safety, reliability, luxury and quality of Acura vehicles. He wanted a reliable vehicle with the kinds of features offered only with luxury vehicles like an Acura. Plaintiff Burgess believed his vehicle would be a good value because of its reputation for luxury, safety, reliability, and convenience—consistent with his review of Honda's advertising messaging regarding luxury, safety, reliability, and convenience.

146. Prior to purchasing this vehicle, Plaintiff Burgess conducted extensive online research, visiting Acura's website and reading consumer reviews on sites such as Edmunds.com. Plaintiff Burgess also visited Acura of Lynnwood to test drive the vehicle before purchase. During this visit, he spoke with dealership personnel extensively about the 2008 Acura RDX. Based on the statements he reviewed online and representations made by the dealership personnel, Plaintiff Burgess was persuaded that the 2008 Acura RDX was a reliable, functional, and safe vehicle. These particular qualities were important to Plaintiff Burgess, who traveled frequently to Eastern Washington at the time and commuted daily from north of Seattle to Auburn, Washington (2.5 to 3 hours round-trip).

147. Plaintiff Burgess was given a demonstration of the HandsFreeLink™ system during his test drive at Acura of Lynwood, and was shown how to set up the system. After learning that this particular model came with HandsFreeLink™ and seeing the demonstration, Plaintiff Burgess became convinced of the value of the luxury HandsFreeLink™ feature. This feature was particularly important to Plaintiff Burgess, because of the convenience it offered when he was on the road for 2.5 to 3 hours each day. Plaintiff Burgess was constantly on call due to his responsibilities as systems support for Safeway distribution and needed to answer work-related calls safely, even while on the road.

THIRD AMENDED CLASS ACTION COMPLAINT                    - 23 -

148.    Plaintiff Burgess still owns his 2008 Acura RDX and initially paired his HandsFreeLink™ unit with his Blackberry Mobile Phone, and later with his iPhone 4.

149.    Unknown to Plaintiff Burgess at the time the vehicle was purchased, the vehicle was equipped with a HandsFreeLink™ unit that is defectively designed.  The defect allows the HandsFreeLink™ unit to continue to drain the battery even after the vehicle is turned off.

### (2)    Statute of Limitations & Fraudulent Concealment Tolling Allegations

#### (a)    *HFL-caused vehicle issues, unbeknownst to Plaintiff*

150.    Plaintiff Burgess brought the vehicle to Rick's Tire and Service located at 12200 Aurora Ave N., Seattle, WA 98133 on May 15, 2014 for service relating to this defect. This was the first time the battery in Plaintiff Burgess's vehicle died. At that time, the battery was replaced at a cost of $127.95 for the battery and $14.50 for its installation, before tax. Plaintiff Burgess paid these costs himself. He did not know that the drained battery was caused by the defective HandsFreeLink™ system.

151.    In August 2016, Plaintiff Burgess noticed that the HandsFreeLink™ system was not connecting with his iPhone 4 or only connected intermittently. When he tried to use the system, it stated that no phone was found. By September, the HandsFreeLink™ system was not responsive.

152.    On December 10, 2016, Plaintiff Burgess's battery died again.  He had not driven his vehicle on Friday, December 9, 2016. When he tried to start his vehicle on Saturday afternoon, the lights in the vehicle went out and the car refused to start. Plaintiff Burgess called AAA, which sent someone who confirmed the battery's cells had failed and jump started the vehicle.

153.    On the same day, Saturday, December 10, 2016, Plaintiff Burgess brought his vehicle into Acura of Lynnwood, located at 21515 HWY 99, Lynnwood, WA, 98036, for service relating to this defect. Plaintiff Burgess spoke with service advisor Rick Rickstool. Because the HandsFreeLink™ system was not connecting with his iPhone 4 or only connected intermittently, Plaintiff Burgess requested that the dealer inspect his HandsFreeLink™ system in addition to checking the battery.

154.    The dealer checked the battery and determined it needed to be replaced.  Plaintiff Burgess once again paid for this replacement, at a cost of $154.95, before tax.

155.    Because Plaintiff Burgess asked the dealer to inspect the HandsFreeLink™ as well, he inadvertently learned about the defect. The dealer told Plaintiff Burgess that the HandsFreeLink™ unit was faulty, had been drawing current from and weakening the battery, and needed to be replaced. The dealer estimated that a new HandsFreeLink™ unit would cost $777 before tax.

156.    The service advisor admitted that he had encountered this problem with the HandsFreeLink™ unit before, but he did not elaborate. He did not tell Plaintiff Burgess that the problem was a defect inherent in the design of the HandsFreeLink™ system. He did not explain that this was a known defect that affected countless other Acura drivers. He did not indicate whether replacing the HandsFreeLink™ unit would be a permanent fix.

157.    Reluctant to pay upwards of $777 for the replacement HFL part, Plaintiff Burgess had no choice but to have the dealer disconnect the HandsFreeLink™ unit instead. Plaintiff Burgess paid $127 before tax for the inspection and disconnection of the HandsFreeLink™ unit.

**(b)**    *Time and manner of Plaintiff's discovery of the HFL defect*

158.    When his HandsFreeLink™ system became unresponsive in September 2016, Plaintiff Burgess looked online to investigate why his HandsFreeLink™ system was not connecting with his phone. He found a blog that discussed problems with the HandsFreeLink™ system. At that time, he did not know that the HandsFreeLink™ system was the cause of his May 2014 battery failure or that it was causing electrical damage to his vehicle.

159.    It was only when his battery died again in December 2016 and the dealer disconnected his HandsFreeLink™ unit that Plaintiff Burgess learned his HandsFreeLink™  unit was causing electrical damage to his vehicle and had drained his vehicle's battery.

160.    Up until this time, Plaintiff Burgess did not understand (and could not have understood) that the problems he encountered could have been caused by the hidden and undisclosed defect in the HandsFreeLink™ system. Further, neither the dealership nor Honda disclosed that the

problem was a defect inherent in the design of the HandsFreeLink™ unit, or that this was a known defect that affected countless other Acura drivers and they never fixed the defect.

161.    Plaintiff Burgess has had to disable his HandsFreeLink™, one of the key features of his 2008 Acura RDX that induced him to purchase the vehicle. The HandsFreeLink™ was permanently disconnected on December 10, 2016 at Acura of Lynnwood, located at 21515 HWY 99, Lynnwood, WA, 98036.

**(c)** *Plaintiff was unable to have made the discovery of the HFL defect despite reasonable diligence*

162.    Plaintiff Burgess was aware of no public information offered by Defendant that Honda's HFL unit was prone to a high parasitic battery drain. *See, infra* (discussing Honda's internal Technical Service Bulletins on the HFL unit, unavailable to the public).

163.    Through his service visits, as detailed above, Plaintiff Burgess acted reasonably and diligently in attempting to find the cause of his electrical-related problems. Plaintiff Burgess understandably and reasonably relied on the diligence of the vehicle service providers to get to the 'root cause' of the problem, but the service advisors never revealed to Plaintiff Burgess (and likely did not know themselves due to Defendant's concealment) that the true source of the electrical issues was the defective battery-draining HFL unit.

164.    Plaintiff Burgess only discovered that he may have a cause of action when he learned that the vehicle's battery-drain issues were linked to the HFL unit after having his HFL unit disconnected on December 10, 2016.

**(d)** *Plaintiff's fraudulent concealment tolling allegations*

165.    Plaintiff Burgess was not at fault for failing to discover the HFL unit as the source of the vehicle's electrical issues.

166.    Plaintiff Burgess had no actual or presumptive knowledge of facts sufficient to put him on inquiry notice until after he had the dealer disconnect his HFL unit on December 10, 2016.

167.    It was not until shortly after Plaintiff Burgess disconnected the HFL unit that he learned Defendant withheld its knowledge from the public about the true source of the defect.

### (3)    Plaintiff's Injury and Causation Allegations

168.    Honda's unfair, unlawful and deceptive conduct in designing, manufacturing, marketing and selling vehicles equipped with the HandsFreeLink™ unit has caused Plaintiff Burgess out-of-pocket losses, future attempted repairs, loss of warranty value, and diminished value of his vehicle.

169.    Honda knew about, manipulated or recklessly disregarded the fact that the HandsFreeLink™ unit could lead to vehicles that do not start reliably and electrical components which might fail while the vehicle is in operation.

170.    But Honda did not disclose this defect to Plaintiff Burgess, so he purchased the vehicle with the reasonable, but mistaken, belief that the 2008 Acura RDX was merchantable and safe to operate as designed. Had Honda disclosed that the HandsFreeLink™ could lead to vehicles that fail to start at a much higher level than a reasonable consumer would expect or contain electrical components which might fail while the vehicle is in operation, Plaintiff Burgess would not have purchased the vehicle or would have paid less for it.

**B.    Defendant**

171.    Defendant American Honda Motor Company, Inc. (hereinafter "Honda" or "Defendant") is a California corporation, and is a North American subsidiary of Honda Motor Company, Ltd.  Defendant is headquartered in Torrance, California, maintaining central operations and a rich history in California.

172.    Defendant first opened in the United States as a storefront selling Honda motorcycles in Los Angeles, California in 1959.  By 1968, Defendant had sold its millionth motorcycle.  Starting in 1969, Defendant began marketing and selling automobiles, with its operations still centered in California.

173.    By 1991, Defendant added production to its U.S. operations and oversaw all aspects of production, including research and development, from its headquarters in California.  As a center-point of Honda's global operations, Defendant made nearly $2 Billion in capital investments in

California and exported hundreds of millions of dollars in vehicles and other technology from its exclusive port facilities on the West Coast, at Port Hueneme, California, in 2015.

174.    In 1986, Defendant established its first luxury name marque, Acura.  By 2006, Defendant established research and development facilities dedicated solely to its Class Vehicles in Torrance, California with related facilities dedicated solely to the creation of "future Honda and Acura automobile and mobility design concepts" in downtown Los Angeles, California.

175.    From its headquarters in Torrance, Defendant combines product sales, service, and coordinating functions for Honda in North America, and is responsible for the manufacture, development, distribution, marketing, sales, and servicing of Acura-brand automobiles.  The decisions regarding the marketing and sale of the HandsFreeLink™ system, the development of the internal Service Bulletins relating to the HandsFreeLink™ system, and decisions regarding the disclosure or non-disclosure of the defect were in whole or substantial part made by Defendant in California and were purposefully emanated by Defendant in California.

## IV.    FACTUAL BACKGROUND

### A.    Defendant's HandsFreeLink™ System

176.    Beginning with the 2004 model year Class Vehicles, Honda was one of the first car companies to introduce Bluetooth® "hands-free" telephone technology, calling its "hands-free" interface the HandsFreeLink™ system.  With a "hands-free" interface like Defendant's HandsFreeLink™, drivers can use their phones without using their hands.  Drivers "pair" a smartphone with the car, allowing calls to be made using a microphone and the speakers in the car and enabling the phone to receive voice commands through the car's system to dial certain numbers or places, like by saying "call home" or "call my office."

177.    Beyond mere luxury and convenience, a "hands-free" interface makes for safer driving, allowing a driver to make calls with both hands on the wheel and eyes on the road.  Indeed, in many states, including California, a driver is not permitted to use a phone while driving unless they are making calls "hands-free.  Due to Honda's deceptive practices several Plaintiffs have had to

disable their HandsFreeLink™ thereby foreclosing on their ability to legally make phone calls or play music from their phones in a legal manner while driving.

178.    While the technology is now fairly ubiquitous, until recently, it was an important selling point among luxury manufacturers and remains a key part of the premium price charged for these vehicles in both the new and resale car markets.

179.    In a 2003 press release for the new 2004 model year Class Vehicles, Honda introduced its HandsFreeLink™ technology, stating that Acura was again leading the way among its peers in technology, performance and safety:

> This prestigious marque was created to bring stimulating performance, elegant styling, state of the art Technology and engineering and an unprecedented level of customer service to the luxury import market. . . .
>
> Among many of Acura's firsts: . . . The first standard Bluetooth hands-free phone system . . . .
>
> In addition, the . . . new HandsFreeLink™ system delivers hands-free phone capabilities that allow drivers to keep their hands on the wheel while making and receiving calls from their mobile phone.

180.    Further announcing the "First North American Vehicle to Feature a Standard Hands-Free Phone System" in another 2013 Press Release, Defendant went further, stating:

> The 2004 Acura TL performance luxury sedan will feature a Bluetooth hands-free phone system as standard equipment when it goes on sale in October at Acura dealers nationwide. The HandsFreeLink™ system enables a Bluetooth wireless connection between compatible mobile phones and the TL, allowing hands-free calls to be made and received from the car. With legislation pending in many states to ban the use of hand-held mobile phones while driving, the HandsFreeLink system is a timely addition to the TL's already considerable list of standard luxury features.
>
> "We think the HandsFreeLink system is the most effective, most convenient hands-free vehicle phone system available," said Tom Elliott, Executive Vice President, Auto Operations. "And we are proud to offer it as standard equipment on all TLs."

181.    Following these early marketing statements, Honda would repeat, time and again, how the "hands-free" in the HandsFreeLink™ system embodied the luxury, convenience, and safety

THIRD AMENDED CLASS ACTION COMPLAINT                    - 29 -

of Class Vehicles.  For example, in one of the first commercials about HandsFreeLink™, a sequence

of people are driving their Acuras through a variety of roads and weather patterns (sun, rain, and

snow) with both hands confidently on the wheel while speaking aloud commands to the car,

including commands to make calls home, to the office, or a restaurant to make reservations.  *See*

https://www.youtube.com/watch?v=PxFsbnm2B_k.

182.    Through to the present, the HandsFreeLink™ system remains one of the key features

emphasized by Defendant in its Acura marketing materials:

> The [Acura] offers a formidable list of standard equipment including
> items such as a leather trimmed interior, power moonroof, power
> windows, leather-wrapped multi-function steering wheel with racing-
> inspired paddle shifters, an auto-dimming rearview mirror with
> integrated rear view camera and a tri-zone climate control system with
> humidity control.  Also included are numerous high-tech features such
> as Bluetooth® HandsFreeLink™ wireless telephone interface, a Multi-
> Information Display (MID) that allows access to multiple electronic
> functions and LED backlit instrumentation.

*See, e.g.*, http://hondainamerica.com/news/2012-acura-mdx-continues-to-deliver-benchmark-

performance-comfort-and-control/.

**B.     The Defective HandsFreeLink™ System Strains (and Drains) the Electric System**

183.    Defendant, however, never publicly disclose or warn that the HandsFreeLink™

system "has an internal problem which creates a 'parasitic current draw' that continues even after the

car is turned off."  This parasitic drain strains the electric system, hastening failure of the battery and

other essential components in the electrical system, particularly the alternator.  As a result of this

defect, owners of Class Vehicles are left with cars that do not start reliably, failed electrical

components requiring expensive repairs and replacements, and compromised electric components

that can fail even when the vehicles are in operation.  In other words, this safety feature created

unsafe conditions for the owners, and this feature of convenience and luxury turned out to generate

expensive maintenance costs.

184.    As Defendant admitted as early as June 29, 2005 in an internal Technical Service

Bulletin ("TSB") (distributed only to Acura dealers) for the 2004 model year. Entitled TSB 05-20

"HandsFreeLink™ (HFL System Does Not Work")" there the Defendant admitted that the HandsFreeLink™ system will get "locked up" in an "on" position.[2] Defendant stated in that Service Bulletinthat the HandsFreeLink™ "system staying on may cause a dead or low battery while the vehicle's ignition switch is off." Defendant provided no special warranty coverage for replacement of the HandsFreeLink™ unit and directed dealers to use the same type of HandsFreeLink™ unit for replacement.

185.    Compounding the problem is that the defect effectively eludes diagnosis. Once the HandsFreeLink™ defect compromises the battery, the system can "reset," hiding the problem until the system gets stuck again. As Defendant stated in that same June 2005 Service Bulletin: "If the battery's state of charge goes low enough, or if the battery cables are removed, the system may reset, causing the problem to appear intermittent." Accordingly, the symptoms of the defect (failed components in the electrical system, like batteries and alternators) are usually mistaken to be the only problem—a bad battery or alternator needing replacement.

186.    Defendant then proceeded to issue four more internal Technical Service Bulletins over a span of 10 years. None of these TSBs repaired the HandsFreeLink™ defect.

187.    On December 6, 2008, Honda issued an internal TSB entitled "TSB-08-057 HandsFreeLink™ (HFL) Doesn't Work", which was again distributed only to Acura dealers. There the Defendant admitted that other more recent models had the same defect in their HandsFreeLink™ systems. Defendant stated that the HandsFreeLink™ "control unit has an internal problem, which creates a parasitic current draw of 250mA." One of the symptoms for the problem was that the battery would be so drained that it could not start the vehicle. The corrective action was to use the same type of HandsFreeLink™ for replacement.[3]

188.    On July 14, 2012, Honda updated TSB-08-057. It also renamed the TSB "HandsFreeLink™ (HFL) Doesn't Work, or Battery is Too Low to Start the Engine". Even four years

---

[2] TSB 05-020 was superseded by a slightly modified version on September 23, 2005 which included minor revisions such as suggestions to call the HFL support line.

[3] Honda issued at least two modifications to TSB-08-057. One was dated January 6, 2010 and the other on March 30, 2012.

later, Defendant continues to admit that "the HFL control unit has an internal problem, which created a parasitic current draw of 250 mA" and instructs technicians to use type of HandsFreeLink™ for replacement.

189.    The HandsFreeLink™ system does not even have to be used by an owner—ever—to get stuck "on." The defect is inherent in every HandsFreeLink™ unit that it is always operational, and always draws a parasitic battery drain.

190.    It is no surprise that modern vehicles use electronics. Cars include many components that will continue to draw power from the battery even when a car is off—for example to save preset radio stations, power security devices and run clocks. However, the draw for these ordinary purposes is minimal, typically amounting to no more than a total trickle of 25 to 40 milliamperes (mA). Such devices are, for example, short-range wireless receivers to unlock the doors. With such ordinary and expected draw, a battery will last weeks or months without ever being recharged and the regular life and operation of the battery and wider electrical system are not compromised. The parasitic draw of 250mA created in an Acura vehicle by the defective HandsFreeLink™ system, however, places upwards of ten times the drain and strain on the electric system than experienced by all other devices combined.

## C.    Consumer Harm as a Result of the Defective HandsFreeLink™ System

191.    The excessive and constant battery draw detailed above will drain batteries in only hours or days if the vehicle is not used rather than over the typical course of weeks or months. This constant strain compromises the battery, hastening the ultimate failure of the battery and other essential electrical components, particularly the alternator that recharges the vehicle's battery. Because of the defect, the alternator in an Acura vehicle is pressed into extra service to compensate for the compromised battery while continuing regular operation of the electrical systems when the vehicle is in operation. Like the battery, the alternator will fail at an accelerated rate and may fail suddenly as a result of the defect.

192.     As detailed in all of the above-listed internal Technical Service Bulletins, the only fix was a replacement of the HandsFreeLink™ systems, in total, which may or may not solve the problem and still may result in the same problem later to "appear intermittent[ly]."

193.     Compounding this problem for consumers, each time the HandsFreeLink™ system is replaced, besides the inconvenience, lost time, and often unreimbursed costs, as described in the Technical Service Bulletins, "[a]ll of the client's stored phone numbers will be lost when the . . . unit is replaced."  In other words, another layer of grief is added on: consumers and the class must reprogram their HandsFreeLink™ system with all of their phone contacts in order for the system to retain the functionality that it did prior to the battery drain.

194.     Moreover, consumers pay a premium price for high-end features like the (defective) HandsFreeLink™ system, and do so for the added promise of safety and convenience.  In sum, consumers are stuck with not only the inconvenience of repeat service visits but they are also stuck with the bill for a laundry list of other costs, including but not limited to battery replacements, alternator and starter replacements (because of the added strain on them due to constant re-charging of the battery), the added cost of the HandsFreeLink™ hardware itself, and the time lost in reprogramming the HandsFreeLink™ system with his/her phone contacts after each (ineffective) replacement.

**D.     Safety Hazard of a Defective HandsFreeLink™ System**

195.     The Defect in the HandsFreeLink™ system creates a safety hazard.  Compromised batteries may fail to start the Class Vehicles at any time and any place whether or not the owner is far from home or needs the car in the midst of an emergency.  In addition, the compromised alternator (which needs to compensate for the compromised) is subject to premature and sudden failure.  With a compromised battery and a failed alternator, the Class Vehicles can be left suddenly without any electric power even when the vehicle is in use.  At that time, a vehicle in operation will, stall, lose power (including to power assisted features like brakes and steering), lose headlights, trigger multiple warning lights on the dashboard, and/or otherwise operate poorly or erratically.

196.    The HandsFreeLink™ system is such a crucial safety feature for these luxury vehicles that Honda created a website dedicated solely to the HandsFreeLink™ feature.  *See* http://handsfreelink.acura.com/Acura/en-US/US.  At the HandsFreeLink™ website, Defendant extols the virtues of is HandsFreeLink™ technology and it explains that using it can prevent car malfunctions by allowing for remote diagnostics, potentially avoiding dangerous on-road situations:

**Data Connection for AcuraLink Diagnostics**

Ability to connect and transmit data to the Acura Server for the purpose of AcuraLink™ communication. AcuraLink™ Diagnostic Info provides a deeper analysis of what caused the malfunction in any one of the many systems in your vehicle.

This can sometimes prevent the need for an unnecessary visit to your dealer. The system can notify you via AcuraLink™ when you have service needs that are indicated by the remote diagnosis system. You must have a compatible phone with an active Data Plan.

*See* http://handsfreelink.acura.com/Acura/en-US/US/AdvancedFeatures.

