UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSAY ABERIN, et al., | Case No. 16-cv-04384-JST |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION FOR CLASS CERTIFICATION; DENYING MOTIONS TO STRIKE EXPERT TESTIMONY** |
| AMERICAN HONDA MOTOR COMPANY, INC., | |
| Defendant. | Re: ECF Nos. 248, 264, 266, 267, 268 |

Plaintiffs bring this putative class action against Defendant American Honda Motor Company, Inc. ("Honda"), based on Honda's alleged failure to disclose a defect in the "hands-free" calling system, HandsFreeLink™ ("HFL"), offered in certain Acura vehicles. Before the Court are Plaintiffs' motion for class certification and Defendant's motions to strike the testimony of Plaintiffs' experts Dr. Nidhi Agrawal, Robert Berriman, Dr. David Gilbert, and Dr. D.C. Sharp. The Court will grant Plaintiffs' motion for certification and deny Defendant's motions to strike.

## I.    BACKGROUND

### A.    Factual Background

This case involves claims arising from Plaintiffs' purchases of Acura vehicles which contained a Bluetooth pairing device "HandsFreeLink" that allowed for hands-free cell phone calls. Third Amended Complaint ("TAC"), ECF No. 148 ¶ 2. Honda, the manufacturer of the Acura, was an early adopter of the hands-free technology, so many consumers purchased the vehicles precisely for this technology and the technology featured heavily in Honda's advertising campaigns. *Id.* ¶¶ 178-82. In some cases, Plaintiffs purchased their Acura vehicles specifically because they had HFL, and because Acuras had a reputation for reliability. *Id.* ¶ 10. Honda promoted the HFL system as one that embodied the luxury, convenience, and safety of Acuras.

*Id.* ¶ 181.  Even now, the HFL system is one of the "key features" advertised by Honda in its Acura marketing materials.  *Id.* ¶ 182.

According to Plaintiffs, the HFL system contains a defect causing it to regularly malfunction by failing to switch off when not in use.  *Id.* ¶ 3.  Specifically, the HFL unit will "get stuck 'on' even if not in use and even after the car's ignition is turned off."  *Id.*  As a result, Plaintiffs' and putative class members' vehicles suffer parasitic electrical drain, resulting in the need for frequent battery replacements and causing premature failure of other electrical components.  *Id.*  In turn, this can leave owners with vehicles that do not start reliably, failed electrical components that require expensive repairs or replacements, and compromised electrical components that can fail during operation.  *Id.* ¶ 183.  The defect in the HFL system thus creates a safety hazard, as a compromised vehicle battery may fail to start at any time, including if the owner is far from home or experiencing an emergency, or can cause a vehicle to lose power, including the use of headlights, during operation.  *Id.* ¶ 195.  Complaints to the National Highway Transportation Safety Administration detail the existence of the HFL defects and the resulting safety hazards.  *Id.* ¶¶ 198-99.

Plaintiffs allege that Honda was aware of the defect but failed to remedy it.  *Id.* ¶ 4. Beginning in 2005, Honda issued internal Technical Service Bulletins ("TSBs") to its dealers describing the defect but "offering no meaningful solution, warranty protection, or recall."  *Id.* ¶¶ 4, 184.  Over the next ten years, Honda issued four other TSBs, recognizing the HFL defect in additional vehicles, none of which identified a repair for the defect.  *Id.* ¶¶ 186-188, 192.

Each of the named plaintiffs alleges that Honda did not disclose the defect prior to purchase, and Plaintiffs were led to believe that their vehicles were merchantable and safe to operate as designed.  *Id.* ¶¶ 31, 50, 94, 142, 170.  Plaintiffs state that they would not have purchased the vehicle, or would have paid less for it, had Honda disclosed the defect.  *Id.*  As a result, Plaintiffs allege that they have suffered out-of-pocket losses and the diminished value of their vehicles.  *Id.* ¶¶ 29, 48, 92, 140, 168.

**B.**   **Procedural Background**

Plaintiffs filed the initial complaint on August 3, 2016, ECF No. 1, which they amended on

United States District Court
Northern District of California

1   October 17, 2016, ECF No. 29.  The Court has granted in part and denied in part two motions to

2   dismiss, ECF Nos. 91, 139, and Plaintiffs' TAC is the operative pleading.

3        Plaintiffs now seek to certify the following classes:

> **1.**      California Class:  All persons who purchased the following
> Acura vehicles: 2004-2008 TL, 2005-2008 MDX, or 2007-2009 RDX
> in the State of California.  The California Class seeks certification of
> claims for: violations of the California Consumer Legal Remedies Act
> ("CLRA") (Cal. Civ. Code § 1750 *et seq.*), violations of California's
> Unfair Business Practices Act ("UCL") (Cal. Bus. & Prof. Code §
> 17200, *et seq.*), fraud by concealment, breach of implied warranty
> (Cal. Com. Code. § 2314), and violations of the MMWA (as
> applicable to the implied warranty claims) (15 U.S.C. § 2301, *et seq.*).
> Plaintiffs move for the appointment of Lindsay and Jeff Aberin, and
> John Kelly as the class representatives of the California Class.
>
> **2.**      Kansas Class:   All persons who purchased the following
> Acura vehicles: 2004-2008 TL, 2005-2008 MDX, or 2007-2009 RDX
> in the State of Kansas.  The Kansas Class seeks certification of claims
> for: violations of the Kansas Consumer Protection Act ("Kansas
> CPA") (K.S.A. § 50-623, *et seq.*), breach of implied warranty (K.S.A.
> § 84-2- 314), and violations of the MMWA (as applicable to the
> implied warranty claims) (15 U.S.C. § 2301, *et seq.*).  Plaintiffs move
> for the appointment of Don Awtrey as the class representative of the
> Kansas Class.
>
> **3.**      New York Class:  All persons who purchased the following
> Acura vehicles: 2004-2008 TL, 2005-2008 MDX, or 2007-2009 RDX
> in the State of New York.  The New York Class seeks certification of
> claims for: violations of New York General Business Law § 349
> (N.Y. Gen Bus. Law § 349), fraudulent concealment, breach of
> implied warranty (N.Y. U.C.C. Law § 2-315), and violations of the
> MMWA (as applicable to the implied warranty claims) (15 U.S.C. §
> 2301, *et seq.*).  Plaintiffs move for the appointment of Joy Matza as
> the class representative of the New York Class.
>
> **4.**      Washington Class: All persons who purchased the following
> Acura vehicles: 2004-2008 TL, 2005-2008 MDX, or 2007-2009 RDX
> in the State of Washington. The Washington Class seeks certification
> of claims for: violations of the Washington Consumer Protection Act
> ("Washington CPA") (Rev. Code of Wash. § 19.86.010, *et seq.*) for
> unfair and deceptive business practices, and fraudulent concealment.
> Plaintiffs move for the appointment of Charles Burgess as the class
> representative of the Washington Class.

ECF No. 248 at 2-3.  Plaintiffs support their motion with the opinions of several experts who

opine regarding the causes and effects of the alleged defect; the materiality of the alleged defect to

consumers; and the calculation of damages on a classwide basis.  *Id.* at 13, 15, 19, 24-26.  Honda

has filed an opposition to Plaintiffs' motion for class certification, ECF No. 262-6, to which

1  Plaintiffs have replied, ECF No. 274-3.

2      Honda also moves to strike Plaintiffs' expert reports.  ECF Nos. 264, 266, 267, 268.

3  Plaintiffs have opposed each of these motions to strike, ECF Nos. 276, 277, 278, 279, and Honda

4  has replied, ECF Nos. 283, 284, 285, 286.

5  **II.      JURISDICTION**

6      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because the amount in

7  controversy exceeds $5 million and at least one member in the proposed class of over 100

8  members is a citizen of a state different from Honda.

9  **III.     LEGAL STANDARD**

10      Class certification under Rule 23 is a two-step process.  First, a plaintiff must demonstrate

11  that the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) are met:

> One or more members of a class may sue or be sued as representative
> parties on behalf of all members only if: (1) the class is so numerous
> that joinder of all members is impracticable; (2) there are questions of
> law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class;
> and (4) the representative parties will fairly and adequately protect the
> interests of the class.

