Christopher A. Seeger (*pro hac vice*)
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone:  973) 639-9100
Facsimile: (973) 679-8656
Email: cseeger@seegerweiss.com

James E. Cecchi (*pro hac vice*)
CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
Email: jcecchi@carellabyrne.com

*Class Counsel and Proposed Counsel for the Settlement Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

|  |  |
|---|---|
| *Aberin et al. v. American Honda Motor Co., Inc.* | Case No. 4:16-cv-04384-JST<br><br>**PLAINTIFFS' UNOPPOSED MOTION PRELIMINARILY APPROVING SETTLEMENT AND CERTIFYING SETTLEMENT CLASS, AND APPROVING NOTICE TO THE CLASS AND SCHEDULING FINAL APPROVAL HEARING**<br><br>Judge: Honorable Jon S. Tigar |

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................v.

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

    I.     INTRODUCTION .........................................................................................................1

    II.    RELEVANT BACKGROUND ......................................................................................1

    III.   THE PROPOSED SETTLEMENT- PROVISIONS.........................................................5

      A.     Class Definition .................................................................................................5

      B.     Released Claims ................................................................................................5

      C.     Class Relief .......................................................................................................5

      D.    Settlement Administration ................................................................................7

      E.     The Notice Plan .................................................................................................8

      F.     Opportunity to Opt Out or Object .....................................................................9

      G.    The Court Retains Jurisdiction ..........................................................................9

    IV.   ARGUMENT ................................................................................................................9

      1.     The Standard for Preliminary Settlement Approval ...........................................9

      2.     The Settlement and Notice Plan Warrant Preliminary Approval.......................14

        a.    Strength of Plaintiffs' Case; Risk of Maintaining Class

            Action Status Throughout the Trial ................................................14

        b.    Amount Offered in Settlement.................................................................16

        c.    Extent of Discovery Completed and Stage of Proceedings ...............................16

        d.    Experience and Views of Counsel ............................................................17

        e.    Presence of a Governmental Participant .................................................18

        f.    Range of Recovery.................................................................................18

        g.    Preferential Treatment ............................................................................19

        h.    Attorneys' Fees, Service Awards, and Lack of Collusion ................................20

        i.    The Notice Plan Should Be Preliminarily Approved........................................21

    V.    CONCLUSION.............................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Alberto v. GMRI, Inc.*,
   252 F.R.D. 652 (E.D. Cal. 2008).............................................................. 10

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 246 (2015). ........................................................................ 16

*Briseñ v. Hendersen*,
   998 F.3d (9th Cir..2021)........................................................................ 13

*Ching v. Siemens Indus., Inc.*,
   2014 WL 2926210 (N.D. Cal. June 27, 2014) ...................................... 18

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................. 16

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566, 575 (9th Cir. 2004) .......................................... 12, 14, 22

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992)................................................................. 9

*Cotter v. Lyft, Inc.*,
   176 F. Supp. 3d 930 (N.D. Cal. 2016) ................................................. 19

*Eddings v. DS Servs. of Am., Inc.*,
   2016 WL 3390477 (N.D. Cal. May 20, 2016) ..................................... 19

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .............................................................................. 22

*Ferrington v. McAfee, Inc.*,
   2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) ................................. 19, 20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................................. 10

*Haralson v. U.S. Aviation Servs. Corp.*,
   *383 F. Supp. 3d 959, 969 (N.D. Cal. 2019)* .......................... 15, 18, 19

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..................................... 12

*Hesse v. Spring Corp.*,
   598 F.3d 581 (9th Cir. 2010)................................................................. ix

*In re Banc of California Sec. Litig.*,
   2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ...................................... 11

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .................................................... 10, 13, 21

*In re Heritage Bond Litigation*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005)...................................... 15

*In re Mego Fin, Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ................................................................ 18

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................ 10, 18

*K.H. v. Sec'y of Dep't of Homeland Sec.*,
   2018 WL 3585142 (N.D. Cal. July 26, 2018)...................................... 18

*Kim v. Allison*,
  8 F.4th 1170 (9th Cir. 2021) ........................................................................ 12, 13

*LaGarde v. Support.com, Inc.*,
  2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) ................................................. 14

*Larsen v. Trader Joe's Co.*,
  2014 WL 3404531 (N.D. Cal. July 11, 2014) .................................................. 14

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ........................................................................ 16

*Little v. Kia Motors Am., Inc.*,
  455 N.J. Super. 411 (App. Div. 2018) ........................................................... viii

*Manier v. Sims Metal Mgmt.-Nw.*,
  2021 WL 6199657 (N.D. Cal. Sept. 2, 2021) .................................................. 12

*McKinney-Drobnis v. Oreshack*,
  16 F.4th 594 (9th Cir. 2021) ............................................................................ 21

*Mullane v. Central Hanover Bank and Trust Co.*,
  339 U.S. 306 (1950) .......................................................................................... 21

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................... 14

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ........................................................................... 18

*Peters v. Nat'l R.R. Passenger Corp.*,
  966 F.2d 1483 (D.C. Cir. 1992) ....................................................................... 22

*Philliben v. Uber Techs., Inc.*,
  2016 WL 4537912 (N.D. Cal. Aug. 30, 2016) ................................................. 20

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...................................................................... 14, 16

*Slezak v. City of Palo Alto*,
  2017 WL 2688224 (N.D. Cal. June 22, 2017) ................................................. 17

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ........................................................................... 15

*Tadepalli v. Uber Techs., Inc.*,
  2015 WL 9196054 (N.D. Cal. Dec. 17, 2015) ................................................. 17

*Terry v. Hoovestol, Inc.*,
  2018 WL 4283420 (N.D. Cal. Sept. 7, 2018) .................................................. 17

*True v. Am. Honda Motor Co.*,
  749 F. Supp. 2d 1052 (C.D. Cal. 2010) ............................................... 15, 19, 20

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
  2018 WL 3000490 (C.D. Cal. Feb. 6, 2018) ................................................... 17

*Viceral v. Mistras Grp., Inc.*,
  2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) .................................................. 17

*Walker v. Life Ins. Co. of the Sw.*,
  2021 WL 1220692 (C.D. Cal. Feb. 22, 2021) ................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .......................................................................................... 11

*West Virginia v. Chas. Pfizer & Co.*,
  314 F. Supp (S.D.N.Y 1970) ............................................................................ 15

*Williamson v. McAfee, Inc.*,
  2016 WL 4524307 (N.D. Cal. Aug. 30, 2016) ................................................. 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Wren v. RGIS Inventory Specialists*,
  2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ........................................................ 20
*Young v. Polo Retail, LLC*,
  2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ........................................................ 17


### Statutes

15 U.S.C. § 2301 ........................................................................................................ viii
28 U.S.C § 1715(b) ....................................................................................................... 13
Cal. Bus. & Prof. Code § 17200 ................................................................................. viii
Cal. Civ. Code § 1750 .................................................................................................. viii
K.S.A. § 50-626 ........................................................................................................... viii
New York General Business Law § 349 ...................................................................... viii


