Christopher A. Seeger (*pro hac vice*)
Scott George (*pro hac vice*)
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Telephone: (973) 639-9100
Facsimile: (973) 679-8656
Email: cseeger@seegerweiss.com

James A. Cecchi (pro hac vice)
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO LLP
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
Email: jcecchi@carellabyrne.com

*Co-Lead Class and Settlement Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| *Aberin et al. v. American Honda Motor Co., Inc.* | Case No. 4:16-cv-04384-JST |
| | **NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY FEES, COSTS AND EXPENSES, AND FOR SERVICE AWARDS** |
| | Hearing Date: August 15, 2024 |
| | Time:  2:00 p.m. (Pacific) |
| | Hon. Jon S. Tigar |

## NOTICE AND MOTION

**TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on _____ 2024, beginning at 10:00 a.m., in Courtroom 6 of the United States District Court for the Northern District of California, 2d Floor, 1301 Clay Street, Oakland, CA 94612, before the Honorable Jon S. Tigar, Plaintiffs Lindsay and Jeff Aberin, Don Awtrey, Charles Burgess, John Kelly, and Joy Matza, by and through their undersigned counsel, will and hereby do move the Court for an order awarding attorneys 'fees and expenses to Class Counsel and service awards to the Named Plaintiffs. The motion, which is unopposed, will be based upon this Notice, the Memorandum of Points and Authorities filed herewith, the exhibits attached thereto, including the Declarations of Christopher A. Seeger, James E. Cecchi, Steve W. Berman, James Shah, filed simultaneously herewith, and there record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

DATED: April 4, 2024

Respectfully submitted,

By: _/s/ Christopher A. Seeger_
Christopher A. Seeger (admitted *pro hac vice*)
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 679-8656
Email: cseeger@seegerweiss.com

_/s/ James E. Cecchi_
James E. Cecchi (admitted *pro hac vice*)
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
Email: jcecchi@carellabyrne.com
*Co-Lead and Settlement Class Counsel*

i

# **TABLE OF CONTENTS**

I.   MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

II.  Argument .............................................................................................................................. 5

  A.   Legal Standards ............................................................................................................. 5

    1.   *Lowery v. Rhapsody Int'l, Inc.* Does Not Limit Fees Here .................................... 5

    2.   Plaintiffs Qualify for an Award ............................................................................. 8

    3.   The Lodestar Method .............................................................................................. 9

    4.   Expenses and Service Awards ................................................................................ 9

  B.   The Fee Award ............................................................................................................. 11

    1.   Class Counsel's hourly rates are reasonable and have been previously approved by this court and courts across the country .................................................................... 11

    2.   Class Counsel reasonably spent a significant amount of time litigating this complex class action against an intransigent defendant. .................................................. 14

    3.   All Other Factors Support Approval of the Requested Fee .................................. 16

    4.   The Circumstances Justify a Modest Lodestar Multiplier. ................................... 21

    5.   A "percentage of fund" cross-check confirms the Reasonableness of Class Counsel's fee request ..................................................................................................... 24

  C.   Class Counsel's Request for Reimbursement of Expenses is also Reasonable ................. 25

  D.   Service Awards ............................................................................................................ 26

III. Conclusion .......................................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page (s)**

*Aarons v. BMW of N. Am., LLC*,
   No. CV 11-7667 PSG CWX, 2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) ........................... 5, 15

*Barbosa v. Cargill Meat Sols. Corp.*,
   297 F.R.D. 4319 (E.D. Cal. 2013) ............................................................................................. 19

*Bateman v. Am. Multi-Cinema, Inc.*,
   623 F.3d 708 (9th Cir. 2010) ...................................................................................................... 7

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 2451 (N.D. Cal. 2015) ............................................................................................ 18

*Black v. T-Mobile USA, Inc.*,
   No. 17-cv-04151-HSG, 2019 WL 3323087 (N.D. Cal. July 24, 2019) ...................................... 10

*Brasley v. Fearless Farris Serv. Stations, Inc.*,
   No. 08-CV-00173-BLW, 2018 WL 6251356 (D. Idaho Nov. 29, 2018) .................................... 14

*Brommfield v. Craft Brew All., Inc.*,
   No. 17-cv-01027-BLF, 2020 WL 1972505, at6 (N.D. Cal. Feb. 5, 2020) .................................. 24

*Carlotti v. ASUS Computer Int'l*,
   No. 18-cv-03369-DMR, 2020 WL 3414653 (N.D. Cal. June 22, 2020) .................................... 13

*Chavez v. Netflix, Inc.*,
   162 Cal. App. 4th 436 (2008) ................................................................................................... 22

*Close v. Sotheby's, Inc.*,
   909 F.3d 1204 (9th Cir. 2018) .................................................................................................... 5

*Comcast Corp. v. Behrend*,
   469 U.S. 27 (2013) .................................................................................................................... 23

*Congdon v. Uber Techs., Inc.*,
   No. 16-CV-02499-YGR, 2019 WL 23279223 (N.D. Cal. May 31, 2019) .................................. 20

*Davis v. City & Cnty. of San Francisco*,
   976 F.2d 1536 (9th Cir. 1992) .................................................................................................. 15

*Destefano v. Zynga, Inc.*,
   2016 WL 5379462 (N.D. Cal. Feb. 11, 2016) ........................................................................... 25

*Douyon v. NY Med. Health Care, P.C.*,
   49 F. Supp. 3d 328 (E.D.N.Y. 2014) ........................................................................................... 7

*Dyer v. Wells Fargo Bank, N.A.*,
  303 F.R.D. 3265 (N.D. Cal. 2014) .................................................................................. 27

*Evans v. DSW, Inc.*,
  No. 16-CV-03791-JGB-SPX, 2018 WL 6920674 (C.D. Cal. Aug. 17, 2018) ............................... 7

*Floyd v. Am. Honda Motor Co.*,
  966 F.3d 1027 (9th Cir. 2020) ....................................................................................... 23

*Gascho v. Glob. Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016) ...................................................................................... 6, 8

*Gen. Const. Co. v. Castro*,
  401 F.3d 963 (9th Cir. 2005) .......................................................................................... 8

*Graciano v. Robinson Ford Sales, Inc.*,
  144 Cal. App. 4th 140 (2006) ..................................................................................... 6, 7

*Guillory v. HSBC Bank, USA*,
  No. 16-CV-03868-MMC, 2018 WL 3417484 (N.D. Cal. July 13, 2018) ................................. 15

*Guttmann v. Ole Mexican Foods, Inc.*,
  No. 14-CV-04845-HSG, 2016 WL 9107426 n(N.D. Cal. Aug. 1, 2016) ..................................... 7

*Hamilton v. Juul Labs, Inc.*,
  No. 20-CV-03710-EMC, 2021 WL 53314518 (N.D. Cal. Nov. 16, 2021) ................................. 16

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ............................................................................................ 10

*Harris v. Vector Mktg. Corp.*,
  No. C-08-5198 EMC, 2012 WL 3812027 (N.D. Cal. Feb. 6, 2012) ....................................... 27

*Hayword v. Ventura Volvo*,
  108 Cal. App. 4th 509 (2003) ......................................................................................... 6

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................................................... 13

*Hendricks v. Starkist Co.*,
  No. 13-CV-00729-HSG, 2016 WL 54624232 (N.D. Cal. Sept. 29, 2016) ................................ 25

*Heritage Bond Litigation*,
  2005 WL 1594389 (C.D. Cal. June 10, 2005) .................................................................. 18

*Herrington v. Sonoma Cnty.*,
  655 F. Supp. 1111 (N.D. Cal. 1987) .............................................................................. 15

iv

*Hopkins v. Stryker Sales Corp.*,
No. 11-CV-2786-LHK, 2013 WL 4963584 (N.D. Cal. Feb. 6, 2013)..........................................21

*Hubbard v. Henkel Corp.*,
No. 19-CV-04346-JST, 2022 WL 22234699 (N.D. Cal. July 25, 2022) ......................................10

*In re Apple Inc. Device Performance Litig.*,
No. 18-md-02827-EJD, 2021 WL 1022866 (N.D. Cal. March 17, 2021) ......................................9

*In re Bluetooth*,
654 F.3d 935 (9th Cir. 2011) ................................................................................4, 9, 11, 24

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
No. CV 17-2832, 2020 WL 7133805 (D. Minn. Dec. 4, 2020) ..................................................11

*In re General Motors Corp. Pickup Fuel Tank Prods. Liability Litig.*,
1994 WL 303014 (E.D. Pa. Feb. 2, 1994) ................................................................................22

*In re HP Printer Firmware Update Litig.*,
No. 5:16-CV-05820-EJD, 2019 WL 2716287 (N.D. Cal. June 28, 2019).....................................6

