Christopher A. Seeger (*pro hac vice*)
Scott George (*pro hac vice*)
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Telephone: (973) 639-9100
Facsimile: (973) 679-865a6
Email: cseeger@seegerweiss.com

James A. Cecchi (pro hac vice)
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO LLP
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
Email: jcecchi@carellabyrne.com

*Co-Lead Class and Settlement Class Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| *Aberin et al. v. American Honda Motor Co., Inc.* | Case No. 4:16-cv-04384-JST<br><br>**DECLARATION OF JAMES E. CECCHI IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVES' SERVICE AWARDS** |

I, JAMES E. CECCHI, declare:

1. I am an attorney licensed to practice in New Jersey and am a shareholder of the law firm of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, interim co-Class Counsel for Plaintiffs in this action. I have been admitted pro hac vice in this matter. Our firm, along with the law firm of Seeger Weiss LLP, were retained by the class representatives in this matter. I have personal knowledge of the information stated below based on my knowledge of this case and review of the file and would be competent to testify thereto. I submit this declaration in support of Plaintiffs' motion for attorney's fees, costs, and class representative service awards.

2. This action and the Settlement involve owners and lessees of certain Acura automobiles: model years 2004-2008 TL, 2005-2008 MDX, and 2007-2009 RDX, purchased in the states of California, Kansas, New York, and Washington. Plaintiffs claim that the Defendant American Honda Company, Inc. ("Honda" or "AHM") failed to disclose a design defect in the "hands-free" calling system, HandsFreeLink™ ("HFL"), that causes it to fail to switch off when not in use and continue to operate as if it were in use, even when the vehicle was off and the key removed. This design defect in the HFL system causes excessive parasitic electrical drain, which results in frequent battery replacements and, once the warranty had lapsed, class members either hundreds of dollars to replace the HFL unit when the defect is triggered (as Honda's Service Bulletins recommend) or disconnecting the HFL unit and losing use of the HFL feature. The defect in the HFL system also creates a safety hazard, as a compromised vehicle battery may fail to start at any time, including if the owner is far from home or experiencing an emergency, or can cause a vehicle to lose power, including the use of headlights, during operation.

3. Plaintiffs assert that the alleged defect caused them to suffer out-of-pocket losses Plaintiffs assert that the alleged defect caused them to suffer out-of-pocket losses claims under

DECLARATION OF JAMES E. CECCHI IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND CLASS
REPRESENTATIVES' SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST                                1

the laws of California, Kansas, New York, and Washington.

4. The case has lasted nearly eight years and has been vigorously defended by defendant as was its right. As a consequence, Class Counsel has invested a significant quantum of effort prosecuting the case to this point. By way of example, Class Counsel incurred thousands of hours of attorney time responding to Honda's numerous efforts to dismiss or narrow this case, investigating the facts and legal claims against Honda, as well as communicating with and vetting the claims of the Plaintiffs. Class Counsel researched and authored five complaints (ECF Nos. 1, 29, 98, 148, 403), and opposed a motion to transfer venue (ECF Nos. 30-34), two motions for spoliation of evidence and sanctions (ECF Nos. 105, 116-17), a motion for judgment on the pleadings (ECF Nos. 355, 365), a motion for summary judgment (ECF Nos. 357-58, 366), six motions to strike Plaintiffs' expert witnesses (ECF Nos. 264-68, 359-60), and three motions to dismiss by Honda (ECF Nos. 42-44, 105, 407). Class counsel also successfully moved for class certification (ECF Nos. 259, 260, 275-79, 281, 291), and successfully opposed Honda's Rule 23(f) petition for permission to appeal the Court's class certification approval decision, ECF No. 302; Dkt. No. 21-80033 (9th Cir.). Throughout this process, Class Counsel participated in regular court conferences regarding the efficient and fair management of this litigation, ensuring that the interests of the Class were vigorously represented.

