1   SHOOK, HARDY & BACON L.L.P.
    Michael L. Mallow (SBN 188745)
2   mmallow@shb.com
    Rachel A. Straus (SBN 268836)
3   rstraus@shb.com
    2121 Avenue of the Stars, Suite 1400
4   Los Angeles, CA 90067
    Telephone:  424.285.8330
5   Facsimile:   424.204.9093

6   Amir M. Nassihi (SBN 235936)
    anassihi@shb.com
7   555 Mission Street, Suite 2300
    San Francisco, CA 94105
8   Telephone:  415.544.1900
    Facsimile:   415.391.0281
9
    Attorneys for Defendant
10  AMERICAN HONDA MOTOR CO., INC.

11

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14                    **OAKLAND DIVISION**

15  LINDSAY and JEFF ABERIN (a married    Case No. 4:16-cv-04384-JST
    couple), DON AWTREY, CHARLES
16  BURGESS, JOHN KELLY, YUN-FEI          Assigned to: Hon. Jon S. Tigar
    LOU, and JOY MATZA, individually and
17  on behalf of all others similarly situated,   **DEFENDANT AMERICAN HONDA
                                          MOTOR CO., INC.'S OPPOSITION
18          Plaintiffs,                   TO PLAINTIFFS' MOTION FOR
                                          ATTORNEYS' FEES AND COSTS**
19          v.
                                          Hearing Date: August 15, 2024
20  AMERICAN HONDA MOTOR CO.,             Time: 2:00 p.m. PST
    INC.,                                 Courtroom: 6
21
            Defendant.
22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION AND FACTUAL BACKGROUND ................................................. 1

ARGUMENT ........................................................................................................... 2

I.  The number of hours incurred in the lodestar are unreasonably high,
    particularly given Class Counsels' improper billings, inefficient staffing,
    and excessive time spent on various activities. ........................................... 2

    A.  Many hours appear to be billed to the wrong matters. ........................... 3

    B.  The case was inefficiently staffed, and Class Counsel spent an
            unusual amount of time on certain litigation-related tasks,
            warranting a reduction for inefficiency ....................................... 4

II.  The hourly rates requested are unreasonably high. California federal
     courts do not allow the rates requested, particularly given that Class
     Counsel have provided so little support to justify the rates requested. ............... 5

    A.  This Court has not awarded rates this high in the past. ........................... 6

    B.  Class Counsel have not justified—and cannot justify—their rates. ......... 7

    C.  As shown by Mr. O'Connor, Class Counsels' requested rates are
            unreasonably high and should be reduced. ................................. 9

III.  No positive lodestar multiplier should be permitted. Class Counsel have
      not justified their multiplier request. .................................................. 11

IV.  A downward adjustment multiplier is warranted given that Plaintiffs did
     considerable work on states and claims that did not succeed. ......................... 13

V.  Class Counsel's detailed time records do not line up to their requests.
    They should not be compensated for deficits. ............................................. 16

VI.  Given the lodestar cross check required by *Lowery*, Class Counsel are
     entitled to substantially less than the Adjusted Lodestar. ................................ 17

VII.  AHM opposes Class Counsels' vague expenses requests; it takes no
      position on Plaintiffs' request for service awards. .................................... 20

CONCLUSION ....................................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: Aearo Tech. LLC*,
  22-bk02890-JJGG, Dkt. 2107 (Nov. 9, 2023 S.D. In.) ........................................... 8

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................... 18, 19

*Briseno v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) ................................................................ 2, 4

*Chambers v. Whirlpool Corp.*,
  980 F.3d 645 (9th Cir. 2020) ..................................................................... 4

*City of Burlington v. Dague*,
  505 U.S. 557 (1992) ............................................................................. 12

*Dekker v. Vivint Solar, Inc.*,
  2023 WL 5498063 (N.D. Cal. Aug. 23, 2023) ..................................................... 18

*Erickson v. Builder Advisor Grp. LLC*,
  2023 WL 3579317 (N.D. Cal. Feb. 3, 2023) ....................................................... 6

*Haralson v. U.S. Aviation Services Corp.*,
  2021 WL 5033832 (N.D. Cal. Feb. 3, 2021) ....................................................... 6

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
  *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ..................... 7, 9

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................. 13

*Herring Networks, Inc. v. Maddow*,
  2021 WL 409724 (S.D. Cal. Feb. 5, 2021) ........................................................ 16

*Hubbard v. Henkel Corp.*,
  2022 WL 22234699 (N.D. Cal. July 25, 2022) ..................................................... 6

ii

*Lee-Klein v. Comm'r of Soc. Sec.*,
  2024 WL 382532 (E.D. Cal. Feb. 1, 2024) ............................................................ 7

*Lowery v. Rhapsody Int'l, Inc.*,
  75 F.4th 985 (9th Cir. 2023) .........................................2, 17, 18, 19, 20

*Lytle v. Carl*,
  382 F.3d 978 (9th Cir. 2004) .................................................................. 13

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ................................................................... 12

*In Re: Optical Disk Drive Prod. Antitrust Litig.*,
  3:10-md-02143-RS (Feb. 21, 2019 N.D. Cal.) ........................................ 8

*In re Outlaw Lab'ys, LP Litig.*,
  2023 WL 6522383 (S.D. Cal. Oct. 5, 2023).......................................... 19

*Parsons v. Ryan*,
  949 F.3d 443 (9th Cir. 2020) .................................................................. 11

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010).......................................................................... 11, 12

*Quackenbush v. American Honda Motor Co., Inc.*,
  2023 WL 8360045 (N.D. Cal. Dec. 1, 2023) ......................................... 13

*Roberts v. City of Honolulu*,
  938 F.3d 1020 (9th Cir. 2019) .............................................................. 5, 6

*Rollins v. Dignity Health*,
  2022 WL 20184568 (N.D. Cal. July 15, 2022) ..................................... 6, 7

