UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YUN-FEI LOU, et al.,

        Plaintiffs,

      v.

AMERICAN HONDA MOTOR COMPANY, INC.,

        Defendant.

Case No. 16-cv-04384-JST

**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART MOTION FOR ATTORNEY'S FEES**

Re: ECF Nos. 446, 448

Before the Court are the motion for final approval of class action settlement and the motion for attorney's fees and costs filed by Plaintiffs Lindsay and Jeff Aberin, Don Awtrey, Charles Burgess, John Kelly, and Joy Matza. ECF No. 446, 448. The Court previously granted Plaintiffs' motion for preliminary approval. ECF No. 436. The Court will grant the motion for final settlement approval and grant in part the motion for fees, costs, and service awards.

I.     **BACKGROUND**

    A.    **Factual and Procedural Background**

Plaintiffs filed this action in 2016 seeking relief for Defendant American Honda Motor Co., Inc.'s ("American Honda") alleged violations of the consumer protection, fraudulent concealment, and breach of implied warranty laws of the states of California, Kansas, New York, and Washington, as well as claims under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., as set forth in Plaintiffs' Fourth Amended Class Action Complaint. ECF No. 403. Plaintiffs allege defects in the HandsFreeLink ("HFL") Bluetooth system in certain Acura vehicles that prevent the units from properly shutting down, resulting in excessive electric drain. ECF No. 446 at 7. The case proceeded through extensive motion practice, including dispositive motions, a successful class certification motion, a petition to appeal the Court's class certification order, and

1  fact and expert discovery.

2        In September and October 2022, the parties participated in settlement discussions with

3  retired judge Daniel J. Buckley, where they agreed to the "core terms" of a settlement.  ECF No.

4  446 at 8; ECF No. 409.  Following several months of further negotiations regarding the remaining

5  terms, ECF No. 446 at 8, Plaintiffs filed a motion for preliminary approval on April 27, 2023.

6  ECF No. 429.  On February 1, 2024, the Court granted preliminary approval of the settlement of

7  this action and preliminarily certified a settlement class defined as "all persons who purchased the

8  following Acura vehicles before the vehicles reached 10 years or 120,000 miles, whichever

9  occurred first: 2004-2008 TL, 2005-2008 MDX, or 2007-2009 RDX in the States of California,

10  Kansas, New York and Washington."  ECF No. 436 at 3–4.[1]

11        Plaintiffs now move for final approval of the settlement and for an award of attorney's fees

12  and costs.  ECF Nos. 446, 448.  American Honda filed an opposition to the motion for attorney's

13  fees on June 26, 2024, ECF No. 459, and Plaintiffs filed a reply on August 1, 2024, ECF No. 463.

14  The Court held a fairness hearing on August 15, 2024.  ECF No. 469.  The court subsequently

15  ordered supplemental briefing, ECF No. 473 at 26, which the parties submitted, ECF Nos. 470,

16  471, 474.

17        **B.**     **Settlement Terms**

18        The Settlement Class includes "[a]ll persons who purchased the following Acura vehicles:

19  2004-2008 TL, 2005-2008 MDX, or 2007-2009 RDX, in the States of California, Kansas, New

20  York, and Washington, before the vehicles reached 10 years or 120,000 miles, whichever occurred

21  first."  ECF No. 429-2 ¶ 2.40.  Settlement Class Members are eligible to receive an "HLF

22  Replacement Reimbursement" for out-of-pocket expenses of up to $500 for replacement of their

23  HFL units due to excessive parasitic drain, as well as a $350 "HFL Disconnection Payment" for

24  HFL units that were disconnected or where excessive parasitic drain was indicated.  *Id.* ¶¶ 3.1–3.7.

25        To receive a payment, Settlement Class Members must provide either "Proof for

26

27  _____
[1] On March 23, 2021, the Court certified four broader classes for trial purposes that encompassed
all individuals who purchased the Acura vehicles 2004-2008 TL, 2005-2008 MDX, or 2007-2009
28  RDX in each of California, Kansas, New York, and Washington, respectively, without limitations
related to age or mileage at the time of purchase.  ECF No. 291 at 3.

United States District Court
Northern District of California

Disconnection Payment," *id.* ¶ 2.30, or "Proof of HFL Replacement," *id.* ¶ 2.31. The Settlement

Agreement defines "Proof for Disconnection Payment" as:

> [D]ocumentation or other proof that the Settlement Class Vehicle:
> (1) had the HFL Unit disconnected (does not need to state parasitic
> drain), prior to the Settlement Class Vehicle reaching 10 years or
> 120,000 miles, whichever occurs first, or (2) indication that the
> vehicle suffered from excessive parasitic drain from the HFL Unit
> that was not replaced prior to the Settlement Class Vehicle reaching
> 10 years or 120,000 miles from original purchase, whichever occurs
> first.

*Id.* ¶ 2.30.

"Proof of HCL Replacement" is defined as:

> [D]ocumentation or other proof indicating excessive parasitic drain
> from the HFL unit and that the Settlement Class Vehicle had an
> HFL Replacement after the indication of excessive parasitic drain
> for which the Settlement Class Member, or someone acting on the
> Settlement Class Member's behalf who is not an insurance-based
> entity or third-party warrantor, paid out of pocket, prior to the
> Settlement Class Vehicle reaching 10 years or 120,000 miles from
> original purchase, whichever occurs first.

*Id.* ¶ 2.31.

Settlement class members are eligible for multiple HFL Replacement Reimbursements if

they can submit proof of each HFL Replacement. *Id.* ¶ 3.4. American Honda is responsible for

the costs and administration of the settlement. *Id.* ¶ 4.2. Class counsel's fees and costs, and class

representatives' service awards, "shall be paid separate and apart" from the cash benefits for

settlement class members. *Id.* ¶ 5.5. In exchange, class members release all claims arising from

the parasitic drain by the HFL system against American Honda, with the exception of claims for

personal injury or wrongful death. *Id.* ¶ 2.35.

## II.     FINAL APPROVAL OF SETTLEMENT

### A.     Legal Standard

"The claims, issues, or defenses of a certified class . . . may be settled, voluntarily

dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate

notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler

Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores,

Inc. v. Dukes*, 564 U.S. 338 (2011). In addition, Rule 23(e) "requires the district court to

determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at

1026 (citation omitted). In making that determination, the district court balances several factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[2]

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026).

Additionally, Rule 23 now requires district courts to consider a similar list of factors, including the adequacy of representation by class representatives and class counsel, whether the proposal was negotiated at arm's length, and the adequacy of the relief and equitable treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors were "not designed 'to displace any factor [developed under existing circuits' precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, the court must also ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (quotation marks and citation omitted). Although the parties reached their settlement after class certification, the Court nonetheless considers the *Bluetooth* factors because the proposed settlement class definition differs from the classes that the Court previously certified.

## B.    CAFA Compliance

This action is subject to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), which requires that, within ten days of the filing of a proposed settlement, each

---

[2] There is no governmental participant in this case, so the Court does not consider the seventh factor.