197.    Consumers visiting the Acura website today, shopping for a new 2017 Acura, are still told about the safety of the HandsFreeLink™ system:  "Check in with the office without taking your eyes off the road.  The Bluetooth® HandsFreeLink™ system works with most Bluetooth-enabled cell phones to let you initiate and receive calls using the RDX audio system."  *See* http://www.acura.com/Features.aspx?model=RDX&modelYear=2017&context= Interior#~pKriC7t592dI0j.

**E.    Complaints to the National Highway Traffic Safety Administration Confirm the Safety Dangers of the Defective HandsFreeLink™ System**

198.    Complaints to the National Highway Transportation Safety Administration ("NHTSA") confirm that the defect in the HandsFreeLink™ system creates a safety hazard for drivers.  For example:

> WHILE DRIVING 65 MPH, THE VEHICLE [A 2007 ACURA TL] STALLED AND ALL OF THE WARNING LAMPS ILLUMINATED.  THE VEHICLE WAS TOWED TO THE DEALER.  THE TECHNICIAN DIAGNOSED THAT THE HANDS FREE LINK FAILED, CAUSING THE BATTERU TO DRAIN.  AS A RESULT, THE ALTERNATOR AND HANDS FREE LINK NEEDED TO BE REPLACED.  THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. . . .

> THE HANDS FREE LINK SYSTEM IN THE 2004-2008 ACURA TL IS CREATING A DRAIN ON THE BATTERY RESULTING IN

COMPLETE ELECTRICAL FAILURE OF THE AUTOMOBILE. THE INCIDENCE OF FAILURE IS MOST COMMON IMMEDIATELY AFTER PERIODS OF AT LEAST 10 HOURS OF NON-USE OR SHORTLY AFTER STARTING.  AS A RESULT FROM [sic] THIS ISSUE I EXPERIENCED THIS ELECTRICAL PROBLEM FOR THE PAST YEAR, FROM GOING THROUGH MULTIPLE BATTERIES AND BEING IN THE UNSAFE SITUATION OF MY ACURA TL LOSING ITS POWER IN A VERY BUSY INTERSECTION.  THIS PROBLEM HAS BEEN REPORTED EXTENSIVELY ON MULTIPLE ACURA OWNER'S WEBSITES/BLOGS AND HAS BEEN CONFIRMED BY THE LOCAL DEALERSHIP.  GIVEN THE POSSIBILITY OF IN-USE ELECTRICAL FAILURE, A RECALL SHOULD BE ISSUED.  ARE WE WAITING FOR SOMEONE TO BE KILLED OR SERIOUSLY INJURED BEFORE A RECALL IS REALLY ISSUED?

WHEN I STARTED THE VEHICLE [2006 ACURA TL], IT HAD A MOANING SOUND.  I CONTUNUED DRIVING AND THE BATTERY LIGHT, AIRBAG LIGHT, CSV LIGHT, ALL CAME ON JUST BEFORE THE DASH LIGHTS FLICKERED ON AND OFF, THEN TOTALLY WENT OUT AND THE CAR ENGINE SHUT OFF. WHEN I TREID TO JUMPSTART THE CAR, THE CAR STARTED AFTER A FEW MINUTES BUT WHEN THE JUMPER CABLES WERE REMOVED, THE CAR INSTANTLY SHUT DOWN.  THE CAR WAS IN THE MIDDLE OF THE ROAD AND HAD TO BE TOWED TO MY HOUSE.  THREE MONTHS AGO, THE CAR WOULD NOT START.  I GOT IT JUMPSTARTED AND IT RAN PERFECTLY UNTIL THE ABOVE INCIDENT OCCURRED.  THIS IS THE THIRD BATTERY THIS CAR HAS HAD. . . .

SEVERAL TIMES, THE ELECTRICAL SYSTEM SHUTS OFF WHILE DRIVING.  I WAS LUCKY TO BE IN THE NEIGHBORHOOD AND NOT ON A HIGHWAY.  THE DEALER STATED THERE IS A PROBLEM WITH THE BLUETOOTH [THE HANDSFREELINK™ SYSTEM] . . . . THIS IS THE SECOND TIME THIS HAS OCCURRED. THE FIRST TIME IT HAPPENED, THE BLUETOOTH WAS UNDER ACURA WARRANTY AND THE DEALER SUGGESTED WE DISCONNECT IT TO AVOID THE SAME ISSUE HAPPENING AGAIN.  BUT THAT IS THE REASON I HAD BOUGHT THE CAR [2007 ACURA MDX] IN 2007.  IT HAD AN INTEGRATED BLUETOOTH.  THE TIMES THE CAR [SHUT] OFF WHILE DRIVING LUCKILY WAS AT A TRAFFIC LIGHT AND IN OUR NEIGHBORHOOD.  I JUST HOPE THAT IT DOES NOT HAPPEN WHILE WE ARE ON THE HIGHWAY. . . .

RELATED TO THE HANDS FREE LINK WHICH HASN'T WORKED IN TWO YEARS.  I HAVE REPLACED THE BATTERY

SEVERAL TIMES (ONCE TWICE ONE WEEK, UNDER
WARRANTY).  I REPLACED THE BATTERY A WEEK AGO AND
ASK THEM TO PLEASE RESET THE HANDS FREE LINK . . .
.AND MY CAR [ACURA MDX] NAV FLICKERS NOW.  TWO
DAYS AGO THE CAR MOMENTARILY LOST POWER WHILE I
WAS DRIVING IN TOWN!!!!!  I WAS FORTUNATE TO BO ON
[A] STREET WITH 35MPH SPEED LIMIT AND NO OTHER
CARS. IT WAS TERRIFYING.

199.    Other complaints to NHTSA and elsewhere from owners of Class Vehicles confirm,

time and again, the existence of the defect:

IF THE CAR PARKED FOR 2 OR MORE DAYS IT WILL NOT
START. THERE IS DRAIN IN THE SYSTEM. APPARENTLY THIS
IS VERY COMMON PROBLEM WITH ACURA. DEALER SAID
THAT HE COULD TRY TO DISCONNECT BLUETOOTH
(HANDSFREE LINK) FOR $150-200. MY FAMILY WAS STUCK
IN COLD WINTER NIGHTS IN THE PARKING LOT WITH NO
PEOPLE, WHICH WAS NOT PLEASANT. I THINK ACURA
SHOULD HAVE A RECALL AND DISCONNECT OR REPLACE
DEFECTIVE UNITS FOR FREE. WE REPLACED BATTERY A
COUPLE OF TIMES WITHOUT ANY AFFECT.

CAR CONSTANTLY LOSES POWER OR GET WARNING LIGHT
STATING I NEED TO CHECK MY STARTING SYSTEM. HAVE
REPLACED THE BATTERY 3 TIMES THIS YEAR, REPLACED
THE ALTERNATOR TWICE AND HAVE REPLACED THE
STARTER ONCE. SOMETIMES CAR DOES NOT LOSE POWER
ALL THE WAY, BUT WILL LOSE FUNCTIONALITY OF
WINDOWS, TURN SIGNALS, WINDSHIELD WIPERS, RADIO,
AC AND ANY OTHER FUNCTION ALTHOUGH CAR WILL
STILL DRIVE. INSIDE THE ARM REST IS USUALLY
EXTREMELY HOT WHEN THIS HAPPENS. SO HOT THAT IT
BURNS YOUR HAND TO THE TOUCH. AFTER READING OVER
20 COMPLAINTS ON THIS SAME TYPE OF ISSUE, IT SEEMS
TO BE CAUSED BY THE HANDSFREE LINK IN THE CAR,
WHICH I HAVE NOT BEEN ABLE TO USE BECAUSE IT
STOPPED WORKING COMPLETELY BACK IN MARCH 2014.
THIS ISSUE NEEDS TO BE RECALLED BEFORE SOMEONE IS
SERIOUSLY INJURED OR WORSE!

BATTERY IN OUR 2007 ACURA MDX HAS HAD TO BE
REPLACED 3 TIMES IN THE PAST COUPLE OF MONTHS!
TURNS OUT THAT THE HANDSFREE LINK MODULE WAS
DRAINING THE BATTERY AND CAUSING IT HAVING TO BE
REPLACED NUMEROUS TIMES. THIS COULD CAUSE A FIRE
WHICH CAN POSE AS A DEADLY RESULT ESPECIALLY IF

THE CAR IS PARKED INSIDE OF A GARAGE. THIS NEEDS TO BE REPLACED BY ACURA FREE OF CHARGE ASAP! I DISCONNECTED IT RATHER THAN REPLACING IT AFTER READING THE NUMEROUS COMPLAINTS ON THIS MATTER! *JS

VEHICLE'S BATTERY DRAINED WHILE SITTING FOR 2 WEEKS WITHOUT DRIVING IT. TOWED TO DEALER. DEALER DIAGNOSED A BATTERY DRAIN COMING FROM THE HANDSFREE LINK UNIT. PART WAS $350+. DEALER EXPLAINED THAT THE LABOR WAS $150+ WHETHER THEY DEACTIVATED THE FAULTY UNIT OR WHETHER THEY REPLACED IT WITH A NEW UNIT. I OPTED FOR THE NEW UNIT. TOTAL BILL WAS -$800 WHICH INCLUDED LUDICROUS "DEALER-COMPLIANT" TOWING COMPANY. DEALER ALSO REPLACED BATTERY AT THIS TIME (UNDER WARRANTY BECAUSE I'D HAD A SIMILAR PROBLEM 4 MONTHS EARLIER - HOWEVER IT WAS NOT DIAGNOSED AT THAT TIME AS HFL UNIT). CAR SAT AGAIN FOR 1 WEEK. BRAND NEW BATTERY IS NOW COMPLETELY DEAD AGAIN. *TR

BATTERY IN OUR 2007 ACURA MDX HAS HAD TO BE REPLACED 3 TIMES IN THE PAST COUPLE OF MONTHS! TURNS OUT THAT THE HANDSFREE LINK MODULE WAS DRAINING THE BATTERY AND CAUSING IT HAVING TO BE REPLACED NUMEROUS TIMES. THIS COULD CAUSE A FIRE WHICH CAN POSE AS A DEADLY RESULT ESPECIALLY IF THE CAR IS PARKED INSIDE OF A GARAGE. THIS NEEDS TO BE REPLACED BY ACURA FREE OF CHARGE ASAP! *TR

BATTERY WAS FOUND TO BE COMPLETELY DRAINED ON A FEW OCCASIONS AFTER SITTING OFF OVERNIGHT. AFTER EXAMINING POSSIBLE CULPRITS WHEN THE BATTER WAS FOUND DRAINED IT WAS FOUND THAT THE HANDSFREE MODULE LOCATED IN THE REAR OF THE CENTER CONSOLE WAS HOT TO THE TOUCH. AFTER REMOVING THE MODULE COMPLETELY AND RECHARGING THE BATTERY THIS INCIDENT OF BATTERY DRAINAGE HAS NOT OCCURRED IN 3 MONTHS. THE HANDSFREE MODULE THAT OPERATES THE BLUETOOTH AND HANDFREE FUNCTIONS OF THE CAR IS DEFECTIVE TO THE POINT THAT IT PULLS A CONSTANT LOAD FROM THE BATTERY EVEN WHEN THE CAR IS SHUT OFF AND KEYS ARE NOT IN THE IGNITION. SEARCHING THE INTERNET FINDS MANY OTHER OWNERS OF THE SAME MODEL TO HAVE THE SAME PROBLEM. THIS MODULE SHOULD BE REPLACED BY THE MANUFACTURER FREE OF CHARGE BECAUSE IT CAN LEAD TO A DEAD BATTERY

WITH NO WAY TO START THE CAR, AS WELL AS POSSIBLE FIRE FROM THE AMOUNT OF HEAT BUILT UP IN THE FAULTY MODULE. *TR

MY BATTERY FAILED FOR THE SECOND TIME IN A COUPLE OF MONTHS AND REQUIRED A JUMP IN ORDER FOR THE CAR TO START. I TOOK IT TO AN ACURA DEALERSHIP WHERE THEY DETERMINED THAT THE HANDSFREE LINK SYSTEM WAS ELECTRICALLY FAULTY AND WAS STAYING ON CONTINUOUSLY, WHETHER THE CAR WAS RUNNING OR NOT. HENCE, THERE WAS A CONSTANT DRAW ON THE BATTERY. TO (HOPEFULLY) RESOLVE THE PROBLEM, I HAD THE DEALERSHIP REPLACE THE BATTERY AND THE HANDSFREE LINK SYSTEM. *TR

HFL ON MY 2006 MDX STOPPED WORKING A WHILE BACK. WHEN YOU PRESS THE TALK SWITCH, NOTHING HAPPENS. OCCASIONALLY, IT COMES ON, BUT NOT OPERATIONAL. WHAT I MEAN IS IT PROMPTS AND I CAN GO THROUGH THE MAIN MENU. BUT WHEN I TRY TO PAIR MY PHONE IT GOES INTO A NEVER ENDING SCANNING LOOP. IT DOESN'T APPEAR THAT ANY HANDSHAKING WITH THE PHONE IS ESTABLISHED. THIS SAME PHONE WORKS FINE WITH BLUETOOTH IN MY OTHER CAR AND OTHER DEVICES. SO, IT'S NOT THE PHONE. FOR ALMOST AN YEAR, THE BATTERY ON THE MDX KEEP DRAINING AND I WOULD REQUIRE A JUMP START IF I DON'T USE IT FOR 2-3 DAYS. IT LOOKS LIKE THE FAULTY BLUETOOTH HFL IS CAUSING THE BATTERY DRAIN. MANY PEOPLE OUT THERE HAVE THE SAME PROBLEM, NOT ONLY WITH 2006 ACURA MDX, BUT ALSO WITH SOME DIFFERENT ACURA MODELS.

PARASITIC BATTERY DRAIN. BATTERY (5 MO OLD)--NO BLUETOOTH. BATTERY TESTED BY SHOP-OK. ACURA LINK SITE SAID SINCE 2005, ACURA HFL (HANDS FREE LINK) MODULE DEFECTIVE, CAUSING A SHORT IN SYSTEM, THUS DRAINING THE BATTERY. THERE IS ALSO A SERVICE BULLETIN FOR THIS ISSUE. TO ME, THIS IS NOT ONLY A SAFETY HAZARD (DEAD BATTERY) BUT A RECALL ITEM (IT HAS BEEN ONGOING PROBLEM THAT HASN'T BEEN FIXED). THE MODULE IS LOCATED IN THE ROOF, WHICH SEES EXTREME TEMPERATURES. THE DEALER KNOWS ABOUT THIS PROBLEM AND CHARGES $700-$900 TO REPLACE THE MODULE. THE MODULE GOES FROM $285 TO $200 ON-LINE AND THE DESIGN HAS NOT CHANGED (JOHNSON CONTROLS). THE TIME IT TAKES TO R&R THE MODULE (UNPLUG AND PLUG IN) IS 10MIN. I ORDERED THE PART AND INSTALLED MYSELF. PLEASE REVIEW THIS AS A

1
2
3
4
5

RECALL FOR ALL THE ACURA OWNERS WHO PAID ABSORBENT COSTS TO HAVE IT REPLACED BY THE DEALER AND THOSE OF US INCONVENIENCED WITH OUT OF POCKET $, DEAD BATTERY AND NO BLUETOOTH. I PAID A BUNDLE FOR THE CAR ORIGINALLY BECAUSE IT WAS GOING TO BE THE LAST CAR I WAS EVER GOING TO BUY. NOW I AM SELLING THE CAR TO PREVENT THE NEXT COSTLY REPAIR.

6
7
8
9
10
11
12
13
14
15
16
17
18

AFTER BEING PARKED FOR ABOUT 2 WEEKS THE BATTERY STARTED FINE. I DROVE 10 MILES, TURNED OFF THE CAR FOR 1 HOUR, TRIED TO START THE CAR AGAIN AND THE ENGINE WOULD NOT TURN OVER. THE INSIDE LIGHTS WERE ON BUT THE HEADLIGHTS WERE DIM. AFTER TRYING TO START THE CAR SEVERAL TIMES BOTH THE INSIDE LIGHTS AND THE HEADLIGHTS WERE COMPLETELY OUT. I HAD TO CALL AAA FOR A JUMP BECAUSE THE BATTERY WAS DEAD. I THOUGHT THIS WAS ODD BUT THEN I REMEMBERED A FRIEND OF MINES HAS A 2008 TL AND HE HAS TO JUMP HIS BATTERY WEEKLY. SO I DID AN INTERNET SEARCH AND LEARNED THAT THOUSANDS OF ACURA OWNERS ARE HAVING THE SAME PROBLEM AND MOST ATTRIBUTE THE PROBLEM TO THE HANDS FREE LINK SYSTEMS (HFL). SO I CALLED ACURA AND THEY CONFIRMED THAT THE CAUSE IS MOST LIKELY DUE TO HANDS FREE LINK SYSTEM. WHY HASN'T THIS BEEN A RECALL? IS ACURA WAITING FOR SOME TO DIE FIRST? THIS IS SAFETY ISSUE AND A RACKET! THE DEALER CHARGES NEARLY $200 TO DIAGNOSE THE PROBLEM AND SEVERAL HUNDRED MORE DOLLARS TO FIX IT. A RECALL IS WARRANTED!!!

19
20
21
22
23
24
25
26
27
28

MY CAR SAT AT AIRPORT FOR APPROXIMATELY A WEEK AND WOULD NOT START UPON RETURN. GOT A JUMP AND WAS OK FOR ABOUT A WEEK WHEN AGAIN IT WOULD NOT START AFTER SITTING IN THE GARAGE FOR 3 DAYS. I TOOK THE BATTERY TO THE STORE FOR A REPLACEMENT. HE TESTED THIS 2 YEAR OLD BATTERY AND IT WAS PERFECT. I WENT ON-LINE TO SEARCH FOR THIS PROBLEM AND THE YEARS 2004 THROUGH 2007 HAVE A LARGE NUMBER OF INCIDENCES EXACTLY LIKE MINE. THE PROBLEM THAT THE ON-LINE AUDIENCE HAS FOUND IS THAT OVER TIME A PARTIAL SHORT CIRCUIT IN THE HFL (HANDS FREE LINK) MODULE APPEARS. THIS IS CLEARLY A LATENT DEFECT IN THIS MODULE. I WROTE TO ACURA CUSTOMER SERVICE AND THEIR RESPONSE DID NOT ADDRESS THE SPECIFIC PROBLEM. I GOT A "COOK- BOOK" RESPONSE THAT I

SHOULD BRING IT TO THE DEALER FOR THEM TO CHECK IT OUT. IS THERE ANYTHING YOU CAN DO REGARDING SUCH LATENT DEFECTS FOR OUT-OF-WARRANTY VEHICLES?

BATTERY FAILURE AFTER 18 MONTHS/17,000 MILES. WAS ADVISED BY SERVICE DEPT. REPRESENTATIVE THAT CAR'S BLUETOOTH FEATURE ACTS AS A "VAMPIRE" DRAIN ON THE BATTERY EVEN WHEN THE ENGINE IS OFF. SAID IT'S A KNOWN PROBLEM WITH 2005 AND 2006 MODELS.

THE HANDSFREE LINK (BLUETOOTH) MODULE FAILED. I'VE READ THAT THIS IS A COMMON OCCURRENCE FROM THE WEBSITE I BELONG TO ACURAZINE.COM (A WEBSITE FOR ACURA OWNERS/ENTHUSIASTS). I CONSIDER IT A SAFETY ISSUE SINCE IT ALLOWS YOU TO USE YOUR CELLPHONE WHILE DRIVING WITHOUT HAVING TO USE YOUR HANDSET. THE CAR'S STEREO SPEAKER SYSTEM AND A BUILT-IN MICROPHONE ALLOWS YOU TO CONDUCT A PHONE CALL. I HAVE READ IT IS A POOR DESIGN CHOICE ON ACURA'S PART PLACING THE BLUETOOTH MODULE IN THE CAR CEILING NEAR THE ROOF. SITTING IN THE SUN, THE MODULE "FRIES" AND EVENTUALLY FAILS. ACURA REFUSES TO DO ANYTHING ABOUT IT STATING THAT IT IS OUT OF WARRANTY. THEY WANT TO CHARGE $110 JUST TO DIAGNOSE IT AND OVER $700 TO INSTALL A NEW DEVICE. I HOPE ACURA OWNERS COMPLAIN AND WRITE LETTERS TO ACURA ABOUT THIS ISSUE. I FEEL A SAFETY RECALL SHOULD BE ISSUED AND PERHAPS EVEN RELOCATING THE MODULE OUT OF THE HEAT FROM THE SUN.

MY CAR BATTERY KEPT DYING EVERY 3 MONTHS, I EVEN GOT A NEW BATTERY AND MY CAR WAS STILL DYING. I WAS STRANDED AT THE BANK IN A PARKING LOT, MY DRIVEWAY, AND AT WORK. AFTER IT DIED AGAIN AND WOULDN'T START WITH A NEW BATTERY I CALLED THE DEALERSHIP. THEY STATED IT IS MY BLUE TOOTH, WHICH HADN'T BEEN WORKING, THAT IS DRAINING MY BATTERY AND THEY HAVE SEEN IT IN MY MODEL AND YEAR. I HAD TO PAY $100 TO HAVE IT DISCONNECTED AND THEY WANT TO CHARGE ME $400 TO HAVE IT REPLACED. I REPLACED IT AND NOW THEY WONT REIMBURSE ME. THIS SHOULD BE A RECALL AND IT IS A SAFETY ISSUE BEING STRANDED WITH YOUR CAR NOT STARTING. I HAVE A BABY THAT IS NOT OK WITH ME TO WONDER IF MY CAR WILL START. PLEASE HELP ACURA NEEDS TO BE ACCOUNTABLE FOR THIS FAULTY PART AND THE SAFETY OF PEOPLE DRIVING THEIR CARS.