16  Fed. R. Civ. P. 23(a).  "Class certification is proper only if the trial court has concluded, after a

17  'rigorous analysis,' that Rule 23(a) has been satisfied."  *Wang v. Chinese Daily News, Inc.*, 709

18  F.3d 829, 833 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 546 U.S. 338, 351 (2011)).

19      Second, a plaintiff must also meet one of the requirements of Rule 23(b).  Here, Plaintiffs

20  invoke Rule 23(b)(3), which requires the Court to find "that the questions of law or fact common

21  to class members predominate over any questions affecting only individual members, and that a

22  class action is superior to other available methods for fairly and efficiently adjudicating the

23  controversy."  Fed. R. Civ. P. 23(b)(3).

24      The party seeking class certification bears the burden of demonstrating by a preponderance

25  of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements

26  under Rule 23(b) are met.  *See Dukes*, 564 U.S. at 350-51.  "Rule 23 grants courts no license to

27  engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Conn. Retirement*

28  *Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).  "Merits questions may be considered to the extent

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites

2    for class certification are satisfied." *Id.* at 1195.  Courts "must take the substantive allegations of

3    the complaint as true" but "need not accept conclusory or generic allegations regarding the

4    suitability of the litigation for resolution through class action." *Keilholtz v. Lennox Hearth Prods.*

5    *Inc.*, 268 F.R.D. 330, 335 (N.D. Cal. 2010) (citations omitted).

6    **IV.     MOTIONS TO STRIKE**

7          Honda moves to strike the testimony of four of Plaintiffs' experts pursuant to *Daubert v.*

8    *Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  ECF Nos. 264, 266, 267, 268.

9          "Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does

10   not meet Federal Rule of Evidence 702's reliability standards." *Ellis v. Costco Wholesale Corp.*,

11   657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147-

12   49 (1999)).  To satisfy *Daubert*, scientific evidence must be both reliable and relevant.  509 U.S.

13   at 590-91, 597.  The proponent of an expert's testimony bears the burden of proving admissibility.

14   *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

15         However, "[i]nadmissibility alone is not a proper basis to reject evidence submitted in

16   support of class certification." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir.

17   2018).  Rather than the *Daubert* "gatekeeper" standard, "a lower *Daubert* standard should be

18   employed at this [class certification] stage of the proceedings." *Dukes v. Wal-Mart, Inc.*, 222

19   F.R.D. 189, 191 (N.D. Cal. 2004) (quoting *Thomas & Thomas Rodmakers, Inc. v. Newport*

20   *Adhesives and Composites, Inc.,* 209 F.R.D. 159, 162-63 (C.D. Cal. 2002)).  "[T]he question is

21   whether the expert evidence is sufficiently probative to be useful in evaluating whether class

22   certification requirements have been met." *Id.*  "[A]n inquiry into the evidence's ultimate

23   admissibility should go to the weight that evidence is given at the class certification stage." *Sali*,

24   909 F.3d at 1006.

25         Honda urges the Court to limit the application of *Sali* to its facts, arguing in one of its four

26   replies that *Sali* was "[c]ritically different from the instant challenge," because the defendant there

27   "did not challenge the authenticity of the underlying data or the accuracy of the [witness's]

28   computations." ECF No. 284 at 6.  Nothing in *Sali* suggests that its holding was intended to be so

5

limited.  909 F.3d at 1004 (stating, without qualification, that "[a]lthough we have not squarely addressed the nature of the 'evidentiary proof' a plaintiff must submit in support of class certification, we now hold that such proof need not be admissible evidence").  Nor have other courts applied *Sali* in the limited way which Honda suggests.  *See, e.g., Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 297 (N.D. Cal. 2020) (denying motion to strike expert testimony because *Sali* "explicitly instruct[s] that a *Daubert* analysis alone, while relevant, should not prevent a court from considering expert testimony at the class certification stage"); *Bess v. Ocwen Loan Servicing LLC*, 334 F.R.D. 432, 437, 400 (W.D. Wash. 2020) (finding that an expert's methodology had "little or no persuasive value" but denying motion to exclude pursuant to *Sali*); *Vasquez v. Leprino Foods Co.*, No. 17-cv-00796-AWI-BAM, 2020 WL 1527922, at *8 (E.D. Cal. Mar. 31, 2020) (applying *Sali* to "expert testimony that supports class certification").

Accordingly, the motions to strike are denied.  The Court will consider both parties arguments as to the reliability of the proffered expert testimony to assist in evaluating the weight of the evidence as it relates to class certification.  *See Bally*, 335 F.R.D. at 297.

## V.      MOTION FOR CLASS CERTIFICATION

Plaintiffs move for certification of classes comprised of purchasers of Acura 2004-08 TLs, 2005-08 MDXs, and 2007-09 RDXs in California, Kansas, New York, and Washington.  Honda opposes the motion on four main grounds.  First, Honda challenges Plaintiffs' standing – both the individual Article III standing of named plaintiffs and the standing of named plaintiffs to represent purchasers of different models or makes of Acura vehicles.  Second, Honda argues that common issues do not predominate because Plaintiffs have not proven there exists a unitary defect, because most class members lack an injury, because of individual reliance issues, and because Plaintiffs are unable show that damages can be calculated class-wide.  Third, Honda challenges the typicality/ adequacy of Plaintiff Matza based on what Honda says are "credibility and proof problems," and the typicality of other named plaintiffs based on defenses unique to each including statutes of limitations.  Finally, Honda challenges the manageability of a class action based on the

1    confluence of its other objections and Plaintiffs' lack of a trial plan.[1]

2         **A.    Plaintiffs' Injury and Standing**

3         Honda says that none of the named plaintiffs have standing because each lacks an injury

4    stemming from the alleged defect.  In addition, Honda says that even if named plaintiffs had

5    individual standing, they lack standing to represent owners of vehicles of makes and models other

6    than their own.  The Court disagrees on both points.

7         "In a class action, standing is satisfied if at least one named plaintiff meets the

8    requirements." *Bates v. United Parcel Svc.,* 511 F.3d 974, 985 (9th Cir. 2007).  To establish

9    Article III standing, a plaintiff in federal court must meet three requirements.  First, the plaintiff

10   must have suffered an "injury in fact" – an invasion of a legally protected interest which is

11   (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.

12   Second, there must be a causal connection between the injury and the conduct complained of – the

13   injury has to be fairly traceable to the challenged action of the defendant, and not the result of the

14   independent action of some third party not before the court.  Third, it must be likely, as opposed to

15   merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of*

16   *Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).

17        **1.    Named Plaintiff Injury**

18        Honda argues that none of the named plaintiffs have shown "that their vehicles

19   experienced battery or electrical system failures attributable to elevated DCD[2] draw during the

20   [warranty] period," and that all named plaintiffs lack standing as a result.  ECF No. 262-6 at 25.

21   Plaintiffs respond that Honda misstates the standard and mischaracterizes their theory of liability.

22   They explain that they are not required to show malfunction or damage after the purchase of their

23

24   ───────────────

[1] Plaintiffs argue that the numerosity prong of Rule 23(a) is satisfied because "there are over one
25   hundred thousand class vehicles at issue."  ECF No. 258-4 at 27.  Honda does not challenge this
     argument, ECF No. 262-6 at 9, and the Court finds that the number of putative class members is
26   sufficiently numerous that their joinder would be impracticable. Fed. R. Civ. P. 23(a)(1).

27   [2] Throughout its opposition, Honda repeatedly refers to "DCD" or "dark circuit drain."  ECF No.
     262-6 at 9.  Neither the TAC nor Plaintiffs' motion relies on the concept of "DCD," alleging
28   instead a defect that "creates a constant and substantial parasitic electric drain on the electrical
     system."  TAC ¶ 3.

1   vehicles because their causes of action are rooted in Defendant's fraudulent sale of a defective

2   product.  Therefore, Plaintiffs argue that their injury is simply the amount that they overpaid for a

3   defective vehicle.  ECF 274-3 at 15.[3]  Plaintiffs have the better argument.