### Rules

Fed. R. Civ. P. 23(a) ...................................................................................................... v
Fed. R. Civ. P. 23(b)(3) ................................................................................................ 17
Fed. R. Civ. P. 23(c)(2) ................................................................................................ 22
Fed. R. Civ. P. 23(c)(3) ................................................................................................ 22
Fed. R. Civ. P. 23(e) ............................................................................................. 20, 23
Fed. R. Civ. P. 23(e)(1) .......................................................................................... 11, 21
Fed. R. Civ. P. 23(e)(1)(B) .............................................................................. 9, 10, 11
Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................... 22
Fed. R. Civ. P. 23(e)(2) ................................................................................. 16, 18, 19
Fed. R. Civ. P. 23(e)(2)(D) .......................................................................................... 19
Fed. R. Civ. P. 23(e)(3) ................................................................................................ 12


### Other Authorities

PRIVATIZING MASS SETTLEMENT,
  90 Notre Dame L. Rev. 335 (2014) ......................................................................... viii

<u>**NOTICE OF MOTION AND MOTION**</u>

**PLEASE TAKE NOTICE** that Plaintiffs Lindsay and Jeff Aberin, John Kelly, Don Awtrey, Joy Matza, and Charles Burgess (collectively, "Plaintiffs"), on behalf of the proposed Settlement Class, hereby move (the "Motion"), before the Honorable Jon S. Tigar and pursuant to Federal Rule of Civil Procedure 23, for entry of an Order that: (1) preliminarily approves the Settlement Agreement between the Defendant American Honda Motor Co., Inc. ("Defendant," "Honda," or "AHM"), and the Plaintiffs (collectively, the "Parties");[1] (2) preliminarily certifies the proposed Settlement Class; (3) approves the proposed notice plan ("Notice Plan") in the Settlement Agreement and proposed Preliminary Approval Order; and (4) sets a final approval hearing on a date convenient for the Court at least 180 calendar days after the entry of a preliminary approval order.  A proposed Preliminary Approval Order is attached as Exhibit B to the Settlement Agreement.

The proposed Settlement Class is defined as follows:

all persons who purchased the following Acura vehicles: 2004-2008 TL, 2005-2008 MDX, or 2007-2009 RDX in the states of California, Kansas, New York, and Washington before the vehicles reached 10 years or 120,000 miles, whichever occurred first.

Excluded from the Settlement Class are Defendant and its parents, subsidiaries, and affiliates; all persons who properly elect to be excluded from the Settlement Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.

Plaintiffs propose the following schedule associated with the Notice Plan and Fairness Hearing:

---

[1] Terms not defined herein shall have the same meaning as in the Settlement Agreement. The Settlement Agreement is submitted as Exhibit 1 to the Declaration of Christopher A. Seeger in Support of Motion for Preliminary Approval of Settlement ("Seeger Decl.") and shall be cited to throughout as "Settlement Agreement."

| Event | Reference to Preliminary Approval Order | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | If the Court deems necessary, on June 1, 2023 at 9:00 a.m., or another date and time convenient for the Court |
| Settlement Administrator to launch settlement website and toll-free number | ¶ 5(i) | Within 15 days of entry of Preliminary Approval Order |
| Notice Administrator to launch direct mail notice to Settlement Class Members | ¶ 5(i) | Within 15 days of entry of Preliminary Approval Order |
| "Notice Date" – completion of mail and email notice | ¶ 5(i) | Within 30 days of entry of Preliminary Approval Order |
| Final approval motion and applications for attorneys' fees, expenses, and case contribution awards | ¶ 5(iv) | Within 60 days of entry of Preliminary Approval Order |
| Deadline for filing of requests to opt-out | ¶ 6 | Within 75 days of entry of Preliminary Approval Order |
| Deadline for filing of objections | ¶ 7 | Within 75 days of entry of Preliminary Approval Order |
| Deadline for Parties to respond to objections or file any additional papers in support of Settlement | ¶ 5(vi) | No later than 7 days before Final Approval Hearing |
| Fairness Hearing | ¶ 4 | On a date convenient for the Court no sooner than 180 days after the date the Preliminary Approval Order is entered[2] |

The Motion is based on this Notice of Motion, the incorporated memorandum of points and authorities, the supporting Declaration of Christopher A. Seeger, and all supporting papers, as well as the record in this litigation, and any other matters the Court may consider. Plaintiffs respectfully submit that the proposed settlement memorialized in the Settlement Agreement (the

---

[2] Pursuant to the terms of the Settlement Agreement, the Final Approval Hearing is to take place no sooner than 60 days after the deadline for claims.  The Claims Period runs for 90 days from the Notice Date.  The Notice Date takes place 30 days after Preliminary Approval.  Settlement Agreement ¶¶ 2.4, 2.14, 2.26

"Settlement") is fair, reasonable, and adequate, and should be preliminarily approved so that notice can be provided to the Settlement Class.

The Settlement is the product of arm's-length negotiations between the Parties and their counsel, all of whom comprehensively litigated this matter, are well-informed regarding all the issues in this litigation, and have significant experience in complex litigation of this type. Accordingly, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order and, if the Court deems necessary, hold a preliminary approval hearing on June 1, 2023, at 9:00 a.m. or at another date and time convenient for the Court.

Pursuant to the inquiries provided in the Procedural Guidance for Class Action Settlements of this District,[3] Plaintiffs respond as follows:

> a. *Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.*

The class certified by the Court covers purchasers of 2004-08 TLs, 2005-08 MDXs and 2007-09 RDXs in the states of California, Kansas, New York and Washington.  ECF No. 291, at 3.  The Settlement Class is defined as:

> All persons who purchased the following Acura vehicles: 2004-2008 TL, 2005-2008 MDX, or 2007-2009 RDX in the states of California, Kansas, New York, and Washington before the vehicles reached 10 years or 120,000 miles, whichever occurred first.

Settlement Agreement ¶ 2.40.  The vehicles and states covered by the class definitions are the same. The only difference is the 10 year or 120,000 mile durational limitation.  The reason for the difference in the Settlement Class from the class as defined in the class certified by the Court is a compromise between that Parties as to the extent of Defendant's obligations to compensate Settlement Class Members for the allegedly defective HandsFreeLink ("HFL") Unit (the Bluetooth interface in the Settlement Class Vehicles) based on the age or mileage of the Settlement Class

---

[3] https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

Vehicles at the time of purchase.  In contrast to the *12-year* depreciation model for the "overpayment" class damages model Plaintiffs intended to present at trial (*see, e.g.* ECF No. 291 at 17), the Parties reached a compromise of *10 years or 120,000 miles* for benefits under the Settlement and for the Settlement Class Definition.  This durational limitation is well within the range of a reasonable useful life of a vehicle[4] and far longer than any warranty or "good will" coverage normally afforded to purchasers of Acura vehicles.