*In re Lenovo Adware Litig.*,
No. 15-MD-02624-HSG, 2019 WL 17914208 (N.D. Cal. Apr. 24, 2019).....................................25

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 4547 (9th Cir. 2000) .................................................................................................25

*In re Nuvelo, Inc. Sec. Litig.*,
2011 WL 26505922 (N.D. Cal. July 6, 2011) ..........................................................................19

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 10367 (N.D. Cal. 2008) ....................................................................17, 19, 25

*In re Outlaw Lab'ys, LP Litig.*,
No. 18-CV-840-GPC-BGS, 2023 WL 6522383 (S.D. Cal. Oct. 5, 2023).....................................7

*In re Pacific Enterprises Sec. Litig.*,
47 F.3d 3739 (9th Cir. 1995) ...................................................................................................25

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 9930 (N.D. Cal. 2015) ....................................................................................21

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.*
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)............................................................................13

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ...............................................................................14, 19, 24

v

*In re Wells Fargo & Co. Shareholder Derivative Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020) ........................................................ 13

*In re Wirsbo Non-F1807 YBFs*,
    No. 08-CV-1223-NDF-MLC, 2015 WL 13665077 (D. Nev. Oct. 26, 2015) .............................. 10

*Joh v. Am. Income Life Ins. Co.*,
    No. 18-CV-06364-TSH, 2021 WL 663056 (N.D. Cal. Jan. 7, 2021) ............................ 16

*Ketchum v. Moses*,
    24 Cal.4th 1122, 104 Cal.Rptr.2d 377, 17 P.3d 735 (2001) ............................ 6, 21

*Kim v. Allison*,
    8 F.4th 1170 (9th Cir. 2021) .................................................................... 11

*Knight* v. Red Door Salons, Inc.,
    No. 08-01520 SC, 2009 WL 2483676 (N.D. Cal. Feb. 2, 2009) .............................. 25

*Kona Enters., Inc. v. Estate of Bishop*,
    229 F.3d 877 (9th Cir. 2000) .................................................................... 5

*Laffitte v. Robert Half Int'l Inc.*,
    1 Cal.5th 4806 (2016) ........................................................................... 22

*Larsen v. Trader Joe's Co.*,
    No. 11-CV-05188-WHO, 2014 WL 34045318 (N.D. Cal. July 11, 2014) .................. 18

*Lowery v. Rhapsody Int'l, Inc.*,
    75 F.4th 985 (9th Cir. 2023) .................................................................... 5

*Mangold v. Cal. Pub. Utils. Comm'n*,
    67 F.3d 1470 (9th Cir. 1995) .................................................................... 5

*McPhail v. First Command Fin. Planning, Inc.*,
    No. 05-cv-179-IEG-JMA, 2009 WL 8398417 (S.D. Cal. Mar. 30, 2009) .................... 25

*Mergens v. Sloan Valve Co.*,
    No. CV1605255-SJO-SKX, 2017 WL 94861532 (C.D. Cal. Sept. 18, 2017) .............. 21

*Miletak v. Allstate Ins. Co.*, No. C,
    06-03778 JW, 2012 WL 12924933 (N.D. Cal. July 12, 2012) ............................ 10

*Nat'l Coal. of Associations of 7-Eleven Franchisees v. Southland Corp.*,
    210 F.3d 384 (9th Cir. 2000) .................................................................... 21

*Norton v. LVNV Funding, LLC*,
    No. 18-CV-05051-DMR, 2021 WL 3129568 (N.D. Cal. July 23, 2021) .................... 11

vi

*O'Connor v. Uber Techs., Inc.*,
  2019 WL 43944016 (N.D. Cal. Sept. 13, 2019) ........................................................... 21

*O'Keefe v. Mercedes-Benz USA LLC*,
  214 F.R.D. 2661 (E.D. Pa. 2003) .................................................................................. 22

*Parkinson v. Hyundai Motor Am.*,
  796 F. Supp. 2d 1160 (C.D. Cal. 2010) ................................................................ 6, 8, 21

*Patel v. Mercedes-Benz USA, LLC*,
  43 Cal. App. 5th 1007, 256 Cal. Rptr. 3d 603 (2019) ..................................................... 6

*Perez v. Rash Curtis & Assocs.*,
  No. 4:16-CV-03396-YGR, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ..................... 15

*Polee v. Cent. Contra Costa Transit Auth.*,
  516 F. Supp. 3d 9933 (N.D. Cal. 2021) ........................................................................ 21

*Rabin v. PricewaterhouseCoopers LLP*,
  No. 16-cv-02276-JST, 2021 WL 837626  (N.D. Cal. Feb. 3, 2021) ................................ 10

*Radcliffe v. Experian Info. Sols., Inc.*,
  715 F.3d 11573 (9th Cir. 2013) .................................................................................... 26

*Robertson v. Fleetwood Travel Trailers of California, Inc.*,
  144 Cal. App. 4th 785 (2006) ...................................................................................... 15

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ....................................................................................... 10

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) ....................................................................................... 3

*Rojas v. Bosch Solar Energy Corp.*,
  No. 18-CV-05841-BLF, 2023 WL 3473515 (N.D. Cal. Apr. 6, 2023) .............................. 9

*Rollins v. Dignity Health*,
  No. 13-CV-01450-JST, 2022 WL 20184568 (N.D. Cal. July 15, 2022) .......................... 12

*Sacramento Area Elec. Workers Health & Welfare Tr. v. FAMCO*,
  No. 17-CV-03823-BLF, 2019 WL 13203780 (N.D. Cal. Nov. 20, 2019) ........................ 12

*Schneider v. Chipotle Mexican Grill, Inc.*,
  336 F.R.D. 588 (N.D. Cal. 2020) .................................................................................. 13

*Serrano v. Unruh*,
  32 Cal. 3d 621 (1982) ............................................................................................. 6, 15

vii

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ................................................................................ 17

*Spann v. J.C. Penney Corp.*,
   211 F. Supp. 3d 12445 (C.D. Cal. 2016) ............................................................. 22

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 2949 (N.D. Cal. 1995) ............................................................... 22, 26

*Vaughn v. American Honda Motor Co.*,
   627 F. Supp.2d 7381 (E.D. Tex. 2007) ................................................................. 22

*Vincent v. Hughes Air W., Inc.*,
   557 F.2d 759 (9th Cir. 1977) ................................................................................ 10

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 10438 (9th Cir. 2002) ........................................................... 16, 17, 21, 25

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................................................. 23

*Walsh v. Kindred Healthcare*,
   No. 11-00050 JSW, 2013 WL 6623224 (N.D. Cal. Dec. 16, 2013) ....................... 9

*Wannemacher v. Carrington Mortg. Servs., LLC*,
   No. SACV 12-2016 FMO (ANX), 2014 WL 125861179 (C.D. Cal. Dec. 22, 2014) .................. 18

*Weeks v. Google LLC*,
   No. 18-CV-00801-NC, 2019 WL 81355633 (N.D. Cal. Dec. 13, 2019) ............... 18, 25

*Wehlage v. Evergreen at Arvin LLC*,
   No. 4:10-CV-05839-CW, 2012 WL 4755371 (N.D. Cal. Oct. 4, 2012) ................ 10

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 2245 (2001) ............................................................................... 22

*Williams v. MGM-Pathe Commc'ns Co.*,
   129 F.3d 1026 (9th Cir. 1997) ................................................................................ 8

*Wing v. Asarco Inc.*,
   114 F.3d 9869 (9th Cir. 1997) .............................................................................. 18

*Wit v. United Behavioral Health*,
   No. 14-cv-02346-JCS, 2022 WL 45057 (N.D. Cal. Jan. 5, 2022) ....................... 12

*Wren v. RGIS Inventory Specialists*,
   No. 06-cv-05778 JCS, 2011 WL 12308261 (N.D. Cal. Apr. 1, 2011) .............. 26, 27

viii

**Statutes**

15 U.S.C. § 2301 .................................................................................................. 2

Cal. Bus. & Prof. Code § 17200 .......................................................................... 1

Cal. Civ. Code § 1750 ........................................................................................... 1

Cal. Civ. Code § 1780(e) .................................................................................. 7, 8

Cal. Civ. P. Code § 1021.5 .................................................................................... 8

K.S.A. § 50-626 ................................................................................................... 2

Kan. Stat. Ann. § 50-634(e)(2) ........................................................................... 6

New York General Business Law ("GBL") § 349 ........................................... 1, 6

Wash. Rev. Code Ann. § 19.86.090 ..................................................................... 6

**Rules**

Fed. R. Civ. P. 23(h) ............................................................................................ 5

**Other Authorities**

CLASS ACTIONS, HEIGHTENED COMMONALITY, AND DECLINING ACCESS TO JUSTICE,
    93 B.U.L. Rev. 441 (Mar. 2013) ................................................................. 23