5. Class Counsel also engaged in significant discovery to ensure that they fully understood all the strengths, weaknesses, and risks associated with Class Members' claims before engaging in settlement negotiations. Class Counsel drafted and served multiple sets of written discovery and subpoenas. Class Counsel also drafted and served responses to multiple sets of written discovery propounded by Honda. Class Counsel further took depositions of Honda's experts, its employees and of Honda itself and defended Honda's depositions of Plaintiffs' experts and Plaintiffs (some of whom were deposed on two occasions). The fulsome exchange of

DECLARATION OF JAMES E. CECCHI IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND CLASS
REPRESENTATIVES' SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST                                        2

discovery between the parties also resulted in a substantial number of discovery disputes that Class Counsel navigated to ensure Class Members' interests were represented to the fullest extent possible.

6. As set forth below, I (and my firm) have extensive experience in consumer class action litigation. Christopher Seeger and I have been appointed as lead counsel in similar class actions. In settling this case, we considered the risk of litigation, as well as the costs and consequences of delay had this matter not been resolved by way of settlement. Furthermore, settlement negotiations were extensive and conducted at arm's length.

7. I participated in the extensive settlement negotiations in this matter at two key junctures. Before undertaking the time and expense of expert discovery in advance of class briefing, and the subsequent costs of class briefing and responding to Defendant's *Daubert* challenges, Plaintiffs undertook to resolve their claims with Defendant through mediation before Ellen Relkin on February 11, 2020. ECF Nos 229, 291. The mediation were unsuccessful but Plaintiffs' motion for class certification, and opposition to Defendant's challenges to their experts, were eventually successful.

8. While the litigation of the class claims proceeded, I conducted private discussions and investigation, and independent verification of the facts in this matter. In addition, the parties mediated the case with Hon Daniel J. Buckley (ret.), a well-respected, neutral mediator who is experienced in mediating claims of the kind at issue in this action, on September 22, 2022 and October 12, 2022. I participated personally in these mediation sessions.

9. The negotiations in this matter were at arm's length and the defendant Honda's position was zealously represented. I thoroughly vetted and discussed the merits and procedural obstacles, including the human and financial costs of protracted litigation on the demographic that

DECLARATION OF JAMES E. CECCHI IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND CLASS
REPRESENTATIVES' SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST                                     3

makes up the class. We considered various potential outcomes, and determined that the settlement obtained is the very best outcome we could achieve for the class under the circumstances. The issues of incentive awards, costs of administration and attorneys' fees were all negotiated after, separate and apart from the remedies we accomplished on behalf of the class. I believe this settlement is an excellent result, fair and reasonable, and should be approved.

10. As presented in Plaintiffs' motion for preliminary approval, and the supporting Declaration of Christopher A. Seeger. which I incorporate here by reference, the cash benefits available to individual members of the Settlement Class may exceed those that would have been available at trial, but without the attendant risks of trial and subsequent appeals. ECF No. 429-1 at ¶¶ 8-9.

11. Moreover, when viewed as a whole, the Settlement is worth approximately $33 million, which includes the value of cash benefits made available to the Settlement Class, the costs of notice paid for by Honda, the value of the administration of the Settlement, and the attorneys' fees and costs incurred in reaching this settlement. First, the costs of notice, which included direct mailing, a social media component and follow-up remainder emails, is estimated by the Notice Administrator to be $675,000. Bowden Decl. ¶ 28. Second, while Defendant served as the Settlement Administrator, it is estimated by JND, which routinely handles such responsibilities, that the cost of these services by a third party would be approximately $575,000. *Id.* ¶ 29. Third, as set forth below and, in more detail, in the accompanying declarations of my co-counsel here, the attorneys' fees and costs incurred are $9,797,336.66.

12. Fourth, the value of the cash benefits available to the Class is estimated, based in part on an analysis requested by Class Counsel of Richard Eichmann of NERA to update Honda's own projection of the "CRAZY" demand for replacement HFL units undertaken in 2013 (ECF No.