*Sanft v. Sims Grp. USA Corp.*,
  2023 WL 6851992 (N.D. Cal. Oct. 16, 2023) .......................................... 7

*Seachris v. Brady-Hamilton Stevedore Co.*,
  994 F.3d 1066 (9th Cir. 2021) ............................................................. 2, 4

*Seal4Safti, Inc. v. California Expanded Metal Prod. Co.*,
  2022 WL 18397130 (C.D. Cal. Dec. 15, 2022)........................................ 6

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab.*
*Litig.*, 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ................................................. 9

*Whalen v. Ford Motor Co.,*
3:13-cv-03072-EMC, Dkt. 553 (Dec. 17, 2019 N.D. Cal.) ...................................... 8

*Yamada v. Nobel Biocare Holding AG,*
825 F.3d 536 (9th Cir. 2016) .................................................................................. 16

**Statutes**

15 U.S.C. § 2301, *et seq.* ............................................................................................. 14

Cal. Bus. & Prof. Code § 17200, *et seq.* ...................................................................... 13

Cal. Civ. Code §1750, *et seq.* ................................................................................. 13, 18

## <u>INTRODUCTION AND FACTUAL BACKGROUND</u>

Class Counsel are requesting a lodestar of nearly $8.76 million, for 11,535 hours of work spread across 54 timekeepers, plus a 1.24 lodestar multiplier equal to an additional $2.1 million. Class Counsels' fee award should be significantly less than the $10.86 million they are seeking.

<u>First</u>, the number of hours incurred are unreasonable. Dozens of hours appear to be billed to the wrong matter. Excessive time was spent on various tasks, and the case was staffed primarily (and, at times, unnecessarily) by senior attorneys. John O'Connor, a well-regarded fee expert, performed a detailed review of Class Counsels' timesheets and determined that "the time [incurred] is disproportionally great in comparison to the work product produced."

<u>Second</u>, the hourly rates are unreasonable. Class Counsel are requesting rates as high as $1,395 for partners and $395 for paralegals. This Court does not appear to have ever awarded rates this high for this type of case. Class Counsel have offered no evidence to support their rate requests, though it is their burden to do so. Mr. O'Connor evaluated Class Counsels' hourly rate requests and believes that significant reductions should be made.

<u>Third</u>, no lodestar multiplier should be awarded. Class Counsel bear the burden of proving the propriety of their multiplier request, but they have put forward nothing but unadorned conclusions. The primary reason they cite for a multiplier is contingent risk, but the U.S. Supreme Court has instructed courts to not allow such a multiplier where, as here, the rates themselves are set to account for contingent risk. The only other rationale Class Counsel offer is to ask for a multiplier for work yet-to-be performed, but they do not explain how an additional $2.1 million—the amount of their multiplier request—could be incurred at the end-stage of this case.

<u>Fourth</u>, the lodestar should be adjusted downward for work on which Class Counsel did not prevail. Up to half of Class Counsels' billings are for causes of action they did not succeed on, including several states and counts which were dropped from

1

the litigation. Courts do not, and this Court should not, award attorneys' fees on unsuccessful claims.

Fifth, Class Counsels' time records do not align with their request. For two timekeepers, the total hours reflected in their timesheets is *less than* the amount Class Counsel put in their moving brief. Class Counsel should not be paid for time for which they did not (and seemingly cannot) provide detailed records.

Sixth, the Ninth Circuit recently confirmed in *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 992 (9th Cir. 2023), that a lodestar cross-check is required. Where, as here, a requested fee award exceeds the benefit to the class, the court must ensure that the attorney fees are proportionate to the benefit to the class.

Seventh, Class Counsel requests "reimbursement of costs in the amount of $1,037,458.66." Mot. at 1. AHM does not oppose $109,458.66 of those costs. $928,000 of those costs, however, are not provided at a level of detail that would allow either AHM or this Court to assess and evaluate their reasonableness and necessity, and for that reason, Class Counsels' request should be denied.

In sum, although AHM acknowledges that Class Counsel is entitled to some amount of attorneys' fees, it should be a fraction of the amount Class Counsel are requesting.

## **ARGUMENT**

**I.    The number of hours incurred in the lodestar are unreasonably high, particularly given Class Counsels' improper billings, inefficient staffing, and excessive time spent on various activities.**

In evaluating the lodestar, a court must look at whether the hours incurred are reasonable. That is because "the lodestar amount alone cannot tell us if the requested fees are reasonable." *Briseno v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021) (cleaned up). "Counsel may have frittered away hours on pointless motions or unnecessary discovery, padding the lodestar." *Id.* (citing *Chambers v. Whirlpool* Corp., 980 F.3d 645, 665 (9th Cir. 2020)). "A district court should exclude from the lodestar

amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary." *Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d 1066, 1083 (9th Cir. 2021).

Class Counsels' reported hours are disproportionate to the work they performed. Hours are billed to the wrong matters. Excessive time is spent on routine tasks. Additionally, the case was inefficiently staffed, with numerous partners and senior attorneys but few junior attorneys and support staff.

AHM engaged John O'Connor, who serves as a consultant and expert witness in attorney fee disputes, to offer his view of the reasonableness of the number of hours, the rates spent, and other issues raised by Class Counsels' fee motion. O'Connor Rep. (Ex. A) at ¶ 7. Mr. O'Connor has "kept abreast of the billing rates in the Bay Area, in both Northern and Southern California, and generally throughout the country since 1982." *Id.* ¶ 10. Mr. O'Connor has "been retained as an attorney fee expert on approximately three hundred occasions and ha[s] served as a consulting expert on many more occasions," including on many "large and complex" matters such as class actions. *Id.* ¶¶ 16, 18. He has been a consultant and lecturer with the National Association of Legal Fee Analysis ("NALFA") and has been named by NALFA as the "nation's top attorney fee expert." *Id.* ¶ 17.