4

defendant serve a notice containing certain required information upon the appropriate state and federal officials. 28 U.S.C § 1715(b). CAFA also prohibits a court from granting final approval until 90 days have elapsed since notice was served under Section 1715(b). *Id.* § 1715(d). American Honda mailed the CAFA notices more than 90 days ago. *See* ECF No. 443.

### C.    Discussion

#### 1.    Adequacy of Notice

A "court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal . . . ." Fed. R. Civ. P. 23(e)(1)(B). The parties must provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice . . . ." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).

The Claims Period ran from February 15, 2024 through May 30, 2024. ECF No. 446-3 ¶¶ 5, 7. The Settlement Administrator implemented notice to the Class by launching a settlement website, staffing a toll-free hotline, and mailing the Long Form Notice directly to Settlement Class Members via mail and email. Bowden Decl., ECF No. 446-2 ¶¶ 13–17; ECF No. 446-3 ¶¶ 3–6. In addition, the Administrator ran a six-week social media campaign that delivered over two million impressions and arranged for email reminders to be sent to Settlement Class Members in advance of the claim deadline. *See* ECF No. 429-2 ¶¶ 2.24, 4.3–4.8; Bowden Decl., ECF No. 446-2 ¶¶ 18–24. As implemented, the Notice Administrator estimates that the notice plan reached more than 95% of Settlement Class Members. Bowden Decl, ECF No. 446-2 ¶ 30.

The deadline to object or exclude oneself from the settlement was April 18, 2024. ECF No. 446 at 20. The Court received ten objections to the settlement. ECF Nos. 438–42, 444–45, 449, 453–54. Sixteen Class Members submitted exclusion requests to the Settlement Administrator. Straus Decl., ECF No. 465 ¶ 5. Combined with the 41 exclusion requests received in response to the notice of certification of the trial classes, ECF No. 386-1, the total number of exclusions was 57. *See* ECF No. 466 at 2 n.1.

1    These procedures adhered to the previously approved notice plan.  Accordingly, the Court

2    finds that the parties have provided Class Members with adequate notice of the settlement.  *See*

3    *Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *7 (N.D. Cal. Feb. 16,

4    2016) (finding class notice adequate where the approved notice was sent in accordance with the

5    approved notice plan, which was "consistent with the requirements of Rule 23 and due process").

6                    **2.    Fairness, Adequacy, and Reasonableness**

7                    **a.    Adequate Representation of the Class**

8    The Ninth Circuit has explained that "adequacy of representation . . . requires that two

9    questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest

10   with other class members and (b) will the named plaintiffs and their counsel prosecute the action

11   vigorously on behalf of the class?"  *In re Mego*, 213 F.3d at 462 (citing *Hanlon*, 150 F.3d at

12   1020).

13   The Court preliminarily found that each of the requirements of Federal Rules of Procedure

14   23(a) and 23(b)(1), including adequacy, were met when it provisionally certified the Settlement

15   Class in its February 1, 2024 order.  ECF No. 436.  Class counsel and class representatives have

16   continued to adequately represent the class, and this factor supports final approval.

17                    **b.    Strength of Plaintiff's Case and Risks of Litigation**

18   Approval of a class settlement is appropriate when "there are significant barriers plaintiffs

19   must overcome in making their case."  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848,

20   851 (N.D. Cal. 2010).  Difficulties and risks in litigating weigh in favor of approving a class

21   settlement.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

22   Plaintiffs identify multiple legal obstacles that would make continued litigation risky for

23   the Class.  ECF No. 446 at 15–16.  American Honda argues, for example, "that Plaintiffs are not

24   entitled to restitution under [California law] because they failed to plead that their legal remedies

25   are inadequate."  ECF No. 446 at 15.  If the Court were to agree with American Honda, Ninth

26   Circuit law likely would preclude Plaintiffs from recovering restitution.  *See id.* (citing *Sonner v.*

27   *Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)).  Plaintiffs' CLRA and fraudulent

28   concealment claims are also vulnerable to Defendant's argument that they have not alleged a

United States District Court
Northern District of California

direct transaction between American Honda and the California Plaintiff. *Id.* An adverse finding on that issue could prevent recovery on those claims. Additionally, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Rodriguez*, 563 F.3d at 966.

The Court finds that these risks, along with the general uncertainties inherent in litigation, weigh in favor of approving the proposed settlement.

### 3. Effectiveness of Distribution Method and Supplemental Agreements[3]

The Court must consider "the effectiveness of [the] proposed method of distributing relief to the class . . . ." Fed. R. Civ. P. 23(e)(2)(C)(ii). Under the settlement, each Class Member who submits a timely, valid claim is eligible to receive either a reimbursement of $500 or a payment of $350 depending on whether the defect required them to replace their HFL system or resulted only in disconnection or indication of parasitic drain. ECF No. 429-2 ¶¶ 3.1–3.7. In the notice package, each class member received information regarding class membership, how to submit a claim, the proof required for a valid claim, and instructions on how to object or opt out of the class. Bowden Decl., Exs. A–B, ECF No. 446-2 at 12–14. If the final settlement is approved, American Honda will issue payment checks to Class Members with approved claims. ECF No. 429-2 ¶ 4.27. This process is an effective method for distributing relief to the class.

Plaintiffs do not identify any supplemental agreements with American Honda in their motion. The only supplemental "agreement identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(C)(iv), permits American Honda to terminate the settlement if any one of several conditions occur, including if more than five percent of the Class opts out of the settlement. ECF No. 429-2 ¶ 7.14. The existence of a termination option triggered by the number of class members who opt out of the settlement[4] does not by itself render the settlement unfair. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015). The Court previously reviewed the agreement and concluded that the termination provision is fair and reasonable. *See* ECF No.

---

[3] The Court considers Plaintiff's opposed motion for attorney's fees separately below.

[4] Such a provisions is sometimes referred to as a "blow provision." *E.g.*, *Bakhtiar v. Info. Res., Inc.*, No. 17-CV-04559-JST, 2021 WL 4472606, at *4 (N.D. Cal. Feb. 10, 2021).

United States District Court
Northern District of California

1   436.  The Court now concludes that the agreement does not weigh against approval.

2   **4.      Equitable Treatment of Class Members**

3   Consistent with Rule 23's instruction to consider whether "the proposal treats class

4   members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), the Court considers

5   whether the settlement "improperly grant[s] preferential treatment to class representatives or

6   segments of the class," *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

7   2007).

8   The settlement provides that each Class Member who submits a timely claim will receive a

9   payment that varies depending on their experience with the HFL system.  *See* ECF No. 429-2 ¶¶

10  3.1–3.7.  The varying recovery amounts are justified by differences in the issues that Class

11  Members encountered—for example, paying to replace an HFL unit versus having to disconnect

12  one.  These distinctions are reasonable and appropriate.  *In re Volkswagen "Clean Diesel" Mktg.*,

13  No. 15-MD-02672-CRB, 2022 WL 17730381, at *3 (N.D. Cal. Nov. 9, 2022) (where "a

14  company's malfeasance—at the same time and in the same manner—may have caused different

15  degrees of harm to different class members," "the Ninth Circuit does not require the creation of

16  subclasses or separate representation under Rule 23(a)(4)" (citation omitted)).