THE HANDS FREE LINK SYSTEM IN MY 2006 ACURA TL IS CREATING A DRAIN ON THE BATTERY RESULTING IN COMPLETE ELECTRICAL FAILURE OF THE AUTOMOBILE. THE INCIDENCE OF FAILURE IS MOST COMMON IMMEDIATELY AFTER PERIODS OF AT LEAST 10 HOURS OF NON-USE OR SHORTLY AFTER STARTING. IF NOT FOR AAA, I WOULD HAVE BEEN LEFT STRANDED 300 MILES AWAY FROM MY HOME.. I HAVE REPLACED 2 BATTERIES THINKING THAT WAS THE CAUSE WITHIN THE LAST 3 YEARS. SOMETHING NEEDS TO BE DONE! RECALL!!!

THE HANDS FREE LINK SYSTEM THAT USES BLUETOOTH TO CONNECT TO YOUR CELLULAR PHONE IS DEFECTIVE. IT KILLS THE CAR BATTERY, ALWAYS DRAWING CURRENT FROM THE BATTERY EVEN WHEN THE CAR IS PARKED AND NOT RUNNING. HAD BATTERY REPLACED ALL READY. MANUFACTURER SUGGESTED REPAIR IS TO DISCONNECT THE HANDS FREE LINK FROM THE VEHICLE. I FEEL THIS IS UNSAFE . I T WOULD CAUSE PEOPLE TO USE THERE CELL PHONES WITHOUT THE HANDS FREE FEATURE WHILE DRIVING, WHICH IN TURN COULD CAUSE AN ACCIDENT. SO THIS IS A MAJOR SAFETY ISSUE AND I FEEL ACURA SHOULD RESOLVE THE PROBLEM. I HAVE RESEARCHED THIS ISSUE AND HAVE FOUND THAT THIS PROBLEM IS WIDESPREAD THROUGHOUT AT LEAST TWO MODELS OF ACURA (ACURA MDX AND ACURA TL), AND APPROXIMATELY YEARS 2004 THROUGH 2008.

BATTERY KEPT GOING DEAD AND STRANDING ME IN MULTIPLE PLACES. HAD TO PURCHASE A PORTABLE CAR STARTER IN ORDER TO KEEP RESTARTING THE CAR. COULDN'T FIND ANY OFFICIAL REASONS BEHIND IT FROM ANY ACURA SOURCES. AFTER SOME INTERNET SEARCHING I FOUND OUT THAT THE HFL BLUETOOTH MODULE WAS CAUSING A BATTERY DRAIN FOR MANY OTHER OWNERS. SOLUTION WAS TO REMOVE THE MODULE. AFTER THAT THE PROBLEM WENT AWAY. WAS STRANDED MULTIPLE TIMES -- VERY UNSAFE!! ALSO HAD TO PURCHASE CAR STARTER AND NEW BATTERY! ACURA DEALERS REFUSED TO PAY FOR THE NEW HFL REPLACEMENT. THIS IS A SAFETY ISSUE THAT HAS AFFECTED MANY DRIVERS. COULD BE VERY DANGEROUS.

I HAVE THE SAME CAR AND MY HFL [HANDSFREELINK] WENT OUT ABOUT 2 WEEKS AGO. I HAVE LEARNED QUITE A BIT IN THE PAST FEW DAYS. THIS IS DEFINITELY A BIG PROBLEM. THE REPAIR PLACE I TALKED TO TOLD ME THAT THE SUPPLIER HAS AT LEAST 3 IN STOCK. IF SUPPLIERS

ARE CARRYING EXPENSIVE ITEMS LIKE THE HFL THEN
THEY EXPECT TO BE SELLING ABOUT 1 PER WEEK. HE HAS
REPLACED MANY OF THEM AND FEELS HONDA SHOULD BE
REPLACING THEM AT NO COST GIVEN HOW MANY HE HAS
HAD TO REPLACE. HE ALSO SAID COUNSELED AGAINST
BUYING A USED ONE -- FOR OBVIOUS REASONS.

BE CAREFUL ABOUT AN ANCILLARY PROBLEM--
YESTERDAY MY CAR WOULDN'T START. I WAS TOLD BY
THE ACURA DEALER AND THE 3RD PARTY REPAIR
FACILITY THAT THE BROKEN UNITS DRAIN YOUR
BATTERY. YOU HAVE NOT CHOICE BUT TO SHELL OUT THE
$700-$800 -- SAME COST WHETHER YOU HAVE THE NAVI OR
NOT. I ASKED IF THEY COULD JUST DISCONNECT IT AND
THE DEALER SAID NO, THEY WERE NOT ALLOWED TO.

IN MY OPINION, THIS IS A RECALL ITEM BUT WILL THEY
RECALL SOMETHING THAT IS NOT A "SAFETY" ISSUE? IF
NOT, FROM WHAT I'VE HEARD AND WHAT I'VE JUST READ,
THIS SEEMS TO BE A CLASS ACTION ISSUE.

LOOKS LIKE I AM JOINING THE CLUB.... THE HFL ON MY
2006 DIED ON ME THIS WEEK AS WELL. AND THIS MORNING
MY BATTERY WAS DEAD SO I THINK I AM EXPERIENCING
THE DISCHARGE ISSUE FROM THE BAD MODULE.

I GOING TO TRY TO UNPLUG THE MODULE THIS WEEKEND
TO SEE IF THAT HELPS. NO WAY I AM PUTTING OUT THE $$$
TO ACURA FOR A NEW MODULE!

I HAVE BEEN HAVING PROBLEMS WITH MY HFL FOR A
COUPLE MONTHS AND HAVE JUST BEEN MAKING DUE
WITHOUT IT. HOWEVER NOW, MY BATTERY KEEPS DYING
BECAUSE APPARENTLY THE HFL IS DRAINING IT.

I TOOK THE CAR INTO MY LOCAL ACURA DEALER (ACURA
OF PLEASANTON, CA) AND THEY WANT $150 JUST TO
DIAGNOSE IT AND ANOTHER $500 IF IT NEEDS
REPLACEMENT. COULD YOU SEND ME WHATEVER
INFORMATION YOU WERE ABLE TO GATHER? ALSO DID
YOU JUST REPLACE THE MODULE YOURSELF OR DID YOU
HAVE THE DEALERSHIP TAKE CARE OF IT FOR YOU?

THANKS FOR THE HELP!

MY 2005 ACURA TL WOULD NOT START THIS MORNING. I
REPLACED THE BATTERY IN JULY. WHEN TRYING TO
START THE CAR, I HAD LIGHTS BUT THE BATTERY WOULD

NOT TURN OVER THE MOTOR. AFTER JUMPING THE BATTERY, THE CAR STARTED. READING ALL OF THESE BLOGS I SUSPECT AN HFL ISSUE. MY HFL STOPPED WORKING IN APRIL AND I DID NOT THINK ABOUT HAVING IT FIXED. AFTER READING THESE BLOGS, IT MAKES SENSE. ALSO, I NOTICED THAT THERE IS SOMETHING IN THE ELECTRICAL SYSTEM THAT IS DRAWING ENERGY FROM THE BATTERY WHILE THE CAR IS NOT ON. THE ACURA STEALERSHIP WANTS $120 AN HOUR TO DIAGNOSE AN ELECTRICAL PROBLEM AND SAY IT WILL TAKE 2-3 HOURS TO DIAGNOSE. I HAVE READ THE BLOGS AND FOUND THE SERVICE BULLETIN AS WELL AS REPLACEMENT HFL.

I'VE HAD NO PROBLEMS WITH THE HFL, UNTIL RECENTLY... TOOK IT TO MY REGULAR SERVICE GUY, AFTER MY BATTERY WOULD DRAIN WHEN SITTING FOR A VERY SHORT PERIOD OF TIME. BATTERY IS BRAND NEW, AND THE CHARGING SYSTEM IS WORKING PROPERLY. THERE IS, HOWEVER, BETWEEN A 2.5 AND 5 AMP DRAW ON THE BATTERY WHEN IT SITS. THEY'VE TRACKED IT BACK TO WHAT THEY THINK IS THE HFL.

MY BLUETOOTH STOPPED OPERATING ON MY ACURA TL 05, UNAWARE SINCE I DIDN'T USE IT FOR MY LAST PHONE I PURCHASED...A COUPLE OF MONTHS AGO MY CAR BATTERY DIED A FEW TIMES AND LEFT ME STRANDED THE FEW TIMES LONG STORY SHORT CALLED MY ACURA DEALERSHIP WHOM I'VE BEEN A LOYAL CUSTOMER FOR 5YRS TOLD ME IT WAS THE BLUETOOTH CAUSING A PARASITIC DRAW ON MY BATTERY AND THAT THEY WOULD DISCONNECT IT FOR FREE (SINCE I DIDN'T HAVE $550 TO REPLACE BLUETOOTH MODULE)...AFTER A COUPLE OF WEEKS BATTERY KEPT DYING WENT BACK TO ACURA AND THEY DID A PARASITIC TEST ($135.00) AND TOLD ME THAT IT SEEMS I NEED A NEW MULTIPLEX UNIT $950+ TO REPLACE AND THAT MAYBE THAT'LL SOLVE MY PROBLEM... I REFUSED AND WENT FOR A SECOND OPINION. LOW AND BEHOLD THE EINSTEIN AT ACURA THAT WAS SUPPOSED TO HAVE DISCONNECTED THE BLUETOOTH DIDN'T UNPLUG IT CORRECTLY (UNKNOWINGLY OR KNOWINGLY) AND DISCONNECTED MY MAP LIGHTS INSTEAD SINCE ITS HOUSED IN THE SAME COMPARTMENT ...EITHER WAY I FEEL THAT THEY WERE TAKING ADVANTAGE OF ME AND WENT PARASITIC IN MY POCKET FOR MORE ($)...MY SECOND OPINION UNPLUGGED THE HFL MODULE AND HAVEN'T HAD A PROBLEM SINCE..BE CAREFUL PEOPLE DO YOUR RESEARCH FIRST...YOU CAN

BUY THE PART AND DO IT YOURSELF IF YOU FOLLOW THE ACURA BULLETIN 05-020 OR JUST UNPLUG THE BLUETOOTH AND THE DRAW WILL GO AWAY IF YOU DON'T WANT TO REPLACE IT...I'M GOING AFTER ACURA FOR MY PARASITIC DRAW TEST FEE, SINCE ALL ALONG THEY WERE LYING TO ME, AT THIS POINT AND AFTER MANY STRANDED NIGHTS THEY SHOULD HAD REPLACED IT FOR FREE!

MY 2006 ACURA TL HAS STARTED DOING THE EXACT SAME THING. FIRST THE HANDSFREELINK STOPPED WORKING COMPLETELY. DON'T EVEN GET A RESPONSE WHEN I PUSH THE BUTTON. THEN LAST WEEK MY BATTERY WENT COMPLETE DEAD AS A DOORNAIL. AFTER SEEING YOUR POST, I AM WONDERING IF THE 2 ARE RELATED. DO YOU BY ANY CHANCE REMEMBER THE EXACT NAME OF THE PART THAT YOU REPLACED AND WHAT WEBSITE YOU BOUGHT IT FROM? I WOULD HAVE TO REPLACE IT MYSELF ALSO BUT AM ENCOURAGED THAT YOU WERE ABLE TO DO IT.

I HAVE A 2008 ACURA TL TYPE S 49,000 KM. THIS MONDAY NOV 19 THE HANDS-FREE LINK STOP WORKING (BOOTING UP MESSAGE ON THE SCREEN). I REMOVED FUSE NUMBER 7 AND 10 AND THE HANDSFREE WORKS FOR 10 MINUTE AND DIED AGAIN. I CALLED ACURA OFFICE AND THEY TOLD ME THERE IS NO RECALL ABOUT THIS ISSUE BECAUSE IT IS NOT A SAFETY ISSUE. THEY TOLD ME TO TAKE IT TO THE DEALER. LAST YEAR THE HFL DRAINS MY BATTERY AND I HAVE TO PAY.

I HAVE 08TL. I HAD IT'S FOURTH BATTERY INSTALLED IN NOV.,2012. IT HAS JUST GONE DEAD. WHEN I TALKED TO AUTO-ZONE ABOUT REPLACING IT, THEY SAID TO HAVE THE ALTERNATOR CHECKED EVEN THO ITS NUMBERS WERE IN THE NORMAL RANGE. WHEN I TALKED TO THE SERVICE MANAGER AT MY ACURA DEALERSHIP. WITHOUT HESITATION HE SAID BRING IT IN. HE DISCONNECTED THE BLUETOOTH CONNECTION AND SAID I SHOULD. HAVE NO MORE BATTERY PROBLEMS. BUT NO BLUETOOTH. HE SAID WE WOULD DISCUSS THE OPTIONS LATER. IF YOURS WAS A PREOWNED CAR THEY MAY HAVE DISCONNECTED THE BLUETOOTH.

SO, MY WIFE HAS A 2007 TL. WE HAVENT HAD ANY MAJOR MAINTENANCE ISSUES WITH THE CAR, ONLY THE NORMAL ROUTINE OIL, TIRES. ABOUT 2 YEARS AGO WE HAD THE BATTERY REPLACED UNDER THE WARRANTY. TODAY THE

BATTERY IS SLUGGISH TURNING THE VEHICLE ON, SO I TAKE IT OVER TO ACURA AND THEY TELL ME I NEED A NEW BATTERY, BUT NOW THIS ONE IS NOT UNDER WARRANTY. ANYWAY... A COUPLE DAYS AGO MY WIFES BLUETOOTH STOPPED WORKING ON HER TL. I DECIDED TO SEE IF THERE WAS ANYTHING ONLINE TO SHOW HOW TO FIX IT, FINDING THESE POSTS. I READ A LOT OF POSTS ABOUT DISCONNECTING THE BLUETOOTH TO NOT HAVE ANY BATTERY ISSUES. MY QUESTION IS, IF ITS NOT WORKING NOW, DOES THAT MEAN ITS ALREADY DISCONNECTED? OR DO I HAVE TO DO SOMETHING ELSE TO DISCONNECT IT? AND, ANY AFTERMARKET BLUETOOTH RECOMMENDATIONS?

ADD ME TO THE GROWING LIST OF ANGRY ACURA TL OWNERS WITH A HAND FREE LINK PROBLEMS AND AN EXTREMELY POOR CUSTOMER SERVICE EXPERIENCE.

WITH SUCH A WIDE SPREAD FAILURE RATE ACURA SHOULD RECALL THIS UNIT AND/OR MAKE THE REPAIR REASONABLE. THE REPAIR COST IS OUTRAGEOUS FOR A MAJOR SAFETY ISSUE.

ACURA HAS BEEN REPLACING BATTERIES IN THIS VEHICLE FREE OF CHARGE SINCE 15,189 MILES. EACH BATTERY LASTED FEWER MONTHS. NO ONE AT ACURA LOOKED INTO THE CAUSE OF THE REPEATED FAILURES. I WAS LED TO BELIEVE THE BATTERIES WERE LEMONS AND THE VEHICLE WAS FINE WHEN IT WAS THE OTHER WAY AROUND.

NOW THE VEHICLE IS OUT OF WARRANTY AND ACURA CUSTOMER SERVICE ACTS LIKE THEY HAVE NEVER HEARD OF THE THIS PROBLEM!

PLEASE ALERT THE NATIONAL HIGHWAY TRANSPORTATION SAFETY AUTHORITY AND ALL ACURA DRIVERS THAT THERE IS A MAJOR SAFETY ISSUE WITH THE ACURA TL AND THE HAND FREE LINK. WE NEED TO SPREAD THE WORD.

I HAVE OWNED 6 ACURAS AND 2 HONDAS AND MY PAST EXPERIENCE WITH ACURA/HONDA HAS BEEN THAT THEY STAND BEHIND THEIR PRODUCT. NOT SO ANYMORE, AND I WILL NEVER BUY ANOTHER ACURA. THIS EXPERIENCE HAS TARNISHED MY IMAGE OF THE ACURA BRAND.

I TOO HAVE A HFL BLUETOOTH THAT NO LONGER WORKS AND JUST REPLACED BATTERY AFTER TAKING IT TO THE

DEALERSHIP. THEY TOLD ME THAT THE BATTERY HAD A BAD CELL. THE BATTERY WAS REPLACED IN 2010 WHEN THE CAR WAS STILL UNDER WARRANTY. THE DEALER TOLD ME THAT I WOULD HAVE TO PAY FULL PRICE FOR THE BATTERY ($160). I EXPLAINED TO THEM THAT I HAD A BAD BLUETOOTH AND I THOUGHT THAT IT WAS PULLING ON THE BATTERY. THEY TESTED THE ELECTRICAL AND TOLD ME THAT EVERYTHING WAS FINE.....MEANING NOTHING WAS DRAWING ON THE BATTERY. I DECIDED TO GET A BATTERY FROM ANOTHER SOURCE.

BOY, I WISH I HAD DISCOVERED THESE POSTS PRIOR TO TAKING MY CAR TO THE DEALER.

CAN ANYONE GIVE ME STEP BY STEP INSTRUCTIONS ON DISCONNECTING THE BLUETOOTH SO THAT IT DOES NOT DRAW DOWN MY NEW BATTERY?

HI, I HAVE OWNED AN 2008 MDX SINCE NEW AND AFTER PAYING TO REPLACE BATTERY, HFL FAILED, THEN A FEW MONTHS LATER BATTERY WAS FLAT IN MORNING. DEALER SAID "DON'T BOTHER CAUSE IT'LL COST $800 TO REPLACE HFL" NOT ONCE ADVISING ME ON THE RAMIFICATIONS. SO, AFTER READING SOME FORUMS ONLINE I DISCONNECTED THE HFL MYSELF(THANK THE UNIVERSE FOR THE INTERNET AND THOSE WHO'VE HAD THIS PROBLEM BEFORE ME). I DON'T KNOW HOW MUCH THE PART WOULD COST IN CANADA, BUT I ORDERED THE SAME PART(WITH A SLIGHTLY DIFFERENT PART NUMBER, I GUESS CAUSE IT HAS SPANISH VS FRANCAIS) FROM EBAY(ACURA OF TEMPE).

THIS FAULTY HANDS FREE LINK ISSUE IS ABSOLUTELY UNACCEPTABLE, ESPECIALLY SINCE ACURA HAS ALLOWED IT TO PROLIFERATE FOR SO MANY YEARS AND VICTIMIZE ALL OF YOU HERE WHO HAVE SPENT SO MUCH TIME AND MONEY ON THIS! IN FACT, ACURA MUST BE ONE OF THE WORST LUXURY AUTO BRANDS AFTER ALL OF THE ISSUES I'VE DEALT WITH.

I HAVE A 2007 ACURA TL THAT WAS SERVICED MULTIPLE TIMES WHILE UNDER WARRANTY FOR ISSUES SUCH AS A "MYSTERIOUS POWER DRAW" AND STICKING SIDE VIEW MIRROR. THE DEALER'S SERVICE DEPT STATED THEY COULDN'T FIND THE SOURCE OF THE POWER DRAIN, SO THEY SIMPLY PUT IN A NEW BATTERY AS IF THAT WAS AN ANSWER. AND THE STICKING SIDE MIRROR STILL GETS STUCK.

AS SOON AS THE WARRANTY RAN OUT, THEY GAVE ME THE COLD SHOULDER. MY ACURA TL NOW WON'T START AFTER ONLY THREE DAYS OF NON-USE BECAUSE ITS BATTERY GETS COMPLETELY DRAINED. THE BATTERY IS NEW, THE ALTERNATOR PASSED TESTS, AND ONLINE FORUMS ALL INDICATE A KNOWN ACURA SERVICE BULLETIN FOR THE CULPRIT BEING THE FAULTY HFL MODULE. ACURA SERVICE DEPTS WANT TO CHARGE JUST TO LOOK AT IT, AND ACURA CUSTOMER RELATIONS REFUSES GOODWILL SERVICE AND TOLD ME TO PAY FOR THE REPAIR MYSELF! THIS IS OUTRAGEOUS!

I WANT TO AT LEAST BE ABLE TO DRIVE MY CAR, SO I REMOVED THE HFL MODULE MYSELF, WHICH WAS EASY. THAT MODULE WAS HOT TO THE TOUCH LIKE A SMARTPHONE AFTER PLAYING A LONG MOVIE! AND THE CAR HADN'T BEEN DRIVEN FOR TWO DAYS! GUESS WHAT? MY CAR'S BATTERY NO LONGER GETS DRAINED.

I HAVE A 2006 TL. LAST WEEK, IT WAS SLUGGISH TO START. I WAS TOLD THAT IT HAD A FAULTY HFL CONNECTION THAT WAS DRAINING MY BATTERY (A BATTERY THAT WAS REPLACED 4 MONTHS AGO). I TOLD THEM THAT I HAVE NEVER USED THE DARN THING AND I'VE HAD THE CAR FOR 7 YEARS! IT COST $400...I JUST NOW CAME ACROSS THIS FORUM AND LEARNED THAT IT COULD BE DISCONNECTED...ACURA DID NOT TELL ME THAT!! TODAY, MY CAR DID NOT START AT ALL. I HAD TO GET IT TOWED TO ACURA FOR THEM TO TELL ME THAT MY STARTER WAS KAPUT! NOW, I AM THINKING MAYBE IT WAS THE STARTER ALL ALONG. UNTIL, NOW I USED TO LOVE MY CAR...BUT ALMOST $1000 IN SEVEN DAYS!!!! THIS IS APPALLING! I SENT AN E-MAIL TO ACURA CLIENT RELATIONS. SOMETHING NEEDS TO BE DONE ABOUT THIS!