4     Plaintiffs' CLRA, UCL and fraud claims are based on the following theory:  Plaintiffs paid

5   for a vehicle with a hands-free phone system but were not told that the system contained a defect

6   causing it to drain the vehicle's battery even after the vehicle had been powered off.  If they had

7   known about this defect, they would not have been willing to pay as much for their vehicles.  *See*

8   TAC ¶ 240 (as to the CLRA claim, Plaintiffs allege that they "were injured and suffered

9   ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct

10  in that Plaintiffs and the other Class members incurred costs related the parasitic drain caused by

11  the Defect, including replacements of electrical components and service costs, and overpaid for

12  their Class Vehicles that have suffered a diminution in value"); *see also id.* ¶ 259 (same for UCL

13  claim); *id.* ¶¶ 280-81 (similar for fraud by concealment).  In short, Plaintiffs allege that their

14  vehicles were worth less money due to the undisclosed defect, whether or not the defect has

15  manifested.

16    Plaintiffs' implied warranty claims rest on similar grounds.  "Because of the Defect in the

17  [HFL] system, the Class Vehicles were not in merchantable condition when sold and are not fit for

18  the ordinary purpose of providing safe and reliable transportation."  *Id.* ¶ 291; *see also id.* ¶ 305

19  (raising claim under the Magnuson-Moss Act for Honda's breach of express and implied

20  warranties "by misrepresenting the standard, quality, or grade of the Class Vehicles and failing to

21  disclose and fraudulently concealing the existence of the Defect in the [HFL] units.").

22    Under each of these claims, the alleged injury is one of overpayment.  Overpayment injury

23

24  _____

[3] "At class certification, a court does not accept at face value a plaintiff's theory of the case; the

25  court must engage in a 'rigorous analysis . . . [into whether] . . . the prerequisites of Rule 23(a)

have been satisfied.'"  *Rodman v. Safeway, Inc.*, No. 11-cv-03003-JST, 2014 WL 988992, at *6

26  (N.D. Cal. Mar. 10, 2014), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) (quoting *Dukes*, 564 U.S. at

351).  However, "by the same token, neither is a [d]efendant entitled to characterize a [p]laintiff's

27  theory of the case and dispute commonality based on its own chosen interpretation of contractual

language."  *Id.*

28

is sufficient to establish Article III standing.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) (concluding that allegations that the plaintiffs would not have purchased Honda's collision mitigation braking system, or would have paid less for it, if its limitations were fully disclosed was sufficient to establish Article III injury in fact).  Contrary to Honda's contention, Plaintiffs need not show that the alleged defect manifested before they can bring a claim.  *See Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 819 (9th Cir. 2019) ("Plaintiff's theory is that the defect was inherent in each of the Class Vehicles at the time of purchase, regardless of when and if the defect manifested."); *see also In re Gen. Motors LLC CP4 Fuel Pump Litig.*, 393 F. Supp. 3d 871, 884 (N.D. Cal. 2019) (rejecting argument that plaintiffs lacked an injury because they did not allege that their vehicles experienced the alleged defect, explaining that "[a]llegations of overpayment based on a defendant's failure to disclose a product's limitations are clearly sufficient to satisfy Article III's injury-in-fact requirement").  Honda's cited authorities are also distinguishable, as they address different theories of liability than those at issue here.  *See In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prod. Liab. Litig.*, 915 F. Supp. 2d 1151, 1154 (C.D. Cal. 2013) ("[Plaintiff's] claims are premised on assertions that the ABS defect has not been cured by Toyota's recall and software update, and that [plaintiff] has suffered ensuing monetary and property damage."); *Barakezyan v. BMW of N. Am., LLC*, No. CV 16-00173 SJO, 2016 WL 2840803, at *4 (C.D. Cal. Apr. 7, 2016) (finding that plaintiff had not alleged an economic injury where he did not allege that the car was worth less because of the brake noise).

The Court finds that the named plaintiffs have alleged an economic injury to establish individual Article III standing.

### 2.    Standing to Represent the Class

Honda's second standing argument is that named plaintiffs cannot "establish economic injury with respect to products that [they] never purchased," specifically, different model Acuras manufactured in different years than those owned by named plaintiffs.  ECF No. 262-6 at 27.  Although "Plaintiffs characterize the HFL components in all vehicles as 'substantially similar,'" Honda maintains that the HFL systems have "significant differences" and were treated by Honda with different countermeasures depending on the model year and issue.  *Id.*  This argument largely

United States District Court
Northern District of California

1   challenges the existence of the common defect alleged by Plaintiffs, a question that can be

2   resolved on a classwide basis.  As discussed *infra*, the Court finds that Plaintiffs have satisfied

3   their burden at this stage to support their allegation of a common defect, which the Court also

4   finds to present a "substantially similar" injury between the claims of named plaintiffs and those

5   of unnamed class members.  *See Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869

6   (N.D. Cal. 2012) ("[A] plaintiff may have standing to assert claims for unnamed class members

7   based on products he or she did not purchase so long as the products and alleged

8   misrepresentations are substantially similar.").

9   **B.      Commonality and Predominance**

10          "Commonality" is a shorthand way of describing Rule 23's requirement that "there [be]

11  questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "[F]or purposes of Rule

12  23(a)(2) [e]ven a single [common] question will do."  *Dukes*, 564 U.S. at 359 (internal citation

13  omitted).  Where questions common to class members present significant issues that can be

14  resolved in a single adjudication, "there is clear justification for handling the dispute on a

15  representative rather than on an individual basis."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

16  623 (1997) (quotation marks and citation omitted).  However, the common contention "must be of

17  such a nature that it is capable of classwide resolution – which means that determination of its

18  truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

19  stroke."  *Dukes*, 564 U.S. at 350.

20          In seeking to certify a Rule 23(b)(3) class, Plaintiffs must show that these common

21  questions "predominate over any questions affecting only individual members."  Fed. R. Civ. P.

22  23(b)(3).  "Considering whether questions of law or fact common to class members predominate

23  begins . . . with the elements of the underlying causes of action."  *Erica P. John Fund, Inc. v.*

24  *Halliburton Co.*, 563 U.S. 804, 809 (2011).  In determining whether common questions

25  predominate, the Court identifies the key substantive issues related to Plaintiffs' claims (both the

26  causes of action and affirmative defenses), and then considers the proof necessary to establish

27  each element of the claim or defense, and how these issues would be tried.  *See* Schwarzer, et al.,

28  Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 10-C ("Schwarzer") § 10:412.  The predominance

1   inquiry requires that Plaintiffs demonstrate that common questions predominate as to each cause

2   of action for which they seek class certification.  *Amchem*, 521 U.S. at 620.

3         In short, "Rule 23(a)(2) asks whether there are issues common to the class," and "Rule

4   23(b)(3) asks whether these common questions predominate."  *Abdullah v. U.S. Sec. Assocs., Inc.*,

5   731 F.3d 952, 957 (9th Cir. 2013) (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d

6   1168, 1172 (9th Cir. 2010)).

7         Plaintiffs argue that their claims "each turn on basic questions that are common to all of

8   the purchasers" – the existence of the alleged design defect in the HFL system, Honda's

9   knowledge of and failure to address the defect, and Honda's failure to notify class members of the

10  defect.  ECF No. 258-4 at 28.  Plaintiffs further argue that these common questions predominate

11  because there are "common factual bases for the claims" which will be demonstrated with

12  common proof of "the uniform HFL defect" and "Honda's concealment of that defect."  *Id.* at 32.

13  Specifically, Plaintiffs explain that each of their consumer protection claims under California,

14  New York, Kansas, and Washington law will rely on common proof of the HFL system defect,

15  Honda's omissions, the materiality of those omissions, and the overpayment injury.  *Id.* at 32-40.

16  They explain that their breach of implied warranty claims under California, New York, and

17  Kansas law, and their Magnuson-Moss Warranty Act claims, will require common proof of the

18  HFL defect which made the product not reasonably fit for its intended purpose.  *Id.* at 40-42.  And

19  they explain that their fraudulent concealment claims under California, New York, Kansas, and

20  Washington law will be based on common proof of Honda's omission of the defect; Honda's

21  knowledge, intent, and duty to disclose due to exclusive knowledge or safety issues; Plaintiffs'

22  reliance on Honda's disclosure; and the harm that Honda's concealment caused to Plaintiffs.  *Id.* at

23  43-44.