> b. *Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.*

The class certified by the Court covers claims of the purchasers of 2004-08 TLs, 2005-08 MDXs and 2007-09 RDXs brought under (1) the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et. seq.*) ("CLRA"), the California Unfair Business Practices Act (Cal. Bus. & Prof. Code § 17200, *et. seq.*) (UCL), the New York General Business Law ("GBL") § 349, the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-626 et seq., and the Washington Consumer Protection Act; (2) breach of implied warranty laws of California, New York and Kansas; (3) the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301; (4) and the fraudulent concealment laws of California, New York, Kansas and Washington.  The "Released Claims" set forth in paragraph 2.35 of the Settlement Agreement cover these specific claims and any other claims relating to or arising out of the same conduct as the claims pled in the operational Fourth Amended Class Action Complaint ("FAC") (ECF No. 403) (excessive parasitic drain caused by the HFL System).  A settlement agreement may preclude a person from bringing a related claim in the future "'even though the claim was not presented and might not have been presentable in the action,' but only where the released claim is 'based on the identical factual

---

[4] *See, e.g.,* Jaime Dodge, Privatizing Mass Settlement, 90 Notre Dame L. Rev. 335, 396 n.93 (2014) ("According to the Kelley Blue Book, a study conducted by global market intelligence firm R.L. Polk & Co. indicates that Americans keep their new cars for an average of 71.4 months (or 5.95 years)") (citations omitted); *Little v. Kia Motors Am., Inc.*, 455 N.J. Super. 411, 420 (App. Div. 2018) (noting expert testimony that "cars typically lasted 100,000 miles, or seven to eight years"), *rev'd on other grounds*, 242 N.J. 557 (2020).

predicate as that underlying the claims in the settled class action.'" *Hesse v. Spring Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (citations omitted).  Here, the released claims are limited solely to the claims arising out of or relating to the same set of facts pled in the FAC. Thus, the scope of the release provided in the settlement agreement fits squarely within the parameters established by the Ninth Circuit.

        *c.*    *The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.*

The "overpayment" class damages model Plaintiff intended to present at trial was based on a premium of $2,100.70 per Class Vehicle which was then to be allocated between initial and subsequent purchasers based on a 12-year depreciation model.  ECF No. 291 at 17.  Under the Settlement, Settlement Class Members are eligible for two distinct categories of benefits, each offering cash payments:  (1) Settlement Class Members who paid out of pocket for parts or labor for an HFL Replacement associated with excessive parasitic drain prior to the Settlement Class Vehicle reaching 10 years or 120,0000 miles from original purchase are eligible for HFL Replacement Reimbursements of up to $500 for each replacement of an HFL Unit after indication of excessive parasitic drain; and (2) Settlement Class Members may be eligible for a $350 payment if the HFL Unit was disconnected from the HFL System *or* there was indication that the HFL Unit suffered from excessive parasitic drain (whether or not any other action was taken) prior to the vehicle reaching 10 years or 120,000 miles from original purchase.  Settlement Class Members may be eligible for more than one payment under the Settlement. The Settlement Agreement provides no relief in the form of injunctive relief.

Class Counsel estimates that over 550,000 Settlement Class Members have purchased approximately 171,000 Settlement Class Vehicles (either new or used) in the four certified states. While a more detailed analysis of the total value of the benefits offered by Settlement will be submitted in support of Final Approval and Class Counsels' Fee Petition, Class Counsel very conservatively estimates that the value of benefits related to replacement and disconnection, for

which there is some data reflecting incident rates, is well in excess of $23 million.[5]  Class Counsel

anticipates that the additional eligibility for the $350 benefit if excessive parasitic drain was merely

"indicated" (but no further action was taken) will add substantial, additional value to the Settlement

in excess of the estimated $23 million. The overpayment model proposed by Plaintiffs for trial

would have been valued at just over $360 million if Honda were found liable and if the jury did

not discount the base, per-vehicle overpayment amount based on any number of facts in play in

the litigation.

> *d.   Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval.  If there are no such cases, counsel should so state.*

None.

> *e.   The proposed allocation plan for the settlement fund.*

There is no settlement fund established as part of the Settlement.  The benefits available to

Settlement Class Members is set forth above (section c).

> *f.   If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples.*

Based on Class Counsel's experience and discussions with the Notice Administrator,

Plaintiffs expect a claims rate of 15 % or less. *See* Seeger Decl. ¶ 13.

> *g.   In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate.*

There is no reversion.

---

[5]   *See* Seeger Decl. ¶¶ 8-10.

Plaintiffs Lindsay and Jeff Aberin, John Kelly, Don Awtrey, Joy Matza, and Charles Burgess (collectively, "Plaintiffs"), on behalf of the proposed Settlement Class, respectfully submit this Memorandum of Points and Authorities in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion"), requesting the Court issue an Order that: (1) preliminarily approves the Settlement Agreement between the Defendant American Honda Motor Co., Inc., and the Plaintiffs (collectively, the "Parties"); (2) preliminarily certifies the proposed Settlement Class; (3) approves the proposed notice plan ("Notice Plan") in the Settlement Agreement and proposed Preliminary Approval Order; and (4) sets a final approval hearing on a date convenient for the Court at least 180 calendar days after the entry of a preliminary approval order.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

The Parties have agreed to a proposed settlement ("Settlement") of this putative class action lawsuit (the "Action"), brought under the CLRA, the UCL, the GBL, the KCPA, the WCPA, the breach of implied warranty laws of California, New York and Kansas; the MMWA; and the fraudulent concealment laws of California, New York, Kansas and Washington.  Based on the substantial relief provided by the Settlement and the risks of continued litigation, Plaintiffs and Class Counsel believe the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

Plaintiffs and Class Counsel have vigorously pursued relief on behalf of the Class Members, and Defendant's Counsel have vigorously defended against Plaintiffs' allegations.  The Parties agreed to the Settlement after extensive motion practice including dispositive motions and class certification, fact and expert discovery, and arm's-length negotiations by experienced counsel, including at a private mediation session with an experienced and highly respected neutral mediator with numerous follow-up negotiations under the auspices of the mediator.  Resolving the Action at this juncture allows the Parties to avoid continued and costly litigation that would deplete resources which could otherwise be used for the resolution of the Action, and which could result in a recovery less than that provided by the Settlement, or no recovery at all.

As set forth below, all prerequisites for preliminary approval of the Settlement and certification of the Settlement Class are satisfied.  As such, Plaintiffs respectfully submit that the Motion should be granted, and notice should be provided to the Settlement Class in accordance with the proposed Notice Plan.

## II.     RELEVANT BACKGROUND

Plaintiffs are purchasers of Acura vehicles (2004-2008 TL, 2005-2008 MDX, or 2007-2009 RDX) that contained a HandsFreeLink (HFL) system with one of the first built-in Bluetooth interfaces available in an automobile. The HFL system allowed drivers to "pair" their phones for hands-free operation.  Plaintiffs alleged that the HFL system had an inherent design flaw that

caused it to drain power from the vehicle's battery, an excessive electrical parasitic drain, even after the vehicle was turned off.  FAC ¶¶ 3, 12, 36.  Plaintiffs allege that, as a result, they overpaid for their vehicles, incurred costs associated with the HFL defect, and obtained a mode of transportation that was unreliable and carried with it a safety risk in the event the vehicle lost power while it was being driven.  *Id.* Plaintiffs' allegations are set forth in full in the FAC (ECF No. 403), which Plaintiffs filed on September 9, 2022.