PROGRESS: CIVIL RIGHTS CLASS ACTIONS AFTER WAL-MART V. DUKES,
    50 HARV. C.R.-C.L.L. REV. 153 ................................................................. 24

SEEKING ANTITRUST CLASS CERTIFICATION: THE ROLE OF INDIVIDUAL DAMAGE CALCULATIONS IN
    MEETING CLASS ACTION PREDOMINANCE REQuirements,
    23 Geo. Mason L. Rev. 199 (2015) ............................................................. 23

SUPREME COURT OVERSIGHT OF THE FEDERAL RULES: A PRINCIPAL-AGENT PROBLEM?,
    72 DePaul L. Rev. 363 (2023) ..................................................................... 23

THE MISGUIDED SEARCH FOR CLASS UNITY,
    82 Geo. Wash. L. Rev. 651 (2014) ............................................................. 23

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY FEES, COSTS, EXPENSES, AND SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST

## I.  MEMORANDUM OF POINTS AND AUTHORITIES

This is an action for damages, restitution and injunctive relief, which Plaintiffs Lindsay and Jeff Aberin et al. brought on behalf of themselves and a proposed class of consumers whose Acura automobiles, manufactured and sold by the Defendant American Honda Company, Inc. ("Honda"), suffered from a design defect in the "Hands-Free" Bluetooth system, HandsFreeLink™ ("HFL") which caused excessive parasitic electric drain.  The goal of the litigation was, and remains, to remedy Honda's misrepresentations and breach of warranties resulting from the undisclosed defect.  After eight years of hard-fought litigation, Class Counsel seeks an award of reasonable and fair attorney's fees in the amount of $10,900,000 and reimbursement of costs in the amount of $1,037,458.66 for the reasons set forth below.[1]

Specifically, the Plaintiffs contended that the HFL units in the Acura models 2004-2008 TL, 2005-2008 MDX, and 2007-2009 RDX that they purchased in the states of California, Kansas, New York, and Washington, would fail to switch off when not in use, generating excessive parasitic electrical drain, and resulting in a strain on the vehicles' electric system, dead batteries, frequent battery replacements, and replacement or disconnection of the HFL unit.  This defect created a safety hazard, leaving vehicles with unreliable batteries and prematurely aged alternators that could cause a vehicle to lose power during operation. As more fully described in Plaintiffs 'Memorandum in Support of Preliminary Approval (ECF No. 436), Plaintiffs and the Settlement Class contend that Honda's actions violated (1) the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et. seq.*) ("CLRA"), the California Unfair Business Practices Act (Cal. Bus. & Prof. Code § 17200, *et. seq.*) (UCL), the New York General Business Law ("GBL") § 349, the Kansas Consumer

---

[1]  Given that Class Counsel and their co-counsel have litigated this case for nearly eight years without compensation, they respectully submit that, to the extent any withholing is made of any award of fees pending post-distribution accounting after distribution of the Settlement payments, the amount be at or under 10% .

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY FEES, COSTS, EXPENSES, AND SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST

Protection Act ("KCPA"), K.S.A. § 50-626 et seq., and two subsections of the Washington Consumer Protection Act; (2) breach of implied warranty laws of California, New York and Kansas; (3) the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301; and (4) the fraudulent concealment laws of California, New York, Kansas and Washington.

It is not a stretch to say that Class Counsel has invested tremendous resources in the prosecution of this case. The docket speaks clearly to this point and brief summary of work shows it to be true:  Class Counsel investigated, drafted and filed five complaints (ECF Nos. 1, 29, 98, 148, 403), opposed a motion to transfer venue (ECF Nos. 30-34), opposed two motions for spoliation of evidence and sanctions (ECF Nos. 105, 116-17), a motion for judgment on the pleadings (ECF Nos. 355, 365), a motion for summary judgment (ECF Nos. 357-58, 366), six motions to strike Plaintiffs' expert witnesses (ECF Nos. 264-68, 359-60), and three motions to dismiss by Honda (ECF Nos. 42-44, 105, 407).  On the affirmative side Class Counsel took or defended 24 depositions, successfully moved for class certification (ECF Nos. 259, 260, 275-79, 281, 291), and successfully opposed in the Ninth Circuit Honda's Rule 23(f) petition for permission to appeal the Court's class certification approval decision, ECF No. 302; Dkt. No. 21-80033 (9th Cir.)

Moreover, counsel's efforts to achieve a positive result for the clients were not focused solely on litigation - we tried to resolve this case long ago.  A mediation was held on February 11, 2020 in California with mediator Ellen Relkin before Plaintiffs undertook the time and expense of expert discovery in advance of class briefing and the extensive briefing necessitated by a motion for class certification.  ECF No. 229. That early effort was unsuccessful - but not because of Class Counsel's unwillingness to resolve the case early and reasonably.  Accordingly, Plaintiffs pushed ahead with expert discovery relevant to the class motion, and undertook the labors of class briefing and responding to Defendant's opposition to that motion as well as its *Daubert* challenges, each of which were unsuccessful.  ECF No.  291.  The case finally did

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY FEES, COSTS, EXPENSES, AND SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST

settle through efforts of  Hon. Daniel J. Buckley (ret.), after the Parties had fully briefed Defendant's last round of challenges to Plaintiffs' experts and dispositive motions, including summary judgment.  *See* Declaration of James E. Cecchi ("Cecchi Decl.") ¶¶ 7-8.

The parties have entered into a Settlement Agreement (*see* Declaration of Christopher A. Seeger in Support of Preliminary Approval, filed April 27, 2023, Exhibit A (ECF No. 429-2)), which was preliminarily approved by this Court by order filed February 1, 2024.  ECF No. 436.

The Settlement class is defined as all purchasers of Acura models 2004-2008 TL, 2005-2008 MDX, and 2007-2009 RDX, that purchased or leased their vehicles in the states of California, Kansas, New York, and Washington, prior to the vehicle reaching 10 years or 120,000 miles, whichever occurs first.

 The Settlement provides eligible Class Members with (a) an HFL Replacement Reimbursement for actual out of pocket payments for parts or labor up to $500 and/or (b) an HFL Disconnection Payment in the amount of $350 if the HFL was disconnected <u>or</u> simply if parasitic electric drain was indicated.  Class Counsel's fee request is well within the range commonly awarded in comparable cases, and is well-justified here, particularly taking into account the results achieved on behalf of the Class and the amount of work contributed by Class Counsel.  Class Counsel's request is also supported by a lodestar multiplier cross-check.

Moreover, as part of the settlement, Honda "may oppose" Class Counsel's application for attorney's fees and expenses, and for service awards.  This reflects that the parties to the Settlement did not enter into a "clear sailing" agreement under which the defendant agrees to not oppose a request for attorney fees, thereby satisfying the Ninth Circuit's precedent holding that such agreements are disfavored because they may be evidence of collusion.  *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1050-51 (9th Cir. 2019) ("clear sailing agreements on attorneys 'fees

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY FEES, COSTS, EXPENSES, AND SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST

are important warning signs of collusion, . . . because [t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class,") (citation and internal quotation marks omitted) (quoting *In re Bluetooth*, 654 F.3d 935, 948 (9th Cir. 2011) (footnote omitted).  Not only that, but the fees and costs are to be paid separate and apart from class recovery and in no way reduce the class benefits achieved.  Thus, because the request award is reasonable and appropriate, the Court should grant Plaintiffs 'motion in full.

After combining the lodestar of the Class Counsel law firms, there is a total lodestar in this matter of $8,759,878.00 at counsel's customary billing rates.  Based on the total lodestar, the fee requested is equivalent to a reasonable multiplier of 1.24.  The counsel's declarations include time records documenting the tasks completed and the amount of time spent on the prosecution of this case (as well as costs), as required by the Court.  *See* Cecchi Decl. Exs A-C; Declaration of Christopher A. Seeger Exs A-C ("Seeger Decl." - Exhibit D to the Cecchi Decl.); Declaration of Steve W. Berman Exs A-C ("Berman Decl." – Exhibit E to the Cecchi Decl.); Declaration of James Shah Exs. A-C ("Shah Dec." – Exhibit F to the Cecchi Decl.); and Declaration of Amanda M. Steiner Exs A-C ("Steiner Decl." – Exhibit F to the Cecchi Decl.).

Plaintiffs further request that the Court award counsel $1, 037,458.66 for litigation costs.

Lastly, Plaintiffs request Service Awards of $7,500 to each of the Class Representatives for their services to the Class.  Plaintiffs performed their duties as Class Representatives and have always put the interests of the Class Members above their own.  These amounts are justified by Plaintiffs 'dedication to this action.