DECLARATION OF JAMES E. CECCHI IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND CLASS
REPRESENTATIVES' SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST                4

259 at 10-12, Exhibit "X"). Attached as Exhibit "H" is a copy of the Report of Richard J. Eichmann. However, an analysis such as Honda's is grounded on tallies of HFL units and does not directly measure the number of disconnections nor consider that the Settlement provides an HFL Disconnection Payment of $350 simply with proof of an "indication that the vehicle suffered from excessive parasitic drain from the HFL Unit that was not replaced" whether or not it was actually disconnected. Settlement Agreement § 2.30. That is, such an analysis is underinclusive.

13. NERA estimates that 27.2% of Class Vehicles will have an HFL unit replaced or disconnected in the ten (10) year period provided for in the Settlement. Of this total, 38,364 vehicles are estimated to have replacement HFL units and 8,413 are estimated to have their HFL units disconnected. Using the cash benefits available through the Settlement, this amounts to upwards of $19 million of potential HFL Replacement Reimbursements and nearly $3 million in HFL Disconnection Payments.

14. Although Plaintiffs remain confident in their position heading into a class trial, Class Counsel acknowledges their claims could face difficulties at trial, and there are substantial risks that the continued litigation would not yield a better result than this Settlement, which are set out at greater length here and in the accompanying Memorandum of Points and Authorities.

15. First, Plaintiffs faced obstacles in having their allegations survive Honda's motion for judgment on the pleadings. One such hurdle is recent Ninth Circuit precedent restricting claims for equitable restitution under the California Legal Remedies Act ("CRLA") and the Unfair Competition Law ("UCL"). In *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), the Ninth Circuit held that in order to plead a claim for equitable restitution under the CLRA and UCL, a plaintiff must allege that they lack an adequate remedy at law. In this Court's recent decision granting in part Honda's motion for judgment on the pleadings, the Court in relevant part

rejected Plaintiffs' claims for restitution under the CLRA and UCL, for failure to plead an inadequate remedy at law, based on *Sonner*. *See Lou v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2022 WL 18539358, at *2 (N.D. Cal. Aug. 26, 2022). The Court granted the Plaintiffs' request for leave to amend those claims to add the allegation that they lack an adequate remedy at law. *Id*. at *7. The Plaintiffs filed a Fourth Amended Complaint ("FAC") on September 9, 2022, alleging that they lacked an adequate remedy at law for purposes of their California CLRA and UCL claims. ECF No. 403 ¶ 717. In response, Honda filed a motion to dismiss the FAC, seeking dismissal of the California CLRA and UCL claims on various grounds, including the ground that under *Sonner* the Plaintiffs had failed to plead the lack of an adequate remedy at law. ECF No. 407. While the Plaintiffs filed an unopposed motion for preliminary approval of a settlement between the parties, ECF No. 429, and in light of the class action settlement the Court has terminated as moot Honda's pending motion to dismiss the California CLRA and UCL claims, ECF No. 428, the fact remains that absent approval of the settlement the Plaintiffs' California CLRA and UCL claims faced an uncertain future.

16. Further, additional hurdles facing Plaintiffs' claims absent the settlement approval are motions of Honda to strike the expert witness testimony of Plaintiffs' experts Nidhi Agrawal and David Gilbert, ECF Nos. 359, 360, and Honda's motion for summary judgment, ECF No. 357, 366, all of which the Court terminated, ECF No. 428, pending approval of the settlement.

17. Lastly, absent approval of a settlement, and assuming their success on the pending motions of Honda, Plaintiffs' success at trial and on any future appeals to the Ninth Circuit by Honda is not guaranteed.