After reviewing Class Counsels' time records, Mr. O'Connor concluded that Class Counsel are trying to bill a "high numbers of hours." *Id.* ¶ 30. In particular, he noted that "the time is disproportionally great in comparison to the work product produced, whether that work be allocated to success or lack of success." *Id.* ¶ 31. More specifically, he noted the problems discussed below.

## A.   Many hours appear to be billed to the wrong matters.

Approximately 48.5 hours appear to have been incorrectly billed to this matter. *See* O'Connor Rep. Ex. E. For example, one timekeeper (Mr. O'Brien) billed 25 hours of work for preparing an opposition to Defendant Bosch GmbH's Motion to Dismiss. *Id.* ¶ 71. Bosch was not a defendant in this action; these time entries are likely for

3

another case.

Another timekeeper (Mr. George) billed 19 hours for traveling to, preparing for, and attending a hearing on November 16, 2017. *Id*. ¶ 77. However, this hearing appears to have never happened. Dkt. 118. As Mr. O'Connor explained, "[t]his raises the obvious questions of why Mr. George traveled to San Francisco and why these billings were included in Plaintiffs' requested lodestar." *Id.* In another instance, Mr. George appears to have double billed or excessively billed for a flight. *Id*. ¶ 78.

As noted by Mr. O'Connor, these hours are "disturbing" given that "the need for this adjustment … reflects the lack of review of billings throughout the litigation." *Id*. ¶ 71. This problem may also reflect just the tip of the iceberg: the above errors were easily detected, but given the redactions and vagueness in many of Class Counsels' timesheet entries, similar problems are likely present elsewhere.

**B.    The case was inefficiently staffed, and Class Counsel spent an unusual amount of time on certain litigation-related tasks, warranting a reduction for inefficiency.**

This case was staffed by 54 different timekeepers: fifteen partners, three of counsel, sixteen associates, sixteen paralegals, one law clerk, and three project analysts. O'Connor Rep. ¶ 39. Lawyers flowed in and out of the litigation. *Id.* As Mr. O'Connor explains, "[t]he billings in this case paint a picture of highly inefficient case management." *Id.* ¶ 124.

The result is that Class Counsel spent a higher-than-normal amount of hours on certain litigation-related tasks. When those hours are summed, the inefficiency is plain on its face. Five firms spent more than (a) 3,100 hours on case intake, development, and management; (b) 2,200 hours on pleadings and motions; and (c) 1,100 hours on class certification. *See id*. Exhibit M. Other aspects of the case were equally inefficient. *Id.*

This happened because, "at least for the first several years, large numbers of lawyers [were] duplicating efforts." *Id.* ¶ 129. Eleven timekeepers were helping draft pleadings; thirteen were helping on class certification briefing; seven on mediation

briefing; eight on appellate briefing; and seven on the present motion for attorneys fees. *Id.* ¶ 130. As Mr. O'Connor explained, "that excessive and duplicative staffing is itself a problem, of course, deserving of some reduction in hours." *Id.* ¶ 131.[1]

And the problem was not just one of duplication: the "cast changed constantly." *Id.* ¶ 129. Mr. O'Connor studied who went on and off each complaint, observing that "[t]he associates duplicatively assigned to one Complaint generally do not stay on the team for long, another type of inefficiency." *Id.* ¶ 131. This loss of learning results in great inefficiency. Only one lawyer, Scott George, was consistently involved throughout the litigation. *Id.* ¶ 138. Others would drop off for months at a time, if they ever came back at all.

Mr. O'Connor concludes that "the Seeger and Carella firms were inefficient in the above myriad ways by 20% to 30%, while the other three firms (with inefficient co-billers) were inefficient at a more normal 10% to 15% level." *Id.* ¶ 149. As such, he recommends an "across-the-board reduction of 20% of the time of each timekeeper in the Carella and Seeger firms and a 10% reduction for the other three firms." *Id.* ¶ 152.

## II.   The hourly rates requested are unreasonably high. California federal courts do not allow the rates requested, particularly given that Class Counsel have provided little support to justify the rates requested.

"The reasonable hourly rate is determined by assessing the prevailing market rate in the relevant community." *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) (cleaned up). "An hourly rate is reasonable if it is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Seal4Safti, Inc. v. California Expanded Metal Prod. Co.*,

---

[1] There are numerous other problems outlined by Mr. O'Connor as well. Several timekeepers engaged in block billing, which provides another reason for lodestar reduction. *See* O'Connor Rep. ¶ 153. This is a problem given Class Counsels' tendency to bill with vague entries, and given how often their timekeepers engaged in "clerical and administrative tasks which are more appropriately subsumed in firm overhead that should be deducted from Plaintiffs' requested lodestar." *See* O'Connor Rep. ¶¶ 65, 154.

2022 WL 18397130, at *2 (C.D. Cal. Dec. 15, 2022). "It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate." *Roberts*, 938 F.3d at 1024. "Further, a district court may rely on its prior experience and knowledge in determining reasonable hours and fees." *Seal4Safti*, 2022 WL 18397130, at *2.

### A.   This Court has not awarded rates this high in the past.

Class Counsels' requested rates far exceed what this Court has awarded in the past. Five partners are requesting to bill at more than $1,000 per hour, including Christopher Seeger ($1395), Dion Kekatos ($1,275), James Cecchi ($1,100), Shauna Itri ($1,075), and James Shah ($1,050). *See* Mot. Exs. A, D, F. Other partners were close: Scott George seeks 3,660 hours at $976. *Id.* Senior counsel, such as James O'Brien, are being billed as high as $950. Associates are charged at rates normally reserved for senior partners in litigation, such as Carlos Rivera ($775) or Alex Berin ($700). *Id*.