17  **5.      Settlement Amount**

18  Although not articulated as a separate factor in Rule 23(e), "[t]he relief that the settlement

19  is expected to provide to class members is a central concern."  Fed. R. Civ. P. 23(e)(2)(C)–(D)

20  advisory committee's note to 2018 amendment.  The Court therefore examines "the amount

21  offered in settlement."  *Hanlon*, 150 F.3d at 1026.

22  To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs'

23  expected recovery balanced against the value of the settlement offer."  *In re Tableware*, 484 F.

24  Supp. 2d at 1080.  But "a cash settlement amounting to only a fraction of the potential recovery

25  will not per se render the settlement inadequate or unfair."  *Officers for Just.*, 688 F.2d at 628.

26  Because this proposed settlement does not establish a common fund, the Court examines

27  the benefits to the class on a per-claimant basis.  Plaintiffs estimate that the maximum amount

28  recoverable for the alleged defect at trial would be $2,100.70, representing what each class

United States District Court
Northern District of California

8

member overpaid for their vehicle.  ECF No. 446-1 ¶ 10.  The settlement provides Class Members with $500 for each HFL replacement and $350 for a disconnection or indication of excessive parasitic drain, with class members able to recoup multiple payments if they experienced more than one HFL problem.

A Class Member who receives the lowest payment of $350 for the indication of parasitic drain would recover approximately 17% of the $2,100.70 maximum overpayment.  Higher payments, from a $500 reimbursement to a multiple of that amount if a class member experienced more than one issue, represent recovery rates ranging from 23% to more than 47%.  "It is well-settled law" that a cash settlement smaller than the potential recovery "does not per se render the settlement inadequate or unfair."  *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (quoting *Officers for Just.*, 688 F.2d at 628).  Considering the risks of litigation described above and the fact that Class Members may be eligible for multiple payments, the Court finds this percentage of recovery fair and reasonable.  *See Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2022 WL 16823044, at *7 (N.D. Cal. Nov. 8, 2022) (finding a settlement provided "good value" where valid claimants received about eight or nine percent of the average total fees charged to their accounts over the class period).

### 6.    Extent of Discovery

"[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."  *In re Mego*, 213 F.3d at 459 (quotation marks and citation omitted).  However, a greater amount of completed discovery supports approval of a proposed settlement, especially when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases."  *Chun-Hoon*, 716 F. Supp. 2d at 852 (quotation marks and citation omitted).

Here, the parties conducted sufficient discovery to make an informed decision about the adequacy of the settlement, having exchanged documents, propounded written discovery, and completed multiple rounds of dispositive motion and class certification briefing.  ECF No. 446 at 18–19 (describing discovery efforts and progress in litigation); *see also In re Omnivision Techs.,*

*Inc.*, 559 F. Supp. 2d at 1042 (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took depositions, briefed motions, and participated in mediation). This factor weighs in favor of approval.

### 7. Counsel's Experience

The Court also considers "the experience and views of counsel." *Hanlon*, 150 F.3d at 1026. That counsel advocate in favor of this Settlement weighs in favor of its approval.[5]

### 8. Reaction of the Class

Finally, the Court considers the class's reaction to the settlement. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision*, 559 F. Supp. 2d at 1043 (quotation marks and citation omitted).

Here, the reaction of the class was largely favorable. Fifty-seven individuals opted out, only 16 of whom did so after receiving the settlement notice as opposed to the notice of the certification of the trial class. *See* ECF No. 466 at 4. The Court received ten objections to the proposed settlement. ECF Nos. 438–42, 444–45, 449, 453–54. Five objectors expressed dissatisfaction with the requirement that Class Members must have purchased their vehicle before it was either 10 years old or had attained 120,000 miles. *See* ECF Nos. 441, 444, 449, 453–54. Two objectors who disconnected or removed their HFL units themselves criticized the settlement for excluding owners who did not pay third parties to disconnect the units but who nonetheless had foregone use of HFL. *See* ECF Nos. 440, 442. Class Counsel contacted these objectors to clarify that they were eligible, and their claims have been approved. ECF No. 466-1 ¶¶ 2–4. The remaining objections expressed generalized distaste for the lawsuit, ECF No. 438; stated a concern that the defect might have affected a driver's vehicle without his knowledge (and therefore without requiring a repair), ECF No. 439; or did not state a basis for the objection, ECF No. 445. The

---

[5] The Court considers this factor, as it must, but gives it little weight. "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." *Principles of the Law of Aggregate Litigation* § 3.05 cmt. a (2010).

United States District Court
Northern District of California

1    Court overrules these objections and finds that on balance, the reaction of the class favors

2    approval.  *See Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received

3    45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

### 9.    Absence of Collusion

5        "Where . . . the parties negotiate a settlement agreement before the class has been certified,

6    settlement approval requires a higher standard of fairness . . . ," and the Court must examine the

7    risk of collusion with "an even higher level of scrutiny for evidence of collusion or other conflicts

8    of interest."  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quotation

9    marks omitted) (first quoting *Dennis v. Kellog Co.*, 697 F.3d 858, 864 (9th Cir. 2012); and then

10   quoting *In re Bluetooth*, 654 F.3d at 946).  Signs of potential collusion include: (1) a

11   disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing

12   agreement"; and (3) an arrangement for funds not awarded to revert to defendant rather than to be

13   added to the settlement fund.  *In re Bluetooth*, 654 F.3d at 947.  If "multiple indicia of possible

14   implicit collusion" are present, the Court has a "special 'obligation to assure itself that the fees

15   awarded in the agreement [are] not unreasonably high.'"  *Id.* (quoting *Staton v. Boeing Co.*, 327

16   F.3d 938, 965 (9th Cir. 2003)).

17       Here, the first *Bluetooth* factor is present because the attorney's fee request is notably

18   disproportionate to the total recovered by the class.  As discussed below, Class Counsel requests

19   $10,900,000 in fees based on a lodestar calculation of $8,759,878.  ECF No. 448 at 21.  The total

20   value of claims approved is estimated to be less than $540,000.  ECF No. 459-2 ¶ 6.  Even so,

21   another characteristic of the settlement mitigates the risk of collusion:  because there is no

22   common fund, the attorney's fees do not reduce the amount available to compensate class

23   members.  The district court approved a similar settlement in *In re Toys R Us-Delaware, Inc.--

24   Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 457 (C.D. Cal. 2014).

25   The other two *Bluetooth* factors—a clear sailing provision and the reversion of funds to American

26   Honda—are not present here.  The Court therefore finds no indicia of collusion that would

27   preclude approval.

28

United States District Court
Northern District of California

### 10.    Balance of Factors

The Court finds that the balance of the relevant factors weighs in favor of approval.  The motion for final settlement approval is thus granted.

## III.    MOTION FOR ATTORNEY'S FEES AND COSTS

### A.    Attorney's Fees

"While attorneys' fees and costs may be awarded in a certified class action . . . courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable . . . ." *In re Bluetooth*, 654 F.3d at 941 (citation omitted).