I HAVE AN ACURA 2008 MDX, I HAVE THE SAME DEAD BATTERY ISSUE OTHERS HAVE REPORTED. I HAVE GONE THROUGH 4 BATTERIES OVER THE PAST 5 YEARS. MOST RECENT NEW BATTERY WAS INSTALLED A MONTH AGO, YESTERDAY WENT OUT TO THE CAR AND IT WAS DEAD. I CONTACTED THE MECHANIC WHO INSTALLED THE NEW BATTERY.

HE SAID THEY RAN A TEST AND FOUND A MALFUNCTIONING CIRCUIT THAT POWERS THE BLUETOOTH HANDS-FREE LINK. SAID THAT THE HFL WAS DRAWING CURRENT FROM THE BATTERY WHILE THE CAR WAS OFF. IT WASN'T DRAWING A LOT OF CURRENT, BUT

1

ENOUGH TO KILL A BATTERY OVER THE COURSE OF A FEW
WEEKS.

2

3

**F.**  **Defendant's Exclusive Knowledge and Concealment of the Defective HandsFreeLink™
System**

4

5

200.    Without knowing about the defect in the HandsFreeLink™ system, owners have

6

replaced one battery after another experiencing only the symptom of the defect and have incurred

7

other costs as discussed herein, but because consumers were and remain ignorant of the actual source

8

of the problem, they continue to suffer ongoing harm.  Some owners report dissatisfaction with

9

batteries that were only a few months old when they needed to be replaced, not knowing that the

10

HandsFreeLink™ system was parasitically straining the electric system.  Others report that they

11

thought that a battery or other essential electrical component that was several years old just needed to

12

be replaced a little sooner than expected, never understanding that the HandsFreeLink™ system was

13

defective or the cause.  Without understanding why, owners incur hundreds or thousands of dollars

14

in costs paid for repeated jump starts for drained batteries, buying replacement electrical

15

components, including batteries and alternators, and covering other costs related to the defect in the

HandsFreeLink™ system.

16

201.    As a consequence of Defendant's exclusive knowledge and concealment about the

17

defect, Acura owners will not discover the real cause of the problem until after several encounters

18

with the symptoms of the problem (drained batteries, failing electric components, etc.), if they

19

discovery the root cause at all.  Accordingly, Acura owners are not likely to learn about the defect in

20

the HandsFreeLink™ unit until after warranty coverage has passed.

21

202.    Replacement of the HandsFreeLink™ system is the course of action recommended by

22

Defendant in its internal Service Bulletins.  It offers no extended or special warranty coverage for

23

this known defect which will typically be diagnosed after the regular manufacturer's warranty has

24

expired.  However, the parts and labor for the replacement of the HandsFreeLink™ unit are upwards

25

of $1,000.00, if not more.  Moreover, Defendant is not using different HandsFreeLink™ units, but

26

rather the standard HandsFreeLink™ unit for these replacements.  Accordingly, owners who have

27

had their HandsFreeLink™ systems replaced have reported that the new system also gets stuck "on",

28

THIRD AMENDED CLASS ACTION COMPLAINT                              - 48 -

causing the same harm and creating the same safety hazard.  Accordingly, once owners discover that the HandsFreeLink™ system is at the bottom of the recurring costs and inconvenience, many simply opt to disconnect the unit, disabling an important feature in their luxury vehicles and rendering their Class Vehicles less valuable than comparable cars with properly functioning "hands-free" systems. Several dealerships have in fact instructed their service departments to offer this 'disabling service' where they charge an additional fee to disable the feature. Under this arrangement not only are Acura owners being foreclosed from using a feature they paid for, but they must also incur additional charges for any labor and parts involved in disabling the feature at the dealership.

**G.      Exclusive Knowledge, Concealment, and Safety Defect Allegations**

203.    Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals associated with Honda responsible for disseminating false and misleading marketing materials (*i.e.*, the marketing materials with material omissions) regarding its vehicles with the Defective HandsFreeLink™ system.  Honda is necessarily in possession of all of this information.

204.    Plaintiffs' claims arise out of Honda's exclusive knowledge of and/or concealed material information regarding the defect and the safety hazard it poses.  There is no one document or communication, and no one interaction, upon which Plaintiffs base their claims.  Plaintiffs allege that at all relevant times, specifically at the time they purchased or leased their Affected Vehicles, Honda knew the safety dangers of the defect, namely the battery-drain and myriad of associated repercussions.  Honda was under a duty to disclose the defect based upon its exclusive knowledge of and/or concealed material information regarding the defect; Honda failed to disclose the defect to Plaintiffs, other Class members, or the public at any time or place or in any manner such that it could (and would) have affected Plaintiffs' and Class members' pre-sale decision to purchase and/or lease their HandsFreeLink™ system-equipped vehicles.

205.    Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Honda:

(a)      ***Who***: Honda had and has exclusive knowledge of the Defect and failed to disclose to Plaintiffs and/or concealed material information regarding the defect from Plaintiffs.

Honda similarly failed to disclose the Defect's dangerous safety risks in its HandsFreeLink™ system-equipped vehicles.  Plaintiffs were unaware of, and therefore unable to identify, the true names and identities of those specific individuals responsible for such decisions.

        (b)    ***What***:

        (i)    Honda failed to disclose that its Affected Vehicles contain the Defect. Honda has and had exclusive knowledge of and/or concealed material information that its Affected Vehicles contain the Defect.  Yet Honda failed to disclose the same in any pre-sale materials.

        (ii)    Honda could have, but failed to, disclose to consumers the risks of vehicles Defective HandsFreeLink™ system.  An exemplar of a simple but effective disclosure that was omitted from any and all of its pre-sale materials is:

> WARNING: This vehicle is equipped with a HandsFreeLink™ Bluetooth wireless connectivity system.  Even if the engine is not started or the vehicle is not placed in accessory mode, the HandsFreeLink™ system may continue to parasitically drain the battery.  If left parked, the vehicle will not start because the car battery will have drained.  Even if used in an ongoing manner, the parasitic loss will result in increased load on other electrical systems in the vehicle, resulting in increased wear on electronic components.

> With a compromised battery and/or a failed alternator, your vehicle can be left suddenly without any electric power even when the vehicle is in use.

> Acura technicians can disconnect the HandsFreeLink™ system, but you will no longer be able to take advantage of the benefits of this system, including  hands-free calling and the remote vehicle diagnostics, which benefits potentially avoid dangerous on-road situations.

        (c)    ***When***: Honda had exclusive knowledge of and/or concealed material information regarding the Defect starting no later than the date of its first internal Technical Service Bulletin (distributed only to Acura dealers) dated June 2005, but necessarily had knowledge in advance of that Bulletin.

        (d)    ***Where***: Honda concealed material information regarding the true nature of the Defect in every pre-sale communication they had with Plaintiffs and other Class members.  Despite counsel's review and analysis of pre-sale marketing materials, sales brochures, and other pre-sale enticements to purchase each of its HandsFreeLink™-equipped vehicles, Plaintiffs are aware of no

document, communication, or other place or thing, in which Honda disclosed the truth about the Defect to consumers.

(e)    ***How***:

(i)    Honda had exclusive knowledge of and/or concealed material information about the Defect and failed to disclose the Defect to Plaintiffs and Class members in any pre-sale materials—the time at which Plaintiffs and Class members could have acted.  Honda had exclusive knowledge of and/or actively concealed the truth about the existence and nature of the Defect from Plaintiffs and Class members at all times, even though Honda knew about the Defect and knew that information about the Defect would be important to a reasonable consumer.

(ii)    Honda has still failed to disclose the truth about the Defect in its HandsFreeLink™-equipped vehicles to consumers and general public.  Thus, Honda has never taken any action to inform consumers about the true nature of the Defect in its Affected Vehicles despite the fact that Honda has (and had) exclusive knowledge of and/or actively concealed the truth about the existence and nature of the Defect.

(iii)    Instead, Honda stealthily issued one internal Technical Service Bulletin after another, admitting that the Defect will "cause a dead or low battery while the vehicle's ignition switch is off" and had the potential to re-"appear intermittent[ly]" later, even if Honda's "fix" of replacing the HandsFreeLink™ system was implemented.

(f)    ***Why***: Honda concealed and/or had exclusive knowledge of material information about the Defect in its HandsFreeLink™-equipped vehicles, yet failed to disclose the Defect in order to induce Plaintiffs and Class members to purchase or lease its vehicles rather than competitors' vehicles.  It wanted to be first to market with an integrated Bluetooth car-connectivity system.  Had Honda disclosed the truth, Plaintiffs (and reasonable consumers) either 1) would have paid less for the vehicles by not purchasing the optional HandsFreeLink™ system technology, 2) would not have purchased or leased the HandsFreeLink™-equipped vehicles at all, or 3) otherwise would have paid less for the HandsFreeLink™-equipped vehicles.

(g)    ***Safety Defect***: Honda, like all automakers, is under a duty to disclose a known defect in a vehicle when there are safety concerns associated with the vehicle's use—*i.e.*, where the failure to disclose implicates a safety issue.  Manufacturers may be held liable for their failure to disclose a defect when such an omission pertains to a safety issue.  In this case, as stated above, Honda knew about the Defect, and the Defect poses a physical threat to Plaintiffs' own safety or the

safety of others.  Nevertheless, Honda failed to disclose the Defect to all owners of Affected Vehicles.

**V.     TOLLING OF THE STATUTE OF LIMITATIONS**

**A.     Discovery Rule**

206.     As detailed under each of the plaintiff-specific allegations, Class members had no way of knowing about the hidden Defect in the HandsFreeLink™ system.  Defendant concealed its knowledge of the Defect (as evidenced by the non-public TSBs, detailed above) while continuing to market and sell the HandsFreeLink™ as a safety feature in its luxury cars.

207.     Within any applicable statutes of limitation, Class members could not have discovered through the exercise of reasonable diligence that Acura was concealing the conduct complained of herein and misrepresenting the true qualities of the vehicles. As detailed under each of the plaintiff-specific allegations, Class members did act reasonably and diligently in attempting to find the source of their electrical and battery-related vehicle issues.

208.     Class members did not know facts that would have caused a reasonable person to suspect that there was a defect in Defendant's HandsFreeLink™ system and an ordinary person would be unable to appreciate that the HandsFreeLink™ system was defective.

209.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to the claims in this litigation.

**B.     Fraudulent Concealment**

210.     Defendant was under a continuous duty to disclose to Class members the existence of the Defect in the HandsFreeLink™ system, including the related failure of the electric systems.

211.     Defendant recklessly disregarded the true nature, quality, and character of the HandsFreeLink™ system.

212.     Due to Defendant's concealment throughout the time period relevant to this action (as evidenced by the non-public TSBs, detailed above), all applicable statutes of limitation have been tolled.

213.    Instead of publicly disclosing the defect in the HandsFreeLink™, Defendant kept owners in the dark about the failure in their electrical systems, most notably the repeated battery and alternator failures, as well as other related electrical issues as described herein.

214.    As detailed under each of the plaintiff-specific allegations, Class members were not at fault for failing to discover the connection between the HandsFreeLink™ system and their electrical and battery-related vehicle issues. Until the dates specified under each of the plaintiff-specific allegations, plaintiffs had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice of such a connection. This ignorance of the true cause of the electrical and battery-related vehicle issues is common across all Plaintiffs and Class members.

## VI.    CLASS ALLEGATIONS

215.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following Class:

> All persons who purchased or leased an Acura with a HandsFreeLink™ system.

216.    As an alternative Class, if California law does not apply to all owners, Plaintiffs bring this action on behalf of themselves and the following classes (collectively, the "Classes"):

> All persons who purchased or leased an Acura with a HandsFreeLink™ system in the State of California.
>
> All persons who purchased or leased an Acura with a HandsFreeLink™ system in the State of Delaware.
>
> All persons who purchased or leased an Acura with a HandsFreeLink™ system in the State of Kansas.
>
> All persons who purchased or leased an Acura with a HandsFreeLink™ system in the State of New Hampshire.
>
> All persons who purchased or leased an Acura with a HandsFreeLink™ system in the State of New York.
>
> All persons who purchased or leased an Acura with a HandsFreeLink™ system in the State of Washington.

217.    Excluded from the Classes are Defendant and its parents, subsidiaries, and affiliates; all persons who properly elect to be excluded from the Classes; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.

218.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs and Class members can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

219.    This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

220.    **Numerosity**.  Federal Rule of Civil Procedure 23(a)(1):  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiffs are informed and believe that there are at least thousands of members of the Classes, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Defendant's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

221.    **Commonality and Predominance**:  Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

  i.    Whether Defendant engaged in the conduct alleged herein;

  ii.    Whether Defendant's HandsFreeLink™ system has the Defect alleged herein;

  iii.    Whether Defendant had a duty to disclose the existence of the Defect alleged herein;

  iv.    Whether Defendant's conduct violates consumer protection statutes and other laws as asserted herein;

  v.    Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

  vi.    Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

222.   **Typicality**:  Federal Rule of Civil Procedure 23(a)(3):  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's wrongful conduct as described above.

223.   **Adequacy**:  Federal Rule of Civil Procedure 23(a)(4):  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes they seeks to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

224.   **Superiority**:  Federal Rule of Civil Procedure 23(b)(3):  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for the members of the Classes to individually seek redress for Defendant's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### VII.   CAUSES OF ACTION ON BEHALF OF THE NATIONAL CLASS

**COUNT I**
**VIOLATIONS OF THE CALIFORNIA CONSUMER**
**LEGAL REMEDIES ACT**
**(CAL. CIV. CODE § 1750, *ET SEQ.*)**

225.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

226.   Plaintiffs bring this claim as part of the National Class.

THIRD AMENDED CLASS ACTION COMPLAINT                     - 55 -

227.   California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

228.   The Class Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

229.   Plaintiffs and the other Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other Class members, and Honda are "persons" as defined in Cal. Civ. Code § 1761(c).

230.   As alleged herein, Honda made misleading representations and omissions concerning the benefits, performance, and safety of the Class Vehicles, including the HandsFreeLink™ system.

231.   In purchasing or leasing the Class Vehicles, Plaintiffs and other Class members were deceived by Honda's failure to disclose its knowledge of the Defect in its HandsFreeLink™ system, which caused a parasitic electric drain even when the vehicle's ignition switch is off.  Defendant further concealed the hidden nature of the problem with the HandsFreeLink™ system, causing the problem to appear intermittent and unrelated to any defect in the HandsFreeLink™ system.

232.   Honda's conduct as described herein was and is in violation of the CLRA.  Honda's conduct violates at least the following enumerated CLRA provisions:

    i.    Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have.

    ii.    Cal Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another.

    iii.    Cal. Civ. Code § 1770 (a)(9): Advertising goods with intent not to sell them as advertised.

    iv.    Cal Civ. Code  § 1770 (a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

233.   Honda intentionally and knowingly misrepresented and omitted material facts regarding the Class Vehicles, specifically regarding the HandsFreeLink™ system, with an intent to mislead Plaintiffs and Class members.

234.    In purchasing or leasing the Class Vehicles, Plaintiffs and other Class members were deceived by Honda's failure to disclose its knowledge of the Defect in its HandsFreeLink™ system.

235.    Plaintiffs and other Class members had no way of knowing Honda's representations were false, misleading, and incomplete or knowing the true nature of the HandsFreeLink™ system. As alleged herein, Honda engaged in a pattern of deception and public silence in the face of a known defect with its HandsFreeLink™ system.  Plaintiffs and other Class members did not, and could not, unravel Honda's deception on their own.

236.    Honda knew or should have known its conduct violated the CLRA.

237.    Honda owed Plaintiffs and the Class members a duty to disclose the truth about its faulty HandsFreeLink™ system because the Defect created a safety hazard and Honda:

i.      Possessed exclusive knowledge of the defect in the HandsFreeLink™ system, which caused parasitic electricity drain that would repeatedly deplete the car's battery;

ii.     Intentionally concealed the foregoing from Plaintiffs and Class members; and/or

iii.    Made incomplete representations in advertisements and on its website, failing to warn the public or to publicly admit that the HandsFreeLink™ system was defective.

238.    Honda had a duty to disclose that the HandsFreeLink™ system in the Class Vehicles was fundamentally flawed as described herein, because the Defect created a safety hazard, and Plaintiffs and the other Class members relied on Honda's material misrepresentations and omissions regarding the features of the Class Vehicles and HandsFreeLink™ system.

239.    Honda's conduct proximately caused injuries to Plaintiffs and the other Class members that purchased the Class Vehicles and suffered harm as alleged herein.

240.    Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiffs and the other Class members incurred costs related the parasitic drain caused by the Defect, including replacements of electrical components and service costs, and overpaid for their Class Vehicles that have suffered a diminution in value.

241.     Honda's violations cause continuing injuries to Plaintiffs and other Class members. Honda's unlawful acts and practices complained of herein affect the public interest.

242.     Honda knew of the defective design and/or manufacture of the HandsFreeLink™ system, and that the Class Vehicles were materially compromised by such defects.

243.     The facts concealed and omitted by Honda from Plaintiffs and other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase an Acura vehicle or pay a lower price.  Had Plaintiffs and the other Class members known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles or would not have paid the prices they paid.

244.     Plaintiffs' and the other Class members' injuries were proximately caused by Honda's unlawful and deceptive business practices.

245.     Pursuant to CLRA § 1780(a), Plaintiffs seek an order enjoining Honda from engaging in the methods, acts, or practices alleged herein, including further concealment of the Defect in the HandsFreeLink™ unit and denial of warranty coverage for repairs related to that Defect.

246.     Plaintiffs sent out a notice letter on August 3, 2016.

247.     Pursuant to CLRA § 1782, if Defendant does not rectify its conduct within 30 days, Plaintiffs intend to amend this Complaint to add claims under the CLRA for:

     i.     Actual damages;

     ii.     Restitution of money to Plaintiffs and Class members, and the general public;

     iii.     Punitive damages;

     iv.     An additional award of up to $5,000 to each Plaintiffs and any Class member who is a "senior citizen;

     v.     Attorneys' fees and costs; and

     vi.     Other relief that this Court deems proper.

## COUNT II
## VIOLATIONS OF CALIFORNIA'S UNFAIR BUSINESS PRACTICES ACT
### (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)

248.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

249.    Plaintiffs bring this claim on behalf of the National Class.

250.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."

251.    Honda's conduct, as described herein, was and is in violation of the UCL.  Honda's conduct violates the UCL in at least the following ways:

    i.    By failing to disclose that the HandsFreeLink™ system in the Class Vehicles was defective and prone to create parasitic electricity drain;

    ii.    By selling and leasing Class Vehicles that suffer from such defects without providing special warranty coverage for this Defect;

    iii.    By knowingly and intentionally concealing from Plaintiffs and the other Class members that the HandsFreeLink™ system was defective;

    iv.    By marketing Class Vehicles as safe, convenient, and defect free, with cutting-edge technology, all while knowing of the Defect related to the HandsFreeLink™ system; and

    v.    By violating other California laws, including California consumer protection laws.

252.    Honda intentionally and knowingly misrepresented and omitted material facts regarding the Class Vehicles with intent to mislead Plaintiffs and the other Class members.

253.    In purchasing or leasing the Class Vehicles, Plaintiffs and the other Class members were deceived by Honda's failure to disclose the Defect related to the HandsFreeLink™ system.

254.    Plaintiffs and the other Class members reasonably relied upon Honda's false misrepresentations and omissions.  They had no way of knowing that Honda's representations were false, misleading, and incomplete.  As alleged herein, Honda engaged in a pattern of deception and public silence in the face of a known defect with its HandsFreeLink™ system.  Plaintiffs and the other Class members did not, and could not, unravel Honda's deception on their own.

255.    Honda knew or should have known that its conduct violated the UCL.

256.    Honda owed Plaintiffs and the other Class members a duty to disclose the truth about its HandsFreeLink™ system because the Defect created a safety hazard and Honda:

    i.    Possessed exclusive knowledge of the Defect in the HandsFreeLink™ system;

ii.     Intentionally concealed the foregoing from Plaintiffs and the other Class members; and/or

iii.    Made incomplete representations by failing to warn the public or to publicly admit that the HandsFreeLink™ system was defective.

257.    Honda had a duty to disclose that the HandsFreeLink™ system in the Class Vehicles was fundamentally flawed as described herein, because Plaintiffs and the other Class members relied on Honda's material misrepresentations and omissions.

258.    Honda's conduct proximately caused injuries to Plaintiffs and the other Class members that purchased the Class Vehicles and suffered harm as alleged herein.

259.    Plaintiffs and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiffs and the other Class members incurred costs related the parasitic drain caused by the Defect, including replacement of electrical components and service costs, and overpaid for their Class Vehicles that have suffered a diminution in value.

260.    Honda's violations cause continuing injuries to Plaintiffs and Class members. Honda's unlawful acts and practices complained of herein affect the public interest.

261.    Honda's misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to make their purchases of their Class Vehicles. Absent those misrepresent-ations and omissions, Plaintiffs and the other Class members would not have purchased these vehicles, would not have purchased these Class Vehicles at the prices they paid, and/or would have purchased less expensive alternative vehicles that did not contain defective HandsFreeLink™ systems that failed to live up to industry standards.

262.    Accordingly, Plaintiffs and the other Class members have suffered injury-in-fact, including lost money or property, as a result of Honda's misrepresentations and omissions.

263.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to restore to Plaintiffs and Class members any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief as may be appropriate.