24        Honda challenges the predominance of common issues on several grounds.  First, Honda

25  argues that Plaintiffs have failed to establish proof of a common, unitary defect.  ECF No. 262-6 at

26  33.  Second, Honda asserts that the reliance element of Plaintiffs' claims is not susceptible to

27  common proof.  *Id.* at 39.  Third, Honda argues that damages cannot be calculated on a classwide

28

United States District Court
Northern District of California

11

1   basis.  *Id.* at 41.[4]

2   **1.    Common Defect (All Claims)**

3       Honda argues that Plaintiffs cannot show a common defect because the class vehicles and

4   HFL units in them are unique, because Plaintiffs each had different experiences with their HFL

5   units, and because Honda's expert opines that most vehicles did not have elevated DCD.  It

6   contends that this defeats certification because the motion "hinges entirely on the[] assertion that

7   [a] unitary defect exists in all HFL modules in all 2004-2008 Acura TL vehicles, all 2005-2008

8   Acura MDX vehicles, and all 2007-2009 Acura RDX vehicles."  ECF No. 262-6 at 33-34.  The

9   Court finds that Plaintiffs have satisfied their burden at this stage.

10      "[P]roof of the manifestation of a defect is not a prerequisite to class certification."  *Wolin*,

11  617 F.3d at 1173 (citing *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir. 1975)).  Indeed, "[i]n

12  order to satisfy the predominance requirement, the plaintiff need not prove the existence of the

13  defect."  *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 361 (2018) (quoting *Edwards*

14  *v. Ford Motor Co.*, 603 F. App'x 538, 540 (9th Cir. 2015)).  Plaintiffs' theory of the alleged defect

15  "may or may not prevail, but that is a merits question not appropriately addressed at the class

16  certification stage."  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1122 (9th Cir. 2017).  This is

17  because "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not

18  that those questions will be answered, on the merits, in favor of the class."  *Amgen*, 568 U.S. at

19  459 (emphasis in original).  In other words, Plaintiffs' burden at this stage is not to establish that

20  the alleged parasitic drain defect exists, but rather to establish that the existence of the defect is

21  subject to common proof, and that such common questions predominate over individual questions.

22      Plaintiffs have made such a showing.  The theory of Plaintiffs' case is that all class

23  vehicles came with an HFL unit, either first or second generation, that contained a defect which

24  enabled the unit to remain on because of continued rebooting, resulting in "excessive parasitic

25  drain" even when the key is removed from the vehicle.  ECF 258-4 at 12-13.  Whether Plaintiffs

26

27  _____

    [4] As part of its predominance argument, Honda also renews its standing arguments, saying that
28  many members of the putative class lack an injury because their vehicles have not manifested any
    defects.  ECF No. 262-6 at 37-38.  The Court rejects this argument for the reasons discussed
    above.

United States District Court
Northern District of California

are correct that this HFL parasitic drain defect exists is a question common to the class.  *See Amgen*, 568 U.S. at 459 ("The alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class.").  If Plaintiffs fail to make such a showing, they will, collectively as a class, lose.  *Id.* at 459-60 ("As vital, the plaintiff class's inability to prove [the existence of the defect] would not result in individual questions predominating.  Instead, a failure of proof on the issue of [the existence of the defect] would end the case.").

Honda's remaining arguments on this point are without merit.  First, Honda says that there are "material differences in the many models and model years of Acura vehicles" that preclude a finding of a common defect.  ECF No. 262-6 at 34.  Specifically, Honda identifies that class vehicles and their respective HFL units have different types of PCBs/ connectors, different types of hardware, different types of processors, different placements within the vehicle, and different language capabilities.  ECF 262-6 at 15.  It argues that these differences could make the units more or less vulnerable to "beverage spills," "moisture infiltration," or "heat in warm-weather environments," but does not explain how the existence of those vulnerabilities undercuts the Plaintiffs' ability to demonstrate an HFL defect by common proof.  *Id.* at 15-16.  Honda also submits a table identifying design differences between and among the different HFL units.  ECF No. 263-65.  But nowhere does Honda explain how these differences – which include items such as "Phonebook Import," "Single Wire BCAN," and "European Languages" – affect Plaintiffs' ability to show by common proof that the HFL units have a defect.  *See id.*

Second, Honda says that its expert's testing showed that "only a minute number of HFL components in the vast majority of proposed class vehicles required replacement for issues potentially related to elevated DCD."  ECF No. 262-6 at 34.  But once again, the fact that a set of vehicles with HFL units tested negative for elevated DCD does not demonstrate that the question of the HFL defect is not subject to common proof.

Third, Honda argues that Plaintiffs expert reports – specifically the testimony of Dr. David Gilbert and Robert Berriman – should be struck because they fail to satisfy the *Daubert* standard, and thus cannot be used to "prop up" the case.  ECF No. 262-6 at 37; *see also* ECF Nos. 266, 267.

This argument has several shortcomings.  As a threshold matter, Plaintiffs' motion for class certification is not dependent upon the challenged exert reports.  Although Plaintiffs refer to the findings of Gilbert and Berriman in their description of the defect and summary of the consequences of the defect, this is not the only evidence provided to support Plaintiffs' allegation of the defect or to make a showing of a predominance of common issues.  Plaintiffs also cite to Honda's own documentation including Honda's Failure Mode and Effects Analysis documents, HFL specifications, deposition of Honda employee Ross Miller, emails from Honda employee Aaron Smith, and Service Bulletins and Service News Articles issued by Honda related to Acuras/ HFL systems.  ECF No. 258-4 at 12-13, 15-18; *see also* ECF No. 260-6 at 11; ECF No. 258-6 at 8; ECF Nos. 260-1, 258-7, 260-18, 260-19, 260-20.

The Court also is not persuaded on the merits by Honda's challenges to the expert reports. The Court rejects Honda's argument about Berriman's qualifications,[5] ECF No. 266 at 7-8, 10, finding that Berriman's more than 20 years of experience designing electronic systems, ECF No. 260-11 at 3, 8, provide ample qualification.  The Court also rejects the argument that both reports are unreliable because Berriman and Gilbert did not conduct independent tests of Honda's HFL units.  The argument misconstrues the law governing expert opinions, given that "nothing requires that an expert conduct independent testing in every case." *In re Arris Cable Modem*, 327 F.R.D. at 363.  Rather, "Rule 703 allows an expert to rely on information provided by others if the information is the type that experts in this field typically rely upon." *Adams v. United States*, No. CIV 03-0049-E-BLW, 2009 WL 1532282, at *1 (D. Idaho May 29, 2009) (allowing expert testimony concerning growers' projected crop losses based solely on growers' own statements regarding yields).  Berriman and Gilbert relied on Honda's own records and data, as well as HFL supplier documents, employee depositions, and other discovery, to reach their conclusions.  Honda has not shown that that choice was improper.  Honda points to contrary evidence that it contends

---

[5] Honda argues that Berriman "is not qualified to offer an opinion in this case" because he lacks a professional engineer license, has never worked in-house for an automaker or done testing on a hands-free calling component, has not published an article, and because he could not define certain terms that he was asked about during his deposition.  ECF No. 266 at 7-8, 10.  Honda does not provide authority to explain that these qualifications are required.

1    undermines these experts' opinions, *e.g.*, ECF No. 267 at 17, but that also does not compel

2    exclusion of their testimony.  Courts "should screen 'unreliable nonsense opinions, but not

3    exclude opinions merely because they are impeachable.'"  *Terraza v. Safeway Inc.*, No. 16-cv-

4    03994-JST, 2019 WL 1332721, at *2 (N.D. Cal. Mar. 25, 2019) (quoting *City of Pomona v. SQM*

5    *N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014)).  "Shaky but admissible evidence is to be

6    attacked by cross examination, contrary evidence, and attention to the burden of proof, not

7    exclusion."  *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

8            In sum, the reports of Plaintiffs' experts are suitably reliable to be considered as some

9    evidence supporting Plaintiffs' allegations of a common defect.