Plaintiffs filed their first complaint, on August 3, 2016.  *See* ECF No. 1.  On October 17, 2016, Plaintiffs filed their First Amended Class Action Complaint ("FAC"), ECF No. 29.  On April 25, 2017, the Court granted, in part, Honda's motion to dismiss the FAC.  ECF No. 81.  Plaintiffs filed a Second Amended Class Action Complaint ("SAC") on July 7, 2017.  ECF No. 98.  Honda moved to dismiss the SAC on August 21, 2017.  ECF No. 105. The Court denied that motion in substantial part.  ECF No. 139.  Subsequently, Plaintiffs filed a Third Amended Class Action Complaint ("TAC") on April 27, 2018 (ECF No. 148) which Defendant answered on May 28, 2018 (ECF No. 149).

After extensive fact discovery in advance of class certification, the Parties endeavored to mediate the claims before completing expert discovery in advance of class certification.  ECF Nos. 225, 226, 228.  On February 14, 2020, the Parties reported to the Court that the initial mediation effort was unsuccessful. ECF No. 229.  On September 29, 2020, after the completion of expert disclosures and related expert discovery in advance of class certification, Plaintiffs filed their motion for class certification.  ECF No. 259.  The Court granted that motion on March 23, 2021. ECF No. 291.  Honda filed a Rule 23(f) Petition for Leave to Appeal with the Ninth Circuit Court of Appeals, which was denied.

On April 1, 2022, Plaintiffs filed motions to exclude expert reports of three of Honda's experts, and a motion to strike the declaration of another Honda experts.  The same day, April 1, 2022, seeking dismissal of the TAC, Honda filed a motion for judgment on the pleadings and a motion for summary judgment.  ECF Nos. 355, 357.  Honda also filed motions to strike portions of reports and testimony of two of Plaintiffs' experts.  The Court granted in part Honda's motion

for judgment on the pleadings on August 26, 2022, and granted Plaintiffs leave to file a Fourth Amended Complaint.  ECF No. 400, at 11.  Honda's and Plaintiffs' remaining motions are still pending.

Plaintiffs filed their FAC on September 9, 2022.  ECF No. 403.  Honda moved to dismiss the FAC on September 30, 3022, seeking dismissal of Plaintiff John Kelly's CLRA and UCL claims.  ECF No. 407.  That motion also remains pending.

Throughout the litigation of this case, the Parties engaged in substantial discovery efforts, including written discovery requests, voluminous document productions, depositions, third party discovery, and disclosure of expert reports, and as well as briefing on Plaintiffs' motion for class certification, and Defendant's motions to dismiss and for summary judgment.

Beginning in September 2022, the Parties undertook a renewed effort to mediate a resolution of the litigation. In preparation for the mediation, the Parties communicated their positions regarding the merits of Plaintiffs' claims and Defendants' defenses, and the potential associated damages.  The Parties held mediation sessions on September 22, 2022 and October 12, 2022 with Hon. Daniel J. Buckley (ret.), the former, Presiding Judge of the Superior Court of California, County of Los Angeles, and a well-respected, neutral mediator with Signature Resolution, who is experienced in mediating claims of the kind at issue in this Action.  The Parties submitted mediation briefs to Judge Buckley, and exchanged positions and follow-up information prior to and during the mediation sessions, and thereafter conducted additional informal sessions, negotiating zealously and at arms'-length at all times.  *See* Declaration of Hon. Daniel J. Buckley (Ret.) ¶¶ 7-10 (Seeger Decl., Exhibit 2).  As a result of these efforts, the Parties reached an agreement in principle to resolve the litigation, and on February 23, 2023, submitted a Joint Report to the Court announcing that the Parties had reached an agreement on all terms of the class settlement agreement.  ECF No. 426.

The Settlement provides that, in exchange for dismissal of the Action and a release of claims, Defendant will provide to the hundreds of thousands of purchasers of a Settlement Class Vehicle (both new and used) in the Settlement Class (1) Reimbursement of up to $500 for out of

pocket for parts or labor for *each* HFL replacement after indication of excessive parasitic drain (prior to the Settlement Class Vehicle reaching 10 years or 120,0000 miles from original purchase), and/or (2) $350 if the HFL Unit was disconnected *or* if there was indication that the vehicle was experiencing possible parasitic drain from the HFL Unit  prior to the Settlement Class Vehicle reaching 10 years or 120,000 miles from original purchase.  *See* Settlement Agreement ¶¶ 2.19, 3.2, 3.5.  That is, mere documented indication of excessive parasitic drain in a Class Vehicle will entitle a Settlement Class Member to a payment of $350 whether or not the HFL Unit was disconnected or replaced, and those Settlement Class Members who decided to then replace the HFL Unit are entitled to a reimbursement of costs of up to $500.  Class Members are eligible to submit claims for every eligible replacement and may also be eligible for both benefits.

To maximize the number of Settlement Class Members who avail themselves of the Settlement benefits, the Settlement provides for a cutting-edge notice program using traditional direct mail alongside a settlement website, follow-up emails and a social media campaign.  The direct mail is based on the registration data from the four certified states (and updated).  A related email list will be developed  and incorporate contact information in Honda's possession. Thereafter, a six-week targeted "social media" campaign will reach Settlement Class Members alongside email reminders from Honda as the claim deadline approaches.   JND Legal Administration LLC ("JND"), he proposed Notice Administrator, sets for the Notice Plan in greater detail, and explains how the expected reach of the Notice Plan is between 70% and 95%, a "high reach" plan under the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.  See* Declaration of Gina Intrepido Bowden Regarding Proposed Settlement Notice Plan ("Bowden Decl.") ¶¶ 10-33, 35 (Seeger Decl., Exhibit 3); *see also* Settlement Agreement ¶¶ 4.3-4.8.  Finally, as the Settlement Agreement sets forth, the Parties have been unable to reach an agreement on a reasonable Service Award for Plaintiffs or reasonable attorneys' fees and costs for Class Counsel, both of which the Parties continue to discuss, and which will be the subject of briefing alongside the future request for Final

Approval if the Court Preliminarily Approves the Settlement. *See* Settlement Agreement ¶¶ 5.3-5.7; Seeger Decl. ¶¶ 11, 12.

### III.   THE PROPOSED SETTLEMENT – PROVISIONS

**A.   Class Definition**

The Settlement Class is defined as:

All persons who purchased the following Acura vehicles: 2004-2008 TL, 2005-2008 MDX, or 2007-2009 RDX in the states of California, Kansas, New York, and Washington before the vehicles reached 10 years or 120,000 miles, whichever occurred first.