## II.      Argument

### A.  Legal Standards

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties 'agreement." Fed. R. Civ. P. 23(h).[2]"   A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys 'fees." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). "Because this is a diversity case, state law governs both 'the right to fees 'and 'the method of calculating the fees.'" *Close v. Sotheby's, Inc.*, 909 F.3d 1204, 1208 (9th Cir. 2018) (quoting *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)).   "The touchstone for determining the reasonableness of attorneys 'fees in a class action is the benefit to the class." *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023).

### 1.  *Lowery v. Rhapsody Int'l, Inc*. Does Not Limit Fees Here

In *Lowery*, the Ninth Circuit recently held that in determining the value of a "claims-made" class action settlement for purposes of attorney's fees, the court should consider its actual or anticipated value to the class members based on the timely submitted claims," rather than the maximum amount that hypothetically could have been paid to the class if all claims were submitted. *Id*. at 988-99, 992.  *Lowery* is inapplicable here and would wreak havoc with the utility of class action settlement in consumer protection actions under state law.  First, *Lowery* involved federal copyright law, *see id*. at 989, 992, 995, and hence any determination of the attorney's fee was governed by federal law. In contrast, because jurisdiction here is based on diversity, California state law governs the determination of the attorney's fee. *See Close*, 909 F.3d at 1208, 1211-12.  Under

---

[2] *See also Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG CWX, 2014 WL 4090564, at *14 (C.D. Cal. Apr. 29, 2014) ("the CLRA mandates an award of fees and costs") (citing cases).

California law, as with any state law including a fee-shifting provision to ensure consumers' rights can be vindicated, they are entitled to *all* attorney fees reasonably expended, without any limitation to a proportion of the actual recovery  *See Graciano v. Robinson Ford Sales, Inc*., 144 Cal. App. 4th 140, 164 (2006);[3] *In re HP Printer Firmware Update Litig*., No. 5:16-CV-05820-EJD, 2019 WL 2716287, at *2 (N.D. Cal. June 28, 2019); *see also Patel v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 1007, 1017, 256 Cal. Rptr. 3d 603, 611 (2019) ("discussing "purposes behind fee awards in consumer protection legislation . . . . Attorney fee provisions in consumer protection statutes 'allow[ ] consumers to pursue remedies in cases as here, where the compensatory damages are relatively modest'") (citation omitted).  This includes work "relating solely to the fee." *Ketchum v. Moses,* 24 Cal.4th 1122, 1133, 104 Cal.Rptr.2d 377, 17 P.3d 735 (2001). "To limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impede the legislative purpose underlying [the consumer fraud statutes at issue]." *Id*. at 150; *Hayword v. Ventura Volvo*, 108 Cal. App. 4th 509 (2003) (same). "[T]he purpose behind statutory fee authorizations—*i.e.*, encouraging attorneys to act as private attorneys general and to vindicate important rights affecting the public interest—'will often be frustrated, sometimes nullified, if awards are diluted or dissipated by lengthy, uncompensated proceedings to fix or defend a rightful fee claim." *Serrano v. Unruh*, 32 Cal. 3d 621, 632 (1982); *see Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 285-88 (6th Cir. 2016); *Parkinson v. Hyundai Motor Am*., 796 F. Supp. 2d 1160, 1171 (C.D. Cal. 2010) ("California's fee-shifting and private attorney general statutes incentivize counsel to take cases on behalf of plaintiffs who could not otherwise afford to vindicate their rights through litigation."). Thus, proportionality

---

[3] Even if the law of the other states at issue applied here as to the determination of fees, the consumer protection laws of those states (KS, NY, WA), like California law, involve fee shifting statutes. Kan. Stat. Ann. § 50-634(e)(2); N.Y. Gen. Bus. Law § 349; Wash. Rev. Code Ann. § 19.86.090.

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY FEES, COSTS, EXPENSES, AND SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST

is an improper consideration when determining fee awards under consumer protection statutes. *Graciano*, 144 Cal. App. 4th at 164; *see also Douyon v. NY Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 339-40 (E.D.N.Y. 2014). Indeed, no California decision has adopted *Lowery*'s holding or the principle that attorney's fee awards in fee shifting cases should be based on the amount of benefits actually claimed by class members.

Second, courts in this Circuit have declined to apply *Lowery*'s rule on the ground that it does not apply in cases where fee shifting statutes and small amounts of damages are at issue. *See, e.g., In re Outlaw Lab'ys, LP Litig.*, No. 18-CV-840-GPC-BGS, 2023 WL 6522383, at *7-8 (S.D. Cal. Oct. 5, 2023). Thus, *Lowery* should not apply here because state law governs the determination of fees, California law does not limit fees to a proportion of the recovery, the consumer fraud statutes at issue are fee shifting statutes, and the damages of each class member are small. *See id.*; *see also Guttmann v. Ole Mexican Foods, Inc.*, No. 14-CV-04845-HSG, 2016 WL 9107426, at *5 n.1 (N.D. Cal. Aug. 1, 2016) ("The CLRA itself contains a mandatory fee-shifting provision that awards attorneys' fees to a prevailing plaintiff.") (citing Cal. Civ. Code § 1780(e)).[4] Without such a practical approach, accomodation, manufacturer-defendants would be incentivized to protract litigation with

---

[4] *Outlaw* further noted that, unlike in *Lowery*, there was significant nonmonetary relief made available to class members. *See* 2023 WL 6522383, at *7. While the direct benefits to the class are obtained through claims, Plaintiffs achieved nonmonetary success with this lawsuit in the form of the Court's order granting contested class certification which provided direct notice to the Class Members of the claims in this litigation, including the alleged defect in their HFL units, and was a key factor driving Honda to ultimately agree to the substantial payments made available to Settlement Class Members under the Settlement. *See generally Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010) ("certification of a class . . . preserve[s], if not amplif[ies], the deterrent effect of FACTA[], [federal statute concerning protection of consumers 'credit transactions].") While Honda has never acknowledged the defect, with the knowledge of the defect having been publicized through this class action and settlement, class members "'will no longer be deceived.'" *Evans v. DSW, Inc.*, No. 216CV03791JGBSPX, 2018 WL 6920674, at *11-12 (C.D. Cal. Aug. 17, 2018) (case that resulted in defendant no longer engaging in false advertising conferred significant public benefit).

the threat to plaintiffs and their counsel that each additional hour of work required to vidicate their

rights would never be compensated.

Third, *Lowery* and the decisions upon which it relies are inapposite because they involved

the application of the higher standard of scrutiny for settlements reached prior to class certification

(unlike in this case).  Fourth, neither *Lowery* nor any of the decisions upon which it relied applied

California law.  Finally, *Lowery* conflicts not only with California law but also with previous Ninth

Circuit precedent holding that attorney's fee awards should be based on the entire amount of the

settlement fund.  *See Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997);

*see also Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 283-88 (6th Cir. 2016) (noting

*Williams* holding accords with rule of U.S. Supreme Court); *Gen. Const. Co. v. Castro*, 401 F.3d

963, 975 (9th Cir. 2005) (three-judge panel is bound by opinion of prior panel).

### 2. Plaintiffs Qualify for an Award

"Because plaintiffs obtained a favorable settlement recovery for class members in the form

of cash reimbursement, up to and including full reimbursement (depending on vehicle mileage),

plaintiffs are the prevailing party under the CLRA fee-shifting statute." *Parkinson*, 796 F. Supp. 2d

at 1171 (citing Cal. Civ. Code § 1780(e)).  Similarly, plaintiffs are the successful party under

California's private attorney general statute. Cal. Civ. P. Code § 1021.5. Plaintiffs qualify for an

award of fees under this statute because a significant pecuniary benefit, including up-to-full

reimbursement, has been conferred on a large class of persons, namely, owners of Acura's 2004-

2008 TL, 2005-2008 MDX, or 2007-2009 RDX models who undertook an HFL unit repair or

disconnection.  The necessity and financial burden of private enforcement are such that the award is

appropriate, and a common practice in class settlements, because an individual plaintiff seeking to

vindicate a repair could not be expected to litigate against Honda's demonstrably robust and

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY FEES, COSTS, EXPENSES, AND SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST

resourceful defenses. In accordance with the interest of justice, the fee award should not be paid out of class members' recovery.

### 3.     The Lodestar Method

"[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Rojas v. Bosch Solar Energy Corp.*, No. 18-CV-05841-BLF, 2023 WL 3473515, at *1 (N.D. Cal. Apr. 6, 2023) (quoting *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011)).  "The Ninth Circuit has approved two different methods for calculating a reasonable attorneys 'fee depending on the circumstances: the lodestar method or the percentage-of-recovery method." *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 WL 1022866, at *1 (N.D. Cal. March 17, 2021) (citation omitted). "For claims-made settlements," as here, the lodestar method is appropriate." *Id.* (citation and internal quotation marks omitted). Indeed ,"[u]nder California law, '[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method.'" *Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 WL 6623224, at *1 (N.D. Cal. Dec. 16, 2013). Courts may then apply a "percentage of the fund" analysis as a cross-check to confirm the reasonableness of the fee award.  *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011) ("[W]e have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method . . . . [T]he percentage-of-recovery method can . . . be used to assure that counsel's fee does not dwarf class recovery.") (internal quotation marks and citations omitted).