18. With regard to attorneys' fees, costs and service awards, the Settlement Agreement

(§§ 5.3-5.5) provides verbatim:

AHM agrees to pay reasonable attorneys fees and expense reimbursement to Class Counsel and reasonable service awards to the Named Plaintiffs, as approved by the Court, and as consistent with the provisions of this Settlement Agreement. The Parties have not yet agreed on reasonable amounts for attorneys fees and reimbursable litigation expenses to be paid to Class Counsel (the Class Counsel Fees and Expenses Award"). The Parties also have not yet agreed on appropriate amounts for Service Awards for the Named Plaintiffs. The Parties continue to negotiate to reach agreement on Class Counsel Fees and Expenses Award as well as agreement on the amounts of the Service Awards. If the Parties are unable to reach agreement, the Parties will attempt to narrow the dispute(s) as much as possible and Plaintiffs will apply to the Court for: (1) an order awarding the Class Counsel Fees and Expenses; and (2) for an order awarding Service Awards, either or both of which AHM may oppose.

Class Counsel will apply to the Court for the total amount of Class Counsel Fees and Expenses Award and Service Awards concurrently with the submission of their motion in support of the Final Order and Judgment. In no event, unless there is a contrary agreement by the Parties, will AHM pay Class Counsel Fees and Expenses or Service Awards approved by the Court (a) prior to the Effective Date; and/or (b) prior to the date that the order(s) awarding the Class Counsel Fees and Expenses and/or Service Awards become Final, whichever is later.

The Class Counsel Fees and Expenses Award and Service Awards will be paid separate and apart from any relief provided to the Settlement Class pursuant to this Settlement Agreement. Within forty-five (45) days after the Effective Date, provided that the order(s) awarding Class Counsel Fees and Expenses and/or Service Awards have become Final, and provided that Class Counsel has provided AHM with requisite W-9s and completed wire transfer forms and the relevant trust account information, AHM shall pay, by wire transfer, Class Counsel Fees and Expenses and Service Awards.

19. The declarations and exhibits filed along with this fee application are being submitted by the Plaintiffs' law firms of Carella, Byrne, Cecchi, Brody & Agnello, P.C. (Exhibits A-C), Seeger Weiss LLP (Exhibit D), Hagens, Berman, Sobol Shapiro LLP (Exhibit E), Shepard, Finkelman, Miller & Shah, LLP (Exhibit F), and the Terrell Marshall Law Group PLLC (Exhibit G).

20. Class Counsel seeks approval of attorneys' fees and costs for their work and the work of their co-counsel in the amount of $9,797,336.66, which includes 8,759,878.00 in fees

DECLARATION OF JAMES E. CECCHI IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND CLASS
REPRESENTATIVES' SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST                         7

(based on 11,535.1 hours) and $1,037,458.66 in costs. As set forth in our accompanying Memorandum, this amount has been arrived at through a variety of metrics, including utilizing our accumulated lodestar achieving the result we have. As is normal, our lodestar and fee request does not include the substantial time that will be incurred in the future, including further response and assistance to Settlement Class members, attending the final approval hearings, and any additional work that follows from that hearing. This fact is often overlooked but based on prior experiences, particularly in auto defect cases, this work can amount to hundreds of thousands of dollars of attorney time.

21. The time and expense information provided in the charts annexed to this declaration is taken from time and expense records and documentation prepared and maintained by our firm. I reviewed the firm's time and expense records and documentation when preparing this declaration. I confirmed the accuracy of the records, as well as the necessity for, and reasonableness of, the time and expenses committed to this litigation. As a result of this review, I believe the time reflected in the firm's lodestar calculation and the expenses for which payment is sought are reasonable and were necessary for the effective and efficient prosecution and resolution of the Action. In addition, I believe that the expenses are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

22. The lodestar amount of $1,766,717.50 was calculated using the firm's current rates (or, in the case of individuals who no longer work at our firm, using their rate as of the date they last worked for the firm). A breakdown of the time by timekeeper is provided in Exhibit A and by task is provided in Exhibit B.