Just last year, this Court described "rates of $550 and $675 for associate attorneys" as being "on the high end of the range … for comparable services in this district." *Erickson v. Builder Advisor Grp. LLC*, 2023 WL 3579317, at *2 (N.D. Cal. Feb. 3, 2023). The year before that, this Court deemed "$325 for the most junior associate to $900 per hour for the most senior partner" to be reasonable rates. *Hubbard v. Henkel Corp.*, 2022 WL 22234699, at *4 (N.D. Cal. July 25, 2022); *see also Rollins v. Dignity Health*, 2022 WL 20184568, at *11 (N.D. Cal. July 15, 2022) (approving "$850 per hour for a senior partner with 33 years of experience, $350 per hour for an associate with 5 years of experience"). In 2021, this Court approved class counsel rates of "between $300 and $500 for associates, and between $750 and $850 for partners and senior attorneys." *Haralson v. U.S. Aviation Services Corp.*, 2021 WL 5033832, at *8 (N.D. Cal. Feb. 3, 2021). Despite a diligent search, AHM is unaware of any automotive or class case where this Court has embraced rates anywhere near as steep as Class

Counsel request here.[2]

This Court has not embraced the paralegal rates requested here either. Plaintiffs are requesting $395, but this Court has recently "approved $175–$200 per hour for paralegals with over 20 years of experience." *Sanft v. Sims Grp. USA Corp.*, 2023 WL 6851992, at *10 (N.D. Cal. Oct. 16, 2023). In *Rollins*, this Court approved "$180 per hour for time billed by two paralegals." 2022 WL 20184568, at *11. Even paralegals with law degrees have been receiving far lower rates from other California federal courts. *Lee-Klein v. Comm'r of Soc. Sec.*, 2024 WL 382532, at *3 (E.D. Cal. Feb. 1, 2024).

**B.  Class Counsel have not justified—and cannot justify—their rates.**

Class Counsel make little effort to justify their rates. They agree that this Court should consider "prevailing market rate[s]" and "decisions by other courts awarding similar rates for work in the same geographical area" and cite a bevy of decisions from this District. Mot. at 12. None of those decisions have individual or blended rates approaching Class Counsels' request here. *See id*. at 12-13 (collecting cases).

The only evidence Class Counsel cites is their own declarations, which purportedly show that they have the "skill and experience" necessary to "justify the requested rates." *Id*. at 13. This is conclusory. They do not mention doing any rate studies and they make no effort to show that the rates they are requesting in this case have been actually paid to them or similar attorneys in similar litigation. *See, e.g.* Cecchi Decl. at 9 (saying his firm "represents clients on an hourly basis at rates comparable" to this litigation, but failing to discuss hourly rates normally paid to them, or similar

---

[2] The only case where the rates are close is *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020), where a blended rate of $406 was approved "[f]or purposes of the lodestar cross check." The rates in that case "range[d] from $650 to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals." Of course, the rates requested here are higher in each and every category, and the $759 blended rate requested here (calculated as the requested $8,759,900 divided by 11,535 hours) is far higher.

rates approved by courts in the San Francisco Bay Area); Seeger Decl. ¶ 20 (saying the rates are "regularly charged by my firm" and claiming they "have been recognized by Courts across the nation," but only mentioning one bankruptcy case[3] which did not discuss individual rates); Berman Decl. ¶ 10 (claiming their rates "are consistent with the prevailing market rates in 2018-2019 in the San Francisco Bay Area for attorneys of comparable experience, reputation, and ability," but offering no evidence, and only citing two cases,[4] only one of which discussed individual rates). Two of the firms at least provide caselaw on their approved rates, but even their declarations do not state what individual rates have been accepted, instead asking this Court and AHM to look it up. They also do not explain how their rates compare to that in comparable cases, nor do they state what they have been paid in litigation similar to this. Shah Decl. ¶ 9 (stating his firm's "hourly rates have been routinely approved by courts throughout the United States," but providing few details other than select caselaw); Steiner Decl. ¶ 10 (stating that "firm's rates have been approved by courts around the country," but also providing few details other than select caselaw).

Class Counsel cannot reasonably ask this Court—or AHM—to unquestioningly accept that their rates are appropriate. They need evidence, such as a rate study, or evidence of what they have been paid in the past. They do not provide any such substantiation. All they have is *ipse dixit* opinions in attorney declarations. Three of the firms do not even provide examples that their requested rates have been approved in previous cases. Without this information, Class Counsel have not met their burden of showing that their hourly rates are appropriate.

## C.     As shown by Mr. O'Connor, Class Counsels' requested rates are unreasonably high and should be reduced.

---

[3] *See In re: Aearo Tech. LLC*, 22-bk02890-JJGG, Dkt. 2107, at 14-15 (Nov. 9, 2023 S.D. In.).

[4] *Whalen v. Ford Motor Co.*, 3:13-cv-03072-EMC, Dkt. 553 (Dec. 17, 2019 N.D. Cal.); *In Re: Optical Disk Drive Prod. Antitrust Litig.,* 3:10-md-02143-RS (Feb. 21, 2019 N.D. Cal.) (discussing individual rates).

Mr. O'Connor notes that Class Counsels' requests involve "above-market hourly rates." O'Connor Rep. ¶ 42. This is most noteworthy when evaluated on a "blended" basis: the blended rate in this case is "around $760 per hour," which Mr. O'Connor called "unusually high." *Id.* ¶ 46. Indeed, past cases—including cases by courts in this District—have noted blended rates hundreds of dollars per hour lower. *Hefler*, 2018 WL 6619983, at *14 (noting blended rates of $406 in 2018); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (noting the "blended average hourly billing rate is $529 per hour for all work performed and projected"). Mr. O'Connor agrees: he observed that a "typical reputable, larger, non-premium rate firm will litigate a case with rates and hours such that the total billings divided by the hours billed yields a blended rate of $550 to $600 per hour in 2023-24." *Id.* ¶ 43.