Class Counsel requests $10,900,000 in attorney's fees based on a lodestar calculation of $8,759,878 and the application of a 1.24 multiplier.  ECF No. 446.  American Honda opposes an award this large, arguing that Plaintiffs have inflated their lodestar, that a negative multiplier should apply, and that an award that much greater than the value of the benefits paid to the class is impermissible under *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 992 (9th Cir. 2023).  ECF No. 448.

The Ninth Circuit repeatedly has confirmed that "[a] federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees."  *Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 65 F.4th 1145, 1148 (9th Cir. 2023) (quoting *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000)); *see also Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 973 (9th Cir. 2013) ("[S]tate law on attorney's fees is substantive, so state law applies in diversity cases.").  The Court therefore applies California law.

### 1.    Calculation of Fees

Courts calculate attorney's fees using either the lodestar or percentage-of-the-fund method.  The lodestar method is "[t]he primary method for establishing the amount of reasonable attorney fees" under California law."  *Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 WL 6623224, at *1 (N.D. Cal. Dec. 16, 2013) (internal quotation marks omitted).  The lodestar method is also appropriate here because there is no common fund in this case.  *See In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2021 WL 1022866, at *1 (N.D. Cal. March 17, 2021); *Hanlon*, 150 F.3d at 1029 (approving the district court's use of the lodestar method where

12

calculation of the common fund was uncertain); *In re Toys R Us-Delaware, Inc*, 295 F.R.D. at 460 (applying lodestar method to calculate attorney's fees for settlement with no common fund); *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, No. 05-05437 RBL, 2008 WL 1901988, at *1 (W.D. Wash. Apr. 24, 2008) ("Where, as here, Settlement relief will be paid on a claims made basis with no cap to the relief available, consideration of attorneys' fees lends itself more readily to the lodestar method.").

The lodestar "measures the lawyers' investment of time in the litigation." *Vizcaino*, 290 F.3d at 1050. When calculating the lodestar, a court takes "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983). "[T]he determination of fees 'should not result in a second major litigation'" and "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437). Rather, the courts seek "to do rough justice, not to achieve auditing perfection." *Id.*

A district court must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (citation omitted). Additionally, the reasonable hourly rate must be based on the "experience, skill, and reputation of the attorney requesting fees" as well as "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). To inform and assist the Court in making this assessment, "the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community . . . ." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Regardless of whether the court uses the lodestar or percentage approach, the main inquiry is whether the fee award is "reasonable in relation to what the plaintiffs recovered." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

### 2. Reasonable Hourly Rate

Counsels' reasonable hourly rate must be based on the "experience, skill, and reputation of the attorney requesting fees" as well as "the rate prevailing in the community for similar work

1    performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los*

2    *Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th

3    Cir. 1987). "The reasonable hourly rate is that prevailing in the community for similar work."

4    *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). The relevant community is typically the

5    forum—here, the San Francisco Bay Area. *See Schwarz v. Sec'y of Health & Human Servs.*, 73

6    F.3d 895, 906–07 (9th Cir. 1995) (citations omitted); *see also Bratton v. FCA US LLC*, No. 17-cv-

7    01458-JCS, at *5 (N.D. Cal. Oct. 22, 2018) (noting that "the prevailing rates charged in the San

8    Francisco legal market are among the highest in the state").

9          Here, Plaintiff seeks fees that vary according to the experience of the timekeeper.

10    Partners' and of-counsels' rates range from $700 to $1,395. *See* ECF Nos. 448-2 at 2; 448-5 at 8;

11    448-6 at 7; 448-7 at 10; 448-8 at 7. The billing rates for non-partner and non-counsel attorneys,

12    including associates, litigation assistants, and document analysts range from $180 to $775. *See*

13    ECF Nos. 448-2 at 2; 448-5 at 8; 448-6 at 7; 448-7 at 10; 448-8 at 7. Paralegals are billed at rates

14    from $215 to $395. *See* ECF Nos. 448-2 at 2; 448-5 at 8; 448-6 at 7; 448-7 at 10; 448-8 at 7.

15          American Honda challenges the rates charged by partners Mr. Seeger ($1,395), Mr.

16    Kekatos ($1,275), Ms. Itri ($1,075), Ms. Taylor ($950), and Mr. Shah ($1,050). It asserts that Mr.

17    Seeger should be assigned a $1,100 rate and Mr. Kekatos, Ms. Itri, and Ms. Taylor should be

18    assigned $750. ECF No. 459 at 14–15. For counsel Mr. O'Brien, American Honda contends that

19    $625 rather than $775 is appropriate. *Id.* at 15. American Honda also asserts that the top billing

20    paralegal, Mr. Sheridan, who billed $395, should be reduced to $275. *Id.*

21          Plaintiffs argue that these rates are "reasonable in light of prevailing market rates in this

22    district for attorneys of comparable skill and reputation, and given the complexity and novelty of

23    the issues presented by this case." They rely on several cases from this district where courts

24    approved rates ranging from $560 to $1,275 for partners and from $215 to $695 for other

25    attorneys. *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 600–01 (N.D. Cal.

26    2020) (approving rates of $830 and $1,275 for partners and $425 to $695 for associates "in line

27    with prevailing rates in this district for personnel of comparable experience, skill, and

28    reputation"); *In re Wells Fargo & Co. Shareholder Derivative Litig.*, 445 F. Supp. 3d 508, 527 &

United States District Court
Northern District of California

14

n.10 (N.D. Cal. 2020) (approving rates of $560 to $1,075 for partners and $250 to $660 for associates); *Rollins v. Dignity Health*, No. 13-CV-01450-JST, 2022 WL 20184568, at *6 (N.D. Cal. July 15, 2022) (approving rates ranging from $625 to $1,060 for partners and of-counsel, and $215 to $625 for non-partner and non-counsel attorneys, including associates, litigation assistants, and document analysts).

These cases support the reasonableness of the fee range for all the attorney timekeepers except for Mr. Seegar, whose hourly rate is $1,395.  The only case that Plaintiffs cite where a court approved partner rates above $1,275 is *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Product Liability Litigation*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals).  Because one case is insufficient to establish a market rate, the Court will adjust the rate for Mr. Seeger from $1,395 to $1,275.  This change reduces the lodestar by $12,180.[6]

In addition, the two paralegals (Mr. Sheridan at $395 and Mr. Siegel at $325) are reduced to $295. This change reduces the lodestar by $145,516.[7]

The court is satisfied that the remaining rates are consistent with prevailing rates in the community by comparable lawyers doing similar work.  *See Cuviello v. Feld Entertainment, Inc.*, No. 13-cv-04951–BLF, 2015 WL 154197, at *2–*3 (explaining that the court has broad discretion in setting the reasonable hourly rates used in the lodestar calculation) (citation omitted); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (noting that the court can rely on its own experience).