# COUNT III
# FRAUD BY CONCEALMENT
# (BASED ON CALIFORNIA LAW)

264.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

265.    Plaintiffs bring this claim on behalf of the National Class.

266.    Honda intentionally concealed that the HandsFreeLink™ system is defective, and prone to create a parasitic electricity drain that would strain the electrical system and repeatedly deplete the car's battery, leaving owners with cars that would not start, premature battery death, and damage to other components in the electric system.  Honda concealed the fact that once the HandsFreeLink™ system Defect compromises the battery, the system "resets," hiding the problem until the system gets stuck again.

267.    Honda further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Class Vehicles it was selling had no significant defects, that the HandsFreeLink™ system was a safety feature, reliable, and would perform and operate properly.

268.    Honda knew about the Defect in the HandsFreeLink™ system when these representations were made.

269.    The Class Vehicles purchased by Plaintiffs and the other Class members contained defective HandsFreeLink™ system.

270.    Honda had a duty to disclose that the HandsFreeLink™ system contained a fundamental defect as alleged herein, because the Defect created a safety hazard and Plaintiffs and the other Class members relied on Honda's material representations.

271.    As alleged herein, at all relevant times, Honda has held out the Class Vehicles to be free from defects such as the Defect related to the HandsFreeLink™ system.  Honda touted and continues to tout the many benefits and advantages of the HandsFreeLink™ system, but nonetheless failed to disclose important facts related to the Defect.  This made Honda's other disclosures about the HandsFreeLink™ system deceptive.

272.     The truth about the defective HandsFreeLink™ system was known only to Honda; Plaintiffs and the other Class members did not know of these facts and Honda actively concealed these facts from Plaintiffs and Class members.

273.     Plaintiffs and the other Class members reasonably relied upon Honda's deception. They had no way of knowing that Honda's representations were false, misleading, or incomplete.  As consumers, Plaintiffs and Class members did not, and could not, unravel Honda's deception on their own.  Rather, Honda intended to deceive Plaintiffs and Class members by concealing the true facts about the Class Vehicles' HandsFreeLink™ systems.

274.     Honda's false representations and omissions were material to consumers because they concerned qualities of the Class Vehicles that played a significant role in the value of the vehicles.

275.     Honda had a duty to disclose the HandsFreeLink™ system Defect and violations with respect to the Class Vehicles because details of the true facts were known and/or accessible only to Honda, because Honda had exclusive knowledge as to such facts, and because Honda knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.

276.     Honda also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its vehicles, without telling consumers that one of the features had a fundamental defect that would affect the safety, quality, and performance of the vehicle.

277.     Honda's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect in the HandsFreeLink™ system as set forth herein.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased by Plaintiffs and Class members.

278.     Honda has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the Defect in the HandsFreeLink™ system.

279.     Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or

suppressed facts, in that they would not have purchased or paid as much for cars with faulty

technology, and/or would have taken other affirmative steps in light of the information concealed

from them.  Plaintiffs' and Class members' actions were justified.  Honda was in exclusive control of

the material facts, and such facts were not generally known to the public, Plaintiffs, or Class

members.

280.     Because of the concealment and/or suppression of facts, Plaintiffs and Class members

sustained damage because they own(ed) vehicles that are diminished in value as a result of Honda's

concealment of the true quality of those vehicles' HandsFreeLink™ systems.  Had Plaintiffs and

Class members been aware of the defect in the HandsFreeLink™ systems installed in the Class

Vehicles, and the Company's disregard for the truth, Plaintiffs and Class members who purchased an

Acura vehicle would have paid less for their vehicles or would not have purchased them at all.

281.     The value of Plaintiffs' and Class members' vehicles has diminished as a result of

Honda's fraudulent concealment of the defective HandsFreeLink™ system of the Class Vehicles,

which has made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone

pay what otherwise would have been fair market value for the vehicles.

282.     Accordingly, Honda is liable to Plaintiffs and Class members for damages in an

amount to be proven at trial.

283.     Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent

to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations

that Honda made to them, in order to enrich Honda.  Honda's conduct warrants an assessment of

punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be

determined according to proof.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COM. CODE § 2314)**

284.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth

herein.

285.     Plaintiffs bring this claim on behalf of the National Class.

286.   Defendant is and was at all relevant times a merchant with respect to motor vehicles under Cal. Com. Code § 2104.

287.   A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

288.   Honda marketed the Class Vehicles as safe and reliable luxury vehicles.  Such representations formed the basis of the bargain in Plaintiffs' and Class members' decisions to purchase the Class Vehicles.

289.   Plaintiffs and other Class members purchased or leased the Class Vehicles from Honda, through Honda's authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.

290.   Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

291.   Because of the Defect in the HandsFreeLink™ system, the Class Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

292.   Honda knew about the Defect in the HandsFreeLink™ unit, allowing Honda to cure their breach of its warranty if it chose.

293.   Honda's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.  Specifically, Honda's warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiffs and other Class members.  Among other things, Plaintiffs and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda.  A gross disparity in bargaining power existed between Honda and other Class members, and Honda knew of the Defect at the time of sale.

294.     Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein.  Affording Honda a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

295.     Accordingly, Honda is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

**COUNT V**
**VIOLATIONS OF THE MAGNUSON-MOSS**
**WARRANTY ACT (AS APPLICABLE TO IMPLIED WARRANTY-DERIVED CLAIMS)**
**(15 U.S.C. § 2301, *ET SEQ.*)**

296.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

297.     Plaintiffs bring this claim on behalf of the National Class.

298.     Plaintiffs satisfy the Magnuson-Moss Warranty Act ("MMWA") jurisdictional requirement because they allege diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).

299.     Plaintiffs and other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

300.     Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

301.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

302.     The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

303.     Defendant provided Plaintiffs and other Class members with an express warranty, which is covered under 15 U.S.C. § 2301(6).

304.     The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

305.     Defendant breached these warranties by misrepresenting the standard, quality, or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Defect in the HandsFreeLink™ units.

306.     Through their issuance of internal Technical Service Bulletins, Honda has acknowledged that the Class Vehicles are not of the standard, quality, or grade that Defendant represented.

307.     Plaintiffs and other Class members have had sufficient direct dealings with Honda or its agents (dealerships) to establish privity of contract between Honda, on the one hand, and Plaintiffs and other Class members on the other hand.

308.     Nonetheless, privity is not required here because Plaintiffs and other Class members are intended third-party beneficiaries of contracts between Honda and its dealers, and specifically, of its implied warranties.

309.     Affording Honda a reasonable opportunity to cure the breach of written warranties would be unnecessary and futile.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs and Class members resort to an informal dispute resolution procedure and/or afford Honda a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

310.     The amount in controversy of Plaintiffs' and Class members' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

311.     Accordingly, Honda is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

## VIII.   CAUSES OF ACTION ON BEHALF OF THE ALTERNATE CLASSES

**A.    Claims Brought on Behalf of the Alternate California Class**

### COUNT I
### VIOLATIONS OF THE CALIFORNIA CONSUMER
### LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, *ET SEQ.*)

312.    Plaintiff John Kelly ("Plaintiff" for purposes of all Alternate California Class Counts) incorporates by reference all paragraphs as though fully set forth herein.

313.    This claim is brought on behalf of the Alternate California Class.

314.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

315.    The Class Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

316.    Plaintiff and the other Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, the other Class members, and Honda are "persons" as defined in Cal. Civ. Code § 1761(c).

317.    As alleged herein, Honda made misleading representations and omissions concerning the benefits, performance, and safety of the Class Vehicles, including the HandsFreeLink™ system.

318.    In purchasing or leasing the Class Vehicles, Plaintiff and the other Class members were deceived by Honda's failure to disclose its knowledge of the Defect in its HandsFreeLink™ system, which caused a parasitic electric drain even when the vehicle's ignition switch is off. Defendant further concealed the hidden nature of the problem with the HandsFreeLink™ system, causing the problem to appear intermittent and unrelated to any defect in the HandsFreeLink™ system.

319.    Honda's conduct as described herein was and is in violation of the CLRA.  Honda's conduct violates at least the following enumerated CLRA provisions:

   i.    Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have.

1

    ii.    Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another.

2

    iii.    Cal. Civ. Code 1770 (a)(9): Advertising goods with intent not to sell them as advertised.

3

4

    iv.    Cal Civ. Code  § 1770 (a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

5

6

320.    Honda intentionally and knowingly misrepresented and omitted material facts

7

regarding the Class Vehicles, specifically regarding the HandsFreeLink™ system, with an intent to

8

mislead Plaintiff and Class members.

9

321.    In purchasing or leasing the Class Vehicles, Plaintiff and the other Class members

10

were deceived by Honda's failure to disclose its knowledge of the Defect in its HandsFreeLink™

11

system.

12

322.    Plaintiff and the other Class members had no way of knowing Honda's

13

representations were false, misleading, and incomplete or knowing the true nature of the

14

HandsFreeLink™ system.  As alleged herein, Honda engaged in a pattern of deception and public

15

silence in the face of a known defect with its HandsFreeLink™ system.  Plaintiff and the other Class

16

members did not, and could not, unravel Honda's deception on their own.

17

323.    Honda knew or should have known its conduct violated the CLRA.

18

324.    Honda owed Plaintiff and the other Class members a duty to disclose the truth about

its faulty HandsFreeLink™ system because the Defect created a safety hazard and Honda:

19

    i.    Possessed exclusive knowledge of the defect in the HandsFreeLink™ system, which caused parasitic electricity drain that would repeatedly deplete the car's battery;

20

21

    ii.    Intentionally concealed the foregoing from Plaintiff and the other Class members; and/or

22

23

    iii.    Made incomplete representations in advertisements and on its website, failing to warn the public or to publicly admit that the HandsFreeLink™ system was defective.

24

25

325.    Honda had a duty to disclose that the HandsFreeLink™ system in the Class Vehicles

26

was fundamentally flawed as described herein, because the Defect created a safety hazard, and

27

28

Plaintiff and the other Class members relied on Honda's material misrepresentations and omissions regarding the features of the Class Vehicles and HandsFreeLink™ system.

326. Honda's conduct proximately caused injuries to Plaintiff and the other Class members that purchased the Class Vehicles and suffered harm as alleged herein.

327. Plaintiff and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff and the other Class members incurred costs related the parasitic drain caused by the Defect, including replacements of electrical components and service costs, and overpaid for their Class Vehicles that have suffered a diminution in value.

328. Honda's violations cause continuing injuries to Plaintiff and the other Class members. Honda's unlawful acts and practices complained of herein affect the public interest.

329. Honda knew of the defective design and/or manufacture of the HandsFreeLink™ system, and that the Class Vehicles were materially compromised by such defects.

330. The facts concealed and omitted by Honda from Plaintiff and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase an Acura vehicle or pay a lower price. Had Plaintiff and the other Class members known about the defective nature of the Class Vehicles, they would not have purchased the Class Vehicles or would not have paid the prices they paid.

331. Plaintiff's and the other Class members' injuries were proximately caused by Honda's unlawful and deceptive business practices.

332. Pursuant to CLRA § 1780(a), Plaintiff seeks an order enjoining Honda from engaging in the methods, acts, or practices alleged herein, including further concealment of the Defect in the HandsFreeLink™ unit and denial of warranty coverage for repairs related to that Defect.

333. Plaintiff sent out a notice letter on August 3, 2016.

334. Pursuant to CLRA § 1782, if Defendant does not rectify its conduct within 30 days, Plaintiff intends to amend this Complaint to add claims under the CLRA for:

    i.    Actual damages;

    ii.    Restitution of money to Plaintiff and Class members, and the general public;

iii.    Punitive damages;

iv.    An additional award of up to $5,000 to Plaintiff and any Class member who is a "senior citizen;

v.    Attorneys' fees and costs; and

vi.    Other relief that this Court deems proper.

**COUNT II**
**VIOLATIONS OF CALIFORNIA'S UNFAIR BUSINESS PRACTICES ACT**
**(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

335.    Plaintiff Kelly  incorporates by reference all preceding allegations as though fully set forth herein.

336.    Plaintiff brings this claim on behalf of the Alternate California Class.

337.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."

338.    Honda's conduct, as described herein, was and is in violation of the UCL.  Honda's conduct violates the UCL in at least the following ways:

i.    By failing to disclose that the HandsFreeLink™ system in the Class Vehicles was defective and prone to create parasitic electricity drain;

ii.    By selling and leasing Class Vehicles that suffer from such defects without providing special warranty coverage for this Defect;

iii.    By knowingly and intentionally concealing from Plaintiff and the other Class members that the HandsFreeLink™ system was defective;

iv.    By marketing Class Vehicles as safe, convenient, and defect free, with cutting-edge technology, all while knowing of the Defect related to the HandsFreeLink™ system; and

v.    By violating other California laws, including California consumer protection laws.

339.    Honda intentionally and knowingly misrepresented and omitted material facts regarding the Class Vehicles with intent to mislead Plaintiff and the other Class members.

340.    In purchasing or leasing the Class Vehicles, Plaintiff and the other Class members were deceived by Honda's failure to disclose the Defect related to the HandsFreeLink™ system.

341.   Plaintiff and the other Class members reasonably relied upon Honda's false misrepresentations and omissions.  They had no way of knowing that Honda's representations were false, misleading, and incomplete.  As alleged herein, Honda engaged in a pattern of deception and public silence in the face of a known defect with its HandsFreeLink™ system.  Plaintiff and the other Class members did not, and could not, unravel Honda's deception on their own.

342.   Honda knew or should have known that its conduct violated the UCL.

343.   Honda owed Plaintiff and the other Class members a duty to disclose the truth about its HandsFreeLink™ system because the Defect created a safety hazard and Honda:

    i.   Possessed exclusive knowledge of the Defect in the HandsFreeLink™ system;

    ii.   Intentionally concealed the foregoing from Plaintiff and the other Class members; and/or

    iii.   Made incomplete representations by failing to warn the public or to publicly admit that the HandsFreeLink™ system was defective.

344.   Honda had a duty to disclose that the HandsFreeLink™ system in the Class Vehicles was fundamentally flawed as described herein, because Plaintiff and the other Class members relied on Honda's material misrepresentations and omissions.

345.   Honda's conduct proximately caused injuries to Plaintiff and the other Class members that purchased the Class Vehicles and suffered harm as alleged herein.

346.   Plaintiff and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff and the other Class members incurred costs related the parasitic drain caused by the Defect, including replacement of electrical components and service costs, and overpaid for their Class Vehicles that have suffered a diminution in value.

347.   Honda's violations cause continuing injuries to Plaintiff and the other Class members. Honda's unlawful acts and practices complained of herein affect the public interest.

348.   Honda's misrepresentations and omissions alleged herein caused Plaintiff and the other Class members to make their purchases of their Class Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased these

vehicles, would not have purchased these Class Vehicles at the prices they paid, and/or would have purchased less expensive alternative vehicles that did not contain defective HandsFreeLink™ systems that failed to live up to industry standards.

349.   Accordingly, Plaintiff and the other Class members have suffered injury-in-fact, including lost money or property, as a result of Honda's misrepresentations and omissions.

350.   Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and Class members any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief as may be appropriate.

**COUNT III**
**FRAUD BY CONCEALMENT**
**(BASED ON CALIFORNIA LAW)**

351.   The Aberin Plaintiffs and John Kelly ("Plaintiffs" for purposes of all Alternate California Class Counts)  incorporate by reference all preceding allegations as though fully set forth herein.

352.   Plaintiffs bring this claim on behalf of the Alternate California Class.

353.   Honda intentionally concealed that the HandsFreeLink™ system is defective, and prone to create a parasitic electricity drain that would strain the electrical system and repeatedly deplete the car's battery, leaving owners with cars that would not start, premature battery death, and damage to other components in the electric system.  Honda concealed the fact that once the HandsFreeLink™ system Defect compromises the battery, the system "resets," hiding the problem until the system gets stuck again.

354.   Honda further affirmatively misrepresented to Plaintiffs in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Class Vehicles it was selling had no significant defects, that the HandsFreeLink™ system was a safety feature, reliable, and would perform and operate properly.

355.   Honda knew about the Defect in the HandsFreeLink™ system when these representations were made.

356.     The Class Vehicles purchased by Plaintiffs and the other Class members contained defective HandsFreeLink™ system.

357.     Honda had a duty to disclose that the HandsFreeLink™ system contained a fundamental defect as alleged herein, because the Defect created a safety hazard and Plaintiffs and the other Class members relied on Honda's material representations.

358.     As alleged herein, at all relevant times, Honda has held out the Class Vehicles to be free from defects such as the Defect related to the HandsFreeLink™ system.  Honda touted and continues to tout the many benefits and advantages of the HandsFreeLink™ system, but nonetheless failed to disclose important facts related to the Defect.  This made Honda's other disclosures about the HandsFreeLink™ system deceptive.

359.     The truth about the defective HandsFreeLink™ system was known only to Honda; Plaintiffs and the other Class members did not know of these facts and Honda actively concealed these facts from Plaintiffs and Class members.

360.     Plaintiffs and the other Class members reasonably relied upon Honda's deception. They had no way of knowing that Honda's representations were false, misleading, or incomplete.  As consumers, Plaintiffs and Class members did not, and could not, unravel Honda's deception on their own.  Rather, Honda intended to deceive Plaintiffs and Class members by concealing the true facts about the Class Vehicles' HandsFreeLink™ systems.

361.     Honda's false representations and omissions were material to consumers because they concerned qualities of the Class Vehicles that played a significant role in the value of the vehicles.

362.     Honda had a duty to disclose the HandsFreeLink™ system Defect and violations with respect to the Class Vehicles because details of the true facts were known and/or accessible only to Honda, because Honda had exclusive knowledge as to such facts, and because Honda knew these facts were not known to or reasonably discoverable by Plaintiffs or Class members.

363.     Honda also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its vehicles, without telling consumers

that one of the features had a fundamental defect that would affect the safety, quality, and performance of the vehicle.

364.   Honda's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect in the HandsFreeLink™ system as set forth herein.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased by Plaintiffs and Class members.

365.   Honda has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the Defect in the HandsFreeLink™ system.

366.   Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them.  Plaintiffs' and Class members' actions were justified.  Honda was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

367.   Because of the concealment and/or suppression of facts, Plaintiffs and Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of Honda's concealment of the true quality of those vehicles' HandsFreeLink™ systems.  Had Plaintiffs and Class members been aware of the defect in the HandsFreeLink™ systems installed in the Class Vehicles, and the Company's disregard for the truth, Plaintiffs and Class members who purchased an Acura vehicle would have paid less for their vehicles or would not have purchased them at all.

368.   The value of Plaintiffs' and Class members' vehicles has diminished as a result of Honda's fraudulent concealment of the defective HandsFreeLink™ system of the Class Vehicles, which has made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

369.    Accordingly, Honda is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

370.    Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Honda made to them, in order to enrich Honda.  Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COM. CODE § 2314)**

371.    Plaintiff Kelly  incorporates by reference all preceding allegations as though fully set forth herein.

372.    Plaintiff brings this claim on behalf of the Alternate California Class.

373.    Defendant is and was at all relevant times a merchant with respect to motor vehicles under Cal. Com. Code § 2104.

374.    A warranty that the Class Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

375.    Honda marketed the Class Vehicles as safe and reliable luxury vehicles.  Such representations formed the basis of the bargain in Plaintiff's and Class members' decisions to purchase the Class Vehicles.

376.    Plaintiff and the other Class members purchased or leased the Class Vehicles from Honda, through Honda's authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.

377.    Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

THIRD AMENDED CLASS ACTION COMPLAINT                      - 75 -

378.    Because of the Defect in the HandsFreeLink™ system, the Class Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

379.    Honda knew about the Defect in the HandsFreeLink™ unit, allowing Honda to cure their breach of its warranty if it chose.

380.    Honda's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.  Specifically, Honda's warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and the other Class members.  Among other things, Plaintiff and the other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda.  A gross disparity in bargaining power existed between Honda and other Class members, and Honda knew of the Defect at the time of sale.

381.    Plaintiff and the other Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein.  Affording Honda a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

382.    Accordingly, Honda is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

**COUNT V**
**VIOLATIONS OF THE MAGNUSON-MOSS**
**WARRANTY ACT (AS APPLICABLE TO IMPLIED WARRANTY-DERIVED CLAIMS)**
**(15 U.S.C. § 2301, *ET SEQ.*)**

383.    Plaintiff Kelly  incorporates by reference all preceding allegations as though fully set forth herein.

384.    Plaintiff brings this claim on behalf of the Alternate California Class.

385.    Plaintiff satisfies the Magnuson-Moss Warranty Act ("MMWA") jurisdictional requirement because they allege diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).

386.     Plaintiff and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

387.     Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

388.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

389.     The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

390.     Defendant provided Plaintiff and the other Class members with an express warranty, which is covered under 15 U.S.C. § 2301(6).

391.     The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

392.     Defendant breached these warranties by misrepresenting the standard, quality, or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Defect in the HandsFreeLink™ units.

393.     Through their issuance of internal Technical Service Bulletins, Honda has acknowledged that the Class Vehicles are not of the standard, quality, or grade that Defendant represented.

394.     Plaintiff and the other Class members have had sufficient direct dealings with Honda or its agents (dealerships) to establish privity of contract between Honda, on the one hand, and Plaintiff and the other Class members on the other hand.

395.     Nonetheless, privity is not required here because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Honda and its dealers, and specifically, of its implied warranties.

396.     Affording Honda a reasonable opportunity to cure the breach of written warranties would be unnecessary and futile.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff and Class

members resort to an informal dispute resolution procedure and/or afford Honda a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

397.    The amount in controversy of Plaintiff's and Class members' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

398.    Accordingly, Honda is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

**B.      Claims Brought on Behalf of the Alternate Delaware Class**

**COUNT I**
**VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT**
**(DEL. CODE ANN. TIT. 6 § 2511, *ET SEQ.*)**

399.    Plaintiff Yun-Fei Lou ("Plaintiff" for purposes of all Alternate Delaware Class Counts) incorporates by reference all paragraphs as though fully set forth herein.