10                   **2.      Individual Reliance Questions (Fraudulent Concealment Claims)**

11           Plaintiffs argue that common evidence can also be used to show that Honda's conduct – a

12   "uniform material omission" – was likely to deceive purchasers, presenting predominantly

13   common issues.  ECF No. 258-4 at 34.  Plaintiffs contend that this satisfies the reliance

14   requirement in their California UCL and CLRA claims, their Kansas CPA claim, and their

15   Washington CPA claim.  *Id.* at 34, 38-39.[6]

16           Honda argues that Plaintiffs have not shown that the reliance element of these claims can

17   be proven on a classwide basis.  ECF No. 262-6 at 39.  First, Honda suggests that because the

18   motion for certification "involves model years 2004-2008, a decision allegedly made [by Honda]

19   in 2008 cannot support an omissions theory for virtually all the new car purchasers" in the putative

20   class.  *Id.* at 40.  But the 2008 decision by Honda to focus its efforts to resolve the alleged defect

21   on certain triggers is not Plaintiffs' sole allegation of Honda's knowledge and material omission.

22   Plaintiffs also point to (1) a 2005 Service Bulletin addressing the 2004 TL Acura, ECF No. 258-4

23   at 17; ECF No. 260-18, (2) a series of emails from 2008 discussing Honda's testing of HFL

24   battery drain issues, ECF No. 258-4 at 15-16; ECF No. 258-7, and (3) a 2007 Services News

25   Article issued by Honda instructing how a dealer can test for the HFL defect in Acuras including

26

27   ───────────────
     [6] Plaintiffs explain that their claim under New York General Business Law § 349 does not require
     proof of Plaintiffs' reliance or Defendant's intent to mislead.  ECF No. 258-4 at 36-37 (citing
28   *Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26
     (1995)).

1  2004-2007 TLSs, 2005-2008 MDXs, and 2007 RDXs, ECF No. 258-4 at 17; ECF No. 260-19.

2       Honda also argues that because Plaintiffs' material omission allegation must be based on a

3  bona fide safety issue, they "must come forth with evidence" to prove that safety issue at the class

4  certification stage. ECF No. 262-6 at 40. Honda cites no authority for this requirement, and the

5  Court declines Honda's invitation to treat this as a motion for summary judgment.[7]

6                    **3.       Classwide Damages Calculation (All Claims)**

7       Honda's final predominance argument is that Plaintiffs have not offered competent

8  evidence to show a classwide damages method that can be used to award relief consistent with

9  Plaintiffs' theory of liability. ECF No. 262-6 at 41. This argument is rooted in Honda's

10 contention that the reports of Plaintiffs' experts, Drs. Agrawal and Sharp, are unreliable. *Id.*; *see*

11 *also* ECF Nos. 264, 268.

12      Rule 23(b)(3)'s predominance requirement applies to questions of damages. "Plaintiffs

13 must be able to show that their damages stemmed from the defendant's actions that created the

14 legal liability." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987-88 (9th Cir. 2015)

15 (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)). To satisfy this

16 requirement, Plaintiffs must show that "damages are capable of measurement on a classwide

17 basis." *Comcast v. Behrend,* 569 U.S. 27, 34 (2013). However, "the presence of individualized

18 damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva*, 716 F.3d at 514.

19 At the class certification stage, Plaintiffs must show that damages can "feasibly and efficiently be

20 calculated once the common liability questions are adjudicated." *Id.* The Court concludes that

21 Plaintiffs have met this burden.

22      To prove damages on a classwide basis, Plaintiffs propose a calculation that uses an

23 average overcharge per vehicle multiplied by the number of subject vehicles. ECF No. 258-4 at

24 26. To demonstrate that classwide damages can be apportioned between new and subsequent

25

26 [7] Honda also suggests that, under Kansas law, Plaintiffs cannot rely on a presumption of reliance.
   ECF No. 262-6 at 41. However, Honda's cited authority, *Benedict v. Altria Grp., Inc.*, 241 F.R.D.
27 668, 679 (D. Kan 2007), speaks only to proof of reliance on an affirmative misrepresentation. *See*
   *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 615 (D. Kan. 2014) ("The Court
28 believes that the holding in *Benedict* is limited to misrepresentation cases and that suits alleging
   omission of a material fact present questions suited to class actions.").

United States District Court
Northern District of California

1   purchasers of the same vehicle, Plaintiffs propose using a "sum-of-years'-digits" method,

2   calculating "accelerated depreciation" over the economic lifespan of the vehicle.  *Id.*  Plaintiffs'

3   expert, Dr. D.C. Sharp, demonstrates the use of this model with the following figures: (i) an

4   average overcharge per vehicle of $2,100.70, established based on a consumer survey conducted

5   by Dr. Agrawal; (ii) an estimated 557,365 subject vehicles, established based on the number of

6   class vehicles sold as tracked in *Ward's Automotive Yearbook*; and (iii) a 12-year vehicle lifespan

7   basepoint, established based on data from the Federal Bureau of Transportation Statistics.  *Id.*;

8   ECF No. 260-48 ¶¶ 17-20, 26-28.

9        The Court finds that Plaintiffs' proposed model "establish[es] that damages are susceptible

10   of measurement across the entire class for purposes of Rule 23(b)(3)," and is "attributable to

11   [Plaintiffs'] theory" of liability.  *See Comcast*, 569 U.S. at 35.  Plaintiffs allege an overpayment

12   theory – that they paid more for their vehicles than they otherwise would have if they had known

13   about the alleged HFL defect.  TAC ¶¶ 240, 259, 280-81, 291, 305.  Accordingly, Plaintiffs'

14   overcharge model "is based on how much less consumers would have paid for their vehicles had

15   Honda disclosed the defect."  ECF No. 258-4 at 44.  This proposed model is consistent with other

16   cases alleging an overpayment injury based on deception and fraudulent concealment of a product

17   defect by a defendant.  *See, e.g., Banh v. Am. Honda Motor Co., Inc.*, No. 2:19-cv-05984-RGK-

18   AS, 2020 WL 4390371, at *19 (C.D. Cal. July 28, 2020) (approving a model proposing that

19   "damages can be calculated based on the difference in market value between the Vehicle as

20   represented (with a perfectly functioning infotainment system) and the Vehicles that Plaintiffs

21   purchased (with a defective infotainment system)").

22        The Court turns to Honda's argument that damages cannot be calculated on a classwide

23   basis.  As noted above, its sole contention is that "Plaintiffs rely on the Reports of Nidhi Agrawal

24   and D.C. Sharp," and that "neither offers competent evidence."  ECF No. 262-6 at 41.  Honda

25   argues that "[Agrawal's] opinions are entirely based on a flawed survey that provided made-up

26   dollar values for HFL components" and that "Dr. Sharp's analysis is based entirely on Dr.

27   Agrawal's faulty survey."  *Id.*  Therefore, the Court examines Honda's challenges and Plaintiffs'

28   responses for each expert report.

United States District Court
Northern District of California

### a.       Expert Report of Dr. Nidhi Agrawal

In its motion to strike, Honda challenges the report of Dr. Nidhi Agrawal.  ECF No. 264. Agrawal is a professor of marketing and international business at the University of Washington with nearly 20 years of experience in consumer decision-making research.  ECF No. 260-47 ¶¶ 2, 5.  Agrawal was retained by Plaintiffs to execute a survey and analyze (1) the extent to which consumers would find a feature similar to the HFL system material in purchasing a vehicle, and (2) the extent to which consumers would find knowledge about a defect like the one alleged by Plaintiffs to be important in purchasing a vehicle.  Agrawal was also asked to determine the amount by which consumers would devalue a vehicle because of the alleged defect.  *Id.*  ¶ 12.