Excluded from the Settlement Class are Defendant and its parents, subsidiaries, and affiliates; all persons who properly elect to be excluded from the Settlement Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.

**B.   Released Claims**

If the Court grants Final Approval of the Agreement, the Settlement Class will be deemed to have released Defendants from all claims as described in Section 2.35 of the Agreement, which is incorporated herein by reference. These claims include the claims in the operative FAC and potential claims arising out of or relating to the same conduct as the claims pled in the FAC.[6]

**C.   Class Relief**

1.   <u>Settlement Relief</u>

Defendants have agreed to reimburse eligible Settlement Class Members who qualify for an HFL Replacement Reimbursement of up to $500 for out of pocket for parts or labor for each HFL Replacement an HFL Disconnection Payment in the amount of $350, and the ability of each Settlement Class Member to submit claims for more than one benefit to resolve Plaintiffs' claims. Settlement Agreement ¶¶ 3.1-3.7. These Settlement benefits for Settlement Class Members are not be a source for any award of Class Counsel Fees and Expenses or Representative Service Awards, which fees and costs shall be paid separate and apart from any such benefits. *Id.* ¶ 5.5.

---

[6] The claims released as part of the Settlement as set forth in Section 2.35 of the Agreement are, in essence, any actual or potential claims that were or could have been asserted in the Actions related to or arising out of the conduct alleged in the complaints (the conduct being the alleged excessive parasitic drain caused by the HFL System).

2.   <u>Claims Processing</u>

Within thirty days of submission of a Claim Form, the Settlement Administrator will review the Claim Form and any accompanying documentation, and if it determines that the claim is insufficiently corroborated, invalid, illegitimate, and/or fraudulent, it will send the Class Member a Notice of Insufficiency.   Settlement Agreement ¶¶ 4.20, 4.21.  A Settlement Class Member who has been sent a Notice of Insufficiency may attempt to cure the deficiency or contest the decision denying the Claim.  *Id*. ¶ 4.24.  If the Settlement Administrator denies the claim, the Settlement Class Member may, within 45 days, appeal the denial to the National Center for Dispute Settlement for binding resolution.  *Id*. ¶ 4.26.  If the Settlement Administrator approves the claim, it shall send a check to Settlement Class Members who submitted a valid Claim for HFL Replacement Reimbursement or valid Claim for HFL Disconnection Payment.  *Id*. ¶ 4.27.

3.   <u>Payment of Service Awards</u>

The Parties were unable to agree on reasonable amounts for Service Awards as part of the Settlement, but are continuing negotiations.  Settlement Agreement ¶ 5.3.  With their papers seeking Final Approval of the Settlement, Plaintiffs will separately ask the Court to approve Service Awards for the named Plaintiffs.  *Id*. ¶ 5.4.  The Service Awards, if approved, are to be paid out separate from the Settlement Class benefits.  *Id.* ¶ 5.5.  Plaintiffs have actively participated in the litigation and assisted Class Counsel in drafting the respective complaints and other documents, consulted with Class Counsel as needed, answered discovery-related requests for information, sat for hours of depositions each (with some having to sit for a second deposition), made their vehicles available for day-long inspections by Honda and its expert, and participated in settlement and strategy discussions.  Consistent with awards regularly granted under similar circumstances, Plaintiffs believe that they should be compensated for their work done in support of the litigation and for assisting Class Counsel in achieving a strong settlement on behalf of the Class, as well as the reputational and other risks they undertook in bringing this Action.  *See* Seeger Decl. ¶ 11.

4.   <u>Payment of Attorneys' Fees, Costs, and Expenses</u>

The Parties were unable to agree on reasonable amounts for attorneys' fees, costs and expenses, but are continuing negotiations. Settlement Agreement ¶ 5.3. With their papers seeking Final Approval of the Settlement, Plaintiffs will separately ask the Court to approve an award of such fees, costs, and expenses to be paid out separately from the Settlement Class benefits. *Id.* ¶¶ 5.4, 5.5. Class Counsel prosecuted the Class Action on a contingent basis, and vigorously prosecuted the claims of Plaintiffs and the Class Members throughout years with no expectation of recovery in the event the litigation did not result in a recovery for the Settlement Class. (*See* Seeger Decl. ¶¶ 4-6, 12). The successes of this litigation, including the Settlement, have demanded over 12,000 hours from the firms that have worked on this case, for a lodestar of approximately $9 million, and associated costs and expenses of over $1,180,000 to date. *See* Seeger Decl. ¶ 12. If the parties are unable to agree to reasonable amounts for attorneys' fees, costs and expenses, and/or contribution awards before Class Counsel files its application for attorneys' fees, expenses, and contribution awards and expenses, the Parties shall submit a proposed briefing schedule for the Court for review once Plaintiffs file their application for attorney fees, expenses and contribution awards.

### D.     Settlement Administration

The Settlement Administrator, whom the Parties have agreed upon, shall be AHM, subject to the approval by the Court and with the input of Class Counsel. Settlement Agreement ¶¶ 3.9, 4.1. AHM, as Settlement Administrator, is charged to administer specific components of the settlement, including processing Claims for HFL Replacement Reimbursements and Claims for HFL Disconnection Payments. *Id.* ¶ 4.1. AHM is tasked with creating and maintaining a Settlement Website, which will contain, among other things, the Notice and Claim Form, and documents related to the settlement, available by download. *Id.* ¶¶ 2.42, 4.13. By the Notice Date, AHM will launch the website, including posting the required documents on the Settlement

Website. *Id.* ¶ 4.13.  AHM is also responsible for all costs related to the Notice Plan, Settlement Website, and settlement administration.  *Id.* ¶ 4.2. The Settlement Administrator will also be responsible for providing a toll-free telephone number via which Settlement Class Members can direct questions about the Settlement.  *Id.* ¶ 4.14.  The complete responsibilities of the Settlement Administrator are detailed in the Agreement.  As set forth in the Declaration of Rachel A Straus in Support of Plaintiffs' Unopposed Motion Preliminarily Approving Settlement and Certifying Settlement Class, And Approving Notice to the Class and Scheduling Final Approval Hearing ("Straus Decl."), Defendant is well experienced in claims administration, has acted as a settlement administrator in several class actions, and is preparing to launch implementation of the Settlement.  Straus Decl. ¶¶ 3-6 (Seeger Exhibit 4).