### 4.   Expenses and Service Awards

As to litigation expenses and costs, Class Counsel are typically entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in prosecution of the claims and in

9

obtaining a settlement. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

Regarding service awards, "[i]In the Ninth Circuit, courts routinely approve service award payments to class representatives for their assistance to a plaintiff class." *In re Wirsbo Non-F1807 YBFs*, No. 208CV1223NDFMLC, 2015 WL 13665077, at *6 (D. Nev. Oct. 26, 2015) (citing *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)). "Courts may consider the following criteria in determining whether to provide incentive awards: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Hubbard v. Henkel Corp.*, No. 19-CV-04346-JST, 2022 WL 22234699, at *5 (N.D. Cal. July 25, 2022) (citation and internal quotation marks omitted). "[S]everal courts in this district have found that incentive payments of $5,000 are presumptively reasonable." *Id.* However, larger awards can be appropriate. *See, e.g.*, *Black v. T-Mobile USA, Inc.*, No. 17-cv-04151-HSG, 2019 WL 3323087 at *7, 2019 U.S. Dist. LEXIS 123676 at *21 (N.D. Cal. July 24, 2019) (granting $10,000 service award); *Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST, 2021 WL 837626 at *9, 2021 U.S. Dist. LEXIS 41285 at *31 (N.D. Cal. Feb. 3, 2021) (granting $20,000 service awards).[5]

---

[5] Further, as a matter of public policy, representative service awards are necessary to encourage consumers to take on the reputational risk to formally challenge unfair business practices. *See, e.g., Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (upholding award of service awards to class representatives as they "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general"); *Wehlage v. Evergreen at Arvin LLC*, No. 4:10-CV-05839-CW, 2012 WL 4755371, at *5 (N.D. Cal. Oct. 4, 2012) (finding service award justified for plaintiffs "lending their names to this case, and thus subjecting themselves to public attention"); *Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2012 WL 12924933, at *2

10

### B.  The Fee Award

"For claims-made settlements, like the one in this case, the lodestar method is appropriate." *Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2021 WL 3129568, at *11 (N.D. Cal. July 23, 2021).   Under the lodestar method, the district court "multiplies the number of hours the prevailing party reasonably spent on litigation by a reasonable hourly rate to determine a presumptively reasonable fee award." *Kim*, 8 F.4th at 1180.  The court can then adjust the lodestar amount "by an appropriate positive or negative multiplier" to account for factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 1180-81 (quoting *In re Bluetooth*, 654 F.3d at 941-42).   Here, consideration of Class Counsels 'lodestar strongly supports the reasonableness of the requested fee award.  Class Counsel seeks an attorneys' fee award of $10,900,000, whereas Class Counsel's total lodestar in this case as of the day of this motion is $8,759,878—reflecting 11,535.1 hours of work on this matter.  The fee produced by the lodestar requires a reasonable multiplier of 1.24.  Further, both the hourly rates and the numbers of hours expended on this complex, hard-fought case, as well as the out-of-pocket cost Class Counsel incurred while prosecuting this action, are reasonable.

### 1.  Class Counsel's hourly rates are reasonable and have been previously approved by this court and courts across the country

The accompanying declarations of Class Counsel set forth the hours of work and billing rates used to calculate the lodestar.  *See* Seeger Decl., Ex A; Cecchi Decl., Ex A; Berman Decl., Ex A;

---

(N.D. Cal. July 12, 2012) (same); *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. CV 17-2832, 2020 WL 7133805, at *13 (D. Minn. Dec. 4, 2020) (awarding service award because "Class Representatives participated and willingly took on the responsibility of prosecuting the case and publicly lending their names to this lawsuit, opening themselves up to scrutiny and attention from both the public and media").

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY FEES, COSTS, EXPENSES, AND SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST

Shah Decl., Ex A; Steiner Decl., Ex A.   '"A reasonable hourly rate is that prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.""" *Sacramento Area Elec. Workers Health & Welfare Tr. v. FAMCO*, No. 17-CV-03823-BLF, 2019 WL 13203780, at *10 (N.D. Cal. Nov. 20, 2019) (quoting *CEM Builders*, 2018 WL 1664691, at *10. "The relevant community is the forum in which the district court sits." *Id.* (quoting *CEM Builders*, 2018 WL 1664691, at *10) (internal quotation marks omitted).  "To determine the prevailing market rate, courts may rely on attorney affidavits as well as 'decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience.'" *Id.* (citation omitted).[6]

Here, as attested to in Class Counsels 'declarations, Class Counsels 'rates are the prevailing rates in the appropriate legal markets and are reasonable.  The billing rates vary based on the attorneys' level of experience.  Partners' and Counsels' rates range from $700 to $1,395. The billing rates for non-partner and non-counsel attorneys, including associates, litigation assistants, and document analysts range from $180, with most under $450. *See* Seeger Decl., Ex A; Cecchi Decl., Ex A; Berman Decl., Ex A; Shah Decl., Ex A; Steiner Decl., Ex A.  These rates are reasonable in light of prevailing market rates in this district for attorneys of comparable skill and reputation, and given the complexity and novelty of the issues presented by this case. *See, e.g.*, *Rollins v. Dignity Health*, No. 13-CV-01450-JST, 2022 WL 20184568, at *6 (N.D. Cal. July 15, 2022) (approving rates ranging from $625 to $1,060 for partners and counsels, and $215-$625 for non-partner and non-counsel attorneys, including associates, litigation assistants, and document analysts); *Wit v.*

---

[6] As another court in this district noted with respect to a similar Song-Beverly Act suit, "the prevailing rates charged in the San Francisco legal market are among the highest in the state." *Bratton v. FCA US LLC*, No. 17-cv-01458-JCS, at *5 (N.D. Cal. Oct. 22, 2018) (noting that the "relevant forum" for consideration is the San Francisco Bay Area).

*United Behavioral Health*, No. 14-cv-02346-JCS, 2022 WL 45057, at *7 (N.D. Cal. Jan. 5, 2022) (approving rates ranging from $625 to $1,145 for partners and counsel, $425 to $650 for associates, $300-$370 for paralegals); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 600-01 (N.D. Cal. 2020) (finding that rates between $425 and $695 for associates, and $830 and $1,275 for partners, are "in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation."); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 U.S. Dist. LEXIS 213045, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving rates ranging from $650 to $1,250 for partners or senior counsel, and $400 to $650 for associates); *Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR, 2020 WL 3414653, at *5 (N.D. Cal. June 22, 2020) (approving hourly rates ranging from $950 to $1,025 for partners representing consumers in class action settlement and citing cases approving these rates); *In re Wells Fargo & Co. Shareholder Derivative Litig.*, 445 F. Supp. 3d 508, 527 & n.10 (N.D. Cal. 2020) (approving hourly rates for full-time staff (non-contract) attorneys ranging from $560 to $1,075 for partners or "of counsel" attorneys, $250 to $660 for associates, and $365 to $420 for staff or project attorneys); *Fitzhenry-Russell v. Coca-Cola Co.*, Case No. 17-cv-603-EJD, Docket No. 95 at 17 (N.D. Cal. Oct. 3, 2019) (finding that GSLLP's rates of between $450 and $1,025 per hour are "reasonable and commensurate with those charged by attorneys with similar experience who appear in this Court"); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prod. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals).

In sum, Class Counsels' skill and experience justify the requested rates.  Class Counsel practice with a focus on national complex litigation, including representation of consumers in consumer rights class actions, and are held in high regard by the legal community.  *See* Seeger Decl.

13

¶¶ 3-5, 9-19; Cecchi Decl. ¶¶ 25-31; Berman Decl. ¶¶ 3, 6-10; Shah Decl. ¶¶ 3, 7-8; Steiner Decl. ¶¶ 5-9.

Lastly, Class Counsel calculated their lodestar using their firms 'current hourly rates. Relying on Class Counsels 'current rates is appropriate given the deferred and contingent nature of counsel's compensation. "In the Ninth Circuit, it is appropriate to compensate deferred payment 'by applying the attorneys' current rates to all hours billed during the course of the litigations.'" *Brasley v. Fearless Farris Serv. Stations, Inc*., No. 1:08-CV-00173-BLW, 2018 WL 6251356, at *6 (D. Idaho Nov. 29, 2018) (quoting *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994)) (citing *Welch*, 480 F.3d at 947). Using current rates, rather than historical rates, will fairly compensate Class Counsel for the significant risk of nonpayment taken on in connection with this matter.