23. Our firm also seeks an award of expenses of $435,720.74 in connection with the prosecution and resolution of the Action. The expenses pertaining to the Action are reflected in

DECLARATION OF JAMES E. CECCHI IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND CLASS
REPRESENTATIVES' SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST                    8

the books and records of our firm. These books and records are prepared from receipts, check records, expense vouchers, and other documents and are an accurate record of the expenses. The expenses incurred by our firm are summarized by category in Exhibit C.

24. Our firm's rates have been approved by courts around the country, including in 2023 in *In re National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio); 2020 in *In re: Mercedes-Benz Emissions Litigation*, No. 16-881 (D.N.J.); in 2019 in *In re Volkswagen Timing Chain Product Liability Litigation*, No. 16-2765 (D.N.J.); in 2016 in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (N.D. Cal.); and *In Re: Vytorin/Zetia Marketing, Sales Practices and Products Liability Litigation*, MDL No. 1938 (D.N.J.). Also, unlike many plaintiffs' firms, Carella, Byrne also represents clients on an hourly basis at rates comparable to those reflected for Carella, Byrne in this fee petition. In particular, I was retained this week in a patent infringement case at the same hourly rate I requested here. In addition, the approved rate for senior attorney's in the Opioid litigation is higher than the rate reflected in my petition here.

### EXPERIENCE AND QUALIFICATIONS OF CARELLA BYRNE TIME KEEPERS

25. The experience and qualifications of each Carella Byrne timekeeper is summarized below.

26. I graduated from Colgate University in 1989 with honors, majoring in History and Political Science. I was Executive Editor of the Colgate News. In 1989, I graduated from Fordham University School of Law, where I was a member of the International Law Journal. Following law school, I served as a law clerk to the Honorable Nicholas H. Politan in the United States District Court, District of New Jersey from 1989-1991. I then served in the United States Department of

DECLARATION OF JAMES E. CECCHI IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND CLASS
REPRESENTATIVES' SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST                         9

Justice as an Assistant U.S. Attorney for the District of New Jersey, from 1991 until 1994. In that capacity, I participated in numerous significant criminal prosecutions involving money laundering, narcotics smuggling and violations of federal firearms laws.

27. Since 1994, I have been employed by Carella, Byrne, Cecchi, Brody & Agnello, which is one of the leading consumer class action law firms in the New Jersey – New York metropolitan area, as well as in the United States. I am a partner in the firm's litigation department and a member of my firm's executive committee. I specialize in complex federal class actions, and have extensive experience litigating and resolving complex class actions both in the Multi-District Litigation context as well as otherwise. My firm's class action practice was founded and is led by me, and we have prosecuted some of the nation's most complex and important consumer class actions effecting consumer rights in the last ten years.[1] I have played a prominent role in litigating and successfully resolving a variety of these class actions against some of the largest corporations in the country, resulting in over $100 million recovered for consumers. In cases involving automobile manufacturers, I was the primary attorney at my firm involved in

---

[1] *See, e.g., In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*, No. 16-3087, 2022 WL 525807, at *5 (D.N.J. Feb. 22, 2022) (finding that Carella Byrne as "Lead Counsel has extensive experience and expertise in litigating complex class actions") (citing cases); *In re Mercedes-Benz Emissions Litig.*, No. 16-881, 2021 WL 7833193, at *9 (D.N.J. Aug. 2, 2021) (characterizing Carella Byrne and two other firms as "qualified and experienced in complex class litigation and who have resources, zeal, and a successful record in class cases"); *Sapir v. Averback*, No. 14-07331, 2015 WL 858283, at *3 (D.N.J. Feb. 26, 2015) ("Carella Byrne, Cecchi, Olstein, Brody & Agnello, P.C., is a well-respected law firm, and its attorneys have experience litigating complex commercial actions."); *Thomas v. Gerber Prod. Co.*, No. 12-1098, 2012 WL 1606627, at *2 (D.N.J. May 8, 2012) ("[I]t is clear that Carella Byrne has sufficiently demonstrated its qualifications as experienced litigators in the area of class action and complex litigation," and "has extensive experience in class action litigation dealing with consumer fraud[.]"); *Waudby v. Verizon Wireless Servs., LLC*, 248 F.R.D. 173, 176 (D.N.J. 2008) ("Carella Byrne has extensive class action experience in class actions involving cases" and "are proven, high-powered litigators involved in some of the most complex class-action lawsuits in the country[.]").