The high blended rate is a result of two phenomena: inefficient staffing and too-high hourly rates. The inefficiency piece of it will be addressed in Part V below. But if the lodestar is to be applied, AHM recommends that rate adjustments be made as Mr. O'Connor recommends. His top-line conclusion is that "putting aside the two class counsel lawyers – Messrs. Cecchi and Seeger – the lawyers in this case deserve solid, middle of the established firm marketplace rates, but not 'premium' rates, nor the highest rates of non-premium large firms." O'Connor Rep. ¶ 53. Mr. O'Connor used both his experience and the Real Rate Report to make recommended adjustments to Class Counsels' rates. *Id.* ¶¶ 88-93.

Mr. O'Connor recommends "Mr. Cecchi and Mr. Seeger should be assigned rates considerably above the median" given their skill, reputation, experience, and role as class counsel. *Id.* ¶ 94. He recommends "$1,100 per hour, a rate reflecting acknowledged excellence and reputation beyond the median." *Id.* That is the rate that Mr. Cecchi requested, but it is a lower rate for Mr. Seeger, who requested $1,395.

For four other partners, Mr. O'Connor assigned a rate of $750, which is more in line with the Real Rate Report. That rate should apply to Mr. George (who requested

$975), Mr. Kekatos ($1,275), Ms. Itri ($1,075), and Ms. Taylor ($950). Such a rate is appropriate because $750 "for most San Francisco partner-level litigators" is a "handsome" rate. *Id.* ¶ 97. The latter three timekeepers had only minimal involvement. Mr. George, though, had significant involvement, and after analyzing his work, Mr. O'Connor said the $750 rate was appropriate because his was "not necessarily high-level work warranting a $975 billing rate," and in some instances was "more appropriate … for an associate." *Id.* ¶ 100. Indeed, Mr. George appears to have held lower-level positions at his firm when the case started.

Mr. O'Connor recommends $800 for Mr. Shaw (against his request of $1,050), an above average rate given his "impressive biography of being involved in class counsel work," but that factor was contrasted with the fact that he was "not designated class counsel in this case, and was an inexperienced junior partner at the outset of this litigation." *Id.* ¶ 103. Mr. O'Connor also noted that he acted as "a regular, non-senior partner" in terms of tasks handled. *Id.* ¶¶ 103-104.

For Mr. O'Brien, who is Counsel, Mr. O'Connor recommends $625. *Id.* ¶¶ 105-108. Class Counsel requests $775 per hour for Mr. O'Brien's work at Seeger Weiss and $950 per hour for time at Carella Byrne. *Id.* But Mr. O'Brien's activity was mostly drafting and researching, and Mr. O'Connor notes that $625 "is appropriate here given the quotidian work performed." *Id.*

For the top-billing paralegal, Mr. Sheridan, Mr. O'Connor recommends a rate of $275. *Id.* ¶¶ 109-111. Class counsel are seeking $395 per hour for Mr. Sheridan, which Mr. O'Connor noted was "unusually high, even at a time when some premium-rate firms have extremely experienced, career paralegals billing above $300." *Id.* Mr. O'Connor observed that, even at $275, his rate was high since "his experience and worth go unmentioned in the moving papers," and since his activities appear to be primarily "reviewing customer complaints and repair records, not particularly complex tasks." *Id.* Other experienced paralegals in the case requested $275, showing the appropriateness of that rate for Mr. Sheridan too. *Id.*

1   Mr. O'Connor suggests other minor adjustments as well. *See id.* ¶¶ 112-115. Of

2   note, Mr. O'Connor did not adjust many rates, including rates at two of the five involved

3   firms.

4   **III.   No positive lodestar multiplier should be permitted. Class Counsel have not**

5       **justified their multiplier request.**

6   Class Counsel are seeking a 1.24 multiplier primarily based on (a) the contingent

7   risk of the case, and (b) to compensate them for "the additional … work they will

8   continue to do on this case." *See* Pl.'s M.P.A. at 21-24.[5] Neither argument holds water:

9   Class Counsel bear the burden of proving the propriety of their multiplier request, but

10  all they have put forward are two legally-insufficient justifications.

11  Class Counsel offer nothing but unadorned conclusions about the contingent risk

12  of this case. But even setting that deficiency aside, their hourly rates already take into

13  account contingent risk and a multiplier would lead to duplicate recovery. In other

14  words, their rates are set based on contingency risk, so that contingency risk cannot also

15  be used to justify a multiplier. "A strong presumption exists that the lodestar figure

16  represents a reasonable fee," and the district court can only enhance it using factors that

17  are "not already subsumed in the initial lodestar calculation." *Parsons v. Ryan*, 949 F.3d

18  443, 467 (9th Cir. 2020); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)

19  ("[T]he lodestar method yields a fee that is presumptively sufficient to achieve this

20  objective. Indeed, we have said that the presumption is a strong one.") (cleaned up). In

21  fact, because of the risk of duplicate recovery, "reliance on factors that have been held

22  to be subsumed in the lodestar determination will be considered an abuse of the trial

23  court's discretion." *Id.* "Only in rare instances should the lodestar figure be adjusted on

24  the basis of other considerations." *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8

25

26  ───────────────

26  [5] Class Counsel also mention, to a lesser extent, the results obtained, the skills and

27  experience of the attorneys involved, and the complexity of the issues in this case. But

27  as explained by Mr. O'Connor, these are not appropriate reasons to award a positive

28  lodestar multiplier.

(9th Cir. 1996) (emphasis added).