### 3.   Hours Reasonably Expended

Plaintiffs request fees based on 11,535.1 hours of work across the five law firms serving as co-counsel on this case.  ECF No. 448 at 21.  Plaintiffs contend that the hours expended are "reasonable given the length of the litigation, the complexity of the case, the intransigence of the

---

[6] Mr. Seeger billed 101.5 hours at the rate of $1,395 for a total of $141,592.50.  At the revised rate of $1,275, Mr. Seeger's total fee is $129,412.50.
[7] Mr. Sheridan's 1,421.8 hours at $295 is $419,431 (reduction of $142,180 from $395 rate total).  Mr. Siegel's 111.2 hours at $295 amounts to $32,804 (reduction of $3,336 from $325 rate total).

United States District Court
Northern District of California

1     defendant, and the amount of relief recovered for the Settlement Class Members." *Id.* at 24.

2          American Honda identifies three entries that appear to have been billed to this matter in

3     error. ECF No. 459 at 8–9. In one instance, Mr. Brien billed for work related to a motion to

4     dismiss for a defendant who is not in this case. *Id.* In another, Mr. George billed for preparing

5     and attending a hearing on a motion for which the hearing was vacated. *Id.* at 9. Finally, Mr.

6     George appears to have billed excessively for a flight. Plaintiffs do not attempt to justify these

7     entries. ECF No. 463 at 9 n.1. Accordingly, the Court subtracts 25 hours from Mr. O'Brien's

8     total and 23.5 hours from Mr. George's total. This change reduces the lodestar by $46,662.50.[8]

9          Apart from these entries, American Honda's opposition to the fee request is based on the

10    argument that Plaintiffs billed excessive hours on routine matters, that partners completed tasks

11    that could have been completed by more junior attorneys, and that many lawyers rotated on and

12    off the matter over the course of the litigation. ECF No. 459 at 9–10.

13         The Court "may not attempt to impose its own judgment regarding the best way to operate

14    a law firm, nor to determine if different staffing decisions might have led to different fee

15    requests." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). "The difficulty

16    and skill level of the work performed, and the result achieved—not whether it would have been

17    cheaper to delegate the work to other attorneys—must drive the district court's decision." *Id.* In a

18    contingency fee case such as this one, "[i]t must also be kept in mind that lawyers are not likely to

19    spend unnecessary time . . . in the hope of inflating their fees. The payoff is too uncertain, as to

20    both the result and the amount of the fee." *Id.* at 1112. "An award for time spent by two or more

21    attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the

22    customary practice of multiple-lawyer litigation." *Abrogina v. Kentech Consulting Inc.*, No. 16-

23    CV-662-DMS(WVG), 2023 WL 6370913, at *15 (S.D. Cal. Sept. 5, 2023) (internal quotation

24    marks and citations omitted); *see also, e.g.*, *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir.

25    1989) (noting that "the participation of more than one attorney does not necessarily constitute an

26    unnecessary duplication of effort" because the complexity of legal issues and the breadth of

27

28    _____
      [8] Twenty-five hours multiplied by Mr. O'Brien's $950 hourly rate is $23,750. Twenty-three- and
      one-half hours multiplied by Mr. George's $975 rate is $22,912.50.

United States District Court
Northern District of California

factual evidence involved in case bear on the reasonable amount of lawyer participation).

The Court finds that the number of hours expended on the case is reasonable in light of the protracted case history and massive coordinated effort across the five law firms who brought the case. There is no apparent inefficiency or redundancy. Rather, the records before the Court reflect time spent on discrete tasks and appear to be proportional to the work required to develop, litigate, and resolve this matter over the past eight years. Nor does the Court find surprising American Honda's observation that several attorneys joined, left, and rejoined the matter over the course of the litigation. Although in past cases, this Court has sometimes "reduce[d] a lodestar across the board" due to "concerns about generalized billing," *see, e.g.*, *Bernstein v. Virgin America, Inc.*, No. 15-cv-02277-JST, ECF No. 402 at 8 (N.D. Cal. Jan. 21, 2020), the Court declines to do so here, *see In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d at 532.

Incorporating all of the above reductions, the lodestar is reduced from $8,759,878 to $8,555,519.50.

### 4.    Lodestar Multiplier

Plaintiffs request a lodestar multiplier of 1.24 based on the difficulty of the case, the risk undertaken, and counsel's skill and experience. ECF No. 448 at 14, 31–33. American Honda argues that the lodestar should be reduced because Plaintiffs did not prevail on all their original claims. ECF No. 459 at 17–20.

"Unlike federal law, California law authorizes the court to apply a multiplier to the lodestar figure to adjust for contingency risk." *Open Source Sec., Inc. v. Perens*, No. 17-CV-04002-LB, 2018 WL 2762637, at *2 (N.D. Cal. June 9, 2018), *aff'd*, 803 F. App'x 73 (9th Cir. 2020) (citing *Ketchum*, 24 Cal. 4th at 1132). "The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market value for such services." *Id.* (citation omitted).

To determine whether a multiplier should be applied, the court considers the following

17

factors:[9] (1) the novelty or difficulty of the questions involved; (2) the expertise and capability of counsel; (3) the results obtained; (4) the contingent risk involved in the case; (5) the extent to which the nature of the litigation precluded other employment by the attorneys; and (6) whether the attorneys received public and/or charitable funding. *Open Source Sec., Inc.*, 2018 WL 2762637, at *2 (citing *Ketchum*, 24 Cal. 4th at 1132); *Rogel v. Lynwood Redevelopment Agency*, 194 Cal. App. 4th 1319, 1329 (2011) (citation omitted).

The Court has considered the totality of the foregoing factors and concludes that no adjustment to the lodestar is required. While the case was complicated, lengthy, and risky, the existing lodestar is already much greater than the amount recovered by the class (a topic the Court addresses further below). Accordingly, the Court finds that the lodestar provides reasonable compensation for the work performed and the risk of taking the case on contingency.

Plaintiff also argues that an enhancement is necessary to compensate counsel for time not reflected in the lodestar that will be expended "to respond to inquiries from Settlement Class Members, prepare final approval papers, review claims, advocate on behalf of the Settlement Class Members during the claims process, and prepare their fee application." ECF No. 448 at 25. A declaration from Class Counsel explains:

> As is normal, our lodestar and fee request does not include the substantial time that will be incurred in the future, including further response and assistance to Settlement Class members, attending the final approval hearings, and any additional work that follows from that hearing. This fact is often overlooked but based on prior experiences, particularly in auto defect cases, this work can amount to hundreds of thousands of dollars of attorney time.

ECF No. 448-1 ¶ 20. Several courts in this district have included future hours in the lodestar calculation to achieve reasonable compensation. *Perez v. Rash Curtis & Assocs.*, No. 4:16-CV-03396-YGR, 2020 WL 1904533, at *18 (N.D. Cal. Apr. 17, 2020) (collecting cases). California courts also adjust the lodestar to reflect time spent securing fees or other future hours. *See*

---

[9] These criteria markedly distinguish California law from federal law, which prohibits adjustments to the lodestar based on factors already "subsumed" in the lodestar calculation. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552–54 (2010) (explaining that "the novelty and complexity of a case" is normally "fully reflected" by the number of hours expended, and the "quality of an attorney's performance" is "reflected in the reasonable hourly rate").