400.    Plaintiff brings this claim on behalf of the Alternate Delaware Class.

401.    Plaintiff and the other Class members, and Honda are considered "persons" within the meaning of Del. Code Ann. tit. 6 § 2511(4)(2002).

402.    The Class Vehicles are "merchandise" within the meaning of Del. Code Ann. tit. 6 § 2511(4).

403.    Honda is engaged in "sales" within the meaning of Del. Code Ann. tit. 6 § 2511(6).

404.    Section 2513 of the Delaware Consumer Fraud Act declares, "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice."

405.    Defendant has violated the Delaware Consumer Fraud Act, Del. Code Ann. tit. 6 § 2513by intentionally and/or negligently acting, using, or employing deception, fraud, false pretense,

false promise, or misrepresentation, and the concealment, suppression, or omission of a material fact, in connection with the sale, lease or advertisement of merchandise.

406.    Defendant's unlawful practices as herein alleged were gross, oppressive, and aggravated.

407.    In purchasing or leasing the Acura vehicles, Plaintiff and the other Class members were deceived by Honda's failure to disclose its knowledge of the defect in the HandsFreeLink™ system, which caused a parasitic drain even when the vehicle's ignition switch is off.  Defendant further concealed the hidden nature of the problem with the HandsFreeLink™ system, causing the problem to appear intermittent and unrelated to any defect with the HandsFreeLink™ system.  Each of these omissions contributed to the deceptive context of Honda's unlawful advertising and representations as a whole.

408.    Plaintiff and the other Class members reasonably relied upon Honda's false misrepresentations and omissions.  They had no way of knowing that Honda's representations were false, misleading, and incomplete.  As alleged herein, Honda engaged in a pattern of deception and public silence in the face of a known defect with its HandsFreeLink™ system.  Plaintiff and the other Class members did not, and could not, unravel Honda's deception on their own.

409.    Honda's actions as set forth above occurred in the conduct of trade or commerce.

410.    Honda's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

411.    Honda knew that the HandsFreeLink™ systems in the Class Vehicles were defectively designed or manufactured, and prone to create a parasitic electricity drain.

412.    Honda intentionally and knowingly misrepresented material facts regarding the Acura vehicles with intent to mislead Plaintiff and the other Class members.

413.    Honda knew or should have known that its conduct violated the Delaware Consumer Fraud Act.

414.    Honda owed Plaintiff and the other Class members a duty to disclose the truth about its faulty HandsFreeLink™ system because the defect created a safety hazard and Honda:

     i.  Possessed exclusive knowledge of the Defect in the HandsFreeLink™ system;

ii.    Intentionally concealed the foregoing from Plaintiff and the Class; and/or

iii.    Made incomplete representations in advertisements and on its website, failing to warn the public or to publicly admit that the HandsFreeLink™ system was defective.

415.    Honda had a duty to disclose that the HandsFreeLink™ system in the Acura vehicles was fundamentally flawed as described herein, because the Defect created a safety hazard and Plaintiff and the other Class members relied on Honda's material misrepresentations and omissions regarding the technology, benefits, efficiency, convenience, performance, and safety features of the HandsFreeLink™ system.

416.    Honda's conduct proximately caused injuries to Plaintiff and the other Class members that purchased the Acura vehicles and suffered harm as alleged herein.

417.    Plaintiff and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff and the other Class members incurred costs related the parasitic drain caused by the Defect, including replacement of electrical components and service costs, and overpaid for their Acura vehicles that have suffered a diminution in value.

418.    As a direct and proximate result of Honda's unlawful conduct, Plaintiff and the other Class members are entitled to an award of all damages, including, but not limited to, Plaintiff's and the other Class members' losses, Defendant's ill-gotten profits, reimbursement of all costs and expenses incurred by Plaintiff and the other Class members in this action, including interest and attorneys' fees.

**COUNT II**
**FRAUDULENT CONCEALMENT**
**(BASED ON DELAWARE LAW)**

419.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

420.    Plaintiff brings this claim on behalf of the Alternate Delaware Class.

421.    Honda intentionally concealed that the HandsFreeLink™ system is defective, and prone to create a parasitic electricity drain that would strain the electrical system and repeatedly

THIRD AMENDED CLASS ACTION COMPLAINT          - 80 -

deplete the car's battery, leaving owners with cars that would not start, premature battery death, and damage to other components in the electric system.  Honda concealed the fact that once the HandsFreeLink™ system defect compromises the battery, the system "resets," hiding the problem until the system gets stuck again.

422.    Honda further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Class Vehicles it was selling had no significant defects, that the HandsFreeLink™ was a safety feature, reliable, and would perform and operate properly.

423.    Honda knew about the Defect in the HandsFreeLink™ system when these representations were made.

424.    The Class Vehicles purchased by Plaintiff and the other Class members contained a defective HandsFreeLink™ system.

425.    Honda had a duty to disclose that the HandsFreeLink™ system contained a fundamental defect as alleged herein, because the defect created a safety hazard and Plaintiff and the other Class members relied on Honda's material representations.

426.    As alleged herein, at all relevant times, Honda has held out the Class Vehicles to be free from defects such as the defect related to the HandsFreeLink™ system.  Honda touted and continues to tout the many benefits and advantages of the HandsFreeLink™ system, but nonetheless failed to disclose important facts related to the defect.  This made Honda's other disclosures about the HandsFreeLink™ system deceptive.

427.    The truth about the defective HandsFreeLink™ system was known only to Honda; Plaintiff and the other Class members did not know of these facts and Honda actively concealed these facts from Plaintiff and the other Class members.

428.    Plaintiff and the other Class members reasonably relied upon Honda's deception. They had no way of knowing that Honda's representations were false, misleading, or incomplete.  As consumers, Plaintiff and the other Class members did not, and could not, unravel Honda's deception

on their own.  Rather, Honda intended to deceive Plaintiff and the other Class members by concealing the true facts about the Class Vehicles' HandsFreeLink™ systems.

429.   Honda's false representations and omissions were material to consumers because they concerned qualities of the Class Vehicles that played a significant role in the value of the vehicles.

430.   Honda had a duty to disclose the HandsFreeLink™ system Defect and violations with respect to the Class Vehicles because details of the true facts were known and/or accessible only to Honda, because Honda had exclusive knowledge as to such facts, and because Honda knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.

431.   Honda also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its vehicles, without telling consumers that one of the features had a fundamental defect that would affect the safety, quality and performance of the vehicle.

432.   Honda's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect in the HandsFreeLink™ system as set forth herein.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased by Plaintiff and the other Class members.

433.   Honda has still not made full and adequate disclosures, and continues to defraud Plaintiff and the other Class members by concealing material information regarding the Defect in the HandsFreeLink™ system.

434.   Plaintiff and the other Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and the other Class members' actions were justified.  Honda was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

435.     Because of the concealment and/or suppression of facts, Plaintiff and the other Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of Honda's concealment of the true quality of those vehicles' HandsFreeLink™ systems. Had Plaintiff and the other Class members been aware of the Defect in the HandsFreeLink™ systems installed in the Class Vehicles, and the Company's disregard for the truth, Plaintiff and the other Class members who purchased an Acura vehicle would have paid less for their vehicles or would not have purchased them at all.

436.     The value of Plaintiff's and the other Class members' vehicles has diminished as a result of Honda's fraudulent concealment of the defective HandsFreeLink™ system of the Class Vehicles, which has made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

437.     Accordingly, Honda is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

438.     Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the other Class members' rights and the representations that Honda made to them, in order to enrich Honda. Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**BREACH OF THE IMPLIED WARRANTY**
**OF MERCHANTABILITY**
**(6 DEL. C. § 2-314)**

439.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

440.     Plaintiff brings this claim on behalf of the Alternate Delaware Class.

441.     This Claim is tolled by virtue of Honda's fraudulent concealment. *See, e.g.,* Section V.B.

442. Honda marketed the Class Vehicles as safe and reliable luxury vehicles. Such representations formed the basis of the bargain in Plaintiff's and the other Class members' decisions to purchase the Class Vehicles.

443. Honda was at all relevant times a "merchant" of motor vehicles as defined by 6 Del. C. § 2-104.

444. The Class Vehicles are and were at all relevant times "goods" as defined by 6 Del. C. § 2-105.

445. Plaintiff and the other Class members purchased or leased the Class Vehicles from Honda, through Honda's authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.

446. Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

447. Honda impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

448. Because of the Defect in the HandsFreeLink™ system, the Class Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

449. Honda knew about the Defect in the HandsFreeLink™ unit, allowing Honda to cure their breach of its warranty if it chose.

450. Honda's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Honda's warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and the other Class members. Among other things, Plaintiff and the other Class members had no meaningful choice in determining these time

limitations, the terms of which unreasonably favored Honda.  A gross disparity in bargaining power existed between Honda and other Class members, and Honda knew of the Defect at the time of sale.

451.    Plaintiff and the other Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein.  Affording Honda a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

452.    Accordingly, Honda is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

**COUNT IV**
**VIOLATIONS OF THE MAGNUSON-MOSS**
**WARRANTY ACT (AS APPLICABLE TO IMPLIED WARRANTY-DERIVED CLAIMS)**
**(15 U.S.C. § 2301, *ET SEQ.*)**

453.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

454.    Plaintiff brings this claim on behalf of the Alternate Delaware Class.

455.    Plaintiff satisfies the Magnuson-Moss Warranty Act ("MMWA") jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

456.    Plaintiff and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

457.    Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

458.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

459.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

460.    Defendant provided Plaintiff and the other Class members with an express warranty, which is covered under 15 U.S.C. § 2301(6).

461.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

462.     Defendant breached these warranties by misrepresenting the standard, quality, or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Defect in the HandsFreeLink™ units.

463.     Through their issuance of internal Technical Service Bulletins, Honda has acknowledged that the Class Vehicles are not of the standard, quality, or grade that Defendant represented.

464.     Plaintiff and the other Class members have had sufficient direct dealings with Honda or its agents (dealerships) to establish privity of contract between Honda, on the one hand, and Plaintiff and the other Class members on the other hand.

465.     Nonetheless, privity is not required here because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Honda and its dealers, and specifically, of its implied warranties.

466.     Affording Honda a reasonable opportunity to cure the breach of written warranties would be unnecessary and futile.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff and the other Class members resort to an informal dispute resolution procedure and/or afford Honda a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

467.     The amount in controversy of Plaintiff's and the other Class members' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

468.     Accordingly, Honda is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

1

**C.      Claims Brought on Behalf of the Alternate Kansas Class**

2

**COUNT I**
**VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT (KCPA)**
**(K.S.A. §§ 50-623, *ET SEQ.*)**

3

4       469.    Plaintiff Don Awtrey ("Plaintiff" for purposes of all Alternate Kansas Class Counts)

5       incorporates by reference all paragraphs as though fully set forth herein.

6       470.    Plaintiff brings this claim on behalf of the Alternate Kansas Class.

7       471.    Plaintiff and the other Class members are "consumers", as defined by K.S.A. 50-

8       624(b) of the Kansas Consumer Protection Act.

9       472.    By manufacturing vehicles for use by consumers Honda conducts regular business

10      with consumers and is therefore a "supplier", as defined by K.S.A. 50-624(i) of the Kansas

11      Consumer Protection Act.

12      473.    The sale of the Class Vehicles to the Plaintiff and the other Class members was a

13      "consumer transaction", as defined by K.S.A. 50-624(c) of the Kansas Consumer Protection Act.

14      474.    The Kansas CPA declares "[n]o supplier shall engage in any deceptive act or practice

15      in connection with a consumer transaction," K.S.A. § 50-626(a), and that deceptive acts or practices

16      include:  (1) knowingly making representations or with reason to know that "(A) Property or services

17      have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that

18      they do not have;" and "(D) property or services are of particular standard, quality, grade, style or

19      model, if they are of another which differs materially from the representation;" "(2) the willful use,

20      in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a

21      material fact;" and "(3) the willful failure to state a material fact, or the willful concealment,

22      suppression or omission of a material fact."  The Kansas CPA also provides that "[n]o supplier shall

23      engage in any unconscionable act or practice in connection with a consumer transaction."  K.S.A.

24      § 50-627(a).

25      475.    The willful conduct of Honda as set forth herein constitutes unfair or deceptive acts or

26      practices, including, but not limited to, Honda's manufacture and sale of vehicles with the HFL

27      Defect, which Honda failed to adequately investigate, disclose and remedy. Further, Honda knew

28

THIRD AMENDED CLASS ACTION COMPLAINT                     - 87 -

about the Defect prior to the sale of the Class Vehicles but did not disclose the existence of this Defect to Plaintiff and the other Class members. Honda engaged in unconscionable acts and practices by omitting information regarding the safety and reliability of the Class Vehicles.

476.   Honda's actions as set forth above occurred in the conduct of trade or commerce.

477.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Honda's business and has the potential for repetition.

598.   Honda's actions as set forth above induced Plaintiff and the other Class members to purchase their Class Vehicles from Honda and/or pay a higher price for their Class Vehicles than they otherwise would have.

478.   Plaintiff and the other Class members were injured as a result of Honda's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Honda's omissions.

479.   Honda's conduct proximately caused injuries to Plaintiff and the other Class members.

480.   Honda is liable for statutory damages in the amount of $10,000 pursuant to K.S.A. 50-636 for each violation of the KCPA.

481.   Honda is liable to Plaintiff and the other Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and damages.

**COUNT II**
**FRAUDULENT CONCEALMENT**
**(BASED ON KANSAS LAW)**

482.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

483.   Plaintiff brings this claim on behalf of the Alternate Kansas Class.

484.   Honda intentionally concealed that the HandsFreeLink™ system is defective, and prone to create a parasitic electricity drain that would strain the electrical system and repeatedly deplete the car's battery, leaving owners with cars that would not start, premature battery death, and

1  damage to other components in the electric system.  Honda concealed the fact that once the

2  HandsFreeLink™ system defect compromises the battery, the system "resets," hiding the problem

3  until the system gets stuck again.

4          485.    Honda further affirmatively misrepresented to Plaintiff in advertising and other forms

5  of communication, including standard and uniform material provided with each car and on its

6  website, that the Class Vehicles it was selling had no significant defects, that the HandsFreeLink™

7  was a safety feature, reliable, and would perform and operate properly.

8          486.    Honda knew about the Defect in the HandsFreeLink™ system when these

9  representations were made.

10          487.    The Class Vehicles purchased by Plaintiff and the other Class members contained a

11  defective HandsFreeLink™ system.

12          488.    Honda had a duty to disclose that the HandsFreeLink™ system contained a

13  fundamental defect as alleged herein, because the defect created a safety hazard and Plaintiff and the

14  other Class members relied on Honda's material representations.

15          489.    As alleged herein, at all relevant times, Honda has held out the Class Vehicles to be

16  free from defects such as the defect related to the HandsFreeLink™ system.  Honda touted and

17  continues to tout the many benefits and advantages of the HandsFreeLink™ system, but nonetheless

18  failed to disclose important facts related to the defect.  This made Honda's other disclosures about

19  the HandsFreeLink™ system deceptive.

20          490.    The truth about the defective HandsFreeLink™ system was known only to Honda;

21  Plaintiff and the other Class members did not know of these facts and Honda actively concealed

22  these facts from Plaintiff and the other Class members.

23          491.    Plaintiff and the other Class members reasonably relied upon Honda's deception.

24  They had no way of knowing that Honda's representations were false, misleading, or incomplete.  As

25  consumers, Plaintiff and the other Class members did not, and could not, unravel Honda's deception

26  on their own.  Rather, Honda intended to deceive Plaintiff and the other Class members by

27  concealing the true facts about the Class Vehicles' HandsFreeLink™ systems.

28

492. Honda's false representations and omissions were material to consumers because they concerned qualities of the Class Vehicles that played a significant role in the value of the vehicles.

493. Honda had a duty to disclose the HandsFreeLink™ system Defect and violations with respect to the Class Vehicles because details of the true facts were known and/or accessible only to Honda, because Honda had exclusive knowledge as to such facts, and because Honda knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.

494. Honda also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its vehicles, without telling consumers that one of the features had a fundamental defect that would affect the safety, quality and performance of the vehicle.

495. Honda's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect in the HandsFreeLink™ system as set forth herein. These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased by Plaintiff and the other Class members.

496. Honda has still not made full and adequate disclosures, and continues to defraud Plaintiff and the other Class members by concealing material information regarding the Defect in the HandsFreeLink™ system.

497. Plaintiff and the other Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and the other Class members' actions were justified. Honda was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

498. Because of the concealment and/or suppression of facts, Plaintiff and the other Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of Honda's concealment of the true quality of those vehicles' HandsFreeLink™ systems. Had Plaintiff

and the other Class members been aware of the Defect in the HandsFreeLink™ systems installed in the Class Vehicles, and the Company's disregard for the truth, Plaintiff and the other Class members who purchased an Acura vehicle would have paid less for their vehicles or would not have purchased them at all.

499.   The value of Plaintiff's and the other Class members' vehicles has diminished as a result of Honda's fraudulent concealment of the defective HandsFreeLink™ system of the Class Vehicles, which has made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

500.   Accordingly, Honda is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

501.   Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the other Class members' rights and the representations that Honda made to them, in order to enrich Honda.  Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT III**
**BREACH OF THE IMPLIED WARRANTY**
**OF MERCHANTABILITY**
**(K.S.A. § 84-2-314)**

502.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

503.   Plaintiff brings this claim on behalf of the Alternate Kansas Class.

504.   This Claim is tolled by virtue of Honda's fraudulent concealment. *See, e.g.,* Section V.B.

505.   Honda marketed the Class Vehicles as safe and reliable luxury vehicles.  Such representations formed the basis of the bargain in Plaintiff's and the other Class members' decisions to purchase the Class Vehicles.

506.     Honda was at all relevant times a "merchant" of motor vehicles as defined by K.S.A. § 84-2-104.

507.     The Class Vehicles are and were at all relevant times "goods" as defined by K.S.A. § 84-2-105.

508.     Plaintiff and the other Class members purchased or leased the Class Vehicles from Honda, through Honda's authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.

509.     Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

510.     Honda impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

511.     Because of the Defect in the HandsFreeLink™ system, the Class Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

512.     Honda knew about the Defect in the HandsFreeLink™ unit, allowing Honda to cure their breach of its warranty if it chose.

513.     Honda's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.  Specifically, Honda's warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and the other Class members.  Among other things, Plaintiff and the other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda.  A gross disparity in bargaining power existed between Honda and other Class members, and Honda knew of the Defect at the time of sale.

514.   Plaintiff and the other Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein.  Affording Honda a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

515.   Accordingly, Honda is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

**COUNT IV**
**VIOLATIONS OF THE MAGNUSON-MOSS**
**WARRANTY ACT (AS APPLICABLE TO IMPLIED WARRANTY-DERIVED CLAIMS)**
**(15 U.S.C. § 2301, *ET SEQ.*)**

516.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

517.   Plaintiff brings this claim on behalf of the Alternate Kansas Class.

518.   Plaintiff satisfies the Magnuson-Moss Warranty Act ("MMWA") jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

519.   Plaintiff and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

520.   Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

521.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

522.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

523.   Defendant provided Plaintiff and the other Class members with an express warranty, which is covered under 15 U.S.C. § 2301(6).

524.   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

525.   Defendant breached these warranties by misrepresenting the standard, quality, or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Defect in the HandsFreeLink™ units.

526.    Through their issuance of internal Technical Service Bulletins, Honda has acknowledged that the Class Vehicles are not of the standard, quality, or grade that Defendant represented.

527.    Plaintiff and the other Class members have had sufficient direct dealings with Honda or its agents (dealerships) to establish privity of contract between Honda, on the one hand, and Plaintiff and the other Class members on the other hand.

528.    Nonetheless, privity is not required here because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Honda and its dealers, and specifically, of its implied warranties.

529.    Affording Honda a reasonable opportunity to cure the breach of written warranties would be unnecessary and futile.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff and the other Class members resort to an informal dispute resolution procedure and/or afford Honda a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

530.    The amount in controversy of Plaintiff's and the other Class members' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

531.    Accordingly, Honda is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

**D.    Claims Brought on Behalf of the Alternate New Hampshire Class**

**COUNT I**
**VIOLATIONS OF NEW HAMPSHIRE CONSUMER**
**PROTECTION ACT**
**(N.H.R.S.A. § 358-A, *ET SEQ.*)**

532.    Plaintiff Melissa Yeung ("Plaintiff" for purposes of all Alternate New Hampshire Class Counts) incorporates by reference all paragraphs as though fully set forth herein.

533.    Plaintiff brings this claim on behalf of the Alternate New Hampshire Class.

THIRD AMENDED CLASS ACTION COMPLAINT                    - 94 -

1   534.   Plaintiff, Honda, and the other Class members are "persons", as defined in

2   N.H.R.S.A. § 358-A:1.

3   535.   Honda's acts and practices complained of herein were considered "Trade" and

4   "Commerce" as defined in N.H.R.S.A. § 358-A:1.

5   536.   Section 358A-2 of the New Hampshire Consumer Protection Act states, "It shall be

6   unlawful for any person to use any unfair method of competition or any unfair or deceptive act or

7   practice in the conduct of any trade or commerce within this state."

8   537.   As detailed herein, by not disclosing the defective nature of the HandsFreeLink™

9   system Honda has willfully and knowingly engaged in an unfair and deceptive acts in the conduct of

10   trade and commerce within the State of New Hampshire thereby violating section 358A-2 of the

11   New Hampshire Consumer Protection Act.

12   538.   In purchasing or leasing the Class Vehicles, Plaintiff and the other Class members

13   were deceived by Honda's failure to disclose that the HandsFreeLink™ system in the Class Vehicles

14   was defective.