Based on an analysis of data from a 148-person consumer survey, Agrawal concludes that "the presence of the HandsFreeLink™ system," and "the knowledge of the defect in that system" would have been important considerations for consumers in their vehicle purchases.  *Id.* ¶ 16.  She reports that "[t]he survey also reflected that, on average, consumers would have paid $2,100.70 less for the car after knowing about the defect in the HandsFreeLink™ system."  *Id.* ¶ 15. Agrawal's survey is relied upon by Sharp, who uses this $2,100.70 figure in his estimation of classwide damages.  *See* ECF No. 260-48 ¶¶ 14-15, 21, 26-27, 30-32, 37.

Honda makes a number challenges to the reliability of Agrawal's report, best summarized in its reply brief on the motion to strike:

> Dr. Agrawal chooses an unrepresentative survey population, asks leading and misleading questions, asks survey respondents to assign a dollar value to technology introduced as many as fifteen years ago, and purports to compute the average of the (highest) subjective "loss of value" that the survey respondents provided for a generic luxury vehicle with a fabricated defect.

ECF No. 283 at 6.  In short, Defendant challenges the sample population, the survey design, the substance of the survey, and Agrawal's computation and reporting of the results.  Honda argues that these flaws result in "highly misleading and unreliable results."  *Id.*  Honda relies heavily on its own expert opinion, a report by Dr. Bruce Isaacson.  ECF No. 263-46.  In response to Isaacson's critique, Plaintiffs submit Agrawal's reply report.  ECF No. 281-17.

The Court concludes that Honda's objections address the weight to be given to the survey results, not their admissibility.  *See City of Pomona*, 750 F.3d at 1044 ("Challenges that go to the

18

United States District Court
Northern District of California

1    weight of the evidence are within the province of a fact finder, not a trial court judge.").  None of

2    Defendant's arguments show that Agrawal's report lacks a "reliable foundation" or "relevan[ce] to

3    the task at hand."  *See Daubert*, 509 U.S. at 597.  Honda will be entitled to impeach the credibility

4    of the report and attack its findings, but it is not inadmissible.

5    　　　　First, the Court finds that Agrawal's survey population was sufficiently representative.  To

6    evaluate the adequacy of a survey population, courts look to whether the expert "provides a

7    reasoned explanation" for the population demographics identified.  *See Morales v. Kraft Foods*

8    *Grp., Inc.*, No. LA CV14-04387 JAK, 2017 WL 2598556, at *12 (C.D. Cal. June 9, 2017).  Honda

9    argues that the population in Agrawal's study is inadequate due to the age and socioeconomic

10   status of the population.  ECF No. 264 at 12-13.  It also argues that the population is not

11   representative of the class because the survey included luxury vehicle *owners* rather than just

12   *buyers*, and because it excluded used vehicle purchasers.  *Id.* at 11-13.  However, Agrawal has

13   provided a "reasoned explanation" for the population choices: her task was to demonstrate the

14   materiality of the defect to the reasonable consumer, ECF No. 276 at 15, so she intentionally chose

15   participant characteristics to meet that goal.  *See id.* at 27 ("[A]ddressing whether Plaintiffs

16   purchased a new or used Acura is not central to the issue of determining materiality of the defect

17   at issue here, especially in light of the reasonable consumer standard.").  In addition, she

18   specifically designed the survey so as not to include "recall tasks" – a question asking participants

19   to respond based on a memory – making demographic factors like age irrelevant.  *Id.* at 19; ECF

20   No. 281-17 ¶ 11.  While one might quarrel with this decision on cross-examination, it does not

21   make the survey inadmissible.

22   　　　　Second, the Court rejects Honda's argument that methodological or survey design

23   problems make the survey "fatally flawed."  Honda's focus on matters such as the verb tense in

24   Agarwal's survey questions or a failure to rotate question order are, again, matters for cross-

25   examination, particularly given that Agarwal supports her decisions with reference to industry

26   methodology.  *See* ECF No. 281-17 ¶¶ 32, 37-38.  As a rule, "the framing of questions for

27   purposes of surveys is generally an issue of weight, not admissibility."  *Apple, Inc. v. Samsung*

28   *Elecs. Co.*, No. 12-cv-00630-LHK, 2014 WL 794328, at *18 (N.D. Cal. Feb. 25, 2014).  To some

United States District Court
Northern District of California

extent, it seems that Honda's real dispute lies with the hypothetical being addressed by the survey – that there was an HFL defect – rather than with the survey itself.  For example, Honda argues that the survey questions "introduce bias and are misleading because . . . they assert that every respondent will experience a serious safety concern."  ECF No. 264 at 20.  But this is a quibble with the assumption in Agarwal's survey questions that Acura vehicles contained a safety-related defect.  One cannot address the subject of damages without assuming the existence of that defect.

Third, the Court does not find there to be disqualifying substantive flaws with the survey.  Honda points to issues with the representativeness of the survey questions, and specifically that they "are not based on fact," but rather "assume[] the alleged (non-existent) 'defect' in the 'hands-free cell phone feature' was systemic, not fixable and that car owners would bear the cost of system and battery replacement."  ECF No. 264 at 10.  However, as Plaintiffs point out, "Dr. Agrawal was not retained to opine on automotive components," but rather to use "the allegations as articulated in the TAC to develop a consumer behavior survey, for which she is indisputably an expert."  ECF No. 276 at 9 n.2.  That Agarwal's survey tracked these allegations is not a reason to exclude her report.

Honda also argues that the survey fails to replicate real-world purchasing considerations, such as negotiation against the sticker price and the inclusion of vehicle warranties, and supply-side factors to account for a willingness to sell.  ECF No. 264 at 15-16, 23-24.  Honda frames the survey as a "conjoint analysis" and says that "Dr. Agrawal's inclusion of only one vehicle attribute in her survey 'fails to mirror real-world considerations and skews respondent preferences.'"  *Id.* at 15-16 (quoting *MacDougall v. Am. Honda Motor Co.*, No. SACV 17-1079 JGB, 2020 WL 5583534, at *7 (C.D. Cal. Sept. 11, 2020)).  Once again, Agrawal has explained how she addressed consumer purchasing tactics, such as price negotiation.  ECF No. 281-17 ¶ 22.  Her survey also considered supply-side features, including the average cost of a vehicle like subject vehicles with the HFL unit, the average cost of an HFL system replacement, and the average cost of a battery replacement.  ECF No. 260-47 at 39.  Moreover, her study is not and does not purport to be a conjoint analysis.

Fourth, the Court does not find that Agrawal misreported the survey results.  Honda bases

this argument on the fact that, in response to the question of how much less they would have paid for a vehicle with the alleged defect, respondents were given the option to use either (or both) a sliding scale and a free text box.  ECF No. 264 at 22.  Honda also calls some of the responses "irrational."  *Id.* at 21.  The Court concludes that Agrawal has adequately explained her use of both scaled and open-ended response tools.  ECF No. 281-17 ¶¶ 35-36, 42-43.  While some of Honda's criticism have some force, they go to the weight of the report and not its admissibility.

In sum, Honda is entitled to challenge aspects of the report at trial, but it is not inadmissible.

### b.      Expert Report of Dr. D.C. Sharp

Honda also moves to strike the report of Dr. D.C. Sharp.  ECF No. 268.  Sharp is the Managing Director of Econ One Research, Inc., where he specializes in economics and statistics including "the analysis of economic, financial, and other business issues that arise in litigation." ECF No. 260-48 at 5, 23.  He is a former Associate Professor of Economics and Business Advisory Council Research Professor at the University of Southern Mississippi.  *Id.*  He was retained by Plaintiffs to provide an estimate of classwide damages and to determine a method for apportioning the damages relating to vehicles with both new and used purchasers.  *See id.* ¶ 5.

Sharp's report relies on Agrawal's survey finding that consumers would have paid an average of $2,100.70 less for their vehicle had they know about the alleged defect.  *Id.* at ¶¶ 4, 12. He estimates the number of subject vehicles sold nationally and within state classes based on publicly available data, namely the *Ward's Automotive Yearbook* for the relevant time period.  *Id.* ¶¶ 14, 17-19.  With these figures, Sharp calculates that the classwide damages nationally amount to an estimated $1,170,856,656, and that classwide damages for the alternate state classes total an estimated $248,037,569.  *Id.* ¶ 14.  Using a standard depreciation method, he concludes that the average $2,100.70 per vehicle can be allocated across multiple owners of the same vehicle, and he uses this method to estimate damages for the named plaintiffs in this case.  *Id.* ¶ 15.