**E.     The Notice Plan**

As set forth in the Settlement Agreement, and in greater detail in the Declaration of Gina Interpido Bowden of JND, the notice will launch shortly after preliminary approval and the Notice Plan includes several components to maximize outreach to the Settlement Class Members.  By the time of the "Notice Date," thirty days of the entry of the Preliminary Approval Order, the settlement website, a toll-free number and direct mailing of the entire Long Form Notice by mail and email to Settlement Class Members will be completed.  Supplementing the direct notice, the Notice Plan includes a six week "social media" campaign (referred to as "Supplemental Digital Notice" by the proposed Notice Administrator) and recuring email reminders to Settlement Class Members which will be completed in advance of the deadline for the submission of claims and run through the Claim Period.  *See* Settlement Agreement ¶¶ 2.24, 4.3-4.8; Bowden Decl. ¶¶ 10-33 (Seeger Decl., Exhibit 3).  Given that the address information for the direct notice comes from the departments of motor vehicles of the four states that were originally covered by the certified classes and the Settlement Class, Class Counsel believes that the vast majority of Settlement Class

Members will receive Settlement Notice directly by mail.  With the additional aspects of the Notice Plan, the proposed Notice Administrator anticipates that the expected reach of the Notice Plan is between 70%-95%, a "high percentage" reach under the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*.  *See* Bowden Decl. at ¶ 5 (Seeger Dec., Exhibit 3).

### F.    Opportunity to Opt Out or Object

Settlement Class Members shall be permitted to opt out or object to the Settlement.  The Settlement Agreement and Class Notice provide instructions and requirements for Settlement Class Members to opt out object to the Settlement.  Settlement Agreement, ¶¶ 4.29-4.33; *id.* at Exhibit A, at 2, 8-10.  Settlement Class Members shall be provided with 45 days after the Notice Date to file written objections.  Settlement Agreement ¶ 4.29.

### G.    The Court Retains Jurisdiction

Pursuant to Section 7.6 of the Agreement, the Court shall retain continuing and exclusive jurisdiction for purposes of administration and enforcement of the Settlement Agreement.

## IV.    <u>ARGUMENT</u>

### 1. Standard for Preliminary Settlement Approval

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Rule 23 requires courts to employ a two-step process in evaluating a class action settlement. First, the parties must show "that the court will likely be able to ... (i) approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B).  In other words, a court must make a preliminary determination that the settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2).  In the first stage, a court preliminarily approves the settlement pending a fairness hearing, temporarily certifies the class, and authorizes notice to be given to the

class. *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008). During the second stage, after notice is given to class members, the court entertains any class member objections to the treatment of the litigation as a class action and/or to the terms of the settlement. *See id.* at 659.

The Court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted); *see also* Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004) (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing"). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276 (citation omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). If the court makes these preliminary findings, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Within this framework, preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (citation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998), *overruled on other grounds*

*by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").  The proposed settlement must be "taken as a whole, rather than the individual component parts," in the examination for overall fairness. *Id.* Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." *Id.* at 1026 (citation omitted). And the fact that "the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate."  *Id.* at 1027.

As an initial matter, the Court has already certified the Class—a certification that the Ninth Circuit declined to review.   In its order certifying the class, the Court engaged in a detailed analysis of the Rule 23(a) and (b)(3) standards for class certification and concluded the standards were met.  The Court should incorporate by reference that analysis and reasoning to find the parties have satisfied this requirement.  That said, the Court does not need to determine whether it could certify the class for purposes of judgment on the proposal.  *See* 23(e)(1)(B)(ii); *see also Walker v. Life Ins. Co. of the Sw*., No. CV109198JVSJDEX, 2021 WL 1220692, at *6 (C.D. Cal. Feb. 22, 2021) ("This Court has already certified the class incorporated in the Settlement Agreement. 2018 Certification Order. The Court therefore turns to preliminary approval of the Settlement Agreement."); *In re Banc of California Sec. Litig*., No. SACV1700118AGDFMX, 2019 WL 6605884, at *1 (C.D. Cal. Dec. 4, 2019) (where court had already certified class, "it need not determine whether it could certify the class for purposes of judgment on the proposal") (citing Fed. R. Civ. P. 23(e)(1).[7]  The Court should now assess whether the Settlement merits preliminary approval.

---

[7] *See* Fed. R. Civ. P. 23(e)(1) advisory committee's note to the 2018 amendments ("If the court has already certified a class, the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified[.]").

*1. The Preliminary Approval Fairness Factors*

Under Rule 23(e)(2) if the proposed settlement would bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable and adequate. To make this determination, the following factors are to be considered:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "These factors are substantially similar to those articulated in the 2018 amendments to Rule 23(e), which were not intended to 'displace any factor [developed under existing Circuit precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Manier v. Sims Metal Mgmt.-Nw.*, No. 19-CV-00718-JST, 2021 WL 6199657, at *2 (N.D. Cal. Sept. 2, 2021) (quoting *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment)).

In the Ninth Circuit, "a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight '*Churchill* factors.'" *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (citations omitted). These *Churchill* factors include:

(1) The strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2009) (citing *Churchill Vill.*, 361 F.3d at 576–77). "Only when the district court explores these factors comprehensively can the settlement award survive appellate review." *Kim*, 8 F.4th at 1178 (citation and internal quotation marks omitted).

However, "consideration of these eight *Churchill* factors alone is not enough to survive appellate review." *Id.* at 1179 (citation omitted). The Ninth Circuit recently held that Rule 23(e)(2), as revised in 2018, requires courts "to go beyond our precedent" by accounting for the terms of any proposed award of attorneys' fees when determining whether the relief provided for the class is adequate. *Briseño*, 998 F.3d at 1023–26; *see also Kim*, 8 F.4th at 1179. Specifically, in reviewing settlements struck both before and after class certification, "district courts must apply *Bluetooth*'s heightened scrutiny" to examine whether the attorneys' fee arrangement shortchanges the class. *Id.* at 1023-25. The *Bluetooth* court identified three signs of such shortchanging:

> (1) class counsel's receipt of a disproportionate distribution of the settlement;
> (2) a "clear sailing" agreement "providing for the payment of attorneys' fees separate and apart from class funds"; and
> (3) an arrangement whereby fees awarded are reverted to the defendants, rather than added to the class fund.

654 F.3d at 947.  And the fact that "the settlement could have been better . . . does not mean the settlement presented was not fair, reasonable or adequate." *Id*. at 1027.[8] Accordingly, as relevant to this case, the Court considers the following factors: (1) strength of the plaintiffs' case and risks of further litigation; (2) amount of the settlement; (3) the extent of discovery

---

[8]  This action is subject to the requirements of the Class Action Fairness Act of 2005 ("CAFA") which requires that certain required information upon the appropriate State and federal officials. 28 U.S.C § 1715(b). Honda will comply with this notice requirement by sending notice of the Settlement to the appropriate State and federal officials.  Settlement Agreement ¶ 4.16; Straus Decl. ¶ 7 (Seeger Decl., Exhibit 4).

completed and the stage of the proceedings; (4) reaction of the class members; (5) proposed

attorneys' fee award and absence of collusion; and (6) the experience and views of class counsel.

### 2. The Settlement and Notice Plan Warrant Preliminary Approval

#### a. Strength of Plaintiff's Case; Risk, Expense, Complexity, and Likely Duration of Further Litigation; Risk of Maintaining Class Action Status Throughout the Trial

In determining whether the settlement is fair, reasonable, and adequate, the Court must

balance the risks of continued litigation, including the strengths and weaknesses of Plaintiffs'

case, against the benefits afforded to class members, including the immediacy and certainty of

recovery. *See Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *4 (N.D.