**2. Class Counsel reasonably spent a significant amount of time litigating this complex class action against an intransigent defendant.**

The number of hours Class Counsel devoted to litigating this case is also reasonable given the length of the litigation, the complexity of the case, the intransigence of the defendant, and the amount of relief recovered for the Settlement Class Members. Indeed, as discussed, Honda fought for every inch of ground here and agreed to provide relief to the class only after Plaintiffs' counsel withstood two motions to dismiss, a motion to transfer venue, a motion for spoliation and for sanctions, four motions to strike their expert witnesses, and a motion for judgment on the pleadings; and obtained class certification on a multi-state basis, successfully opposed Honda's petition for immediate appellate review, completed an extended expert discovery process, fought through dilatory discovery tactics, briefed summary judgment, and participated in multiple rounds of mediation.

---

14

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY FEES, COSTS, EXPENSES, AND SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST

As stated in their respective firms 'declarations, Class Counsel have logged 11535.1 hours in uncompensated time in order to achieve the Settlement in this case, which multiplied by their respective current hourly rates equals $8,759,878 in attorneys 'fees billed to date.  Cecchi Decl. ¶ 20.

This lodestar reflects the significant effort that Class Counsel put into litigating this case against a defendant that aggressively litigated its opposition to Plaintiffs' claims, the opinions of its experts, contested class certification, and otherwise fought at every juncture through to the settlement that the Court preliminary approved and, respectfully, Plaintiffs separately move to give its final approval to.[7]

Further, Class Counsel anticipate expending additional time and effort through final approval to respond to inquiries from Settlement Class Members, prepare final approval papers, review claims, advocate on behalf of the Settlement Class Members during the claims process, and prepare their fee application.  Cecchi Decl. ¶ 20.  These additional hours will certainly increase lodestar.  *Id*. Thus, it is likely that by the time this matter is closed, the total lodestar will be approaching, if not exceeding, $9 million.

---

[7] This Court has held that time spent on settlement efforts and preparation of a fee application are recoverable. *See Guillory v. HSBC Bank, USA*, No. 16-CV-03868-MMC, 2018 WL 3417484, at *5 (N.D. Cal. July 13, 2018) (time spent on settlement efforts is recoverable); *Perez v. Rash Curtis & Assocs.,* No. 4:16-CV-03396-YGR, 2020 WL 1904533, *20-22 (N.D. Cal. Apr. 17, 2020) ("the Court notes that it is appropriate for a court to consider future hours in a lodestar crosscheck."); *Herrington v. Sonoma Cnty.*, 655 F. Supp. 1111, 1116 (N.D. Cal. 1987) ("Authority indicates that the time spent in preparing the fee application is recoverable.") (citing cases), *aff'd in part, modified in part, on other grounds*, 883 F.2d 1024 (9th Cir. 1989); *Serrano v. Unruh*, 32 Cal. 3d 621, 631, 652 P.2d 985 (1982) ("'the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award.'") (citing cases); *see also Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992) ("This Court has repeatedly held that time spent by counsel in establishing the right to a fee award is compensable.") (citing cases); *Aarons*, 2014 WL 4090564, at *15 ("an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee.") (citation omitted); *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 817 (2006) (awarding $13,566 for preparing fee motion).

### 3.   All Other Factors Support Approval of the Requested Fee

In *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002), the Ninth Circuit outlined a number of factors that courts may consider in determining the reasonableness of a fee award, including: (i) the results achieved; (ii) the risk of litigation; (iii) the skill required and the quality of work; (iv) the contingent nature of the fee and the financial burden carried by counsel; (v) reaction of the class;  (vi) awards made in similar actions, and (vi) comparison with lodestar. *Id.* at 1048-50; *Hamilton v. Juul Labs, Inc.*, No. 20-CV-03710-EMC, 2021 WL 5331451, at *8 (N.D. Cal. Nov. 16, 2021) (same); *Joh v. Am. Income Life Ins. Co.*, No. 18-CV-06364-TSH, 2021 WL 66305, at *6 (N.D. Cal. Jan. 7, 2021). "Under both the percentage-of-recovery and lodestar multiplier methods, the fee can be adjusted either up or down based on [these] factors." *Hamilton*, 2021 WL 5331451, at *8.  As set forth below, all of these factors militate in favor of approving the requested fee.

### a.   The Results Achieved

Class Counsel achieved significant relief for Class Members.  Indeed, the the Settlement essentially makes Class Members whole, putting them in the position they were in prior to encountering the defect in their HFL systems by providing compensation for its replacement or lack of use.  In particular, the Settlement provides reimbursement payments to each Class Member for out of pocket payments for parts or labor up to $500 and/or an HFL Disconnection Payment of $350, if the Class Member had had paid for the replacement, or had the system disconnected, prior to the vehicle reaching 10 years or 120,000 miles.   In short, Class Members have benefited and will benefit as a result of Class Counsel's work in this litigation. This factor supports Class Counsel's fee request.

### b.  Litigation Risk

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008) (citing *Vizcaino,* 290 F.3d at 1048). Honda does not concede its liability here, and the case was complex and posed a significant risk of non-payment to Class Members and, by extension, Class Counsel.  Should Settlement Class Counsel have been required prosecute these claims against Honda to conclusion, any recovery would come years in the future and at far greater expense to the Class.

There are also potential monetary risks associated with litigation. Despite their strong claims, Class Counsel recognizes there are always uncertainties in litigation.  It is possible that a litigation Class would receive less or nothing at all, despite the compelling merit of its claims, because of the risks of litigation.  Such monetary risks include that (1) any class recovery obtained at trial could be reduced through offsets and (2) Honda could reasonably be expected to defend against the action, including by challenging Plaintiffs 'Fourth Amended Complaint and their legal claims.  One such risk is recent Ninth Circuit precedent restricting claims for equitable restitution under the California Legal Remedies Act ("CRLA") and the Unfair Competition Law ("UCL").  In *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), the Ninth Circuit held that in order to plead a claim for equitable restitution under the CLRA and UCL, a plaintiff must allege that they lack an adequate remedy at law.  Honda has filed a motion to dismiss this claim, which the Court has terminated pending settlement approval.  Additional hurdles facing Plaintiffs 'claims are motions of Honda to strike the expert witness testimony of two of Plaintiffs 'experts, and Honda's motion for summary judgment, which the Court has also terminated pending approval of the settlement.  *See* Cecchi Decl.

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY FEES, COSTS, EXPENSES, AND SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST

¶¶ 14-15.   Honda's counsel is also a formidable and respected law firm that sought dismissal of Plaintiffs 'case at every step.

On all of the liability and damages issues, Plaintiffs would have had to prevail at these several further stages, and then again at trial, and again on appeal.   At each stage, there would be very significant risks attendant to the continued prosecution of the action, as well as considerable delay. That Class Counsel faced and overcame these very significant risks during the course of the litigation, through their extensive efforts and skilled lawyering, strongly supports the requested fee.

Notwithstanding these risks, Class Counsel dedicated many thousands of hours of their attorneys 'and other staff members 'time to litigating this action as forcefully as possible for the Class, and incurred over $1 million in litigation expenses in prosecuting the claims for the Class. These risks further support the reasonableness of the requested fee.  *See Weeks v. Google LLC*, No. 5:18-CV-00801-NC, 2019 WL 8135563, at *3 (N.D. Cal. Dec. 13, 2019) ("Class Counsel took on substantial risk in connection with the litigation. The representation was carried out on a contingent basis and lasted nearly two years. Class Counsel was also opposed by skilled and respected counsel for Defendants, resulting in substantial and difficult litigation, discovery, and settlement negotiations. These factors each justify an upward departure from the 25% benchmark.") (citing *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015); *Wannemacher v. Carrington Mortg. Servs., LLC*, No. SACV 12-2016 FMO (ANx), 2014 WL 12586117, at *9 (C.D. Cal. Dec. 22, 2014); *Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *8 (N.D. Cal. July 11, 2014)).

### c.   The Skill Required and Quality of Work Performed

Courts also consider the skill required and quality of work performed in determining what fee to award. *See Heritage Bond,* 2005 WL 1594389, at *12 ("The experience of counsel is also a

18

factor in determining the appropriate fee award"). "The 'prosecution and management of a complex

national class action requires unique legal skills and abilities.'"*Omnivision,* 559 F. Supp. 2d at 1047.