DECLARATION OF JAMES E. CECCHI IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND CLASS
REPRESENTATIVES' SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST                   10

successfully resolving class actions, including: *Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (N.D. Cal.), in which I was appointed to the Steering Committee and as Settlement Class Counsel on behalf of diesel vehicle owners who alleged they were defrauded by Volkswagen's representations of its diesel vehicles as being environmentally friendly, when in reality VW had installed defeat devices designed to evade governmental emissions test procedures; the settlement was in excess of $15,000,000,000 for consumer fraud and warranty claims. In *In re: Takata Airbag Products Liability Litigation*, MDL No. 2599 (S.D. Fla.), I was appointed to Steering Committee and as Settlement Class Counsel; the settlement in excess of $1,500,000,000 for consumer fraud and warranty claims arising from use of defective and dangerous airbags. In *In re: Mercedes-Benz Emissions Litigation*, No. 16-cv-881 (D.N.J.), I was appointed as interim co-lead counsel for the plaintiffs and the proposed class in another case arising out of the alleged use of a defeat device to evade U.S. emissions regulations; the settlement value was in excess of $700,000,000. In *In re: Mercedes-Benz Tele-Aid Contract Litigation*, MDL No. 1914, I was appointed co-lead counsel in a case involving a $40,000,000 settlement of consumer fraud claims arising from Mercedes' failure to notify "Tele-Aid" customers of mandated change from analog to digital system, and its charging customers to replace a system Mercedes knew would be obsolete.

28.   I am also currently co-lead interim counsel in a number of pending automobile defect cases, including: *Tijerina v. Volkswagen Group of Am. In*, No. 21-18755 (D.N.J.); *Rose v. Ferrari North America, Inc.*, No. 21-20772 (D.N.J.); *Cohen v. Subaru Corp.*, No. 20-8442 (D.N.J.); *Flynn-Murphy v. Jaguar Land Rover Automotive, PLC*, No. 20-14464 (D.N.J.). ADD ARC MDL,

DECLARATION OF JAMES E. CECCHI IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND CLASS
REPRESENTATIVES' SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST                    11

29. I have also been involved as class counsel in numerous other non-automobile related class actions that either resulted in court-approved settlements on behalf of consumers or are still ongoing.[2]

30. James O'Brien joined Carella Byrne as counsel in 2017 after almost three decades of practice in both the public and private sectors, and after 16 years at Seeger Weiss LLP. He graduated from the New England School of Law in 1988, where he served as a symposium editor on the law review. Thereafter, Mr. O'Brien served as law clerk with the U.S. Department of Labor, Office of Administrative Law Judges, in Washington, D.C. He then entered the U.S. Department of Justice through the Attorney General's Honors Program. He served for eleven years as a Special Assistant U.S. Attorney in the Civil Division of the U.S. Attorney's Office, Southern District of New York, where he was nominated three times for the Executive Office for United States'