The Supreme Court made this clear in *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (cleaned up). In *Burlington*, the Supreme Court rejected an attempt to provide a lodestar enhancement for a case taken on contingency. The Court reasoned that providing such an enhancement would "amount[] to double counting," since the lodestar already takes into account the difficulty of a case in both the "higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so." *Id.* at 562-63. So too here. In fact, not only did Class Counsel fail to provide evidence that their rates were non-contingent rates, they actually stated the opposite in their Memorandum of Points and Authorities. Class Counsel admit that they are attempting to use their *current* rates to compensate for the contingent risk of the litigation. *See* Pl.'s M.P.A. at 14 ("Relying on Class Counsels' current rates is appropriate given the deferred and contingent nature of counsel's compensation."). But if they are going to use *current* rates to pay for their contingent risk, they cannot also use the lodestar multiplier to account for such risk. That would be impermissible double-counting.

Class Counsels' other justification is equally misguided. They claim "the lodestar multiplier is necessary to compensate Class Counsel for the additional uncompensated work they will continue to do on this case." *Id.* at 24. They do not cite a single case holding that to be appropriate. And it facially would be an impermissible windfall. Class Counsel have reported 11,535.10 hours in this case, and giving them their lodestar multiplier of 1.24 would be equivalent to granting them thousands of additional hours. They do not explain what work remains. It is certainly not thousands of hours.

## IV.   A downward adjustment multiplier is warranted given that Class Counsel did considerable work on states and claims that did not succeed.

A reduction in requested attorney fees may be appropriate if "a plaintiff has achieved only partial or limited success," because "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive

amount." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id*. In short, a district court may "reduce an award when the prevailing party's success is limited." *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004); *Quackenbush v. American Honda Motor Co., Inc.*, 2023 WL 8360045, at *9 (N.D. Cal. Dec. 1, 2023) ("Where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.").

This lawsuit was expansive in its earliest days.[6] In their First Amended Complaint ("FAC"), more than a dozen Plaintiffs sought to bring suit on behalf of a nationwide class for "[a]ll persons who purchased or leased an Acura with a HandsFreeLink™ system[ ]" or in the alternative, "[a]ll persons who purchased or leased an Acura with a HandsFreeLink™ system" in ten states—California, Delaware, Florida, Kansas, Missouri, New Hampshire, New York, Ohio, Texas, and Virginia. FAC ¶¶ 230-31.[7] Plaintiffs brought causes of action for (1) violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, (2) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, (3) fraud by concealment, (4) breach of express warranty, (5) breach of implied warranty of merchantability, (6) violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and (7) unjust enrichment. *Id.* ¶¶ 240-346. Plaintiffs also asserted sixty-two causes of action on behalf of alternate California, Delaware, Florida, Kansas, Missouri, New Hampshire, New York, Ohio, Texas, and Virginia classes. *Id.* ¶¶ 347-1273. Plaintiffs sought certification of the proposed Class or alternate Classes, restitution and damages,

---

[6] A summary chart reflecting the claims Plaintiffs initially pursued in the original, first, second, and third amended complaints, the claims they ended up seeking to certify, and the claims that were further dismissed pursuant to AHM's motion for judgment on the pleadings is attached to the Declaration of Michael B. Shortnacy as Exhibit A.

[7] By the time Plaintiffs filed the FAC, they had already dropped the Arizona plaintiff, William Kenar, and six claims under Arizona law. *Compare* Original Complaint (ECF No. 1) ¶¶ 206-295.

injunctive relief in the form of a recall or free replacement program with a HandsFreeLink™ system that does not drain batteries, interest, and attorneys' fees. *Id*. at Prayer for Relief.

From there the claims began to dwindle, largely due to AHM's motions to dismiss. Plaintiffs' Second Amended Complaint ("2AC") contains the same or similar allegations and sought to bring an action on behalf of a nationwide Class of "[a]ll persons who purchased or leased an Acura with a HandsFreeLink™ system[ ]" or in the alternative, "[a]ll persons who purchased or leased an Acura with a HandsFreeLink™ system" in nine states—California, Delaware, Florida, Kansas, New Hampshire, New York, Ohio, Texas, and Washington. 2AC, ¶¶ 325-410. In the SAC, Plaintiffs dropped the Missouri plaintiff, Ron Alul, and all Missouri claims; dropped the North Carolina plaintiff, Shaunda Mack, and all North Carolina claims; dropped the Virginia plaintiff, Arpan Srivastava, and all Virginia claims; dropped all but the fraudulent concealment claim under Ohio law; and did not replead many of the breach of express warranty and unjust enrichment claims asserted in the FAC as well as the Florida consumer protection claim. *Id.* ¶¶ 411-1011. Plaintiffs sought the same relief. *Id.* at Prayer for Relief.

Through the 3AC, Plaintiffs had pursued five claims on behalf of a nationwide class, *see* 3AC ¶¶ 225-311, but Plaintiffs did not ultimately seek certification of a nationwide class. The 3AC asserted thirty-five causes of action on behalf of alternate California, Delaware, Florida, Kansas, New Hampshire, New York, Ohio, Texas, and Washington classes. *Id.* ¶¶ 312-717. Ultimately, Plaintiffs only sought to certify California, Kansas, New York, and Washington classes. Thereafter, the Court dismissed Kelly's CLRA and UCL claims; and Awtrey's and Matza's Magnuson-Moss claims. The scope of vehicles Plaintiffs ultimately sought to certify was substantially narrower than as described in any of their complaints. Although Plaintiffs alleged they pursued this case on behalf of all Acura vehicles starting with the 2004 model year with HandsFreeLink, Plaintiffs moved to certify only the following vehicles: 2004-08 TL, 2005-08 MDX, and 2007-09 RDX.

In sum, what started out as a case alleging up to seven claims on behalf of a nationwide class and up to sixty-two causes of action on behalf of state alternate classes, Plaintiffs elected not to seek certification of any nationwide class and sought certification of just a few state claims on behalf of just California, Kansas, New York, and Washington classes. The settlement contained no injunctive relief. Only a few named Plaintiffs remained. Settlement Agreement (Dkt. 429) at 1.