United States District Court
Northern District of California

1   *Ketchum*, 24 Cal.4th at 1133 ("[A]n attorney fee award should ordinarily include compensation for

2   all the hours reasonably spent, including those relating solely to the fee." (citing *Serrano v. Unruh*,

3   32 Cal. 3d 621, 624 (1982)).

4   However, as American Honda points out, it would take thousands of billable hours to

5   accrue the additional $2,140,122 in fees that a 1.24 multiplier would produce. ECF No. 459 at 17.

6   Further, Plaintiffs have not submitted the number of hours expended on their fee motion or

7   estimated the future hours required to conclude the settlement. Plaintiff predicts only that "the

8   lodestar will be approaching, if not exceeding, $9 million," ECF No. 448 at 25, and that "hundreds

9   of thousands of dollars of attorney time" will accrue by the end of the case, ECF No. 448-1 ¶ 20.

10  Because Plaintiffs have not provided enough information to support the requested multiplier based

11  on future work, the Court declines to apply a positive multiplier to the lodestar amount of

12  $8,555,519.50.

13  Finally, the Court considers American Honda's argument that a negative multiplier is

14  warranted to reflect the claims on which Plaintiffs did not prevail. ECF No. 459 at 17–20.

15  "[T]he fee award should not be reduced simply because the plaintiff failed to prevail on

16  every contention raised in the lawsuit." *Gunther v. Alaska Airlines, Inc.*, 72 Cal. App. 5th 334,

17  362 (2021). Where a plaintiff succeeded on only some claims, courts inquire: "First, did the

18  plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?

19  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a

20  satisfactory basis for making a fee award?" *Vines v. O'Reilly Auto Enterprises, LLC*, 74 Cal. App.

21  5th 174, 183 (2022) (citing *Hensley*, 461 U.S. at 434).

22  While Plaintiffs' claims were broader at the outset and did not all survive the three motions

23  to dismiss and motion for summary judgment, among other challenges, California law requires the

24  Court to focus on the overall relief obtained in relation to the hours reasonably expended.

25  *Gunther*, 72 Cal. App. 5th at 361. Plaintiffs litigated for eight years in the face of a vigorous

26  defense, and their core claims survived to the settlement stage, resulting in meaningful relief for

27  class members. "[A]lthough Plaintiffs did not obtain all of the results they sought in this

28  litigation, the Court has already found the settlement terms to be fair, reasonable, and adequate."

1  *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 857

2  (N.D. Cal. 2017).  The Court declines to reduce the fee award based on the outcome of the case.

3            **5.**       **_Lowery v. Rhapsody Int'l, Inc._**

4         The Court next examines the relationship between the amount of the requested attorney's

5  fees and the class's total recovery pursuant to *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985 (9th

6  Cir. 2023).  In *Lowery*, the plaintiffs, who were copyright holders of musical compositions, filed a

7  class action lawsuit against Rhapsody International, a company offering digital music streaming

8  services, for allegedly infringing their copyrights by reproducing and distributing their musical

9  compositions without obtaining the necessary licenses.  *Id.* at 989.  The lawsuit resulted in a

10  settlement where Rhapsody agreed to pay a maximum of $20 million, but due to a prior settlement

11  with the National Music Publishers Association, only $52,841.05 was ultimately paid to the class

12  members.  *Id.* at 990.  The plaintiffs' attorneys sought $6 million in legal fees, and the district

13  court awarded them approximately $1.7 million.  *Id.* at 990–91.

14         The Ninth Circuit Court of Appeals reversed the district court's fee award and remanded

15  the case.  The court emphasized that "[t]he touchstone for determining the reasonableness of

16  attorneys' fees in a class action is the benefit to the class."  *Id.* at 988.  The court criticized the

17  district court for not adequately considering the actual benefit to the class and for failing to apply a

18  multiplier to the lodestar calculation that reflected the minimal benefit achieved.  *Id.* at 989.  The

19  appellate court also instructed the district court to disregard the hypothetical $20 million

20  settlement cap and focus on the actual amount paid to the class when determining reasonable

21  attorney fees.  *Id.* at 993 n.2.  The court also suggested that a cross-check analysis should be used

22  to ensure that the fees are proportional to the benefit received by the class members.  *Id.* at

23  993–94.  It concluded, "[e]xcept in extraordinary cases, a fee award should not exceed the value

24  that the litigation provided to the class."  *Id.* at 994.

25         As a preliminary matter, the parties dispute whether *Lowery* applies to this diversity action.

26  Plaintiffs argue that the Court need not apply *Lowery* because the claims at issue in *Lowery* arose

27  under federal copyright law and the present case proceeds under state law.  Another court in this

28  district, however, recently confronted the same argument and concluded that *Lowery* also applies

United States District Court
Northern District of California

20

1     to the settlement of state law claims in federal court because that case addressed reasonableness

2     under Rule 23. *See Dekker v. Vivint Solar, Inc.*, No. C 19-07918 WHA, 2023 WL 5498063, at *8

3     (N.D. Cal. Aug. 23, 2023). As the *Dekker* court explained:

4            Class counsel emphasized at the hearing that *Lowery* was a

5            copyright case and federal law was at issue, whereas this is not a
           copyright case and state law is at issue (Tr. 8:21–9:1). But *Lowery*

6            was clear that "[t]he district court's fee award [was] not reasonable
           under *Rule 23*." 75 F.4th at 991 (emphasis added). Moreover, our

7            court of appeals has held that irrespective of whether a plaintiff was
           a prevailing party under a state law fee-shifting provision, "the

8            district court needed to do more to assure itself—and us—that the
           amount awarded was not unreasonably excessive in light of the

9            results achieved." *Bluetooth*, 654 F.3d at 943. In other words,
           *Lowery* is on point and looms large here.

10    *Id.*

11        Plaintiffs point to another case from this district that applied state law after *Lowery* was

12    issued, but that case does not discuss *Lowery*. *DiMercurio v. Equilon Enterprises LLC*, No. 3:19-

13    CV-04029-JSC, 2024 WL 2113857, at *8 (N.D. Cal. May 9, 2024). Because it did not consider

14    the issue for which Plaintiffs cite it, *DiMercurio* is not persuasive. Plaintiffs also rely on a case in

15    which the district court cited *Lowery* but declined to reduce the requested attorney's fee award. *In*

16    *re Outlaw Lab'ys, LP Litig.*, No. 18-CV-840-GPC-BGS, 2023 WL 6522383, at *7–9 (S.D. Cal.

17    Oct. 5, 2023). As discussed further below, however, while *Outlaw* distinguished *Lowery* on its

18    facts, it nonetheless applied it. This court accordingly follows *Dekker* and finds that *Lowery*

19    applies to the reasonableness inquiry required by Rule 23.

20        The Court next considers how to calculate the benefit to the class. As stated above, the

21    monetary value of the claims paid to the class is approximately $540,000. Felix Decl., ECF No.

22    459-2. *Lowery* explicitly left open the question of whether the value of administration costs,

23    incentive award costs, and other awards were part of the value of the settlement to the class.