15   539.   Plaintiff and the other Class members reasonably relied upon Honda's false

16   misrepresentations and omissions.  They had no way of knowing that Honda's representations were

17   false, misleading, and incomplete.  As alleged herein, Honda willfully and knowingly engaged in a

18   pattern of deception and public silence in the face of a known defect with its HandsFreeLink™

19   system.  Plaintiff and the other Class members did not, and could not, unravel Honda's deception on

20   their own.

21   540.   Honda's actions as set forth above occurred in the conduct of trade or commerce.

22   541.   Honda's unfair or deceptive acts or practices were likely to and did in fact deceive

23   reasonable consumers.

24   542.   Honda willfully and knowingly misrepresented material facts regarding the Class

25   Vehicles with intent to mislead Plaintiff and the other Class members.

26   543.   Honda knew or should have known that its conduct violated the New Hampshire

27   Consumer Protection Act.

28

THIRD AMENDED CLASS ACTION COMPLAINT                    - 95 -

544.    Honda owed Plaintiff and the other Class members a duty to disclose the truth about its faulty HandsFreeLink™ system because the defect created a safety hazard and Honda:

   i.    Possessed exclusive knowledge of the defect in the HandsFreeLink™ system;

   ii.    Intentionally concealed the foregoing from Plaintiff and the other Class members; and/or

   iii.    Made incomplete representations in advertisements and on its website, failing to warn the public or to publicly admit that the HandsFreeLink™ system was defective.

545.    Honda had a duty to disclose that the HandsFreeLink™ system in the Class Vehicles was fundamentally flawed as described herein, because the Defect created a safety hazard and Plaintiff and the other Class members relied on Honda's material misrepresentations and omissions regarding the technology, benefits, efficiency, convenience, performance, and safety features of the HandsFreeLink™ system.

546.    Honda's conduct proximately caused injuries to Plaintiff and the other Class members that purchased the Class Vehicles and suffered harm as alleged herein.

547.    Plaintiff and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff and the other Class members incurred costs related the parasitic drain caused by the Defect, including replacement of electrical components and service costs, and overpaid for their Class Vehicles that have suffered a diminution in value.

548.    Honda's violations cause continuing injuries to Plaintiff and the other Class members.

549.    Plaintiff and the other Class members seek damages and treble damages for Honda's knowing violations.

550.    Plaintiff and the other Class members also seek court costs and attorneys' fees.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON NEW HAMPSHIRE LAW)

551.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

THIRD AMENDED CLASS ACTION COMPLAINT                        - 96 -

1    552.    Plaintiff brings this claim on behalf of the Alternate New Hampshire Class.

2    553.    Honda intentionally concealed that the HandsFreeLink™ system is defective, and

3    prone to create a parasitic electricity drain that would strain the electrical system and repeatedly

4    deplete the car's battery, leaving owners with cars that would not start, premature battery death, and

5    damage to other components in the electric system.  Honda concealed the fact that once the

6    HandsFreeLink™ system defect compromises the battery, the system "resets," hiding the problem

7    until the system gets stuck again.

8    554.    Honda further affirmatively misrepresented to Plaintiff in advertising and other forms

9    of communication, including standard and uniform material provided with each car and on its

10   website, that the Class Vehicles it was selling had no significant defects, that the HandsFreeLink™

11   was a safety feature, reliable, and would perform and operate properly.

12   555.    Honda knew about the Defect in the HandsFreeLink™ system when these

13   representations were made.

14   556.    The Class Vehicles purchased by Plaintiff and the other Class members contained a

15   defective HandsFreeLink™ system.

16   557.    Honda had a duty to disclose that the HandsFreeLink™ system contained a

17   fundamental defect as alleged herein, because the defect created a safety hazard and Plaintiff and the

18   other Class members relied on Honda's material representations.

19   558.    As alleged herein, at all relevant times, Honda has held out the Class Vehicles to be

20   free from defects such as the defect related to the HandsFreeLink™ system.  Honda touted and

21   continues to tout the many benefits and advantages of the HandsFreeLink™ system, but nonetheless

22   failed to disclose important facts related to the defect.  This made Honda's other disclosures about

23   the HandsFreeLink™ system deceptive.

24   559.    The truth about the defective HandsFreeLink™ system was known only to Honda;

25   Plaintiff and the other Class members did not know of these facts and Honda actively concealed

26   these facts from Plaintiff and the other Class members.

27

28

THIRD AMENDED CLASS ACTION COMPLAINT                    - 97 -

560.    Plaintiff and the other Class members reasonably relied upon Honda's deception. They had no way of knowing that Honda's representations were false, misleading, or incomplete.  As consumers, Plaintiff and the other Class members did not, and could not, unravel Honda's deception on their own.  Rather, Honda intended to deceive Plaintiff and the other Class members by concealing the true facts about the Class Vehicles' HandsFreeLink™ systems.

561.    Honda's false representations and omissions were material to consumers because they concerned qualities of the Class Vehicles that played a significant role in the value of the vehicles.

562.    Honda had a duty to disclose the HandsFreeLink™ system Defect and violations with respect to the Class Vehicles because details of the true facts were known and/or accessible only to Honda, because Honda had exclusive knowledge as to such facts, and because Honda knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.

563.    Honda also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its vehicles, without telling consumers that one of the features had a fundamental defect that would affect the safety, quality and performance of the vehicle.

564.    Honda's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect in the HandsFreeLink™ system as set forth herein.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased by Plaintiff and the other Class members.

565.    Honda has still not made full and adequate disclosures, and continues to defraud Plaintiff and the other Class members by concealing material information regarding the Defect in the HandsFreeLink™ system.

566.    Plaintiff and the other Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and the other Class members' actions were justified.  Honda was in exclusive

control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

567.    Because of the concealment and/or suppression of facts, Plaintiff and the other Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of Honda's concealment of the true quality of those vehicles' HandsFreeLink™ systems.  Had Plaintiff and the other Class members been aware of the Defect in the HandsFreeLink™ systems installed in the Class Vehicles, and the Company's disregard for the truth, Plaintiff and the other Class members who purchased an Acura vehicle would have paid less for their vehicles or would not have purchased them at all.

568.    The value of Plaintiff's and the other Class members' vehicles has diminished as a result of Honda's fraudulent concealment of the defective HandsFreeLink™ system of the Class Vehicles, which has made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

569.    Accordingly, Honda is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

570.    Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the other Class members' rights and the representations that Honda made to them, in order to enrich Honda.  Honda's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III
## BREACH OF IMPLIED WARRANTY
### (N.H. REV. STAT. ANN. § 382-A: 2-314)

571.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

572.    Plaintiff brings this claim on behalf of the Alternate New Hampshire Class.

573.    This Claim is tolled by virtue of Honda's fraudulent concealment. *See, e.g.,* Section V.B.

574.    Honda marketed the Class Vehicles as safe and reliable luxury vehicles.  Such representations formed the basis of the bargain in Plaintiff's and the other Class members' decisions to purchase the Class Vehicles.

575.     Honda was at all relevant times a "merchant" as defined by N.H. Rev. Stat. Ann. § 382-A:2-104.

576.    The Class Vehicles are and were at all relevant times "goods" as defined by N.H. Rev. Stat. Ann. § 382-A:2-105.

577.    Plaintiff and the other Class members purchased or leased the Class Vehicles from Honda, through Honda's authorized agents for retail sales, through private sellers, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.

578.    Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

579.    Honda impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

580.    Because of the Defect in the HandsFreeLink™ system, the Class Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

581.    Honda knew about the Defect in the HandsFreeLink™ unit, allowing Honda to cure their breach of its warranty if it chose.

582.    Honda's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.  Specifically, Honda's warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and the other Class members.  Among other things, Plaintiff and the other Class members had no meaningful choice in determining these time

1  limitations, the terms of which unreasonably favored Honda.  A gross disparity in bargaining power

2  existed between Honda and other Class members, and Honda knew of the Defect at the time of sale.

3        583.  Plaintiff and the other Class members have complied with all obligations under the

4  warranty, or otherwise have been excused from performance of said obligations as a result of

5  Honda's conduct described herein.  Affording Honda a reasonable opportunity to cure the breach of

6  written warranties therefore would be unnecessary and futile.

7        584.  Accordingly, Honda is liable to Plaintiff and the other Class members for damages in

8  an amount to be proven at trial.

9  **COUNT IV**<br>**VIOLATIONS OF THE MAGNUSON-MOSS**

10  **WARRANTY ACT (AS APPLICABLE TO IMPLIED WARRANTY-DERIVED CLAIMS)**<br>**(15 U.S.C. § 2301, *ET SEQ.*)**

11

12        585.  Plaintiff incorporates by reference all preceding allegations as though fully set forth

13  herein.

14        586.  Plaintiff brings this claim on behalf of the Alternate New Hampshire Class.

15        587.  Plaintiff satisfies the Magnuson-Moss Warranty Act ("MMWA") jurisdictional

16  requirement because she alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

17        588.  Plaintiff and the other Class members are "consumers" within the meaning of the

18  Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

19        589.  Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss

20  Warranty Act, 15 U.S.C. § 2301(4)-(5).

21        590.  The Class Vehicles are "consumer products" within the meaning of the Magnuson-

22  Moss Warranty Act, 15 U.S.C. § 2301(1).

23        591.  The MMWA provides a cause of action for any consumer who is damaged by the

24  failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

25        592.  Defendant provided Plaintiff and the other Class members with an express warranty,

26  which is covered under 15 U.S.C. § 2301(6).

27        593.  The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

28

594.    Defendant breached these warranties by misrepresenting the standard, quality, or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Defect in the HandsFreeLink™ units.

595.    Through their issuance of internal Technical Service Bulletins, Honda has acknowledged that the Class Vehicles are not of the standard, quality, or grade that Defendant represented.

596.    Plaintiff and the other Class members have had sufficient direct dealings with Honda or its agents (dealerships) to establish privity of contract between Honda, on the one hand, and Plaintiff and the other Class members on the other hand.

597.    Nonetheless, privity is not required here because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Honda and its dealers, and specifically, of its implied warranties.

598.    Affording Honda a reasonable opportunity to cure the breach of written warranties would be unnecessary and futile.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff and the other Class members resort to an informal dispute resolution procedure and/or afford Honda a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

599.    The amount in controversy of Plaintiff's and the other Class members' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

600.    Accordingly, Honda is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

**E.      Claims Brought on Behalf of the Alternate New York Class**

**COUNT I**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(N.Y. GEN. BUS. LAW § 349)**

601.      Plaintiff Joy Matza ("Plaintiff" for purposes of all Alternate New York Class Counts) incorporates by reference all paragraphs as though fully set forth herein.

602.      Plaintiff brings this claim on behalf of the Alternate New York Class.

603.      New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

604.      By failing to release material facts about the Defect, Honda curtailed or reduced the ability of consumers to take notice of material facts about their vehicle, and/or it affirmatively operated to hide or keep those facts from consumers.  Moreover, Honda has otherwise engaged in activities with a tendency or capacity to deceive.  Honda also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices, and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Class Vehicles.

605.      Honda knew it had installed a defective HandsFreeLink™ system since at least 2005, when they issued the Technical Service Bulletin discussed herein.

606.      By failing to disclose and by actively concealing the defect in the HandsFreeLink™ system, by marketing its vehicles as safe, reliable and of high quality, and by presenting itself as a reputable manufacturer that valued safety and reliability and stood behind its vehicles after they were sold, Honda engaged in deceptive business practices in violation of the NY GBL §349.

607.      In the course of Honda's business, it willfully failed to disclose and actively concealed the defect in the HandsFreeLink™ system discussed herein.  Honda compounded the deception by repeatedly asserting Class Vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety, and stood behind its vehicles once they are on the road.

608.     Honda's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, and did in fact deceive reasonable consumers, including Plaintiff and the other Class members, about true reliability of Class Vehicles and the ability to use the HandsFreeLink™ system without compromising their batteries

609.     Honda intentionally and knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiff and the other Class members, including without limitation by failing to disclose the defects in light of circumstances under which the omitted facts were necessary in order to correct the assumptions, inferences or representations being made by Honda about the reliability and safety of its vehicles.  Consequently, the failure to disclose such facts amounts to misleading statements pursuant to NY GBL §349.

610.     Because Honda knew or believed that its statements regarding the reliability and safety of its vehicles were not in accord with the facts and/or had no reasonable basis for such statements in light of its knowledge of these defects, Honda engaged in fraudulent misrepresentations pursuant to NY GBL §349.

611.     Honda's conduct as described herein is unethical, oppressive, or unscrupulous and/or it presented a risk of substantial injury to consumers.  Such acts are unfair practices in violation of NY GBL §349.

612.     Honda knew or should have known that its conduct violated NY GBL §349.

613.     As alleged above, Honda made material statements about the reliability and safety of the Class Vehicles and the Honda brand that were either false, misleading, and/or half-truths in violation of NY GBL §349

614.     Honda owed Plaintiff and the other Class members a duty to disclose the truth about its faulty HandsFreeLink™ system because the defect created a safety hazard and Honda:

      i.   Possessed exclusive knowledge of the Defect in the HandsFreeLink™ system, which caused parasitic electricity drain that would repeatedly deplete the car's battery;

     ii.   Intentionally concealed the foregoing from Plaintiff and the other Class members; and/or

iii.  Made incomplete representations in advertisements and on its website, failing to warn the public or to publicly admit that the HandsFreeLink™ system was defective.

615.  Honda's fraudulent use of the HandsFreeLink™ system and its concealment of the true defective nature of the system were material to Plaintiff and the other Class members.

616.  Plaintiff and the other Class members suffered ascertainable loss caused by Honda's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased the Class Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all but for Honda's violations of NY GBL §349.

617.  Honda had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the NY GBL §349.  All owners of Class Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Honda's deceptive and unfair acts and practices made in the course of Honda's business.

618.  Honda's violations present a continuing risk to Plaintiff and the other Class members as well as to the general public.  Honda's unlawful acts and practices complained of herein affect the public interest.

619.  As a direct and proximate result of Honda's violations of NY GBL §349, Plaintiff and the other Class members have suffered injury-in-fact and/or actual damage.

620.  Honda is liable to Plaintiff and the other Class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Honda's unfair and deceptive practices, and any other just and proper relief under NY GBL §349.

**COUNT II**
**FRAUDULENT CONCEALMENT**
**(BASED ON NEW YORK LAW)**

621.  Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

622.  Plaintiff brings this claim on behalf of the Alternate New York Class.

623.     Honda intentionally concealed that the HandsFreeLink™ system is defective, and prone to create a parasitic electricity drain that would strain the electrical system and repeatedly deplete the car's battery, leaving owners with cars that would not start, premature battery death, and damage to other components in the electric system.  Honda concealed the fact that once the HandsFreeLink™ system defect compromises the battery, the system "resets," hiding the problem until the system gets stuck again.

624.     Honda further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Class Vehicles it was selling had no significant defects, that the HandsFreeLink™ was a safety feature, reliable, and would perform and operate properly.

625.     Honda knew about the Defect in the HandsFreeLink™ system when these representations were made.

626.     The Class Vehicles purchased by Plaintiff and the other Class members contained a defective HandsFreeLink™ system.

627.     Honda had a duty to disclose that the HandsFreeLink™ system contained a fundamental defect as alleged herein, because the defect created a safety hazard and Plaintiff and the other Class members relied on Honda's material representations.

628.     As alleged herein, at all relevant times, Honda has held out the Class Vehicles to be free from defects such as the defect related to the HandsFreeLink™ system.  Honda touted and continues to tout the many benefits and advantages of the HandsFreeLink™ system, but nonetheless failed to disclose important facts related to the defect.  This made Honda's other disclosures about the HandsFreeLink™ system deceptive.

629.     The truth about the defective HandsFreeLink™ system was known only to Honda; Plaintiff and the other Class members did not know of these facts and Honda actively concealed these facts from Plaintiff and the other Class members.

630.     Plaintiff and the other Class members reasonably relied upon Honda's deception. They had no way of knowing that Honda's representations were false, misleading, or incomplete.  As consumers, Plaintiff and the other Class members did not, and could not, unravel Honda's deception on their own.  Rather, Honda intended to deceive Plaintiff and Class members.

631.     Honda's false representations and omissions were material to consumers because they concerned qualities of the Class Vehicles that played a significant role in the value of the vehicles.

632.     Honda had a duty to disclose the HandsFreeLink™ system Defect and violations with respect to the Class Vehicles because details of the true facts were known and/or accessible only to Honda, because Honda had exclusive knowledge as to such facts, and because Honda knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.

633.     Honda also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its vehicles, without telling consumers that one of the features had a fundamental defect that would affect the safety, quality and performance of the vehicle.

634.     Honda's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect in the HandsFreeLink™ system as set forth herein.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased by Plaintiff and the other Class members.

635.     Honda has still not made full and adequate disclosures, and continues to defraud Plaintiff and the other Class members by concealing material information regarding the Defect in the HandsFreeLink™ system.

636.     Plaintiff and the other Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and the other Class members' actions were justified.  Honda was in exclusive

1 control of the material facts, and such facts were not generally known to the public, Plaintiff, or

2 Class members.

3    637.    Because of the concealment and/or suppression of facts, Plaintiff and the other Class

4 members sustained damage because they own(ed) vehicles that are diminished in value as a result of

5 Honda's concealment of the true quality of those vehicles' HandsFreeLink™ systems.  Had Plaintiff

6 and the other Class members been aware of the Defect in the HandsFreeLink™ systems installed in

7 the Class Vehicles, and the Company's disregard for the truth, Plaintiff and the other Class members

8 who purchased an Acura vehicle would have paid less for their vehicles or would not have purchased

9 them at all.

10    638.    The value of Plaintiff's and the other Class members' vehicles has diminished as a

11 result of Honda's fraudulent concealment of the defective HandsFreeLink™ system of the Class

12 Vehicles, which has made any reasonable consumer reluctant to purchase any of the Class Vehicles,

13 let alone pay what otherwise would have been fair market value for the vehicles.

14    639.    Accordingly, Honda is liable to Plaintiff and the other Class members for damages in

15 an amount to be proven at trial.

16    640.    Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent

17 to defraud, and in reckless disregard of Plaintiff's and the other Class members' rights and the

18 representations that Honda made to them, in order to enrich Honda.  Honda's conduct warrants an

19 assessment of punitive damages in an amount sufficient to deter such conduct in the future, which

20 amount is to be determined according to proof.

**COUNT III**
**BREACH OF IMPLIED WARRANTY**
**(N.Y. U.C.C. LAW § 2-315)**

23    641.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

24 herein.

25    642.    Plaintiff brings this claim on behalf of the Alternate New York Class.

THIRD AMENDED CLASS ACTION COMPLAINT          - 108 -

643. Honda marketed the Class Vehicles as safe and reliable luxury vehicles. Such representations formed the basis of the bargain in Plaintiff's and the other Class members' decisions to purchase the Class Vehicles.

644. Honda was at all relevant times a "merchant" of motor vehicles as defined by N.Y. U.C.C. Law § 2-104.

645. In connection with the purchase or lease of each of the Class Vehicles, Honda provided warranty coverage for the Class Vehicles for 4 years or 50,000 miles, which obliges Honda to repair or replace any part that is defective under normal use.

646. Honda's warranty formed a basis of the bargain that was reached when Plaintiff and the other Class members purchased their Class Vehicles.

647. Plaintiff and the other Class members owned Class Vehicles with defective HandsFreeLink™ units within the warranty period but had no knowledge of the existence of the Defect, which was known and concealed by Honda.

648. Despite the existence of the warranty, Honda failed to inform Plaintiff and the other Class members that the Class Vehicles contained the defective HandsFreeLink™ units during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement to Plaintiff and the other Class members.

649. Honda breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts they supplied.

650. Honda knew about the Defect in the HandsFreeLink™ unit, allowing Honda to cure their breach of its warranty if it chose.

651. However, Honda concealed the Defect and, on information and belief, has refused to repair or replace the HandsFreeLink™ unit free of charge outside of the warranty periods despite the Defect's existence at the time of sale or lease of the Class Vehicles.

652. Any attempt by Honda to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, Honda's warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing

consumers about the defect.  The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and the other Class members.  Among other things, Plaintiff and the other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda.  A gross disparity in bargaining power existed between Honda and other Class members, and Honda knew that the HandsFreeLink™ units were defective at the time of sale.

653.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole because the replacement part used by Honda contains the same defect.  Affording Honda a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

654.    Accordingly, Honda is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

**COUNT IV**
**VIOLATIONS OF THE MAGNUSON-MOSS**
**WARRANTY ACT (AS APPLICABLE TO IMPLIED WARRANTY-DERIVED CLAIMS)**
**(15 U.S.C. § 2301, *ET SEQ.*)**

655.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

656.    Plaintiff brings this claim on behalf of the Alternate New York Class.

657.    Plaintiff satisfies the Magnuson-Moss Warranty Act ("MMWA") jurisdictional requirement because she alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

658.    Plaintiff and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

659.    Honda is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

660.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

661.     The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

662.     Defendant provided Plaintiff and the other Class members with an express warranty, which is covered under 15 U.S.C. § 2301(6).

663.     The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

664.     Defendant breached these warranties by misrepresenting the standard, quality, or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Defect in the HandsFreeLink™ units.

665.     Through their issuance of internal Technical Service Bulletins, Honda has acknowledged that the Class Vehicles are not of the standard, quality, or grade that Defendant represented.

666.     Plaintiff and the other Class members have had sufficient direct dealings with Honda or its agents (dealerships) to establish privity of contract between Honda, on the one hand, and Plaintiff and the other Class members on the other hand.