Honda raises only two relevant challenges to Sharp's testimony.  First, Honda argues that Sharp's conclusions rest on unreliable data.  ECF No. 268 at 7.  Second, Honda challenges Sharp's method for apportioning damages, and contends that the assumption of uniform depreciation

United States District Court
Northern District of California

1    across all relevant Acura models is in error and that it is not appropriate to tie HFL depreciation to

2    the depreciation rate of the entire vehicle.  *Id.* at 9.

3          The main fact in Sharp's report that is challenged by Honda is the $2,100.70 devaluation

4    figure determined by Agrawal's study.  For the same reasons the Court has overruled Honda's

5    objections to Agarwal's report, its objection to Sharp's use of the report is also overruled.  *See*

6    *also Nguyen*, 932 F.3d at 818 ("California law 'requires only that some reasonable basis of

7    computation of damages be used, and the damages may be computed even if the result reached is

8    an approximation.'" (citation omitted)).

9          As to Sharp's allocation model, Honda contends that the various Acura models at issue

10   have "substantially different market-based depreciation rates"; challenges the use of a 12-year

11   average lifespan; and argues that Sharp's model addresses the depreciation of the HFL unit itself

12   rather than the entire vehicle.  ECF No. 268 at 9-10.  For these reasons, Honda argues that Sharp

13   has not shown "that he could ever determine the appropriate 'inputs' for a valid apportionment

14   model."  ECF No. 286 at 10.  Finally, Honda dismisses Sharp's sum-of-years methodology as

15   "grade school math."  ECF No. 268 at 12.

16         Plaintiffs respond first that Sharp's model uses 12 years as an average lifespan for the HFL

17   system based on the average age of vehicles in operation according to the Bureau of

18   Transportation Statistics of the United States Department of Commerce, reasoning that the HFL

19   system will not be in use if the vehicle is not in use.  ECF No. 279 at 12-13.  Plaintiffs argue that

20   the 12-year vehicle lifespan basepoint is appropriate because California, Kansas, New York, and

21   Washington law "require[] only that some reasonable basis of computation of damages be used,

22   and the damages may be computed even if the result reached is an approximation."  *Id.* at 13

23   (quoting *Nguyen*, 932 F.3d at 818).  Plaintiffs also cite to authority in which courts recognized the

24   use of sum-of-years methodology to calculate depreciation, albeit outside of the automobile

25   context.  *See id.* 13-14.

26         The Court concludes that Sharp's testimony is admissible and that his proposed sum-of-

27   years methodology provides a method by which the damages allegedly suffered across a group of

28   vehicles can be allocated among the various purchasers of those vehicles.  The sum-of-years

United States District Court
Northern District of California

approach has been recognized as a means to calculate the depreciating value of assets.  *See, e.g.,*

*Telecom\*USA, Inc. v. United States*, 192 F.3d 1068, 1070 (D.C. Cir. 1999) (acknowledging sum

of the years-digits method of depreciation for income tax refund calculations); *Cmty. Care Found.*

*v. Thompson*, 412 F. Supp. 2d 18, 20 (D.D.C. 2006) (same for Medicare provider depreciation

costs pursuant to 42 C.F.R. § 413.134.).

### c.   Plaintiffs' Damages Model

In sum, the Court overrules Honda's objections to the admissibility of Sharp's report.  The

Court concludes that Plaintiffs have presented a model that identifies the damages stemming from

Honda's alleged wrongdoing and is "susceptible of measurement across the entire class."  *See*

*Comcast*, 569 U.S. at 34-38.

### C.   Typicality and Adequacy

The typicality and adequacy requirements serve to determine whether "the named

plaintiff's claim and the class claims are so interrelated that the interests of the class members will

be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

158 n.13 (1982).  Typicality exists if "the claims or defenses of the representative parties are

typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The test of typicality is

whether other members have the same or similar injury, whether the action is based on conduct

which is not unique to the named plaintiffs, and whether other class members have been injured by

the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)

(citation and internal quotation marks omitted).  Likewise, "[t]o determine whether named

plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named

plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the

named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Ellis*

*v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*,

150 F.3d 1011 (9th Cir. 1998))

Plaintiffs assert that the claims of named plaintiffs are typical of those in the class, as each

owned an Acura with the HFL system that contained the same alleged defect as that asserted on

behalf of the class.  ECF No. 258-4 at 28-30.  They also argue that named plaintiffs are adequate

representatives who have vigorously pursued claims on behalf of the class and who have no

conflicts with other purchasers they seek to represent. *Id.* at 30-31. Honda challenges Plaintiff

Matza's typicality and adequacy on the grounds that (1) she sold her Acura vehicle at a time when

she intended to join this lawsuit and (2) she misrepresented the circumstances of the sale. It

challenges the typicality of the remaining named plaintiffs based on the specific facts of their

ownership and use of their Acura vehicles. ECF No. 262-6 at 27, 29.

### 1.    Typicality of Plaintiff Matza

Honda says that Plaintiff Matza "has credibility and proof problems that render her an

inadequate representative." ECF No. 262-6 at 28. They base this allegation on the facts that

Matza joined the lawsuit one day after she sold her car; that she did not disclose in discovery that

her husband had attempted to test her vehicle for elevated DCD during the time they owned the

car; that her husband – not she – actually sold the car; and that she "admitted she knew about (and

intended to join) the lawsuit before she disposed of her car through a 'class action newsletter type

thing' that came to her inbox from Hagens Berman, counsel of record in this case." *Id.*; *see also

id.* at 11-14, 27-29.

When Honda previously moved for terminating sanctions against Matza based on the

circumstances of the sale of her car, the Court denied the motion, finding that "[Honda] ha[d] not

shown that litigation was probable when . . . Matza sold [her] car[]." ECF No. 130 at 4. Nothing

in Honda's presentation changes that finding, and Honda's assertion that Matza "admitted she

knew about (and intended to join) the lawsuit" before her husband sold the car is not supported by

the deposition excerpts Honda has submitted,[8] nor is there evidence that Matza "withheld

---

[8] Matza testified as follows:

> Q. So you had communications with Hagens Berman which lead
> you to Seeger Weiss?
> A. Yes.
> Q. Do you recall approximately when that was in point in time?
> A. No.
> Q. Summer?
> A. No, I don't.
> Q. Spring?
> A. I don't recall.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    important evidence in written discovery," as Honda alleges.  ECF No. 262-6 at 28; *see* ECF No.

2    263-15 at 12 (discussing a "class action newsletter type thing," without any reference to when it

3    was received or considered).

4         "[C]lass certification is inappropriate where a putative class representative is subject to

5    unique defenses which threaten to become the focus of the litigation."  *Hanon*, 976 F.2d at 508

6    (citation and quotation omitted).  This includes allegations regarding a named plaintiff's

7    credibility.  *See Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C 01-21151 JW PVT,

8    2008 WL 2038047, at *4 (N.D. Cal. May 12, 2008).  However, "[t]he mere fact that a putative

9    class representative, whose claims arise from the same course of events and are based upon the

10   same legal theory as the other members of the proposed class, is subject to a unique defense does

11   not render her atypical for purposes of class action certification unless that defense threatens to

12   become the focus of litigation thereby prejudicing the absent class members."  *Lewis v. First Am.*

13   *Title Ins. Co.*, 265 F.R.D. 536, 557 (D. Idaho 2010) (quoting *Swack v. Credit Suisse First Bos.*,

14   230 F.R.D. 250 (D. Mass. 2005)).  Honda's complaints regarding the sale of Matza's car and her

15   other alleged conduct do not rise to this level.  *Cf. Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D.