Cal. July 11, 2014); *LaGarde v. Support.com, Inc.*, No. 12-cv-00609-JSC, 2013 WL 1283325, at

*4 (N.D. Cal. Mar. 26, 2013). "In most situations, unless the settlement is clearly inadequate, its

acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)

(internal quotation marks omitted).  Difficulties and risks in litigation weigh in favor of approving

a class settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).  Honda

has raised various factual and legal defenses that could prevent recovery at trial.

Plaintiffs' claims involve alleged breaches of various consumer protection statutes.  Under

these statutory regimes, the Plaintiffs are required to establish: (i) that a misrepresentation or

omission occurred regarding the alleged defect in the HFL system; (ii) that consumers relied upon

the representations or omissions by Honda regarding the alleged defect, and (iii) that Plaintiffs

suffered an injury as a result of overpaying for Class Vehicles that contained the alleged defect.

In this case, Plaintiffs faced significant legal arguments from Honda that challenged their claims

under these statutes, including that Plaintiffs are not entitled to restitution under the CLRA and

UCL because their legal remedies are not inadequate.  ECF No. 423, at 6-9.  In *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), the Ninth Circuit held that "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Id.* at 844.  Thus, in the event the Court were to hold that Plaintiffs failed to plead that they lacked an adequate legal remedy, Plaintiffs would face the possibility of not being able to obtain restitution damages for their UCL and CLRA claims.  Another argument pressed by Honda was that the Plaintiffs' claims under the CLRA lack merit because the Plaintiffs fail to allege a direct transaction between Honda and the California Plaintiff.  ECF No. 423, at 10-12.  As such, absent the Settlement, Plaintiffs faced a possibility of not prevailing on a significant part their claims under the consumer protection laws of California.

Regardless of the arguments of the parties regarding the relative strength of their cases, "[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *In re Heritage Bond Litigation*, No. 02-ML-1475, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) (citation omitted).  While Class Counsel are confident in their ability to successfully maintain class action status through trial, there are risks inherent in any litigation, including challenges in proving liability and damages, as well as the possibility that Honda will raise meritorious defenses to the certified claims. This is especially true in class action litigation. *See, e.g.*, *Chas. Pfizer & Co.*, 314 F. Supp. at 743-44.  Plaintiffs have supplied "enough information to evaluate the strengths and weaknesses of [their] case." *Haralson*, 383 F. Supp. 3d at 970.  Although the Class Members (or some of them) arguably might have received more if they had proceeded to trial and prevailed on the merits of their case, they also faced a risk that the resulting recovery would be smaller than what is currently expected.  Further, the benefit of receiving an award in the immediate future has its own value.

*Bellinghausen*, 306 F.R.D. at 255.  Given the risks of further litigation, the uncertain outcome of the Plaintiffs' case weighs in favor of final approval.

### b.  Amount Offered in Settlement

Assessing the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a "particular formula." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). "[U]ltimately, [it] is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Id.* And, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV*, 221 F.R.D. at 527 (quoting another source). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.*

Plaintiffs represent that the monetary component of the Settlement represents a significant portion of potential award individual Settlement Class Members might have received through trial, if they were ultimately awarded anything.  *See* Seeger Decl. ¶¶ 8-10.

### c. Extent of Discovery Completed and Stage of Proceedings

This factor evaluates whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir. 1998). The extent of discovery completed supports approval of a proposed settlement, especially when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (internal quotation marks and citation omitted). Here, the parties have conducted sufficient discovery to make an informed decision about settlement.  Significant investigation and discovery took place, and the Parties' engaged in substantial motion practice (a motion to transfer, motions to dismiss, discovery motions, motion for class certification, motion

for summary judgment, and motions to exclude expert witness opinions).   The Parties also exchanged eight expert reports (excluding supplemental reports) to support their respective positions.   The filing of the Parties' various motions suggests that they "had a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, No. C 02 4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007). At the time of settlement, the Parties have been litigating for over six and on-half years and had enough information to make an informed decision. This factor weighs in favor of approval.  *See Terry v. Hoovestol, Inc.*, No. 16-cv-05183-JST, 2018 WL 4283420, at *4 (N.D. Cal. Sept. 7, 2018) (parties were adequately informed about case prior to settling where plaintiff had served written discovery, reviewed hundreds of pages of documents, interviewed class members, and conducted one deposition); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. SACV151614JLSJCG, 2018 WL 3000490, at *5 (C.D. Cal. Feb. 6, 2018).

### d. Experience and Views of Counsel

The Ninth Circuit recognizes that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (internal modifications omitted). Indeed, "[a]n initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."  *Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198, 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016); *see also Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) (finding the "likelihood of fraud or collusion [wa]s low . . . because the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator.").  Further, Class Counsel and Defendants' counsel are experienced in class action litigation, and each possess a thorough understanding of the factual and legal issues involved in the Action.  *See Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-

MEJ, 2015 WL 9196054, at *9 (N.D. Cal. Dec. 17, 2015) ("Settlements are entitled to 'an initial presumption of fairness' because they are the result of arm's-length negotiations among experienced counsel."). "A district court is entitled to give consideration to the opinion of competent counsel that the settlement is fair, reasonable, and adequate." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *5 (N.D. Cal. June 27, 2014) (internal quotation marks and modifications omitted). Class counsel endorsed the settlement as fair, adequate, and reasonable, *See* Seeger Decl. ¶ 7, and there is no reason to question that representation.

### e. Presence of a Governmental Participant

There is no governmental participant here.  Defendant will be notifying the attorneys general of the United States and the several states shortly after a Preliminary Approval Order is entered. Straus Decl. ¶ 7 (Seeger Decl., Exhibit 4).

### f.  Range of Recovery

In evaluating the fairness and adequacy of a settlement, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1080. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego*, 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982)).

Plaintiffs have provided adequate "'information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims.'" *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 969 (N.D. Cal. 2019) (quoting *K.H. v. Sec'y of Dep't of Homeland Sec.*, No. 15-CV-02740-JST, 2018 WL 3585142, at *5 (N.D. Cal. July 26, 2018)).  Under the class damages model Plaintiffs intended to offer at trial,

the "overpayment" for each Class Vehicle was $2100,70, which was to be depreciated over a 12-year period and allocated between each purchaser of that vehicle, but such an award required that Plaintiffs prevail and trial and could be discounted or reduced by a jury if Honda were found liable.  The Settlement Class benefits offer Settlement Class Members (of which there are over 500,000) reimbursements of up to $500 for each replacement of an HFL Unit (after indication of an excessive parasitic drain) and $350 if the HFL Unit was disconnected *or* excessive parasitic drain was indicated, and Settlement Class Members may be eligible for more than one payment. *See* Seeger Decl. ¶¶ 8-10.   As a result, the Court can assess whether this estimate has a basis in fact.  Plaintiffs have thus "show[n] their work by explaining the relative value of their claims in significant detail." *Haralson*, 383 F. Supp. 3d at 970 (internal citation omitted) (quoting *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016)); *Eddings v. DS Servs. of Am., Inc.*, No. 15-CV-02576-VC, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016).