Here, Class Counsel prosecuted the case vigorously, provided high quality legal services, and achieved an excellent result for the Class. Plaintiffs' Counsel are among the most experienced and skilled practitioners in the class action field, as discussed in the firm biographies set forth in the respective Class Counsels 'Declarations.  Plaintiffs' Counsel's reputation as experienced and competent counsel in complex class action cases, willing and able to litigate the case to trial if necessary, facilitated their ability to deliver this recovery for the Class.  The quality and vigor of opposing counsel are also considered in evaluating the services rendered by Plaintiffs' Counsel.  *See, e.g., Barbosa v. Cargill Meat Sols. Corp.,* 297 F.R.D. 431, 449 (E.D. Cal. 2013).  Here, Honda was represented by very experienced attorneys practicing at the top of their fields from Shook, Hardy & Bacon LLP, a well-respected national law firm.  The attorneys were highly skilled and supported by considerable financial resources. Nevertheless, Plaintiffs' Counsel were able to persuade Defendant to settle the case on terms favorable to the Class.

### d.    Contingent Nature of Representation and Opportunity Cost

Class Counsel brought this claim on a purely contingent basis, agreeing to advance all necessary expenses, knowing that they would receive a fee only if there was a recovery. It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *In re Nuvelo, Inc. Sec. Litig.,* 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011). "This practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney." *Id.*  Here, Class Counsel received no compensation during the more than over

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY FEES, COSTS, EXPENSES, AND SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST

seven years of this litigation. Unlike defense counsel-who typically receive payment on a timely basis whether they win or lose, Class Counsel sustained the entire risk that they would have to fund the expenses of this action and that, unless Plaintiffs' Counsel succeeded, they would not be entitled to any compensation whatsoever. Accordingly, the contingent nature of the representation, and the burden carried by Plaintiffs' Counsel, support the requested fee.

### e.   Reaction of the Class

Notice of the Settlement was distributed to all Class members. *See* Declaration of Gina Intrepido Bowden Regarding Settlement Notice Plan Implementation ¶¶ 7-23, 30.[8]   Only five objections have been filed with the Court to date.   ECF Nos. 438-442.   While the time for the submission of objections ends on April 18, 2024, this small number of objectors speaks loudly abut the results obtained for the Class.   Moreover, only one objection criticizes the attorney's fee, but only in general terms and with an argument that not many Class Members will benefit from the relief. *See* ECF No. 439.   This ignores that there are over 171,000 Class Vehicles whose owners may qualify for the Settlement benefits.   At any rate, such a low amount of objections supports the requested fee. *See Congdon v. Uber Techs., Inc.*, No. 16-CV-02499-YGR, 2019 WL 2327922, at *3 (N.D. Cal. May 31, 2019) (where only four class members out of 475,000 objected to proposed fee, "[t]he Court considers this a strong, positive response from the class, supporting Class Counsel's requested fees"). Moreover. As of this date, only 10 class members have sought to opt-out of the Settlement. Declaration of Steve Felix ¶ 12.[9]   In a Class potentially encompassing hundreds of thousands of owners, this is a minuscule number. "Such a low opt-out rate suggests the support of Class Members

---

[8]   This declaration was filed in support of Plaintiffs' Motion for Final Approval of the Class Settlement.

[9]   The Declaration of Steve Felix has been submitted in support of Plaintiffs' Motion for Final Approval of Class Settlement and is Exhibit 2 to the Declaration of Christopher Seeger.

and [further] counsels in favor of approval." *O'Connor v. Uber Techs., Inc.*, 2019 WL 4394401, at *6 (N.D. Cal. Sept. 13, 2019), *aff'd*, 2019 WL 7602362 (9th Cir. Dec. 20, 2019) (considering an opt-out rate of "less than even .1%") (citing *Nat'l Coal. of Associations of 7-Eleven Franchisees v. Southland Corp.*, 210 F.3d 384 (9th Cir. 2000)) (finding that a 0.6% opt-out rate suggests "that the settlement was a favorable one"). This factor supports an award of the requested fees.

### 4.   The Circumstances Justify a Modest Lodestar Multiplier.

The district court has discretion to adjust the lodestar upward or downward using a multiplier that reflects a host of reasonableness factors, including "the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." " *Polee v. Cent. Contra Costa Transit Auth.*, 516 F. Supp. 3d 993, 1002–03 (N.D. Cal. 2021).-.  The purpose of a multiplier is "to compensate for the risk of loss generally in contingency cases," because a "lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second half of these functions." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001).

In the Ninth Circuit, lodestar multipliers ranging from one to four are frequently awarded in class actions such as this one. *See Vizcaino*, 290 F.3d at 1051 n.6 (showing most multipliers are in the 1.5 to 3.0 range); *Mergens v. Sloan Valve Co.*, No. CV1605255SJOSKX, 2017 WL 9486153, at *12 (C.D. Cal. Sept. 18, 2017) (approving 1.71 multiplier in claims-made toilet repair reimbursement settlement); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1010 (N.D. Cal. 2015) ("the precise multiplier (1.7) is well within the range approved in the Ninth Circuit in other successful class actions.") (citing cases); *Hopkins v. Stryker Sales Corp.*, 11CV2786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d 1160, 1170 (C.D.

Cal. 2010) ("Where appropriate, multipliers may range from 1.2 to 4 or even higher."); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995) (holding that a multiplier of 3.6 was "well within the acceptable range for fee awards in complicated class action litigation" and that "[m]ultipliers in the 3-4 range are common"); *see also Vaughn v. American Honda Motor Co.*, 627 F. Supp.2d 738, 751 (E.D. Tex. 2007) (approving 2.26 multiplier to lodestar due to contingent and complexity of litigating defect action against automobile defendant); *O'Keefe v. Mercedes-Benz USA LLC*, 214 F.R.D. 266, 311 (E.D. Pa. 2003) (approving multiplier of 2.95 due to uncertainty of undertaking automobile case involving allegation of "fraudulent concealment" of alleged product defect); *In re General Motors Corp. Pickup Fuel Tank Prods. Liability Litig.*, 1994 WL 30301, at *4 (E.D. Pa. Feb. 2, 1994) (approving multiplier of 3 to lodestar due to difficulty of proving merits of case and that "reasonableness is further supported by the fact that the multiplier will continue to be reduced by additional work done by plaintiffs' counsel"). Under California law, multipliers of 2 to 4 or even higher are also typical. *See Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) (applying California law and finding multiplier of 3.07 "well within the range of reasonable multipliers"); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008) (affirming 2.5 multiplier).

Here, taking into account the base lodestar of $8,759.878, the requested attorney's fee reflects a multiplier of 1.24, well within the range for reasonable multipliers. The multiplier will also decrease as Class Counsel continue to devote additional time toward final settlement approval, settlement administration, and class member inquiries in the coming months. Therefore, the lodestar cross-check confirms the reasonableness of awarding the 25% fee. *See Laffitte v. Robert Half Int'l Inc.*, 1 Cal.5th 480, 496 (2016) ("If the implied multiplier is reasonable, then the cross-check confirms the reasonableness of the percentage-based fee").

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY FEES, COSTS, EXPENSES, AND SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST

The results here are a testament to Class Counsel's high degree of skill and experience: another justification for the requested 1.24 multiplier. The skills and experience of Class Counsel were necessary here because of both the complexity of the issues in this case, and the substantial risks and burdens that Class Counsel undertook. Taking this case on a contingency basis meant that Class Counsel was not guaranteed ***any*** payment, despite all of their efforts.  And the risk of failure was significant: the U.S. Supreme Court's decisions in cases like *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), *Comcast Corp. v. Behrend*, 469 U.S. 27 (2013), and the Ninth Circuit's decisions in *Sonner* and *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027 (9th Cir. 2020) (requiring 100 named plaintiffs in order to bring claim under Magnuson Moss Warranty Act), have increased the effort and expense required to succeed in class actions such as this one, because defendants are more likely to challenge certification and less likely to settle.[10]  Attorneys must therefore engage in

---

[10] *See, e.g.*, Sean Farhang, SUPREME COURT OVERSIGHT OF THE FEDERAL RULES: A PRINCIPAL-AGENT PROBLEM?, 72 DePaul L. Rev. 363, 394 n.38 (2023) ("*Wal-Mart* is widely regarded as making commonality more difficult to satisfy, and *Comcast* is typically seen as taking a restrictive approach to predominance."); Elena Kamenir, SEEKING ANTITRUST CLASS CERTIFICATION: THE ROLE OF INDIVIDUAL DAMAGE CALCULATIONS IN MEETING CLASS ACTION PREDOMINANCE REQUIREMENTS, 23 Geo. Mason L. Rev. 199, 201–02 (2015) ("If there is ultimately a prevailing interpretation of *Comcast* among the courts, therefore, it can potentially have far-reaching consequences beyond resolving issues regarding predominance and class certification. For example, an interpretation requiring proof of common damages for certification can affect the plaintiff class's ability to access the courts, thereby decreasing private . . . enforcement and diminishing the role of Rule 23(b)(3) class action suits in market regulation.  An interpretation requiring a matching of theory of liability with theory of damages at the certification stage will have important tactical implications regarding expert testimony, as well."); Spencer, A. Benjamin, CLASS ACTIONS, HEIGHTENED COMMONALITY, AND DECLINING ACCESS TO JUSTICE, 93 B.U.L. Rev. 441, 442 (Mar. 2013) ("an unfortunate consequence of [] *Dukes*...will be the enlivening of challenges to class certifications that would otherwise never have been imagined."); Robert G. Bone, THE MISGUIDED SEARCH FOR CLASS UNITY, 82 Geo. Wash. L. Rev. 651, 698 (2014) (noting "tightening of certification requirements over the past fifteen years"); Lee F. Berger, Sophia A. Vandergrift, THE ANTITRUST DIVISION'S STAY PRACTICE IN CIVIL LITIGATION PARALLELING CRIMINAL INVESTIGATIONS IS GOOD POLICY, at 86, 89 (Antitrust, Fall 2013) (noting "more rigorous standards now applied to class certification under *Comcast* and *Walmart*, which heighten the requirements for showing class-wide impact and damages through expert analysis") (footnote omitted).