---

[2] *See In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, MDL No. 2904 (D.N.J.) (appointed sole lead counsel in national multi-district data breach litigation); *In re National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio) (appointed to plaintiffs 'executive committee relating to marketing of opioid drugs; *In Re: Vytorin/Zetia Marketing, Sales Practices and Products Liab. Litig.*, MDL No. 1938 (D.N.J.) *In re Schering-Plough/Enhance Sec. Litig.*, Civil Action No.: 08-cv-397 (D.N.J.); *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, Civil Action No.: 08-cv-2177 (D.N.J.) (consumer and securities fraud claims arising from marketing and sale of anti-cholesterol drugs Vytorin and Zetia) (appointed co-lead counsel in consumer cases which settled for $41,500,000 and liaison counsel in securities cases which collectively settled for $688,000,000.); *In re: Liquid Aluminum Sulfate Antitrust Litig.*, MDL No. 2687 (D.N.J.) (appointed as lead counsel and secured settlement of greater than $100,000,000.); *In Re Effexor XR Antitrust Litig.,* Civil Action No. 11-cv-5661 (D.N.J.) (claims on behalf of indirect purchasers of brand-name drug alleging that manufacturer obtained patent by fraud and enforced patent by sham litigation to maintain illegal monopoly of brand-name drug; appointed as chair of plaintiffs 'indirect purchaser executive committee.); *Davis Landscape v. Hertz Equipment Rental*, Civil Action No. 06-cv-3830 (D.N.J.) (co-lead counsel in settlement valued at over $50,000,000 on behalf of contested nationwide class asserting claims that HERTZ' loss/damage waiver charges violated the New Jersey Consumer Fraud Act because it provides no benefit to customers); *In Re: Merck & Co., Inc., Securities, Derivative & "ERISA" Litig.*, MDL No. 1658 (D.N.J.) (securities fraud claims arising from Merck's failure to disclose problems with commercial viability of anti-pain drug Vioxx which settled for more than $1,000,000,000.)

DECLARATION OF JAMES E. CECCHI IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND CLASS
REPRESENTATIVES' SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST                12

Attorneys' Director's Award for Superior Performance as a Special Assistant United States Attorney, and twice for the U.S. Attorney General's John Marshal Award for Participation in Litigation. He co-authored *Administrative Housekeeping and Ethical Matters in Mass Tort MDLs and Class Actions*, published in the Sedona Conference Journal in 2012, and wrote a chapter for *MDL Standards and Best Practices* published by the Duke Law Center for Judicial Studies in 2014. He also co-authored an amicus brief that was filed in a class action case before the U.S. Supreme Court, *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012). *See* Brief of Pharmaceutical Representatives as Amici Curiae in Support of Petitioners, *Christopher v. Smithkline Beecham Corp.*, No. 11-204, 2012 WL 416749 (U.S. filed Feb. 6, 2012). At Carella Byrne, Mr. O'Brien works on a diverse range of class action and appellate cases. Mr. O'Brien was brought into this case at the class certification stage and assisted in all aspects of that motion as well as in researching and drafting all subsequent briefs, motions and pleadings filed by the Plaintiffs.

31. Lindsey Taylor was a former partner at Carella Byrne until 2023. Mr. Taylor had practiced law at Carella Byrne for 21 years, focusing on class actions. Mr. Taylor performed work for this case since its inception, including pleadings, discovery-related motions, motions to dismiss, summary judgment, and expert discovery.

**EFFORTS OF CLASS REPRESENTATIVES**

32. Class Representatives Lindsay and Jeff Aberin, Don Awtrey, Charles Burgess, John Kelly, and Joy Matza made significant contributions to the prosecution of this case by devoting their time, effort, and reputation to this matter. They each made a decision to act as advocates on behalf of tens of thousands of their peers, and taking the risk of litigation solely upon themselves, even as the litigation continued for years. Each made their vehicles available for day-long

inspections and were deposed, some on more than one day, assisted in the production of documents and in responding to interrogatories, and otherwise remained engaged in prosecuting their claims on behalf of the class they sought to represent.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 4th day of April, 2024.

Dated: April 4, 2024              Respectfully submitted,

By:  /s/ James E. Cecchi
James E. Cecchi (admitted *pro hac vice*)
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
Email: jcecchi@carellabyrne.com

DECLARATION OF JAMES E. CECCHI IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND CLASS
REPRESENTATIVES' SERVICE AWARDS
CASE NO. 4:16-CV-04384-JST                 14