As part of the Settlement, each class member that does not opt out is eligible for either an HFL Replacement Reimbursement and/or HFL Disconnection Payment subject to the qualifications, in exchange for a dismissal of the suit, with prejudice, and a release of claims. The number of Settlement Class Members who have submitted claims is 2109. *See* Decl. of Steve Felix at ¶ 6. Many of these Settlement Class Members did not have adequate substantiation. Currently, 1384 claims have been approved. *Id*. ¶ 7. These low numbers are not surprising. As AHM has maintained since the inception of this case, the purported HFL issue at the heart of Plaintiffs' claims is not as widespread as Plaintiffs contend and the vehicles at issue in this case are extremely old (now 15-20 years old), and were old even when Plaintiffs filed the complaint in 2016.

As Mr. O'Connor concludes, "this case was not successfully pursued in large part. Compensation must be tethered to that success, while failed claims should be segregated and should not be compensated." O'Connor Rep. ¶ 61. After conducting a detailed review of Class Counsels' timesheets, Mr. O'Connor concluded that "well over half of the litigation effort involved unmeritorious claims for relief" which were "not part of the class ultimately certified." *Id*. ¶ 121. He acknowledged that making a determination was an "exercise in approximation," but concluded that "certainly somewhere between 40% to 50% of the litigation effort should be allocated to lack of success." *Id*. ¶ 122. In his calculations, he suggested a haircut of 40%. *Id*. ¶ 123.

# V.   Class Counsels' detailed time records do not line up to their requests. They should not be compensated for deficits.

Class Counsel were required to provide AHM with their detailed timesheets to

support their fee request. That is because "a court may require a prevailing party to produce records sufficient to provide a proper basis for determining how much time was spent on particular claims." *Herring Networks, Inc. v. Maddow*, 2021 WL 409724, at *8 (S.D. Cal. Feb. 5, 2021) (cleaned up). Such information is also necessary to allow "the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims and whether the hours were reasonably expended." *Id.*; *see also Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) ("[T]he district court must allow Defendants access to the timesheets … so they can inspect them and present whatever objections they might have concerning the fairness and reasonableness of Plaintiffs' fee request."). After Plaintiffs' moving brief was filed, and after meeting and conferring, Class Counsel provided their timesheets to AHM, who in turn provided it to Mr. O'Connor.

Once AHM received this information, it became apparent that the detailed time records did not line up with what was requested in their fee motion. For two timekeepers, the totals they include in their moving papers—James O'Brien (121.4 hours) and Scott George (4.4 hours)—are more than their invoice totals. *See* O'Connor Rep. Ex. B. Seven other timekeepers had the inverse problem, where their invoice totals were more than what is requested in the fee motion. *Id.* These differences remain unexplained, but the difference is plainly a problem regardless of the explanation. It is crucial for the formal fee request to align with the underlying detailed invoices from which it was supposedly derived, as this alignment ensures completeness and accuracy. Without agreement between the documents, it is impossible to confirm that all pertinent information has been considered and incorporated.

Accordingly, AHM requests that the hours requested in the fee motion be reduced for Scott George and James O'Brien. These differences are shown in the "Corrected Hours" column of Mr. O'Connor's summary sheet. *See* O'Connor Rep. Ex. B.

*** 

After correcting for all of the issues discussed above, Mr. O'Connor believes that

16

Class Counsels' lodestar should be reduced to $3,197,121.09 ("Adjusted Lodestar"). As discussed below, this must further be significantly reduced because $3,197,121.09 is not commensurate—in fact it is completely disproportionate—to the relief Class Counsel obtained for the Class.

## VI.   Given the lodestar cross check required by *Lowery*, Class Counsel are entitled to substantially less than the Adjusted Lodestar.

In class settlements, district courts must consider more than just the lodestar: they also must assess the proportionality of the fee award to the class relief. As the Ninth Circuit recently held, "courts must consider the actual or realistically anticipated benefit to the class—not the maximum or hypothetical amount—in assessing the value of a class action settlement." *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 992 (9th Cir. 2023). This involves looking at the claims actually made. *Id.* at 989. Even in fee recoveries calculated using the lodestar method, this cross-check ensures "that the fees are reasonably proportional to the benefit received by the class members." *Id.* at 989.

In *Lowery*, the district court had approved a $1.7 million fee award. While that was far less than the six million dollars requested, it was still more than thirty times the amount that the class had received from the underlying settlement. *Id.* at 991. The Ninth Circuit reversed, explaining that "[t]he touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class." *Id.* at 988. Consequently, "[i]t matters little that the plaintiffs' counsel may have poured their blood, sweat, and tears into a case if they end up merely spinning wheels on behalf of the class," as "[w]hat matters most is the result for the class members." *Id.* Ultimately, "[t]he benefit from th[e] litigation was minimal: the class received a measly $52,841.05 and obtained no meaningful injunctive or nonmonetary relief." *Id.*

Class Counsels' requested fee amount of $8,759,908 is nearly 16 times the "benefit" to the class. To date, there have been claims totaling $503,203.15. *See* Decl. of Steve Felix (Ex. C) at ¶ 7. The remaining claims approximate $35,000. Thus, the total is not expected to cross $540,000. *Id.* ¶ 8. Even the Adjusted Fee amount is nearly

17

6 times the "benefit" to the class. Based on *Lowery*, the fee award should be substantially less than the Adjusted Lodestar to ensure that "the fees are reasonably proportional to the benefit received by the class members." *Lowery*, 75 F.4th at 989.

Class Counsel understandably try to sidestep *Lowery*, but their attempts to distinguish *Lowery* fail. First, Class Counsel assert that *Lowery* was decided based on federal copyright law, rather than on California state substantive law. *See* Mot. at 5. They are incorrect. *Lowery* decided "[t]he district court's fee award [was] not reasonable *under Rule 23*." *Id.* at 991 (emphasis added). For its key propositions, *Lowery* cited *In re Bluetooth*, which involved claims under California's Consumers Legal Remedies Act, and which held that there was an independent obligation to assess fee reasonableness under Rule 23. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (explaining that "[w]hile attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement … courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable"). Further, Class Counsels' argument was squarely raised and rejected in *Dekker v. Vivint Solar, Inc.*, 2023 WL 5498063, at *7-8 (N.D. Cal. Aug. 23, 2023) (rejecting the argument that *Lowery* "was a copyright case and federal law was at issue" because "*Lowery* is on point and looms large here").

Second, Class Counsel argue that "proportionality is an improper consideration when determining fee awards under consumer protection statutes." Mot. at 6-7. For that proposition Class Counsel cite a California state court case and a case from the Eastern District of New York. *Id.* at 7. Neither case controls here. Class Counsels' policy-based argument cannot overrule the Ninth Circuit's clear instructions in *Lowery* and *In re Bluetooth*. The Ninth Circuit has not carved out an exception for consumer protection statutes, nor is there reason to believe it would do so if presented the opportunity. Once again, *Bluetooth* itself involved consumer protections statutes.

Third, Class Counsel insist that federal courts "have declined to apply *Lowery*'s rule on the ground that it does not apply in cases where fee shifting statutes and small

amounts of damages are at issue." Mot. at 7. They cite only one case for this proposition. *See In re Outlaw Lab'ys, LP Litig.*, 2023 WL 6522383, at *7-8 (S.D. Cal. Oct. 5, 2023). That case is inapposite for two reasons. First, the underlying law in *Lowery* involved a fee-shifting statute, so the argument does not pass muster. *Lowery*, 75 F.4th at 992 (noting that the case involved "interpreting the Copyright Act's fee-shifting provision"). Second, in *Outlaw* there was significant non-monetary relief, which is the key reason that case did not follow *Lowery*. *Id.* at *8 ("The plaintiffs in *Lowery* achieved no meaningful nonmonetary relief. Here, The Stores did.") (citations omitted). In other words, *Outlaw* recognized that *Lowery* was controlling law; it did not create the special carve out that Class Counsel envision.

Fourth, Class Counsel claim that the "decisions upon which [*Lowery*] relies are inapposite because they involved the application of the higher standard of scrutiny for settlements reached prior to class certification." Mot. at 8. They do not explain their point, nor cite any cases to support their point. In *Lowery*, the Ninth Circuit did not draw a distinction between whether the settlement was achieved before or after a class certification order.

*Lowery*'s directive is clear: "district courts awarding fees must expressly consider the value that the settlement provided to the class, including the value of nonmonetary relief, and explain how that justifies the fee award," all of which must be done in enough detail to support appellate review. *Lowery*, 75 F.4th at 992. The instruction is to use a cross-check to "guard against an unreasonable result by cross-checking [attorneys' fees] calculations against a second method." *Id.* at 994 (*citing In re Bluetooth*, 654 F.3d at 944–45). "If the cross-check reveals that a contemplated fee award exceeds 25% of the benefit to the class, the court should take a hard and probing look at the award because this disparity may suggest that the fee amount is unreasonable." *Id.* "Except in extraordinary cases, a fee award should not exceed the value that the litigation provided to the class." *Id.*

**VII.   AHM opposes Class Counsels' vague expenses requests; it takes no position on Plaintiffs' request for service awards.**

Plaintiffs request "reimbursement of costs in the amount of $1,037,458.66." Mot. at 1. Later, they state that they "seek reimbursement of $12,048.11 in out-of-pocket costs incurred during this litigation." *Id.* at 25. Based on the supporting affidavits, Class Counsel appear to be asking for the higher number, though they never discuss either figure in any detail in their moving papers.

After reviewing the detail in the accompanying declarations, AHM does not oppose $109,458.66 of those costs. $928,000 of those costs, however, are not provided at a level of detail that would allow either AHM or this Court to assess and evaluate their reasonableness and necessity. *See* Cecchi Decl. Ex. C (showing $435,000 spent on an undescribed line item called "Litigation Fund"); Seeger Decl. Ex. C (same, but for $450,000); Berman Decl. Ex. C (showing a $5,000 line for undescribed "Cost Fund Contributions"); Shah Decl. (showing $18,00 for undescribed "Case Fund Contributions"); Steiner Decl. Ex. C (showing $20,000 for undescribed "Cost Fund Contributions"). It is Class Counsels' burden to show the reasonableness and necessity of their costs. They should have done so in their fee motion: their failure to do so means they did not follow the procedures for requesting those costs, and they should be denied.[8]

Plaintiffs request fee awards of $7,500 to each remaining named Plaintiff. Mot. at 26-27. AHM has no position on that request.

## CONCLUSION

According to Mr. O'Connor, Class Counsels' lodestar should be reduced from $8,759,908 to $3,197,121.09. But based on a strict application of the cross-check

---

[8] AHM asked Class Counsel what these funds were used for. They said they were used for "expert fees, class notice costs, and the like." Some of these costs may have been reimbursable. However, Class Counsel did not provide the requisite level of detail to allow this Court or AHM to evaluate the propriety of their request.

required by the Ninth Circuit in *Lowery*, Class Counsel is precluded from receiving an award that is anything close to the Adjusted Lodestar because the relief to the class will at most be $540k. Based on *Lowery*, a reasonable fee award should be less than $1 million.

Dated: June 26, 2024                    Respectfully submitted,


                                        SHOOK, HARDY & BACON L.L.P.


                                        By: /s/Michael L. Mallow
                                            Michael L. Mallow
                                            Attorneys for Defendant
                                            American Honda Motor Co., Inc.