24    *Lowery*, 75 F.4th at 992 n.3. Under California state law, in cases "where attorney's fees are paid

25    separately from the claim fund, courts base the fee award on the entire settlement fund as that

26    package is the benefit to the class. This amount includes notice and administration costs and

27    separately paid attorneys' fees and costs." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal.

28    2011), *aff'd in part,* 473 F. App'x 716 (9th Cir. 2012). Although their inclusion is not outcome-

*United States District Court*
*Northern District of California*

determinative, the Court finds that these funds (not including the separately-awarded attorney's fee) were expended to produce a benefit for Class Members and accordingly adds them to the cash recovery for a monetary value of $2,846,270.90.[10]  The adjusted lodestar of $8,555,519.50 is approximately three times this figure.

The Court concludes that *Lowery* does not require reducing that amount.  *Lowery* recognized that not all fee awards should be capped in the same way.  Thus, for example, "attorneys' fees awarded in civil rights cases need not be strictly proportional to monetary damages" because, "[e]ven though damages in civil rights cases are often small, . . . these lawsuits can provide considerable benefit to society through nonmonetary relief such as 'ending institutional civil rights abuses or clarifying standards of constitutional conduct.'"  *Lowery*, 75 F.4th at 994–95 (quoting *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209–10 (9th Cir. 2013)).  Also, civil rights fee-shifting provisions "ensure that lawyers would be willing to represent persons with legitimate civil rights grievances."  *Id.* (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 578–79).

This principle can be extended to other kinds of cases in which policy considerations or the need to attract qualified counsel make a higher fee appropriate.  In *Outlaw Laboratories*, for example, Outlaw Laboratories and its law firm sent letters to small retail stores asserting that the stores were selling male sexual enhancement pills subject to FDA warnings in violation of RICO and the Lanham Act.  2023 WL 6522383, at *1.  The letters threatened to sue for more than $100,000 if the store did not pay a small settlement.  *Id.*  A group of stores who received these letters sued on behalf of a class of affected merchants, asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO").  *Id.*  Three stores proceeded to trial on their individual claims, and the jury awarded damages totaling $11,940.  *Id.* at *2.  Plaintiffs' counsel then moved for attorney's fees under RICO's fee-shifting provision in the amount of $1,067,881.5. *Id.* at *3.

---

[10] The cost of notice to the class is estimated to be $675,000, Bowden Decl., ECF No. 446-2 ¶ 28; the settlement administration costs are approximately $575,000, *id.* ¶ 29; the service awards granted to named Plaintiffs total $30,000; and the Court has awarded litigation costs of $1,026,270.90.  The total additional monetary value is therefore $2,306,270.90.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Defendants urged the court to reduce the award based on *Lowery*, but the court rejected the request.  The court reasoned that "*Lowery* specifically distinguished civil rights cases in which nonmonetary relief 'can provide considerable benefits to society' and in which fee-shifting provisions are intended to 'ensure that lawyers would be willing to represent persons with legitimate civil rights grievances.'"  *Id.* at *8 (quoting *Lowery*, 75 F.4th at 995–96).  It found that "[l]ike the civil rights fee-shifting provisions, 'Congress did not intend that attorneys' fees [under RICO] should be awarded only in some proportion to the plaintiff's damages.'"  *Id.* at *8 (quoting *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-00236, 2020 WL 7626410, at *4 (N.D. Cal. Dec. 22, 2020)).  And it noted that "[c]ourts regularly grant fee awards that exceed the damages award, sometimes many times over, across a variety of fee-shifting statutes.  *Id.* at *7 (collecting cases).

Similar considerations apply here, where Plaintiffs bring consumer claims under California state law.  California courts have made clear that attorney's fee awards in consumer cases should be guided in part by public policy goals, including the need to incentivize competent counsel to take cases on contingency.  *See, e.g.*, *Patel v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 1007, 1017 (2019) (explaining that attorney's fees in consumer protection actions "allow[] consumers to pursue remedies in cases as here, where the compensatory damages are relatively modest" (internal quotation marks and citation omitted); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1171 (C.D. Cal. 2010) ("California's fee shifting and private attorney general statutes incentivize counsel to take cases on behalf of plaintiffs who could not otherwise afford to vindicate their rights through litigation.").

In fact, at least one case has explicitly analogized attorney's fees in consumer cases to those in the civil rights cases identified in *Lowery*.  *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140 (2006).  In *Graciano*, the state appellate court explained that "because this matter involves an individual plaintiff suing under consumer protection statutes involving mandatory fee-shifting provisions, the legislative policies are in favor of Graciano's recovery of all attorney fees reasonably expended, without limiting the fees to a proportion of her actual

recovery." 144 Cal. App. 4th at 164.[11]  The court noted:

> The circumstances here are analogous to those addressed by the United States Supreme Court in the civil rights context:  "A rule that limits attorney's fees in civil rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose in enacting [42 United States Code section] 1988.  Congress enacted [42 United States Code section] 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process.  These victims ordinarily cannot afford to purchase legal services at the rates set by the private market . . .  Moreover, the contingent fee arrangements that make legal services available to many victims of personal injuries would often not encourage lawyers to accept civil rights cases, which frequently involve substantial expenditures of time and effort but produce only small monetary recoveries."  *Riverside v. Rivera*, 477 U.S. 561, 576–577 (1986).  "A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts."  *Id.* at 578.

*Graciano*, 144 Cal. App. 4th at 164.  The Court applies the same reasoning here.

The Court considers three additional facts in applying *Lowery*.  First, courts have continued to award attorney's fees that exceed the class's recovery in appropriate circumstances, even after considering *Lowery*.  *See In re PFA Ins. Mktg. Litig.*, No. 4:18-CV-03771 YGR, 2024 WL 1145209, at *17 (N.D. Cal. Feb. 5, 2024) (acknowledging *Lowery* and awarding $6,000,000 in attorney's fees in connection with class recovery of $4.2 million).  Second, although American Honda cites *Lowery* in opposition to Plaintiffs' fee motion, it does not seek to limit Plaintiffs' attorney's fees to the amount of the class's recovery, and it appears to agree with the policy concerns discussed above, as it made explicit during the hearing on the motion:

> THE COURT:  Are you -- how hard an edge are you willing to put on your *Lowery* argument?
>
> MR. MALLOW:  Your Honor, we did not, in our opposing papers, suggest to you that the plaintiffs' fees should be constrained to 25

---

[11] CLRA § 1780(e) provides that "[t]he court shall award court costs and attorney's fees to a prevailing plaintiff in litigation" filed under Section 1770.  When litigation is resolved by a pre-trial settlement, determination of the prevailing party under Section 1780 is within "the sound exercise of [the trial court's] discretion."  *Kim v. Euromotors W./The Auto Gallery (Euromotors)*, 149 Cal. App. 4th 170, 181 (2007).  Plaintiff is the prevailing party here, and American Honda does not argue otherwise.  The other states' consumer protection statutes at issue also contain fee-shifting provisions: Kan. Stat. Ann. § 50-634(e)(2); N.Y. Gen. Bus. Law § 349; Wash. Rev. Code Ann. § 19.86.090.

percent of $540,000, nor did we say it should be limited to $540,000.  Because Honda—

THE COURT:  Yes.  Hence—hence the Court's question.

MR. MALLOW:  Right.

THE COURT:  So now I'm -- so I'm not asking you what you didn't say.  I want to hear—I want something I could put in the record if I wanted to, on a yes or no basis, should the plaintiffs' fee in this case be limited to $540,000?

MR. MALLOW:  That is not Honda's position.

ECF No. 473 at 30–31.  He continued, "We do not want to create a world where resolution becomes impossible because plaintiffs can't get paid a reasonable fee."  *Id.* at 31.

Finally, several key facts in *Lowery* are absent here.  For example, class counsel in *Lowery* persisted in litigating the case even though there was "little realistic probability that they would recover substantial compensation for the class" because another class action had already provided relief to most of the proposed class members.  75 F.4th at 994.  That was not the case here.  Also, the *Lowery* parties stayed the litigation to pursue settlement "[w]ithin weeks after the plaintiffs filed their complaint" and "[e]xcept for a handful of discovery disputes and a motion to dismiss that was never decided, settlement talks dominated the parties' dealings."  *Id.* at 990.  By contrast, the litigation here was lengthy and hard-fought.

Accordingly, the Court finds that compensating Class Counsel for the work they performed, although their fee exceeds the value paid to the class, is reasonable.  The Court therefore will not reduce the fee award based on *Lowery* or a percentage-of-recovery cross-check.

**B.      Reimbursement of Costs**

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted).  Class Counsel requests "reimbursement of costs in the amount of $1,037,458.66."  ECF No. 448 at 11, 14.[12]  American Honda originally opposed $928,000 of those expenses, ECF No. 459 at 7, but ultimately withdrew their opposition to all but

---

[12] Plaintiff's motion elsewhere states that they request only $12,048.11 in costs.  ECF No. 448 at 36.  Because the attached declarations indicate a request for the $1,037,458.66 sum, the Court presumes that the smaller figure was an error.

$181,760.25, ECF No. 471.

Having reviewed the parties' supplemental briefs on this issue, ECF Nos. 471, 474, the Court concludes that Plaintiffs' claimed costs are reasonable with one exception: $11,187.75 paid by Plaintiffs to American Honda's former law firm. That payment was required because one of the named plaintiffs brought their care to the wrong location for inspection. American Honda should not have to bear that expense. The Court therefore approves expenses in the amount of $1,026,270.91.

## C.    Incentive Awards

Plaintiffs argue that named Plaintiffs Lindsay Aberin, Jeff Aberin, Don Awtrey, Charles Burgess, John Kelly, and Joy Matza are each entitled to an incentive award of $7,500. ECF No. 448 at 36–37. American Honda takes no position on this request. ECF No. 459 at 25.

"[Incentive] awards are discretionary and are intended to compensate class representatives for work done on behalf of the class." *Rodriguez*, 563 F.3d at 958 (citation omitted). In evaluating requests for such awards, the Court should consider:

> (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in purs[uing] it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks.

*Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *32 (N.D. Cal. Apr. 1, 2011) (citations omitted). "[C]ourts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). "An award of $5,000 is presumptively reasonable." *Rollins v. Dignity Health*, No. 13-cv-01450-JST, 2022 WL 20184568, at *9. Courts will, however, grant an award that exceeds $5,000 when it is warranted. *See, e.g.*, *Harris v. Vector Mktg. Corp.*, No. C–08–5198 EMC, 2012 WL 381202, at *7–8 (N.D. Cal. Feb. 6, 2012) (granting a $12,500 award where the class representative signed a broader general release than did her fellow class members, spent more than 100 hours on the litigation, had her friends and family subpoenaed, and was compelled to release private information).

1    Named Plaintiffs worked with Class Counsel throughout more than eight years of

2    litigation, during which they provided assistance that enabled Class Counsel to successfully

3    prosecute and settle the actions, including by making "their vehicles available for day-long

4    inspections, [being] deposed, some on more than one day, assist[ing] in the production of

5    documents and in responding to interrogatories, and otherwise remain[ing] engaged in prosecuting

6    their claims on behalf of the class."  Cecchi Decl., ECF No. 448-1 ¶ 32.  Apart from the significant

7    length of time that the case has been pending, the named Plaintiffs' role in the case has not gone

8    beyond that of plaintiffs awarded $5,000 in other cases.  *See Fleury v. Richemont N. Am., Inc.*, No.

9    C–05–4525 EMC, 2008 WL 3287154, at *6 (N.D. Cal. Aug. 6, 2008) (awarding $5,000 incentive

10   award where plaintiff was involved in litigation for three years, sat for a deposition, responded to

11   written discovery, and attended a mediation session); *Burden v. SelectQuote Ins. Servs.*, No. C 10-

12   5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013) (awarding $5,000, rather than the

13   requested $10,000, where the named plaintiff "was deposed twice, attended three settlement

14   conferences, and spent a total of 80 hours" on the case).  The Court approves an incentive award

15   of $5,000 to each named Plaintiff.

16                                   **CONCLUSION**

17        For the reasons stated above, the Court grants Plaintiffs' motion for final approval of the

18   class action settlement.  ECF No. 446.  The Court also grants in part Plaintiffs' motion for

19   attorney's fees, litigation costs, and service awards for the named Plaintiffs.  ECF No. 448.  Class

20   Counsel is entitled to $8,555,519.50 in attorney's fees and $1,026,270.90 in litigation costs.

21   Named Plaintiffs Lindsay Aberin, Jeff Aberin, Don Awtrey, Charles Burgess, John Kelly, and Joy

22   Matza are entitled to $5,000 each as a service award.  The parties and settlement administrator are

23   directed to implement this order and the Settlement Agreement in accordance with their terms.

24        Class counsel shall file a post-distribution accounting within 21 days after the distribution

25   of settlement funds.  In addition to the information contained in the Northern District of

26   California's Procedural Guidance for Class Action Settlements, available at

27   https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements, the post-

28   distribution accounting shall discuss any significant or recurring concerns communicated by class

United States District Court
Northern District of California

27

1  members to the settlement administrator or counsel since final approval, any other issues in

2  settlement administration since final approval, and how any concerns or issues were resolved.  The

3  Court will withhold 10% of the attorney's fees granted in this order until the post-distribution

4  accounting has been filed.  Class counsel shall file a proposed order releasing the remainder of the

5  fees when they file their post-distribution accounting.

6      This matter is set for a further case management conference on November 18, 2025 at 2:00

7  p.m.  A joint case management statement is due November 10, 2025.  The parties may request that

8  the case management conference be continued if additional time is needed to complete the

9  distribution.  The conference will be vacated if the post-distribution accounting has been filed and

10  the Court has released the remaining attorney's fees.  The parties shall submit a stipulated

11  proposed form of judgment within 14 days of this order.

12      **IT IS SO ORDERED.**

13  Dated:  May 9, 2025

14  _____

15  JON S. TIGAR
   United States District Judge

United States District Court
Northern District of California