667.     Nonetheless, privity is not required here because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Honda and its dealers, and specifically, of its implied warranties.

668.     Affording Honda a reasonable opportunity to cure the breach of written warranties would be unnecessary and futile.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff and the other Class members resort to an informal dispute resolution procedure and/or afford Honda a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

669.     The amount in controversy of Plaintiff's and the other Class members' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

670. Accordingly, Honda is liable to Plaintiff and the other Class members for damages in an amount to be proven at trial.

**F.     Claims Brought on Behalf of the Alternate Washington Class**

**COUNT I**
**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT – UNFAIR BUSINESS PRACTICES**
**(REVISED CODE OF WASHINGTON (RCW) §§ 19.86.010, *ET SEQ*.)**

671. Plaintiff Charles Burgess ("Plaintiff" for purposes of all Alternate Washington Class Counts) incorporates by reference all paragraphs as though fully set forth herein.

672. Plaintiff brings this claim on behalf of the Alternate Washington Class.

673. Honda, Plaintiff, and the other Class members are "persons" under RCW 19.86.010(1) ("Washington CPA").

674. Honda engages in "trade" or "commerce" under RCW 19.86.010(2).

675. Honda has engaged in unfair acts or practices.  Honda has long known that its HandsFreeLink™ units have a propensity to become locked in the "on" position and exert a parasitic current drain on the vehicle's engine, compromising the vehicle's battery and other electrical components, which impairs the car's performance and poses a serious safety risk.  Honda systematically concealed and failed to disclose these facts to Plaintiff and the other Class members.

676. Honda engaged in unfair acts or practices by engaging in a pattern and practice of: (i) failing to disclose that Plaintiff's and Class members' vehicles, and the HandsFreeLink™ system in the vehicles, were not of a particular standard, quality, or grade; (ii) failing to disclose, at and after the time of purchase or lease and repair, any and all known material defects or material nonconformity of the vehicles, including the defect in the HandsFreeLink™ systems; (iii) failing to disclose at the time of purchase or lease that the vehicles, including the HandsFreeLink™ systems, were not in good working order, were defective, were not fit for their intended, ordinary purpose, and created substantial performance and safety issues; (iv) failing to give adequate warnings and notices regarding the use, defects, and problems with the vehicles' HandsFreeLink™ systems to customers and consumers who purchased and/or leased the vehicles, even though Honda  possessed knowledge

of the inherent defect in the HandsFreeLink™ systems prior to and at the time of purchase; (v) failing to disclose, either through warnings or recall notices, and/or actively concealing, the fact that the HandsFreeLink™ systems were defective, even though Honda knew about the defects as early as July 2005, if not before; (vi) representing that defects in the vehicles would be covered under its warranty program, while systematically replacing the HandsFreeLink™ units with equally defective HandsFreeLink™ units, only repairing/replacing the symptoms of the defect (the failed batteries, alternators, and other essential electrical components), and/or depriving purchasers who would have come in during their warranty periods of the opportunity to do so; and (vii) causing Plaintiff and the other Class members to expend sums of money to (repeatedly) service, repair and/or replace their HandsFreeLink™ units and other essential electrical components, such as batteries and alternators, despite Honda's knowledge of the defect.

677.    Honda's systematic practice of failing to disclose the defect in the HandsFreeLink™ systems, failing to give adequate warnings about defects in the HandsFreeLink™ systems, and failing to repair the HandsFreeLink™ systems is unfair because these acts or practices offend public policy established by statutes, regulations, the common law or otherwise, including, but not limited to, the public policy established by RCW 46.70.005, RCW 46.70.101, and RCW 46.70.180.

678.    Honda's systematic practice of failing to disclose the defect in the HandsFreeLink™ systems, failing to give adequate warnings about defects in the HandsFreeLink™ systems, and failing to repair the HandsFreeLink™ systems is unfair because this practice allowed Honda to continue to charge consumers a premium price for these vehicles and the HandsFreeLink™ systems. This practice also misled owners during the warranty period and allowed Honda to avoid having to fulfill its contractual obligations under the warranty.

679.    Honda's systematic practice of failing to disclose the defect in the HandsFreeLink™ systems, failing to give adequate warnings regarding the defects in the HandsFreeLink™ systems, and failing to repair the HandsFreeLink™ systems is unfair because these acts or practices: (1) cause substantial financial injury to Plaintiff and the other Class members; (2) are not outweighed by any countervailing benefits to consumers or competitors, and create an unreasonable safety risk for

THIRD AMENDED CLASS ACTION COMPLAINT                    - 113 -

Plaintiff, Class members, and other members of the public; and (3) are not reasonably avoidable by consumers.

680.     Honda's unfair acts and practices affect the public interest, because these acts and practices have injured and have the capacity to injure other persons.  Honda's unfair acts and practices also offend the public policy laid out in RCW 46.70.005, RCW 46.70.101, and RCW 46.70.180, and that statute specifically provides: "Any violation of this chapter is deemed to affect the public interest and constitutes a violation of chapter 19.86 RCW" in RCW 46.70.310.

681.     These unfair acts and practices were committed in the general course of Honda's business.

682.     As a direct and proximate result of Honda's unfair acts or practices, Plaintiff and the other Class members suffered injury in fact and lost money.  Honda's unfair or deceptive acts or practices resulted in Plaintiff and the other Class members: (i) expending out-of-pocket monies to service their vehicles, including for repairs or replacements of batteries, alternators, and other electrical components drained or strained by the defective HandsFreeLink™ systems, and/or replacement of the HandsFreeLink™ systems or disconnection of HandsFreeLink™ systems, as well as loss of use while their vehicles were being serviced; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the vehicles as warranted and the vehicles containing the defect; and (iii) the diminution of resale value of the vehicles resulting from the defect.

683.     Plaintiff and the other Class members are therefore entitled to legal relief against Honda, including recovery of actual damages, treble damages, attorneys' fees, costs of suit, and such further relief as the Court may deem proper.

684.     Plaintiff and the other Class members are also entitled to injunctive relief in the form of an order prohibiting Honda from engaging in the alleged misconduct and such other equitable relief as the Court deems appropriate, including, but not limited to, disgorgement, for the benefit of the class members, of all or part of the ill-gotten profits Honda received from the failure to disclose defect in the HandsFreeLink™ system.

**COUNT II**
**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT – DECEPTIVE**
**BUSINESS PRACTICES**
**(RCW 19.86.010, *ET SEQ.*)**

685.    Plaintiff brings this claim on behalf of the Alternate Washington Class.

686.    Honda, Plaintiff, and the other Class members are "persons" under RCW §
19.86.010(1).

687.    Honda engages in "trade" or "commerce" under RCW 19.86.010(2).

688.    Honda has engaged in deceptive acts or practices.  Honda has long known that its
HandsFreeLink™ units have a propensity to become locked in the "on" position and exert a parasitic
current drain on the vehicle's engine, compromising the vehicle's battery and other electrical
components, which impairs the car's performance and poses a serious safety risk.  Honda
systematically concealed and failed to disclose these facts to Plaintiff and the other Class members.

689.    Honda further engaged in deceptive acts or practices by (i) failing to disclose that
Plaintiff's and the other Class members' vehicles, and the HandsFreeLink™ system in the vehicles,
were not of a particular standard, quality, or grade; (ii) failing to disclose, at and after the time of
purchase or lease and repair, any and all known material defects or material nonconformity of the
vehicles, including the defect in the HandsFreeLink™ systems; (iii) failing to disclose at the time of
purchase or lease that the vehicles, including the HandsFreeLink™ systems, were not in good
working order, were defective, were not fit for their intended, ordinary purpose, and created
substantial performance and safety issues; (iv) failing to give adequate warnings and notices
regarding the use, defects, and problems with the vehicles' HandsFreeLink™ systems to customers
and consumers who purchased and/or leased the vehicles, even though Honda  possessed knowledge
of the inherent defect in the HandsFreeLink™ systems prior to and at the time of purchase; (v)
failing to disclose, either through warnings or recall notices, and/or actively concealing, the fact that
the HandsFreeLink™ systems were defective, even though Honda knew about the defects as early as
July 2005, if not before; (vi) representing that defects in the vehicles would be covered under its
warranty program, while systematically replacing the HandsFreeLink™ units with equally defective
HandsFreeLink™ units, only addressing the symptoms of the defect (the failed batteries, alternators,

1    and other essential electrical components), and/or depriving purchasers who would have come in

2    during their warranty periods of the opportunity to do so; and (vii) causing Plaintiff and the other

3    Class members to expend sums of money to (repeatedly) service, repair and/or replace their

4    HandsFreeLink™ units and other essential electrical components, such as batteries and alternators,

5    despite Honda's knowledge of the defect.

6         690.    Honda's deceptive acts or practices repeatedly occurred in the general course of

7    Honda's trade or business and were and are capable of deceiving a substantial portion of the public.

8    The acts complained of herein are ongoing.

9         691.    Honda's deceptive acts and practices affect the public interest, because these acts and

10   practices have injured and have the capacity to injure other persons.  Honda's deceptive acts and

11   practices also offend the public policy laid out in RCW 46.70.005, RCW 46.70.101, and

12   RCW 46.70.180, and that statute specifically provides: "Any violation of this chapter is deemed to

13   affect the public interest and constitutes a violation of chapter 19.86 RCW" in RCW 46.70.310.

14        692.    These deceptive acts and practices were committed in the general course of Honda's

15   business.

16        693.    Honda's systematic practice of failing to disclose the defect in the HandsFreeLink™

17   systems, failing to give adequate warnings about defects in the HandsFreeLink™ systems, and

18   failing to repair the HandsFreeLink™ systems is deceptive, because this practice allowed Honda to

19   continue to charge consumers a premium price for these vehicles and the HandsFreeLink™ systems.

20   This practice also misled owners during the warranty period and allowed Honda to avoid having to

21   fulfill its contractual obligations under the warranty.

22        694.    Honda's systematic practice of failing to disclose the defect in the HandsFreeLink™

23   systems, failing to give adequate warnings regarding the defects in the HandsFreeLink™ systems,

24   and failing to repair the HandsFreeLink™ systems is likely to mislead a reasonable consumer.

25        695.    As a direct and proximate result of Honda's unfair acts or practices, Plaintiff and the

26   other Class members suffered injury in fact and lost money.  Honda's unfair or deceptive acts or

27   practices resulted in Plaintiff and the other Class members: (i) expending out-of-pocket monies to

28

service their vehicles, including for repairs or replacements of batteries, alternators, and other electrical components drained or strained by the defective HandsFreeLink™ systems, and/or replacement of the HandsFreeLink™ systems or disconnection of HandsFreeLink™ systems, and loss of use while their vehicles were being serviced; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the vehicles as warranted and the vehicles containing the defect; and (iii) the diminution of resale value of the vehicles resulting from the defect.

696.    Plaintiff and the other Class members are therefore entitled to legal relief against Honda, including recovery of actual damages, treble damages, attorneys' fees, costs of suit, and such further relief as the Court may deem proper.

697.    Plaintiff and the other Class members are also entitled to injunctive relief in the form of an order prohibiting Honda from engaging in the alleged misconduct and such other equitable relief as the Court deems appropriate, including, but not limited to, disgorgement, for the benefit of the class members, of all or part of the ill-gotten profits Honda received from the failure to disclose the defect in the HandsFreeLink™ systems

**COUNT III**
**FRAUDULENT CONCEALMENT**
**(BASED ON WASHINGTON LAW)**

698.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

699.    Plaintiff brings this claim on behalf of the Alternate Washington Class.

700.    Honda possessed exclusive knowledge of the defect in the HandsFreeLink™ system, and intentionally concealed that the HandsFreeLink™ system is defective, and prone to create a parasitic electricity drain that would strain the car's electrical system and repeatedly deplete the car's battery, leaving owners with cars that would not reliably start, premature battery death, and damage to other components in the electric system.  Honda concealed the fact that once the HandsFreeLink™ system defect compromises the battery, the system "resets," hiding the problem until the system gets stuck again.

THIRD AMENDED CLASS ACTION COMPLAINT                    - 117 -

701.    Honda further affirmatively misrepresented to Plaintiff and the other Class members in advertising and other forms of communication, including standard and uniform material provided with each car and on its website, that the Class Vehicles it was selling had no significant defects, that the HandsFreeLink™ was a safety feature, reliable, and would perform and operate properly.

702.    Honda knew about the Defect in the HandsFreeLink™ system when it made these representations. Honda knew the defect was not known to or reasonably discoverable by Plaintiff or Class members.  Nonetheless, Honda failed to disclose the defect, which a reasonable consumer would have found to be an important, material fact.  Honda also failed to disclose the performance problems and safety hazards caused by this defect.  This made Honda's incomplete and contradictory statements about the vehicle and its HandsFreeLink™ system deceptive and tantamount to a misrepresentation.

703.    The Class Vehicles purchased by Plaintiff and the other Class members contained a defective HandsFreeLink™ system.

704.    Honda had a duty to disclose the HandsFreeLink™ system defect because Honda had knowledge of a material fact not readily apparent or observable and not easily discoverable by Plaintiff and the other Class members.  Honda had a duty to disclose that the HandsFreeLink™ system is defective because the defect is a manifestly serious and dangerous condition, which results in a vehicle that will not reliably start and could stall due to a dead battery and other failed electrical components even when the vehicle is in use.

705.    As alleged herein, at all relevant times, Honda has held out the Class Vehicles to be free from defects such as the defect related to the HandsFreeLink™ system.  Honda touted and continues to tout the many benefits and advantages of the HandsFreeLink™ system, but nonetheless failed to disclose important facts related to the defect.  This made Honda's other disclosures about the HandsFreeLink™ system deceptive.

706.    The truth about the defective HandsFreeLink™ system was known only to Honda; Plaintiff and the other Class members did not know of these facts and Honda actively concealed these facts from Plaintiff and the other Class members.  They had no way of knowing that Honda's

representations were false, misleading, or incomplete.  As consumers, Plaintiff and the other Class members did not, and could not, unravel Honda's deception on their own.  Rather, Honda intended to deceive Plaintiff and the other Class members by concealing the true facts about the Class Vehicles' HandsFreeLink™ systems. Also, the defect tended to evade detection , in part because it only manifested itself through the failure of other electrical components, in part because it could trigger a reset if the battery drained too low, causing the problem to appear 'intermittent.'

707.    Honda's false representations and omissions were material because they concerned qualities that played a significant role in the value of the vehicles (affecting the vehicle's performance, safety, and luxury), and because the defect constitutes an unreasonable safety risk that would be material to a reasonable consumer.  The existence of a defect that prevents a vehicle from starting reliably, causes a vehicle to stall even while in use, and requires costly repairs is a material fact that would have affected Plaintiff's and the other Class members' decision to purchase the vehicles and the price they were willing to pay for the vehicles.

708.    Honda had a duty to disclose the HandsFreeLink™ system Defect and violations with respect to the Class Vehicles because details of the true facts were known and/or accessible only to Honda, because Honda had exclusive knowledge as to such facts, and because Honda knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.

709.    Honda also had a duty to disclose because it made general affirmative representations about the technological and safety innovations included with its vehicles, without telling consumers that one of the features had a fundamental defect that would affect the safety, quality and performance of the vehicle.

710.    Honda's disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Defect in the HandsFreeLink™ system as set forth herein.  These omitted and concealed facts were material because they directly impact the value of the Class Vehicles purchased by Plaintiff and the other Class members.

711.     Honda has still not made full and adequate disclosures, and continues to defraud Plaintiff and the other Class members by concealing material information regarding the Defect in the HandsFreeLink™ system.

712.     Plaintiff and the other Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for cars with faulty technology, and/or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and the other Class members' actions were justified.  Honda was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

713.     Honda concealed and continues to conceal this material information in order to induce consumers to purchase the class vehicles at a premium price, and also to mislead owners during the warranty period in order to avoid having to fulfill their contractual obligations under the warranty. Honda continues to sell vehicles with the defective HandsFreeLink™ system, but does not warn purchasers or disclose the defect to the public.  Honda continues to conceal and gloss over the problem by replacing HandsFreeLink™ units with equally defective HandsFreeLink™ units, and replacing failed batteries, alternators, and other electrical components without addressing the root of the problem.

714.     Because of the concealment and/or suppression of facts, Plaintiff and the other Class members sustained damage because they own(ed) vehicles that are diminished in value as a result of Honda's concealment of the true quality of those vehicles' HandsFreeLink™ systems.  Had Plaintiff and the other Class members been aware of the Defect in the HandsFreeLink™ systems installed in the Class Vehicles, and the Company's disregard for the truth, Plaintiff and the other Class members who purchased an Acura vehicle would have paid less for their vehicles or would not have purchased them at all.

715.     The value of Plaintiff's and the other Class members' vehicles has diminished as a result of Honda's fraudulent concealment of the defective HandsFreeLink™ system of the Class

1  Vehicles, which has made any reasonable consumer reluctant to purchase any of the Class Vehicles,

2  let alone pay what otherwise would have been fair market value for the vehicles. Plaintiff and Class

3  members were also deprived of safe and reliable transportation. This defect poses an unreasonable

4  safety risk, and renders their vehicles unsuited for ordinary use.

5      716.    Accordingly, Honda is liable to Plaintiff and the other Class members for damages in

6  an amount to be proven at trial.

7      717.    Honda's acts were done wantonly, maliciously, oppressively, deliberately, with intent

8  to defraud, and in reckless disregard of Plaintiff's and the other Class members' rights and the

9  representations that Honda made to them, in order to enrich Honda.  Honda's conduct warrants an

10  assessment of punitive damages in an amount sufficient to deter such conduct in the future, which

11  amount is to be determined according to proof.

12  **REQUEST FOR RELIEF**

13      WHEREFORE, Plaintiffs and Class members, individually and on behalf of members of the

14  National (California-law) or alternative California, Delaware, Kansas, New Hampshire, New York

15  and Washington Classes, respectfully request that the Court enter judgment in their favor and against

16  Honda as follows:

17      A.    Certification of the proposed Class (or alternate Classes), including appointment of

18  Plaintiffs' counsel as Class Counsel;

19      B.    Restitution and damages, including enhanced damages, punitive damages, costs, and

20  disgorgement in an amount to be determined at trial;

21      C.    Injunctive relief in the form of a recall or free replacement program with a

22  HandsFreeLink$^{TM}$ system that does not drain the batteries of the Class Vehicles;

23      D.    An Order requiring Honda to pay both pre- and post-judgment interest on any

24  amounts awarded;

25      E.    An award of costs and attorneys' fees; and

26      F.    Such other or further relief as may be appropriate.

27

28

THIRD AMENDED CLASS ACTION COMPLAINT                - 121 -

**DEMAND FOR JURY TRIAL**

Plaintiffs and Class members hereby demands a jury trial for all claims so triable.

DATED: April 27, 2018

SEEGER WEISS LLP

By */s/ Christopher A. Seeger*
Christopher A. Seeger (*pro hac vice*)
Stephen. A Weiss (*pro hac vice*)
Scott Alan George (*pro hac vice*)
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
Email: cseeger@seegerweiss.com
Email: sweiss@ seegerweiss.com
Email: sgeorge@seegerweiss.com

James E. Cecchi (*pro hac vice*)
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
Email: jcecchi@carellabyrne.com

*Interim Co-Lead Class Counsel*

Steve W. Berman (*pro hac vice*)
Catherine Y.N. Gannon *(pro hac vice)*
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com
Email: catherineg@hbsslaw.com

Shana E. Scarlett (SBN 217895)
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: shanas@hbsslaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James C. Shah
Shepherd Finkelman Miller & Shah, LLP
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: 415-429-5272
Facsimile: (866) 300-7367
Email: jshah@sfmslaw.com

Toby James Marshall *(pro hac vice)*
Amanda M Steiner
Brittany A. Madderra *(pro hac vice)*
Terrell Marshall Law Group PLLC
936 North 34th Street, Suite 300
Seattle, WA 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528
Email: tmarshall@terrellmarshall.com
Email: asteiner@terrellmarshall.com
Email: bmadderra@terrellmarshall.com

*Attorneys for Plaintiffs and the Proposed Classes*

1

## <u>CERTIFICATE OF SERVICE</u>

2      I, Christopher A. Seeger, hereby certify that on April 27, 2018, I electronically filed the

3  foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such

4  filing to the following:

5
          Livia M. Kiser, SBN #285411
6         Email:  lkiser@sidley.com
          Michael C. Andolina, *Admitted Pro Hac Vice*
7         Email:  mandolina@sidley.com
          Andrew J. Chinsky, *Admitted Pro Hac Vice*
8         Email:  achinsky@sidley.com
          SIDLEY AUSTIN LLP
9         One South Dearborn
          Chicago, Illinois 60603
10        Telephone: (312) 853-7000
          Facsimile: (312) 853-7036
11

12        Eric B. Schwartz, SBN #266554
          Email:  eschwartz@sidley.com
13        SIDLEY AUSTIN LLP
          555 West Fifth Street, Suite 4000
14        Los Angeles, California 90013
          Telephone: (213) 896-6666
15        Facsimile: (213) 896-6600

16
          *Attorneys for Defendant American Honda Motor Co. Inc.*
17

18        DATED this 27th day of April, 2018.

19                            SEEGER WEISS LLP

20                            By:  /s/ Christopher A. Seeger
                              Christopher A. Seeger, *Admitted Pro Hac Vice*
21                            Email: cseeger@seegerweiss.com
                              55 Challenger Road, 6th Floor
22                            Ridgefield Park, New Jersey 07660
                              Telephone: (212) 584-0700
23                            Facsimile: (212) 584-0799

24                            *Interim Co-Lead Class Counsel*

25

26

27

28

THIRD AMENDED CLASS ACTION COMPLAINT                    - 124 -