16   241, 257 (N.D. Cal. 2012) (finding risk of inadequate representation where there were "credible

17   accusations as to [plaintiff's] unauthorized copying of company records and his attempts to

18   conceal his wrongdoing").  Thus, the Court finds that Matza is an adequate class representative.[9]

19   _____

20        Q.  You have no idea?
          A.  No.
21        Q.  You don't know if you still have the car at this time?
          A.  No, I don't think I still had the car at this time.  But I don't
22        know.
          Q.  Okay.
23        A.  I don't remember.
          Q.  So you have no recollection as to when you first heard about this
24        pending proposed class action lawsuit?
          A.  Yes.
25        Q.  Okay. You may have had the car, you may not have?
          A.  Yes.
26

27   ECF No. 263-15 at 12-13 (80:11-81:10).  There is no construction of this testimony that is
     consistent with the gloss Honda puts on it.

28   [9] The Court also rejects Honda's argument that because Matza sold her vehicle before joining the

                                          25

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2.     Typicality of Other Named Plaintiffs

With regard to the remaining named plaintiffs, Honda asserts that "defenses unique to these individuals are certain to become 'the focus of the litigation.'"  ECF No. 262-6 at 29 (quoting *Hanon*, 976 F.2d at 508).   In support of this contention, Honda enumerates a litany of factual differences among the named plaintiffs – the number of miles on their vehicles, the persons who rode in each vehicle, the potential explanations for needed battery replacements or other repairs, the age when the vehicles were purchased, whether the plaintiff had disconnected or removed the HFL unit, the circumstances of the sale of the vehicle, whether the vehicle had been in an accident, and whether the plaintiff became unhappy when the HFL unit stopped functioning. ECF No. 262-6 at 29-31.  None of these facts, however, necessarily prevent Plaintiffs from showing that HFL units in class vehicles contained an undisclosed common design defect that caused the unit to "'reboot' endlessly" after the vehicle is turned off.  *See* ECF No. 258-4 at 29. "Typicality can be satisfied despite different factual circumstances surrounding the manifestation of [an alleged] defect."  *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 288-89 (N.D. Cal. 2017) (citing *Wolin*, 617 F.3d at 1175); *see also Philips v. Ford Motor Co.*, No. 14-cv-02989-LHK, 2016 WL 7428810, at *10 (N.D. Cal. Dec. 22, 2016) ("Although Ford has pointed to some differences between Fusion and Focus vehicles, such as the placement of the relays within the EPAS systems and the size of the power steering motor, these differences have only minor relevance to Plaintiffs' claims and are unlikely to be a significant focus of litigation.").

Honda also contends that statute of limitations issues defeat typicality.  This argument is unavailing.

First, Honda cites no authority for its assertion that Plaintiffs must now "prove that they acted with reasonable diligence" before the Court can certify the class.  *See* ECF No. 262-6 at 31. The Court previously held, in response to Honda's second motion to dismiss, that Plaintiffs have adequately pleaded delayed discovery.  ECF No. 139 at 8-9.  Second, for the reasons above, the

lawsuit, "she can never prove that her vehicle exhibited elevated DCD due to the HFL components in her car."  ECF No. 263 at 28.  As discussed above, Plaintiffs allege a common defect in class vehicles such that it is unnecessary to examine each and every vehicle.  The issue – to be determined by the factfinder at trial – is whether Plaintiffs can prove the alleged common defect.

Court rejects Honda's argument that "there was no 'defect' to conceal," and therefore Plaintiffs have yet to "discover" a defect that was fraudulently concealed. ECF No. 262-6 at 31-32. The parties can offer their competing evidence on that point at trial. Lastly, the Court rejects Honda's argument that Plaintiffs have "put[] forth *no evidence* to support a fraudulent concealment theory." ECF No. 262-6 at 32 (emphasis in original). Courts generally find that statute of limitations issues prevent a finding of typicality "where only the class representative is *uniquely* subjected to a statute of limitations defense." *Corcoran v. CVS Health*, No. 15-cv-03504-YGR, 2019 WL 6250972, at *5 (N.D. Cal. Nov. 22, 2019) (collecting cases) (emphasis added); *see also Nguyen v. Nissan N. Am.*, No. 16-cv-05591-LHK, 2020 WL 5517261, at *11 (N.D. Cal. Sept. 13, 2020) ("[T]he Court finds Plaintiff is 'subject to unique defenses which threaten to become the focus of the litigation.'" (citation omitted)). That is not the situation here, given that Plaintiffs allege that Honda concealed the existence of the alleged HFL defect from the class.

The Court finds the named plaintiffs are typical and will act as adequate representatives of the proposed classes.

### 3.   Adequacy of Class Counsel

"An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). Plaintiffs request that the Court appoint Christopher A. Seeger of Seeger Weiss LLP and James E. Cecchi of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. ("Carella Byrne") as co-lead class counsel. ECF No. 248-1 at 30-31.

"The judge must ensure that the lawyer seeking appointment as class counsel will fairly and adequately represent the interests of the class." Manual for Complex Litig., § 21.27 (4th ed. 2004). Federal Rule of Civil Procedure 23(g)(1)(A) requires that courts consider the following factors in appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

Honda does not challenge the adequacy of proposed class counsel, and the Court

United States District Court
Northern District of California

1  previously found that these firms would "fairly and adequately represent the interests of the class"

2  when it appointed them as interim co-lead class counsel.  ECF No. 108 at 2-3 (quoting Fed. R.

3  Civ. P. 23(g)(1)(B)).  The litigation of this matter since entry of that order supports the Court's

4  earlier finding, and the Court now again finds that Seeger Weiss and Carella Byrne will fairly and

5  adequately represent the class.

6          **D.     Manageability**

7          Honda concludes that, collectively, the concerns it has raised present manageability and

8  superiority problems that the Court cannot adequately address without a proper trial plan.  ECF

9  No. 262-6 at 42.  Plaintiffs respond that trial will be "simple," involving documents from and

10  testimony by Honda employees, named plaintiffs, and experts.  ECF No. 275 at 28.  "Rule 23,

11  however, does not require a plaintiff to offer a trial plan to certify a class, and the Ninth Circuit

12  has explicitly declined to 'graft[] a requirement for a trial plan onto [Rule 23].'"  *Nucci v. Rite Aid*

13  *Corp.*, No. 19-cv-01434-LHK, 2020 WL 3187335, at *16 (N.D. Cal. June 14, 2020) (quoting

14  *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 n.4 (9th Cir. 2005)); *see also Yeoman v. Ikea*

15  *U.S. W., Inc.*, No. 11cv701 WQH (BGS), 2013 WL 12069024, at *18 (S.D. Cal. Feb. 27, 2013)

16  ("[T]he Court of Appeals for the Ninth Circuit and several district courts within the Ninth Circuit

17  have consistently rejected the need for trial plans in class actions, except where, unlike in this

18  case, significant choice of law questions must be resolved as to individual class members."

19  (collecting cases)).  This is not a case where the Court will be required to apply the law of forty-

20  eight states.  *Cf. Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).  A trial

21  plan is not necessary at this stage to establish the manageability of a class action trial in this case.

22          In conclusion, having found that adjudication of the issues presented can fairly and

23  efficiently be accomplished by a class action, the Court concludes that Plaintiffs have met their

24  burden for certification under Rule 23.

25                          **CONCLUSION**

26          For the foregoing reasons, the Court DENIES Honda's motions to strike and GRANTS

27  Plaintiffs' motion for class certification.  Plaintiffs have satisfied the requirements of Rule 23(a)

28  and Rule 23(b)(3), and the Court CERTIFIES the California, Kansas, New York, and Washington

United States District Court
Northern District of California

28

1   Rule 23(b)(3) classes.  The Court APPOINTS Christopher A. Seeger of Seeger Weiss LLP and

2   James E. Cecchi of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. as Class Counsel for

3   the certified classes.

4        The Court sets a further case management conference for April 28, 2021 at 9:30 a.m.  An

5   updated joint case management statement is due April 21, 2021.

6        **IT IS SO ORDERED.**

7   Dated:  March 23, 2021



                                  JON S. TIGAR
                            United States District Judge

United States District Court
Northern District of California

29