Based on the information above, the Court should find that the Settlement provides an adequate recovery to the class. *See Williamson v. McAfee, Inc.*, Nos. 5:14-CV-00158-EJD, 5: 14-cv-02475-EJD, 2016 WL 4524307, at *7 (N.D. Cal. Aug. 30, 2016) ("[A] class settlement does not need to contain the best possible terms. At [the preliminary approval] stage, the court need only determine whether the settlement terms fall within a reasonable range of possible settlements.").

### g. Preferential Treatment

A court may approve a settlement only after considering whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Courts generally are wary of settlement agreements where some class members are treated differently than others." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010) (citation omitted); *see also Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2012 WL 1156399, at *8 (N.D. Cal. Apr. 6,

2012) ("[D]isparate treatment between class members increases the likelihood that the settlement agreement does not meet the Rule 23(e) standard." (citation omitted)).

Concerns about preferential treatment arise where a settlement not only "offers considerably more value to one class of plaintiffs than to another" but "may be trading the claims of the latter group away in order to enrich the former group." *Ferrington*, 2012 WL 1156399, at *7 (citation omitted); *see also True*, 749 F. Supp. 2d at 1069 (finding settlement "patently unfair" where it "[drew] an arbitrary distinction among class members with identical legal claims and injuries, and allow[ed] some to receive a cash award, and others only a DVD and limited rebate"); *Philliben v. Uber Techs., Inc.*, No. 14-CV-05615-JST, 2016 WL 4537912, at *5 (N.D. Cal. Aug. 30, 2016) ("[T]he settlement proposes to compensate persons who haven't been injured, and it does so at the expense of persons who have been. While the first concern may not be enough to disallow a settlement at this stage, the second one is.")  Here, the Settlement Class Members, depending on whether they paid out of pocket for an HFL replacement or suffered an HFL Unit disconnection, before reaching 10 years or 120,000 miles, are all entitled to the same relief, and the claims of any one group of Class Members is not being traded away in order to enrich another group of Class Members.  Accordingly, this factor weighs in favor of preliminary approval.

### h.   Attorney's Fees, Service Awards, and Lack of Collusion

The Court will have an opportunity to evaluate Class Counsel's request for attorney's fees and costs on a future motion, after the Class has had an opportunity to object.  Class Counsel will provide appropriate detail and documentation in connection with their motion for fees.  Similarly, Plaintiffs will support their request for Service Awards with information about the time and effort expended by the named Plaintiffs in pursuing this case, any risks they have taken on as a result, and the degree to which the Settlement Class has benefited from their actions. *See Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *32 (N.D. Cal. Apr. 1, 2011).

There is also no evidence of collusion here under the relevant *Bluetooth* factors. Indeed, while the Parties have been able to agree to the Settlement benefits for the Settlement Class, they remain unable to reach an agreement as to reasonable attorneys' fees and costs. After Class Counsel submit their attorney fee application and any objections to it are raised, the Court will be able to assess whether Class Counsel is requesting a fee that involves a disproportionate distribution of the settlement. The Settlement Agreement does not include "a clear-sailing arrangement[] under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607-08 (9th Cir. 2021). To the contrary, Honda has reserved the right to challenge any attorney's fee award. *See* Settlement Agreement ¶ 5.3. Finally, the Settlement Agreement does not "contain[] a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *Id*. at 608.

In sum, the Settlement is the product of vigorous litigation and arm's-length negotiation by experienced and well-informed counsel, adequately reflects the strength of the parties' claims and defenses, is based on sufficient discovery and information, provides significant relief to the Settlement Class, and does not involve preferential treatment for any segment of Settlement Class Members, or an attorney's fee request that reflects evidence of collusion. Accordingly, the Court should find the Settlement is fair, reasonable, and adequate, and merits preliminary approval.

### i.     The Notice Plan Should Be Preliminarily Approved

In addition to preliminarily approving the proposed Settlement, the Court must approve the proposed means of notifying Settlement Class members. *See* Fed. R. Civ. P. 23(e)(1). Due process and Rule 23(e) do not require that each Class Member receive notice, but rather that class notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afforded them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be

provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Under Federal Rule of Civil Procedure 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Here, the proposed Notice meets all of the above requirements. *See* Bowden Decl., ¶ 34 (Seeger Decl., Exhibit 3). The Notice also conforms to the Northern District's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/ClassActionSettlementGuidance. *See id,*

The Notice Plan is designed to reach the largest number of Settlement Class members possible. The proposed Notice Administrator estimates that the Notice plan will reach upwards of 95% of the Settlement Class Members, which is a "high reach" plan. The Settlement Notice will be sent by first-class mail and by email to the last known address of each Settlement Class member. Settlement Agreement ¶ 4.7. *See Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute that notice by first class mail ordinarily satisfies Rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'"). Thereafter, email reminders and a targeted "social media" campaign will serve to remind Settlement Class Members to submit a claim in advance of the deadline. In addition, Honda will create a Settlement Website on which it will post documents relating to the Settlement

(including the Notice, Claim Form and a toll-free number that the Settlement Administrator will staff with live operators.  Settlement Agreement ¶¶ 4.13, 4.14.  The Notice will also provide Class Counsel's contact information and include instructions on how to access the case docket via PACER or in person at any of the court's locations, the date and time of the final approval hearing, and a note advising Class Members that the hearing date may change without further notice to the Class and instructions to check the settlement website or the Court's PACER site to confirm that the date has not changed.

The Notice Plan satisfies all due process considerations and meets the requirements of Rule 23(e).  The Notice Plan clearly describes: (i) the terms and operation of the Settlement; (ii) the nature and extent of the Released Claims (as set forth in the Settlement Agreement); (iii) the fact that Class Counsel will request attorneys' fees, litigation expenses, and case contribution awards; (iv) the procedure and timing for objections; and (v) subject to the Court's schedule, the date and location of the Fairness Hearing.

## V.    <u>CONCLUSION</u>

The Court should grant the Plaintiffs' motion to preliminarily approve the Settlement, Notice Plan, preliminarily certify the Settlement Class, and set a date for the Fairness Hearing.  A proposed Preliminary Approval Order is attached to the contemporaneously-filed Settlement Agreement.

Dated: April 27, 2023                                    Respectfully submitted,

By:   _/s/ Christopher A. Seeger_
Christopher A. Seeger (admitted *pro hac vice*)
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone:  (973) 639-9100
Facsimile: (973) 679-8656
Email: cseeger@seegerweiss.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

_/s/ James E. Cecchi_
James E. Cecchi (admitted *pro hac vice*)
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
Email: jcecchi@carellabyrne.com

*Class Counsel and Proposed
Counsel for the Settlement Class*