23

more pre-complaint work and extensive fact discovery in the litigation. *See* Lamm, Katherine E., Work in Progress: Civil Rights Class Actions After Wal-Mart v. Dukes, 50 HARV. C.R.-C.L.L. REV. 1534, 165-67 (2015) ("*Dukes* subjects plaintiffs to heightened scrutiny at class certification consistent with a broader trend of forcing litigants to bring more to the table in order to get to trial, including an increased burden of pleading and procedural hurdles throughout the pretrial process"). Class Counsel should be compensated accordingly. *Chemical Bank v. City of Seattle*, 19 F.3d 1291, 1299-1301 (9th Cir. 1994) ("attorneys whose compensation depends on their winning the case, must make up in compensation in the cases they win for the lack of compensation in the cases they lose.").

Finally, the lodestar multiplier is necessary to compensate Class Counsel for the additional uncompensated work they will continue to do on this case. Not only must Class Counsel brief and argue a final approval motion, addressing any class member concerns, but they have been, and will undoubtedly continue to communicate with Class Members about their individual recoveries.

### 5. A "percentage of fund" cross-check confirms the Reasonableness of Class Counsel's fee request

The amount of Attorneys 'Fees and Costs also passes muster under a percentage cross-check against the "constructive fund" of relief made available to the Settlement Class. *See Brommfield v. Craft Brew All., Inc*., No. 17-cv-01027-BLF, 2020 WL 1972505, at 816 (N.D. Cal. Feb. 5, 2020) ("The constructive fund to conduct this cross-check may include settlement administration costs, litigation expenses, and the allotment for attorneys' fees in its valuation of a constructive fund for its percentage of recovery cross-check analysis because this is the 'total amount defendants were willing to spend to settle the case." ') (quoting *In re Bluetooth*, 654 F.3d at 945). Here, the "constructive fund" is approximated to be upwards of $33 million, including the cash benefits availane to the Settlement Class, the full amount of notice and administrative costs, and the full amount of the

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY FEES, COSTS, EXPENSES, AND SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST

attorneys' fees and costs.  Cecchi Decl. ¶¶ 11-13.   Thus, the requested $10,900,000 for attorneys' fees accounts for less than one-third the total constructive value of the Settlement, which is within the range of reasonableness. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457 (9th Cir. 2000) (affirming fee award of 33 1/3% of fund); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (awarding attorneys' fees equal to 33% of settlement fund); *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA, 2009 WL 839841, at *7 (S.D. Cal. Mar. 30, 2009) (awarding attorneys' fees of 30% for first $10 million of the settlement fund and 25% for the remaining $2 million).)  "[I]n most common fund cases the award exceeds [the 25%] benchmark." Knight v. Red Door Salons, Inc., No. 08-01520 SC, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (citing Activision, 723 F. Supp. at 1377-78 ("nearly all common fund awards range around 30%")). And courts in similar consumer class actions have approved the allocation of 30% of funds to attorney fees.  *See e.g., Weeks*, 2019 WL 8135563, at *3 (holding that "[t]he 30% award [in a consumer protection case] is also on par with similar cases") (citing *Vizcaino*, 290 F.3d at 1047; *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2019 WL 1791420, at *8 (N.D. Cal. Apr. 24, 2019) (awarding 30%); *Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *12 (N.D. Cal. Sept. 29, 2016) (finding award of 30% reasonable in consumer fraud case), *aff'd*, 754 F. App'x 510 (9th Cir. 2018)).

### C.  Class Counsel's Request for Reimbursement of Expenses is also Reasonable

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1048; *see also Destefano v. Zynga*, Inc., 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016) ("courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel

25

expenses."). Here, Class Counsel seek reimbursement of $12,048.11 in out-of-pocket costs incurred during this litigation. That amount is more than reasonable given the significant legal work performed in this case, including taking and defending the depositions of over 13 fact witnesses, including those of Plaintiffs (some of whom appeared more than once), taking and defending the depositions of nine (9) experts, responding to numerous motions filed by Honda, moving for class certification and opposing Honda's appeal of the class certification decision. This request is also adequately documented. *See* Seeger Decl., Ex C; Cecchi Decl., Ex C; Berman Decl., Ex C; Shah Decl., Ex C; Steiner Decl., Ex C. Lastly, this request does not exceed the amount stated in the class notice. For these reasons, Class Counsel should recover these expenses.

### D. Service Awards

Plaintiffs request that the Court award $7,500 in incentive fees to the Class Representatives. "Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Service awards serve a dual purpose: they advance public policy by encouraging individuals to spearhead efforts to protect the rights of a class of similarly aggrieved individuals, and they compensate those individuals for their time, effort, and inconvenience. *See, e.g., Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding named plaintiff $50,000 for "participat[ing] in 49 telephone conferences and five meetings with Class Counsel, attend[ing] three pre-trial hearings, ha[ving] his deposition taken twice, and testif[ying] at trial"). "It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778 JCS, 2011 WL 1230826, at *31 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. 06-cv-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011). An incentive award of $5,000 is presumptively reasonable, and an award of $25,000 or even

$10,000 is considered "quite high." *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) (*citing Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)). Nonetheless, a higher award may be appropriate where class representatives expend significant time and effort on the litigation and face the risk of retaliation or other personal risks; where the class overall has greatly benefitted from the class representatives' efforts; and where the incentive awards represent an insignificant percentage of the overall recovery. *Wren*, 2011 WL 1230826, at *32.

In this case, Plaintiffs have demonstrated that Plaintiffs Lindsay and Jeff Aberin, Don Awtrey, Charles Burgess, John Kelly, and Joy Matza are each entitled to an incentive award of $7,500. These Class Representatives contributed substantially to the prosecution of this case. Cecchi Decl., ¶ 32. Foremost, upon becoming involved, they each made a decision to act as advocates on behalf of hundreds of their peers, and taking the risk of the litigation solely on themselves. Each made their vehicles available for day-long inspections and were deposed, some on more than one day, assisted in the production of documents and in responding to interrogatories, and otherwise remained engaged in prosecuting their claims on behalf of the class they sought to represent. *See id.*

## III.    Conclusion

For all of these reasons, Plaintiffs and Class Counsel respectfully request that the Court approve an award of $11,937,458.66 to Class Counsel for attorneys' fees and expenses, and approve service awards for Class Representatives Lindsay and Jeff Aberin, Don Awtrey, Charles Burgess, John Kelly, and Joy Matza in the amount of $7,500 each.

Dated: April 4, 2024                                    Respectfully submitted,

By:  */s/ Christopher A. Seeger*
Christopher A. Seeger (admitted *pro hac vice*)
SEEGER WEISS LLP

27

55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone:  (973) 639-9100
Facsimile: (973) 679-8656
Email: cseeger@seegerweiss.com

/s/ James E. Cecchi
James E. Cecchi (admitted *pro hac vice*)
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
Email: jcecchi@carellabyrne.com

*Co-Lead Class Counsel*

Steve W. Berman (pro hac vice)
Catherine Y.N. Gannon (pro hac vice)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: catherineg@hbsslaw.com

Shana E. Scarlett (SBN 217895)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: shanas@hbsslaw.com

James Shah
Kolin Tang
Alec Berin (admitted pro hac vice)
SHEPHERD, FINKELMAN, MILLER & SHAH,
LLP
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 429-5272
Facsimile: (866) 300-7367

Toby James Marshall (pro hac vice)
Amanda M Steiner
Brittany A. Madderra (pro hac vice)
Terrell Marshall Law Group PLLC
936 North 34th Street, Suite 300
Seattle, WA 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

28

1

2

Email: tmarshall@terrellmarshall.com
Email: asteiner@terrellmarshall.com
Email: bmadderra@terrellmarshall.com

*Attorneys for Plaintiffs*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR ATTORNEY FEES, COSTS, EXPENSES, AND SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST